CA: 2:06CV 746-WHA

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO. 03-32063-WRS** |
| **COMPANY, INC.** | ) | |
| | ) | **CHAPTER 7** |
| **Debtor** | ) | |
| | ) | |

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CASE NO. 03-32213-WRS** |
| **TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY, INC.** | ) | |
| **AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC** | ) | **ADVERSARY PROCEEDING** |
| | ) | **NO. 05-03042** |
| **VERSUS** | ) | |
| | ) | |
| **N.D. HORTON, JR. AND JAMES** | ) | |
| **M. REYNOLDS, III** | ) | |

## TRUSTEE'S SECOND AMENDED DESIGNATION OF RECORD ON APPEAL

NOW INTO COURT, through undersigned counsel comes J. Lester Alexander,

III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC

and the Appellee in the above-captioned proceeding pursuant to Bankruptcy Rule 8006 to

submit this amended designation of record on appeal. In addition to the items designated

NO.99624052.1

Doc #110

by Appellants, the Trustee submits the following items to be a part of the record on appeal:

1)    All of Plaintiff's trial exhibits;

2)    The following pleadings and exhibits thereto filed in the above-captioned proceeding:

a.    Motion to Alter or Amend (Docket #32);

b.    Trustee's Motion for Summary Judgment, Memorandum in Support and Exhibits (Docket #34);

c.    Trustee's Reply to Defendants' Opposition to Summary Judgment (Docket #67);

d.    Trustee's Objections to Defendants' Pretrial Disclosures (Docket #73);

e.    Trustee's Objection to Admission of Testimony of Randy Averett and Motion to Strike Randy Averett and Jesse Slaton as Expert Witnesses (Docket #78);

f.    Stipulation (Docket #83);

g.    Trustee's Motion to Alter or Amend (Docket #90);

h.    Trustee's Response to Defendants' Opposition to Motion to Alter or Amend (Docket #100);

3)    Deposition transcripts and exhibits of M.D. Horton, Jr. (5/10/2005 and 2/8/2005);

4)    Deposition transcript and exhibits of Richard Dobbins (6/23/2005);

5)    Deposition transcript and exhibits of Frank Henderson (6/24/2005);

6)    Deposition transcript and exhibits of John E. Hall III (6/23/2005);

7)    Deposition transcript and exhibits of David Bowen (6/23/2005); and

8)    Deposition transcript and exhibits of David Giddens (3/17/2006).

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:    /s/    Catherine E. Lasky
       Brent B. Barriere, T.A.  (La. Bar No. 2818)
       David L. Patrón (La. Bar No. 22566)
       Catherine E. Lasky (La. Bar No. 28652)
       365 Canal Street, Suite 2000
       New Orleans, Louisiana  70130-6534
       Telephone:  (504) 566-1311
       Facsimile:  (504) 568-9130

       ATTORNEYS FOR J. LESTER ALEXANDER,
       III, TRUSTEE

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 18th day of August, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203

/s/    Catherine E. Lasky

NO.99624052.1

The following item listed as part of the Trustee's Second Amended Designation of Record on Appeal is available for viewing at the US Bankruptcy Court-MD of AL:

1) All of Plaintiff's Trial Exhibits

2) Deposition transcript and exhibits of M.D. Horton, Jr.

3) Deposition transcript and exhibits of Richard Dobbins

4) Deposition transcript and exhibits of Frank Henderson

5) Deposition transcript and exhibits of John E. Hall III

6) Deposition transcript and exhibits of David Bowen

7) Deposition transcript and exhibits of David Giddens

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC, | ) | |
| | ) | |
| Debtor | ) | |

_____

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, | ) | ADVERSARY    PROCEEDING |
| NO.: | | |
| | ) | 05-03042 |
| INC, AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON AND JAMES M. | ) | |
| REYNOLDS, III | ) | |

## <u>MOTION TO ALTER OR AMEND</u>

COME NOW the Defendants, N.D. Horton, Jr. ("Horton"), and James M. Reynolds ("Reynolds"), III, and hereby move to alter or amend the scheduling order. For their motion, the defendants say as follows:

1.    By order dated September 21, 2005 this Court provided that discovery had to be completed by December 31, 2005.

2.      However, at the scheduling conference, the Court indicated that discovery cutoff would be January 31, 2006.

3.      Moving the discovery deadline to January 31, 2006, would not impact the other deadlines within the order.

4.      The defendants had requested six months for discovery.

WHEREFORE, premises considered, the defendants respectfully request this Court to extend the discovery deadline until January 31, 2006.  The defendants pray for such further and other relief as this Court may deem appropriate.

\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for American Real Estate Investment Company, Ltd, L.P.

**OF COUNSEL:**
WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:     (205) 244-5237
Telecopier:     (205) 244-5437

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion to Alter or Amend has been served by placing same in the United States mail, properly addressed and postage prepaid, as follows:

Brent B. Barriere
David L. Patron
365 Canal Street
Suite 2000
New Orleans, Louisiana 70130

This the \3rd\ day of October, 2005.

\s\ C. Ellis Brazeal III
OF COUNSEL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                          )
                                )
**TERRY MANUFACTURING**         )    **CASE NO.  03-32063-WRS**
   **COMPANY, INC.**         )
                                )    **CHAPTER 7**
  **Debtor**                  )
                                )

IN RE:                          )
                                )    **CASE NO.  03-32213-WRS**
**TERRY UNIFORM**               )
  **COMPANY, LLC,**          )    **CHAPTER 7**
                                )
  **Debtor.**                 )

**J. LESTER ALEXANDER, III,**   )
**TRUSTEE OF TERRY**            )
**MANUFACTURING COMPANY, INC.** )
**AND TERRY UNIFORM**           )
**COMPANY, LLC**                )    **ADVERSARY PROCEEDING**
                                )    **NO. 05-03042**
**VERSUS**                      )
                                )
**N.D.HORTON, JR. AND JAMES**   )
**M. REYNOLDS, III**            )

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. ("Terry Manufacturing") and respectfully requests that he be granted judgment against N.D. Horton, Jr. and James M. Reynolds, III voiding payments made by them to Terry Manufacturing totaling $596,738.60 as constructive fraudulent transfers as defined by Alabama law.  In support of his Motion, the Trustee respectfully represents:

1.

Terry Manufacturing made payments totaling $596,738.60 to N.D. Horton and James Reynolds, III in payment of promissory notes given by Roy Terry, Rudolph Terry, Cotina Terry (Roy's daughter) and Allie Robinson (wife of Rudolph Terry). Those notes were given in exchange for common stock of Perky Cap sold by Messrs. Horton and Reynolds to Terry family members. The common stock was registered in the name of the Terry family members; Terry Manufacturing received absolutely no value for the payments.

2.

All of the payments were made at a time when Terry Manufacturing was insolvent, had unreasonably small capital and failed to pay its debts timely.

3.

The three promissory notes granted by the Terry family members provide for joint payments to Messrs. Horton and Reynolds. In practice, and pursuant to invoices issued by Messrs. Horton and Reynolds, Terry Manufacturing made separate, but identical monthly payments to Horton and Reynolds. Accordingly, the payments made to Horton total $298,369.30; the payments to Reynolds total $298,369.30. All of those payments should be avoided as fraudulent conveyances.

4.

The Trustee has also asserted claims against Messrs. Horton and Reynolds under the United States Bankruptcy Code, Georgia's Fraudulent Conveyance Act and the intentional

NO.99564289.2

fraudulent conveyance provisions of Alabama law. These causes of action will become effectively moot should the present motion be granted. If, however, it is denied, the Trustee reserves those causes of action for trial. Likewise, the Trustee believes that all of the payments in question are for the benefit of Messrs. Horton and Reynolds. He reserves the right to seek recovery from each of all amounts paid by Terry Manufacturing in the event the present motion is denied.

WHEREFORE, for reasons set forth herein and as more fully set forth in the accompanying memorandum and attachments thereto, J. Lester Alexander, III respectfully requests that he be granted judgment against N.D. Horton in the amount of $298,369.30 and against James Reynolds, III in the amount of $298,369.30 together with court costs and interest from July 10, 2005, the date of filing of the Complaint.

**PHELPS DUNBAR LLP**

By: /s/ Brent B. Barriere
    Brent B. Barriere, T.A. (La. Bar No. 2818)
    David L. Patrón (La. Bar No. 22566)
    Katherine M. Determan (La. Bar No. 25381)
    Catherine E. Lasky (La. Bar No. 28652)
    One Canal Place
    365 Canal Street, Suite 2000
    New Orleans, LA 70130-6534
    Telephone: 504-566-1311
    Facsimile: 504-568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, L.L.C.**

NO.99564289.2

## **CERTIFICATE OF SERVICE**

I, Brent B. Barriere, hereby certify that on the 2nd day of November, 2005 and on behalf of J. Lester Alexander III, Trustee of Terry Manufacturing Co., Inc. and Terry Uniform Company, L.L.C., I served a copy of Motion for Summary Judgment by  First Class mail to James M. Reynolds, III and N.D. Horton, Jr. upon C. Ellis Brazeal III, Watson, Wells, Anderson & Berchall LLP, 1819 5th Avenue North, Suite 1100, Birmingham, AL 35203, counsel for Messrs. Horton and Reynolds.


  /s/  Brent B. Barriere

NO.99564289.2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                      )
                                            )
TERRY MANUFACTURING                         )    CASE NO. 03-32063-WRS
    COMPANY, INC.                           )
                                            )    CHAPTER 7
    Debtor                                  )
                                            )

_____

IN RE:                                      )
                                            )    CASE NO. 03-32213-WRS
TERRY UNIFORM                               )
    COMPANY, LLC,                           )    CHAPTER 7
                                            )
    Debtor.                                 )

_____

J. LESTER ALEXANDER, III,                   )
TRUSTEE OF TERRY                            )
MANUFACTURING COMPANY, INC.                 )
AND TERRY UNIFORM                           )
COMPANY, LLC                                )    ADVERSARY PROCEEDING
                                            )    NO. 05-03042
VERSUS                                      )
                                            )
N.D.HORTON, JR. AND JAMES                   )
M. REYNOLDS, III                            )

MEMORANDUM OF J. LESTER ALEXANDER, III, TRUSTEE
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

By this Adversary Proceeding, J. Lester Alexander, III, Trustee of Terry Manufacturing

Company, Inc. ("Terry Manufacturing") seeks to recover $596,738.60 paid by Terry

Manufacturing to N.D. Horton, Jr. and James M. Reynolds, III for common stock of Perky Cap

Company, Inc. they sold to Roy Terry, Rudolph Terry, Cotina Terry (Roy's daughter) and Allie

Robinson (wife of Rudolph Terry). Terry Manufacturing received absolutely no value, much

less "reasonably equivalent value" for its payments to Messrs. Horton and Reynolds.

This case is ripe for summary judgment on the Trustee's causes of action for constructive fraudulent transfer under Alabama law, Ala. Code 1975 § 9A-4(c)(1)&(2) and Ala. Code 1975 § 8-9A-5(a).[1]  Defendants have admitted that they received payments on promissory notes given by Terry family members.  They further admit these notes and related payments were given in consideration of Reynolds and Horton transferring majority shares of Perky Cap stock to the Terry family members.[2]  Nor can defendants dispute that the funds they received came from Terry Manufacturing as evidenced by the attached cancelled checks. (See, Exhibits 10, 11, 12 and 13).

All of the payments made by Terry Manufacturing on behalf of Terry family members were tendered when the company was insolvent by a balance sheet test, when it had inadequate capital and when it could not, and did not, pay its debts timely.  As detailed below, when the payments began Terry Manufacturing's liabilities exceeded its assets by approximately $8,983,000; when payments ceased in May, 2003, that deficiency had grown to $61,593,000.

This Adversary Proceeding presents a text book illustration of principals using an insolvent company's funds to pay their personal obligations.  The Trustee requests that the Court avoid the transfers and grant judgment in his favor of $298,369.30 against N.D. Horton, and $298,369.30 against James Reynolds, plus court costs and judicial interest from June 10, 2005,

---

[1]  The Trustee has asserted claims against Messrs. Horton and Reynolds for recovery of the payments as intentional fraudulent conveyances under Alabama law, Ala. Code 1975 § 8-9A-4(a), and as avoidable fraudulent conveyances and preference under the Bankruptcy Code.  These claims are reserved, if not rendered moot by the Court's ruling on the motion.  The Trustee has also asserted that the transfers constitute avoidable fraudulent conveyances under Georgia law.  The Trustee contends that Alabama law applies because Terry Manufacturing is headquartered in Alabama and the transfers occurred in the state.  In any event, this appears to be a false conflict of law issue as the constructive fraudulent conveyance laws of the two states are virtually identical.

[2]  In paragraphs 16 and 18 of their answer, Horton and Reynolds admit receiving the payments on the Cotina Terry and Allie Robinson notes; they deny that the source of the payments was Terry Manufacturing. They do deny the amount of payments on the Roy and Rudolph Terry note for lack of information.  Answers at ¶ 14.  Defendants admit that the three notes were given in consideration of Perky Cap stock.  Answer at ¶¶ XII, XV and XVII.

NO.99563746.3

the date of the filing of the Trustee's Complaint.[3]

## FACTUAL BACKGROUND

The central facts supporting avoidance of the transfers are not seriously disputed and may be summarized as follows:

### I.    Cotina Terry Note.

1.    At all relevant times, N.D. Horton and James Reynolds have owned common stock of Perky Cap, a manufacturer of headware headquartered in Eatonton, Georgia.  Beginning in 1994 , Roy and Rudolph Terry acting in their individual capacities purchased Perky Cap stock from Horton and Reynolds. (See, Exhibit 5).

2.    As of November 30, 1999, Horton and Reynolds, were the majority owners of Perky Cap. As a result of a series of acquisitions described below, majority stock was acquired by the Terry family (Affidavit of J. Lester Alexander ("Alexander Affidavit") at p. 17, ¶1).

3.    On November 10, 2000, Cotina Terry executed a Purchase Money Promissory Note (the "Cotina Terry Note") in the principal sum of $200,000 and bearing interest at the rate of 9.5% per annum.  The Cotina Terry Note was made payable to Mr. Horton and Mr. Reynolds and was given in consideration of 9,000 shares of Perky Cap stock sold to Cotina Terry by Messrs. Horton and Reynolds.  These shares represented 10% of the outstanding common stock of the company.  Terry Manufacturing was not a signatory to the note.  (See, Alexander Affidavit at p. 13, ¶2 and Exhibits 6 and 7).

---

[3]    For purposes of this Motion, the Trustee is only seeking recovery of amounts actually received by each of Messrs. Horton and Reynolds.  He reserves his right to pursue recovery of all transfers made for the benefit of each should this Motion be denied.

4.      The common stock sold by Messrs. Horton and Reynolds to Cotina Terry was registered by Ms. Terry in her individual name.  Terry Manufacturing had no interest whatsoever in the stock.  (See, Alexander Affidavit at p. 13, ¶ 2 and Exhibit 7 thereto).

5.      Terry Manufacturing made all payments on the Cotina Terry note.  It was paid in full in May, 2003.  (See, Exhibits 10, 11, 12 and 14 and Alexander Affidavit at p. 15, ¶5).

**II. Allie Robinson Note.**

1.      On November 10, 2000, Allie R. Robinson, wife of Rudolph Terry, executed a promissory note in a form identical to that executed by Cotina Terry.  The note was designated as a Purchase Money Promissory Note (the "Allie Robinson Note") and, like the note executed by Cotina Terry, was in the principal sum of $200,000 plus 9.5% interest.  The Allie Robinson Note was made payable to Messrs. Horton and Reynolds and was given for and in consideration of 9,000 shares of Perky Cap stock sold to Allie Robinson by Messrs. Horton and Reynolds.  These shares represented 10% of the outstanding common stock of Perky Cap.  (See, Alexander Affidavit at p. 14, ¶3 and Exhibits 8 and 9).

2.      The common stock sold by Messrs. Horton and Reynolds to Allie Robinson was registered by Ms. Robinson in her individual name.   Terry Manufacturing had no interest whatsoever in the stock. Terry Manufacturing paid all installments on the Allie Robinson Note. It was paid in full in May, 2003. (See, Alexander Affidavit at p. 15, ¶ 5-6 and Exhibit 9).

3.      Both the Allie Robinson Note and Cotina Terry Note provide for joint payments to Messrs. Reynolds and Horton.  In practice, and consistent with invoices issued by Reynolds and Horton, Terry Manufacturing made separate, but identical payments to Reynolds and

Horton.  Reynolds received total payments of $ 234,375.81 on the two notes; Horton received $234,375.81.  All payments were by Terry Manufacturing.  (See, Alexander Affidavit at p. 15, ¶5 and schedules, invoices and canceled checks attached thereto as Exhibits 10, 11 and 12).

### III.    The Roy Terry and Rudolph Terry Note.

1.    On May 20, 2002, Roy and Rudolph Terry jointly executed a promissory note in favor of Messrs. Horton and Reynolds in the principal amount of $624,000 (the "Terry Note"). In consideration thereof, Messrs. Horton and Reynolds transferred to Roy and Rudolph Terry, jointly, 27,900 shares of Perky Cap stock.  These shares represent 31% of the outstanding common stock of that company.  (See, Alexander Affidavit at p. 17, ¶ 1 and Exhibit 13 attached thereto).

2.    The Terry Note was payable in monthly installments to Messrs. Horton and Reynolds commencing on July 2, 2002 in the amount of $4,680 each and continuing in that amount until December 2, 2002 at which time the outstanding balance was to be amortized over 36 equal monthly installments in the amount of $19,843.03 each. (See, Exhibit 13).

3.    Terry Manufacturing was not a signatory to the Terry Note, as it had not been a signatory to either the Cotina Terry  or the Allie Robinson notes.   Nonetheless, Terry Manufacturing made payments on the Terry notes totaling $127,986.98.  These payments continued until the eve of the Chapter 11 filing which occurred on July 7, 2003.  (See, Exhibit 14).

4.    The Terry Note, like the other two notes, provides for joint payments to Messrs. Reynolds and Horton.  In practice, Terry Manufacturing issued separate monthly payments to

each. Total payments to Reynolds on the Terry Note amounted to $63,993.49 which include a check Horton endorsed to Reynolds. Horton also received $63,993.49 (See Alexander Affidavit at p. 17, ¶3).

5.    All of the payments made by Terry Manufacturing to Messrs. Reynolds and Horton, whether in payment of the Cotina Terry Note, Ally Robinson Note or Terry Note, were made between December 10, 2000 and May 9, 2003. Throughout this approximate three and one half year period, Terry Manufacturing was insolvent from a balance sheet standpoint as the amount of its liabilities substantially exceeded the fair value of its assets. (See, Alexander Affidavit at p. 6, ¶ 1).

6.    As of December 31, 1999, Terry Manufacturing had a negative net worth of $11,343,000. As of December 31, 2000, Terry Manufacturing had a negative net worth of $8,983,000. At no time during the year 2000, did the fair value of Terry Manufacturing's assets exceed the amount of its liabilities. (See, Alexander Affidavit at p. 9, ¶¶ 8, 9 and Exhibit 3 attached thereto).

7.    As of December 31, 2001, Terry Manufacturing had a negative net worth of $15,644,000. By December 31, 2002, its net worth declined to a negative $58,808,000. As of July 7, 2003, the date on which Terry Manufacturing filed for relief under Chapter 11 of the Bankruptcy Code, it had a negative net worth of $63,894,000.00. (See, Alexander Affidavit at p. 10-11, ¶¶ 11, 12, 13, and 14).

8.    Throughout the period of December 31, 1999 through July 7, 2003, Terry Manufacturing had unreasonably small capital. The company had a negative debt to equity ratio. Also, as a result of the extensive looting of the assets of Terry Manufacturing by the Terrys

individually and others, Terry Manufacturing had insufficient funds to support debt service and other demands on cash flow. To cover this deficiency, the Terrys caused Terry Manufacturing to obtain off balance sheet loans from private individuals and privately held companies including N.D. Horton, James Reynolds and their closely held company, American Real Estate Investment Company, Ltd. Terry Manufacturing also used trade debt as a *de facto* revolving credit by consistently failing to pay obligations as they became due. Likewise, that Terry Manufacturing engaged in an extensive check-kiting scheme (to which Roy Terry has now pled guilty) reflects that it had inadequate capital to sustain its operations. Indeed, it appears that throughout the period of December 31, 1999 through July 7,2003, Terry Manufacturing's capital was so deficient that Roy and Rudolph Terry constantly engaged in various schemes including check kiting, solicitation of investments in preferred stock on the basis of fraudulent financial statements and misrepresentations as to the use of the funds. (See, Alexander Affidavit at p. 11-12, ¶ ¶ 1 and 2).

9.     Throughout the period of December 31, 1999 through July 7, 2003, Terry Manufacturing incurred debt substantially in excess of its ability to pay those debts as they became due. Terry Manufacturing consistently paid invoices more than 100 days late. (See, Alexander Affidavit at p. 12, ¶ 1, and Exhibit 3A attached thereto).

10.     Numerous entities that were unsecured creditors of Terry Manufacturing as of July 1, 1999 remained unsecured creditors of the company as of July 7, 2003. Without limitation, these include Bonifay Manufacturing, Inc., Arkansas Economic Development District, Arkansas State Highway Retirement System, HLC Industries, American Express Travel Related Services, Carlcraft Knit Sales, Inc., CIT Group/Commercial Services, Inc., Milliken & Company, American & Elfird, Darwood Manufacturing Company, Atlantic Thread & Supply

NO.99563746.3

Company, and United Postal Service. (See, Alexander Affidavit at p. 13, ¶ 3 and Exhibit 4).

## LEGAL ANALYSIS

### A.    Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure and Rule 7056 of the Bankruptcy Rules, summary judgment is proper "if the pleadings...together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Professional Helicopter Pilots Assoc., Office and Professional Employees Int'l Union, Local 102 v. Lear Siegler Services, Inc.*, 326 F.Supp.2d 1305, 1307 (M.D.Ala. 2004). Furthermore, the Eleventh Circuit has recognized that the "primary purpose of granting summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute, if the evidence is merely colorable or is not significantly probative." *In re Financial Federated Title & Trust, Inc.*, 347 F.3d 880, 885 (11th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the record as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Similarly, if the factual context of a claim renders the non-moving party's position implausible, the non-moving party must come up with more persuasive evidence than would otherwise be necessary to defeat summary judgment. *Id.* at 587.

Terry Manufacturing paid for stock of another company purchased by its principals and their family members. It received absolutely no value for the payments, and all of the payments were made at a time when Terry Manufacturing was insolvent, could not pay its debts timely and

had unreasonably small capital.  The payments should be voided as fraudulent transfers within the meaning of Alabama law.

Under Alabama law, a conveyance of property by an insolvent debtor is a fraudulent conveyance if the transfer diminishes assets available to pay creditors. *In re Mason*, 48 B.R. 382, 384 (Bankr. M.D.Ala. 1984). Here, Terry Manufacturing paid the debts of Cotina Terry, Allie Robinson and Roy and Rudolph Terry to N. D. Horton and James Reynolds at a time it owed millions to other creditors.

Alabama Code 1975 § 8-9A-4(c)(1)&(2) provides that a transfer is "fraudulent as to a creditor, whether the creditor's claims arose before or after the transfer was made, if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and the debtor" and either had unreasonably small capital or knew or should have known it had incurred debts beyond its ability to pay timely.  Terry Manufacturing in fact owed at least $11 million dollars in antecedent debt to its creditors prior to Cotina Terry and Allie Robinson executing Promissory Notes to Messrs. Horton and Reynolds. (See, Alexander Affidavit at p. 8, ¶ 3.) Further, as of December 31, 2000 – the very month that Terry Manufacturing began making payments on Cotina Terry and Allie Robinson Notes, Terry Manufacturing had a negative net worth of $8,983,000. ( Alexander Affidavit at p. 10, ¶ 9.)  By December 31, 2001, at a time when Terry Manufacturing made monthly payments to Messrs. Horton and Reynolds on behalf of Cotina Terry and Allie Robinson,  Terry Manufacturing had a negative net worth of $15,644,000. (See, Alexander Affidavit at p. 10, ¶ 11.) By December 31, 2002, Terry Manufacturing had a negative net worth of $58,808,000. (See, Alexander Affidavit at p. 11, ¶ 12.) During that year, Terry Manufacturing began making payments on the Roy and Rudolph Terry Note, and continued making payments on Cotina Terry's and Allie Robinson's personal obligations. As of

July 7, 2003, Terry Manufacturing had a negative net worth of $63,894,000. (See, Alexander Affidavit at p. 11, ¶ 13). From December 2000 through May, 2003, a time period when Terry Manufacturing owed millions to creditors, that company depleted its assets by $596,438.60 by continually making payments on Cotina Terry's, Allie Robinson's, and Roy and Rudolph Terry's personal debts. (See, Exhibits 7, 9, 10, 11, 12, and 13).

Alabama Code 1975 § 8-9A-5(a) provides, in relevant part, "a transfer constitutes a fraudulent conveyance "as to a creditor whose claim arose before the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value … and the debtor was insolvent at that time…". As far back as December, 1999, Terry Manufacturing had a negative net worth as its liabilities exceeded its assets by at least $11 million. (See, Alexander Affidavit at p. 8, ¶ 3.) The payments to Messrs. Horton and Reynolds constitute fraudulent conveyances under both sections of the Alabama code.

**(A)     Terry Manufacturing did not receive reasonably equivalent value for the payments.**

What constitutes reasonably equivalent value is not defined in the Alabama statute. Nor is the term defined in the Bankruptcy Code. The courts have recognized that by using the terms "reasonably equivalent" neither statute requires that the exchange be dollar for dollar; rather, the debtor must receive "full and adequate consideration" for what it has surrendered to the transferee. *See, generally, In re Euro Swiss Int'l Corp. v. Trimble, Marshall & Goldman, P.C.*, 33 B.R. 872, 883 (Bankr. S.D.N.Y. 1983). The ultimate question is not the value of what the debtor received *per se*, but how that value compares to what the debtor surrendered. Thus, "reasonable equivalence requires a comparison of the value of what went out with the value of what was received." *In re Grabill Corp.*, 121 B.R. 983, 994 (Bankr. N.D. Ill. 1990). The

- 10 -

ultimate issue is whether the transfer has materially effected the debtor's ability to satisfy his creditors' claims. As the Fourth Circuit recognized in *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (4th Cir. 1992) reasonably equivalent value is not susceptible to a simple formulation:

> [T]he proper focus is on the net effect of the transfer on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because of the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

As a general rule an insolvent debtor receives less than reasonably equivalent value where it transfers its property in exchange for consideration which passes to a third party. *In re Royal Crown Bottlers of North Alabama, Inc.* 23 B.R. 28 (Bankr. N.D.Ala. 1982). Terry Manufacturing transferred its cash to Messrs. Horton and Reynolds, but the consideration for the loan payments – equity in Perky Cap stock – passed to Cotina Terry, Allie Robinson, and Roy and Rudolph Terry. Obligations incurred solely for the benefit of third parties, such as the Terrys are generally not supported by reasonably equivalent value. *See, generally In the Matter of Galbreath,* 286 B.R. 185, 207 (Bankr. S.D. Ga. 2002); *Rubin v. Mfgrs. Hanover Trust Co.*, 661 F. 2d 979, 991 (2d Cir. 1981) ("If the debt secured by the transaction is not the debtor's own, then his giving of security will deplete his estate without bringing in a corresponding value from which his creditors can benefit, and his creditors will suffer just as they would if the debtor had simply made a gift of his property or obligation."); *Grabill*, 121 B.R. at 996 ("As a general rule, a debtor receives inadequate consideration when he transfers property for consideration which passes to a third party.")

The Eleventh Circuit has recognized that a debtor's payments of the obligations of

another may be supported by reasonably equivalent value if the debtor receives an indirect benefit roughly equal to the payments. *In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990). In affirming judgment for the trustee, the Court found that the parent corporation received no benefit for paying the debts of its subsidiaries. There, at least in theory, the parent would have benefited to the extent the payments increased the value of its equity. Even that is not the case here. The Terry family members received the Perky Cap stock. The company received nothing.

**(B)     Terry Manufacturing was insolvent, had unreasonably small capital and consistently incurred debts beyond its ability to pay timely.**

Alabama defines insolvency as occurring when "the sum of the debtor's debts is greater than all of the debtor's assets in a fair valuation." Ala. Code 1975 §8-9(a-2). Alabama law further provides that the debtor is presumed insolvent when "he is generally not paying his debts as they become due…".

As detailed in the attached affidavit of Lester Alexander and attached exhibits, Terry Manufacturing was insolvent throughout the period of December 10, 1999 through July 7, 2003. During that same time period, it also had unreasonably small capital and consistently, and egregiously, failed to pay its debts timely.

The Trustee is not aware of any Alabama cases defining what constitutes unreasonably small capital. Courts interpreting similar language found in the Bankruptcy Code have observed that "[i]n determining unreasonably small capital courts generally examine cash flow, focusing on whether the debtor was left in a position in which it was unable after the transfer to generate sufficient profits to sustain operations." *In re WRT*, 282 B.R. 343, 411 (Bankr. W.D. La. 2001). *See, also Moody v. Security Pac. Business Credit, Inc.*, 971 F.2d 1056 (3d Cir. 1992). "The test is whether the unreasonably small capital condition and consequent cash flow problems were

reasonably foreseeable when viewed objectively at the time of the transaction at issue." *WRT,* 282 B.R. at 411.

The evidence that Terry Manufacturing had unreasonably small capital is compelling. Between November, 1999 and July, 2003, its net worth declined from negative $11,343,000 to a negative $63,894,000. During that same time frame, it consistently failed to deal with creditors on normal credit terms with accounts payable routinely more than 100 past days due. Indeed, that Terry Manufacturing had inadequate capital to support both the legitimate and illegitimate obligations is well illustrated by the fact that its principals were constantly engaged in multiple schemes of check kiting, money laundering, securities fraud and factory fraud – schemes to which Roy Terry has now pled guilty.

### CONCLUSION

Terry Manufacturing paid over $596,000 so its principals could acquire majority control of Perky Cap. Terry Manufacturing did not acquire any equity; it received absolutely no value for the payments. The Trustee is entitled to judgment against N.D. Horton, Jr. in the amount of $298,369.30 and against James Reynolds, III, in the amount of $298,369.30 together with interest and court costs from the date of filing of the Complaint.

**PHELPS DUNBAR LLP**

By:    /s/ Brent B. Barriere
        Brent B. Barriere, T.A.  (La. Bar No. 2818)
        David L. Patrón (La. Bar No. 22566)
        Katherine M. Determan (La. Bar No. 25381)
        Catherine E. Lasky (La. Bar No. 28652)
        One Canal Place
        365 Canal Street, Suite 2000
        New Orleans, LA 70130-6534
        Telephone:  504-566-1311

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, L.L.C.**

## CERTIFICATE OF SERVICE

I, Brent B. Barriere, hereby certify that on the 2nd day of November, 2005 and on behalf of J. Lester Alexander III, Trustee of Terry Manufacturing Co., Inc. and Terry Uniform Company, L.L.C., I served a copy of Memorandum in Support of Motion for Summary Judgment by First Class mail to James M. Reynolds, III and N.D. Horton, Jr. upon C. Ellis Brazeal III, Watson, Wells, Anderson & Berchall LLP, 1819 5th Avenue North, Suite 1100, Birmingham, AL 35203, counsel for Messrs. Horton and Reynolds.


   /s/   Brent B. Barriere

NO.99563746.3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO. 03-32063-WRS** |
| **COMPANY, INC.** | ) | |
| | ) | **CHAPTER 7** |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CASE NO. 03-32213-WRS** |
| **TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY, INC.** | ) | |
| **AND TERRY UNIFORM COMPANY,** | ) | **ADVERSARY PROCEEDING** |
| **LLC** | ) | |
| | ) | **NO. 05-03042** |
| **VERSUS** | ) | |
| | ) | |
| **N. D. HORTON, JR. AND JAMES** | ) | |
| **M. REYNOLDS, III** | ) | |

### AFFIDAVIT OF J. LESTER ALEXANDER, III, IN SUPPORT OF
### THE SUMMARY JUDGMENT MOTION OF J. LESTER ALEXANDER, III,
### TRUSTEE OF TERRY MANUFACTURING COMPANY, INC.
### AND TERRY UNIFORM COMPANY, LLC

**STATE OF ALABAMA**
**COUNTY OF JEFFERSON**

-1-

NO.99563844.3

BEFORE ME, Notary Public, personally came and appeared,

## J. LESTER ALEXANDER III

who, after being first duly sworn, did depose and declare as follows:

1.

Terry Manufacturing Company, Inc. ("Terry Manufacturing") filed a Voluntary Petition for Reorganization under Chapter 11 of the United States Bankruptcy Code on July 7, 2003. Shortly thereafter, I was appointed Chapter 11 Trustee (the "Trustee") of Terry Manufacturing by Order of the United States Bankruptcy Court for the Middle District of Alabama (the "Court").

2.

Following my appointment as Trustee, Terry Uniform Company, LLC also filed a Voluntary Petition for Reorganization under Chapter 11. In May, 2004, the Chapter 11 cases of both Terry Manufacturing and Terry Uniform were converted to liquidations under Chapter 7 of the United States Bankruptcy Code, and I was appointed Chapter 7 Trustee of both Terry Manufacturing and Terry Uniform.

3.

Commencing with my appointment as Chapter 7 Trustee, persons acting under my direction and I have invested thousands of man hours analyzing the following issues relevant to the captioned adversary proceeding: (1) whether Terry Manufacturing was insolvent during the

NO.99563844.3

years preceding its Chapter 11 filing including, in particular, all or any part of the period of November 1, 1999 through and until July 7, 2003; (2) whether during that same time period Terry Manufacturing had unreasonably small capital in relation to its business; (3) whether Terry Manufacturing incurred debts which its management knew or should have known were beyond its ability to repay timely; and (4) whether Terry Manufacturing received any meaningful economic value for the payments totaling $596,738.60 made by it to N.D. Horton and James Reynolds in consideration of common stock of Perky Cap Company sold by them to Cotina Terry, Allie Robinson, Rudolph Terry and Roy Terry.

4.

As more fully detailed below, I have determined that (1) Terry Manufacturing was insolvent throughout the period of November 1, 1999 through July 7, 2003 as the amount of its liabilities substantially exceeded the fair value of its assets; (2) Terry Manufacturing had unreasonably small capital throughout that period; (3) during the same time period Terry Manufacturing consistently incurred debts far beyond its ability to pay such debts timely; and (4) Terry Manufacturing received no value for the payments made to Mr. Reynolds and Mr. Horton in satisfaction of promissory notes given to them by Allie Robinson and Cotina, Roy and Rudolph Terry.  Those payments were solely in consideration of common stock of Perky Cap Company, Inc. sold to members of the Terry family in their individual capacities.  The net effect of the payments was to reduce by $596,438.60 Terry Manufacturing's assets available for payment to creditors.

NO.99563844.3

5.

Throughout the course of my engagement as both Chapter 11 and Chapter 7 Trustee, I have been assisted by professionals of AEA Group, LLC. I am the managing principal of AEA Group.

6.

I am a certified public accountant and certified fraud examiner with approximately twenty-six years of professional experience. I hold an accounting degree from the University of Alabama. I have extensive auditing and valuation experience. In connection with my audit and valuation work, I have developed substantial experience with fair value determinations, assessments of reasonably equivalent value and analyzing business transactions to determine whether specific transactions fall within the ordinary course of an entity's usual business. I have attached hereto a current copy of my curriculum vitae as Exhibit 1.

7.

As Trustee, I have instituted litigation against James Reynolds, III and N.D. Horton, Jr. seeking to recover  payments totaling $596,738.60 made by Terry Manufacturing to N.D. Horton, Jr. and James Reynolds, III during the period of December 10, 2000 through May, 2003. Reynolds and Horton were payees on three promissory notes executed by, respectively, Cotina Terry, Allie Robinson and Roy and Rudolph Terry jointly. The notes called for payments to be tendered to  Reynolds and Horton jointly, but in practice, and at the direction of Messrs. Horton and Reynolds, identical checks were issued by Terry Manufacturing to each of them monthly.

-4-

Accordingly, Terry Manufacturing made payments to N.D. Horton of $298,369.32 and to James Reynolds of $298,369.32.

### I. Reconstruction of Financial Records of Terry Manufacturing.

1.

Following my appointment as Chapter 11 Trustee, I determined the financial records of Terry Manufacturing were in complete disarray. Basic accounting records such as a general ledger either did not exist, had been destroyed or had been removed from the offices of Terry Manufacturing prior to my taking control of the offices. By way of illustration only, I learned that Terry Manufacturing maintained certain records on computers. Those computers were removed from Terry Manufacturing's office and have never been located. My attempts to interview officers and directors of Terry Manufacturing concerning records of the company were met with assertions of the Fifth Amendment privilege. Consistent with the claims of privilege, officers and directors and employees of Terry Manufacturing including, in particular, Roy Terry and Sidney Johnson refused to testify in examinations conducted pursuant to Bankruptcy Rule 2004. Prior to my appointment as Trustee, Roy Terry had been the president of Terry Manufacturing, majority shareholder and a member of the company's board of directors. Sidney Johnson acted as comptroller and was apparently the *de facto* Chief Financial Officer.

2.

I also determined that certain financial records of Terry Manufacturing were either erroneous, highly misleading or outright fraudulent. Terry Manufacturing prepared two sets of

NO.99563844.3

tax returns; one was filed with the United States Government and reflected that the company had consistently experienced losses. The other, which reflected profitable operations, was apparently provided to certain creditors and potential investors. Likewise, I determined that the financial statements prepared by Sidney Johnson and Roy Terry and which were represented to be audited by Richard Rose were grossly misstated. The financial statements supposedly audited by Mr. Rose significantly overstate the value of Terry Manufacturing's assets and significantly understate the amount of its liabilities. These statements also consistently misstate the results of operation.

## II. Terry Manufacturing Was Insolvent.

1.

The financial statements purportedly attested to by Mr. Rose as well as financial statements internally generated by persons at Terry Manufacturing represent that the company had a significant net worth throughout the period of January 1, 1998 through December 31, 2002. In fact, the company was insolvent throughout that period with the amount of its liabilities exceeding the fair value of its assets. The deficiency between the amount of liabilities and the fair value of assets also significantly increased throughout the period of December 31, 1998 through 2002. The company did not issue financial statements for the period of December 31, 2002 through July 7, 2003. Nonetheless, it is apparent that the company was insolvent throughout this period. Indeed, its net worth further declined after December 31, 2002.

NO.99563844.3

2.

Professionals employed by AEA Group and myself invested thousands of man hours in an attempt to reconstruct the financial records of Terry Manufacturing. The records of Terry Manufacturing reviewed by AEA Group personnel amount to over 130 bankers boxes which are now stored in my office in Birmingham, Alabama. In order to address the central issues in this litigation, I have particularly focused on the following:

(a)    The federal tax returns actually filed by Terry Manufacturing with the Internal Revenue Service for the years 1998, 1999, 2000, 2001, and 2002;

(b)    All documentation pertaining to the transactions involving Cotina Terry, Allie Robinson, Roy Terry, Rudolph Terry, James Reynolds, III and N.D. Horton, Jr. by which the Terry family members acquired stock of Perky Cap Company from Messrs. Reynolds and Horton, and granted promissory notes in payment of that stock;

(c)    Checking account records for over twenty bank accounts maintained by Terry Manufacturing (and its affiliates) including, in particular, checking accounts at First Bank of Roanoke, Alabama and Bank of America;

(d)    Financial and business records of Terry Manufacturing including underlying documents recovered from the various locations, documents obtained through third party discovery, information gathered through customer and vendor interviews and other information pertaining to sales to customers and indebtedness owed to lenders, trade creditors, and investors;

(e)    Appraisals of assets of Terry Manufacturing, interviews with persons who purportedly performed those appraisals and my experience at attempting to market the appraised property following my engagement as Trustee;

(f)    The deposition transcript of N.D. Horton;

(g)    The transcripts of depositions conducted in other cases I have instituted including deposition of representatives of the Arkansas State Highway Employees Retirement System, Southern Mills, HLC Industries and Bonifay Manufacturing;

NO.99563844.3

3.

The Richard Rose audited financial statements and internally generated statements show that Terry Manufacturing had a net worth as of December 31, 1999 of $ 17 million . In fact, the company had a negative net worth with the amount of its liabilities exceeding the fair value of its assets by at least $11 million. In reaching this conclusion, I performed the following analysis:

(i) as opposed to the inflated amount of cash set forth in the financial statement, I employed the amount of cash as of December 31, 1999 which appeared on Form 1120, Schedule L of Terry Manufacturing's tax returns actually filed with the Internal Revenue Service;

(ii) for accounts receivable of Terry Manufacturing, I have used the figure of $2,356,000 which is what was reported to the Internal Revenue Service on the tax return actually filed by Terry Manufacturing

(iii) in order to determine the fair market value of Terry Manufacturing's inventory as of December 31, 1999, the cost of all goods were marked up to estimated value as soon as the goods were finished;

(iv) inventory mark up was determined by employing gross receipts and disbursements (excluding disbursements to related wages, administration, warehousing, selling and overhead) this resulted in a calculation of inventory of $6,677,000;

4.

Having exhaustively marketed Terry Manufacturing's land and buildings, it is obvious to me that the millions of dollars of value attributed to those assets on the several Terry Manufacturing financial statements was grossly inflated. In lieu of that grossly inflated figure for lands and buildings, I have used in my analysis the sum of $300,000 which represents the actual price for which the property was sold.

-8-

5.

With respect to the fixed assets, consisting primarily of the furniture, fixtures and equipment at Terry Manufacturing's plant in Roanoke, Alabama, I employed the figure of $354,000 which represented the actual sales price for the property. Prior to the sale of the Roanoke plant, the equipment was exhaustively marketed, and I have personally interviewed potential buyers. This figure is consistent with the estimate of James F. Henderson, a specialist in the appraisal of equipment of this type. See, deposition for James F. Henderson at 72:2-73:5, attached hereto as Exhibit 2.

6.

The assets of Terry Manufacturing as of December 31, 1999 also included the building identified as the "431 Building" and certain land which was ultimately sold by the company to Rudolph Terry. The value of this property in my analysis is the amount for which it was purportedly sold.

7.

Based upon the reconstruction of assets described above, the fair value of Terry Manufacturing's assets as of December 31, 1999 amounted to $10,950,000.

8.

The financial statement dated December 31, 1999 significantly overstated the value of Terry Manufacturing's assets. It likewise significantly understated the amount of the company's liabilities. In order to reconstruct the true balance sheet, I employed the accounts payable and notes payable amounts disclosed on the federal tax return actually filed by Terry Manufacturing.

NO.99563844.3

I also included a subordinated promissory note granted by Terry Manufacturing to the Arkansas State Highway Employees Retirement System. These liabilities together with indebtedness owed by Terry Manufacturing to its secured lenders meant that as of December 31, 1999 Terry Manufacturing's liabilities were not less than $22,293,000 resulting in the company having a negative net worth of $11,343,000. A reconstruction of the balance sheet as of December 31, 1999 and for the years thereafter is attached as Exhibit 3.

9.

I calculated Terry Manufacturing's net worth as of December 31, 2000 employing the same sources of information and methodology as that used for the calculation of its net worth as of December 31, 1998. That analysis revealed that Terry Manufacturing's net worth as of December 31, 2000 was a negative $8,983,000.

10.

During the year 2000, there was an improvement in Terry Manufacturing's net worth resulting primarily from a substantial infusion of cash from investors in Terry Manufacturing preferred stock and Cintas Corporation. Nonetheless, at all times throughout the year, Terry Manufacturing had a negative net worth.

11.

I employed the same methodology and source of information to calculate Terry Manufacturing's net worth as of December 31, 2001. I determined that its net worth as of December 31, 2001 was a negative $15,644,000.

-10-

12.

Terry Manufacturing did not file a tax return for the year end December 31, 2002. Accordingly, I was unable to employ the sorts of schedules used for prior years. In order to calculate accounts payable, I extracted data from the claims registry of the Court which reflected amounts owed to vendors as of December 31, 2002. I also contacted vendors directly to confirm December 31, 2002 balances, and I reviewed the extensive data on accounts payable produced in the more than 25 vendor preference actions filed in this case. With respect to both notes payable and subordinated notes payable, I obtained December 31, 2002 balances directly from the lenders. Based upon that information, I determined that as of December 31, 2002, Terry Manufacturing had a negative net worth of $58,808,000.00.

13.

Terry Manufacturing experienced significant operating losses during the period of December 31, 2002 through July 7, 2003, and the fair value of its assets would not have exceeded the amount of its liabilities at any time during that approximate six month period. Nonetheless, to ascertain the amount of negative net worth as of July 7, 2003, I determined that the total value of Terry Manufacturing's assets as of that date amounted to $2,301,000.00. Liabilities totaled $66,195,000 including accounts payable of $41,945,000, notes payable of $19,791,000; subordinated notes payable of $3,629,000 and a capital lease obligation of $830,000.00. In reaching these figures I employed the same methodology as used for the December 31, 2002 analysis and concluded that as of July 7, 2003, Terry Manufacturing had a negative net worth of $63,894,000.00.

-11-

14.

Based upon the analysis described above, I have determined that Terry Manufacturing was insolvent throughout the period of November 10, 2000 through and until July 7, 2003 because the amount of its liabilities exceeded the fair value of its assets.

### III.    Terry Manufacturing Had Unreasonably Small Capital Between November 10,  2000 and July 7, 2003.

1.

Throughout the period of November 10, 2000 through July 7, 2003, Terry Manufacturing had unreasonably small capital to sustain its business.  Professionals of AEA Group including myself calculated Terry Manufacturing's debt to equity ratio throughout this period and determined that at all times the debt to equity ratio was negative because Terry Manufacturing's debts substantially exceeded the value of its assets as reconstructed.

2.

As a result of looting of the assets of Terry Manufacturing by the Terry family and others, Terry Manufacturing had insufficient cash flow to support debt service and other demands on cash.  As a result, the Terrys caused Terry Manufacturing to obtain off-balance sheet loans from private individuals and privately held companies including Messrs. Horton and Reynolds and their closely held company, American Real Estate Investment Company Ltd. Terry Manufacturing also used trade debt as *de facto* revolving credit by consistently failing to pay its obligations as they became due.  Likewise, that Terry Manufacturing engaged in an extensive check-kiting scheme (to which Roy Terry has pled guilty in a federal prosecution) reflects that it had inadequate capital to sustain its operations.  Indeed, it appears that throughout

-12-

this period Terry Manufacturing's capital was so deficient that Roy and Rudolph Terry were constantly engaged in various schemes including check kiting, solicitation of investments in preferred stock on the basis of fraudulent financial statements, and misrepresentations as to the use of funds. These schemes were necessitated by the fact that cash flow from operations were insufficient to pay both the demands of the business and the massive expenditure of funds on expenses that may have benefited the Terrys personally and others conspiring with them, but provided no benefit to the Company.

### IV. Terry Manufacturing Could Not Pay Its Debts Timely.

1.

Throughout the period in question, management of Terry Manufacturing caused the Company to incur debts substantially in excess of its abilities to pay those debts as they became due.

2.

I have reviewed the payment terms for Terry Manufacturing's principal customers, and the average delay between Terry Manufacturing's receipt of an invoice and payment. Terry Manufacturing consistently failed to remotely comply with its customers' requirements with respect to payment. For example, Southern Mills was one of Terry Manufacturing's largest vendors. Terms for its statements were sixty (60) days net. During the period in question, Terry Manufacturing actually paid statements an average of 233 days from issuance. HLC Industries, another major supplier, provided ninety (90) day terms. Terry Manufacturing paid HLC in an

average of 203 days.  Bonifay Manufacturing required that its invoices be paid within thirty (30) days.  Terry Manufacturing actually did so in an average of 160 days. (See attached  Exhibit 3A.)

3.

Numerous entities that were unsecured creditors of Terry Manufacturing as of July 1, 1999, remained unsecured creditors as of July 7, 2003.   These include without limitation, Bonifay Manufacturing, Inc., Arkansas Economic Development District, Arkansas State Highway Retirement System, HLC Industries, American Express Travel Related Services, Carlcraft Knit Sales, Inc., CIT Group/Commercial Services, Inc., Milliken & Company, American & Elfird, Darwood Manufacturing Company, Atlantic Thread & Supply Co., and United Parcel Service.  See, documents pertaining to the Terry Manufacturing payment history for these creditors including deposition excerpts attached as Exhibit 4.

**V.  The Cotina Terry and Allie Robinson Notes.**

1.

At all relevant times, N.D. Horton and James Reynolds have owned common stock of Perky Cap, a manufacturer of headware headquartered in Eatonton, Georgia.  Beginning in 1993, Roy and Rudolph Terry acting in their individual capacities purchased Perky Cap stock from Horton and Reynolds.  Documents pertaining to this initial acquisition are attached hereto, *in globo*, as Exhibit 5.

NO.99563844.3

2.

On November 10, 2000, Cotina Terry executed a promissory note in the principal amount of $200,000 and bearing interest at the rate of 9.5% per annum and made payable to Messrs. Horton and Reynolds jointly. The note was given in consideration of 9,000 shares of Perky Cap stock sold to Cotina Terry by Messrs. Horton and Reynolds. Terry Manufacturing was not a signatory to the note. A copy of the promissory note together with the other closing documents executed in connection with this transaction are attached, *in globo*, as Exhibit 6. The common stock was registered in the name of Cotina Terry. Terry Manufacturing had no interest whatsoever in this stock. A copy of the certificate issued to Ms. Terry is attached as Exhibit 7.

3.

Also on November 10, 2000, Allie Robinson, wife of Rudolph Terry, executed a promissory note in a form identical to that executed by Cotina Terry. The note is in the principal amount of $200,000, provides for payment of interest at the rate of 9.5% per annum and is made payable to N.D. Horton and James Reynolds. Like the Cotina Terry note, the Allie Robinson was given for and in consideration of 9,000 shares of Perky Cap stock sold to Ms. Robinson by Messrs. Horton and Reynolds. These shares represent 10% of the outstanding common stock of Perky Cap. Terry Manufacturing was not a signatory to the note. A copy of the note executed by Ms. Robinson together with other documents executed in connection with the closing of the transaction are attached, *in globo*, as Exhibit 8. The common stock was registered in the name of

-15-

Allie Reynolds.  Terry Manufacturing had no interest whatsoever in the stock.  A copy of the certificate issued to Ms. Reynolds is attached as Exhibit 9.

4.

The notes executed by Cotina Terry and Allie Robinson provide for joint payments to N.D. Horton and James Reynolds.  In practice, and pursuant to invoices issued to them, Terry Manufacturing made monthly payments in identical amounts to each of Reynolds and Horton. Copies of the invoices are attached, *in globo*, as Exhibit 10.

5.

Terry Manufacturing made payments to Mr. Horton in connection with the Allie Robinson and Cotina Terry notes totaling $234,375.81.  It likewise made payments to Mr. Reynolds in connection with the Allie Robinson and Cotina Terry notes totaling $234,375.81.  A schedule detailing payments made to James Reynolds, III, together with canceled checks of Terry Manufacturing are attached, *in globo*, as Exhibit 11.  A schedule detailing payments to N.D. Horton together with canceled checks of Terry Manufacturing  is attached, *in globo*, as Exhibit 12.

6.

All of the payments on the Cotina Terry note and Allie Robinson note were made by Terry Manufacturing despite the fact that it had no interest whatsoever in the stock acquired by them from James Reynolds and N.D. Horton.

-16-

## VI. The Roy and Rudolph Terry Note.

### 1.

On May 20, 2002, Roy and Rudolph Terry jointly executed a promissory note in favor of Messrs. Horton and Reynolds in the principal amount of $624,000 and bearing interest at the rate of 9.0% per annum.   In consideration thereof, Messrs. Horton and Reynolds transferred to Roy and Rudolph Terry jointly, 27,900 shares of Perky Cap stock.  These shares represent 31% of the outstanding common stock of that company which, when combined with previously purchased shares gave the Terry family majority control of Perky Cap.  The shares were registered in the name of Roy and Rudolph Terry individually, and Terry Manufacturing had no interest in the shares whatsoever.   A copy of the notes executed by Roy and Rudolph Terry and other documents executed in connection with the transaction are attached, *in globo*, as Exhibit 13.

### 2.

In practice, and pursuant to invoices issued by Messrs. Reynolds and Horton, Terry Manufacturing made equal monthly payments to each of Messrs. Reynolds and Horton.

### 3.

Despite the fact that it was not a signatory to the promissory note, and had no interest whatsoever in the stock acquired by Roy and Rudolph Terry, Terry Manufacturing made payments to Mr. Reynolds in the amount of $63,993.49 and in the same amount to Mr. Horton. A schedule showing the payments to Messrs. Reynolds and Horton  and the invoices and the checks issued by Terry Manufacturing to each are attached, *in globo*, as Exhibit 14.

NO.99563844.3

4.

The foregoing facts are known to me personally, and I would so testify were I called upon to do so in a court of law.

_Shester Alexander_
J. LESTER ALEXANDER, III

Sworn to and subscribed before me,
this _28th_ day of October, 2005.

_Priscilla W. Kelly_
NOTARY PUBLIC

My Commission expires _09/22/09_ .

NO.99563844.3



INCORPORATED UNDER THE LAWS OF THE STATE OF GEORGIA

## Perky Cap Company, Inc.

The Corporation is authorized to issue 100,000 Shares — Par Value $1 Each.

This Certifies that *Cortina Terry* is the owner of *Nine thousand* fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated *Nov. 10, 2000*

EXHIBIT

AmR.Est 00299

**RECEIPT OF STOCK SHARE CERTIFICATE**
**PERKY CAP COMPANY, INC.**

The undersigned does acknowledge receipt of Certificate Number $3\,1$ representing

$9000$ shares of the common stock of Perky Cap Company, Inc.

This 10th day of November, 2000.

_Cotina Terry_
Cotina Terry

**AmR.Est 00300**

c:\data\wpdocs\5001\194\share-cert-1



# PURCHASE MONEY
# PROMISSORY NOTE

**$200,000.00**　　　　**Greensboro, Georgia**　　　　November 10, 2000

**FOR VALUE RECEIVED,** the undersigned promise to pay to the order of **N. D. HORTON, JR. AND JAMES M. REYNOLDS, III, equally** ("Holder") the principal sum of Two Hundred Thousand and No/100 Dollars ($200,000.00) with interest from date at the rate of Nine and One-Half percent (9.5%) per annum, interest only payable monthly, beginning December 10, 2000, and monthly thereafter through November 10, 2001, then payable in 18 equal monthly installments of principal, plus accrued interest in the amount of $11,965.42 beginning December 10, 2001, and monthly thereafter with a final installment of principal and all accrued but unpaid interest due on May 10, 2003, (the "Maturity Date").

Principal and interest are payable at 2561 Lake Oconee Parkway, Greensboro, Georgia 30642 or at such other place as the Holder hereof may designate in writing.

Should payment not be paid when due, or should the Maker, or Makers, hereof fail to comply with any of the terms or requirements of a Pledge Agreement of even date herewith, the entire unpaid principal sum evidenced by this note, with all accrued interest, shall at the option of the Holder, and without notice to the undersigned, become due and may be collected forthwith, time being of the essence of this contract. It is further agreed that failure of the Holder to exercise this right of accelerating the maturity of the debt, or indulgence granted form time to time, shall in no event be considered as a waiver of such right of acceleration or estop the Holder from exercising such right.

In case this note is collected by law, as through an attorney at law, all costs of collection, including fifteen percent (15%) of the principal and interest as attorney's fees, shall be paid by the Maker hereof.

And each of us, whether Maker, endorser, guarantor, or surety, hereby severally waives and renounces, for himself and family, any and all exemption rights either of us, or the family of either of us, may have under or by virtue of the Constitution or laws of Georgia, or any other State, or the United States, as against this debt or any renewal thereof; and each further waives demand, protest and notice of demand, protest and non-payment.

In case of default in the payment of the note when due, and in case the Holder of this note should elect on account of such default, to declare the unpaid balance of the principal sum due and payable, said principal sum, or so much thereof as may remain unpaid at the time of such



EXHIBIT

"6"

AmR.Est 00292

default, shall bear interest at the rate of fifteen percent (15%) per annum from the date of such default.

Purchase Money Security Interest: To secure payment of this note and any other indebtedness of the Maker to Holder, whether now or existing or arising hereinafter, the Maker hereby delivers, pledges, assigns, conveys and transfers to the Holder the following described property (hereinafter referred to as collateral):

The undersigned's right, title and interest in and to:

1.   All of the undersigned's common stock in Perky Cap Company, Inc., including but not limited to Certificate Number 31 ( 9,000 shares).

This contract is to be construed in all respects and enforced according to the laws of the State of Georgia.

Prepayment Privilege:    Maker may prepay in whole or in part at any time without penalty.

If all or any part of the property described in the aforementioned Security Agreement or any interest in it is sold or transferred without Holder's prior written consent, Holder may at its option require immediate payment of all sums owing hereunder.

Signed, sealed and delivered by the undersigned the date first above written.

_Cotina Terry_ (Seal)
**Cotina Terry**

c/o Post Office Box 648
924 South Street
Roanoke, Alabama 36274
(205) 863-8835 (facsimile)

AmR.Est 00293

E:\DATA\WPDOCS\5001\194\note-cotinaterry.wpd

## BILL OF SALE OF COMMON STOCK

For and in consideration of the sum of Two Hundred Thousand Dollars ($200,000.00) evidenced by Promissory Note from Grantee to Grantors and applicable security documents, the undersigned N. D. Horton, Jr. and James M Reynolds, III, Grantors do hereby transfer unto Cotina Terry, Grantee, Nine Thousand Shares (10%) of the outstanding Common Stock of Perky Cap Company, Inc. and by these presents do bargain, sell, convey and set over unto Grantee the aforesaid Stock.

The undersigned warrant that said Stock is unencumbered and they shall take such action as is necessary to transfer the same on the books of the Company.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this the 10th day of November, 2000.

_____ (SEAL)
N. D. Horton, Jr.

_____ (SEAL)
James M. Reynolds, III

c:\data\wpdocs\5001\194\bill-sale

**AmR.Est 00297**

## PLEDGE AGREEMENT/IRREVOCABLE LIMITED POWER
## OF ATTORNEY AND ASSIGNMENT

**FOR VALUE RECEIVED** and to secure a loan from N. D. Horton, Jr. and James M. Reynolds,

III, equally to the undersigned dated November 10, 2000 in the original amount of $200,000.00

(Note), the undersigned does (do) hereby sell, assign and transfer to N. D. Horton, Jr. and James M.

Reynolds, III, Ten percent ownership of Perky Cap Company, Inc., (Company) represented by

Certificate No. _thirty one_ ( 31 ), inclusive, standing in the name of the undersigned on the books

of said Company.

Upon default of the undersigned under the Note or Pledge Agreement or Loan Documents, the

undersigned does hereby irrevocably constitute and appoint N. D. Horton, Jr. and/or James M.

Reynolds, III, attorney, or such person as they may appoint in writing, to transfer the said Common

Stock on the books of said Company, with full power of substitution in the premises.

Dated: _November 9, 2000_          _Cotina Terry_          (SEAL)
**Cotina Terry**

Executed and acknowledged before me
this _9TH_ day of November, 2000:

_____
Notary Public,          My Commission Expires July 20, 2003.
My Commission Expires:
(AFFIX NOTARY SEAL)

AmR.Est 00298

E:\DATA\WPDOCS\5001\194\irrev-hd-cotina.wpd
November 8, 2000

## PROXY

For value received and in order to secure a Purchase Money Promissory Note, the undersigned, **Cotina Terry** (Owner) do hereby grant unto **N. D. Horton, Jr. and James M. Reynolds, III,** Proxy to vote at any and all shareholder meetings which may be had in the company known as Perky Cap Company, Inc., proxy for nine thousand shares (10%) of the outstanding Common Stock of Perky Cap Company, Inc.

Provided however, that for so long as the following obligations are current and not in default this Proxy shall be suspended, but upon default in any of the following named obligations this Proxy shall be valid and active and shall not be revoked for so long as such default may exist:

1.  Purchase Money Note from Cotina Terry to N. D. Horton, Jr., James M. Reynolds, III dated November 10, 2000 secured by Nine Thousand Shares of the Common Stock of Perky Cap Company, Inc.

2.  5.5 Million Dollar Line of Credit and affiliated documents evidenced by Promissory Note from Terry Manufacturing Company, Inc., Roy Terry and Rudolph Terry to American Real Estate Investment Company, Ltd., L.P. dated November 10, 2000.

3.  Promissory Note from Roy Terry and Rudolph Terry to American Real Estate Investment Company, Ltd., L.P. dated November 24, 1999 in the original principal amount of One Million Dollars.

4.  Stock Options granted under Agreements dated November 10, 2000 to American Real Estate Investment Company, Ltd., L.P. and equity participation percentage in Terry Promotional Products granted in Agreements dated November 10, 2000 between Terry Manufacturing Company, Inc. and American Real Estate Investment Company, Ltd., L.P.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this 10th day of November, 2000.

_____ (SEAL)
**Cotina Terry**

**AmR.Est 00301**

c:\data\wpdocs\5001\194\bill-sale

# PLEDGE AGREEMENT

This Agreement made this _10th_ day of November, 2000, by and between **Cotina Terry**, hereinafter Pledgor, and **N. D. Horton, Jr. and James M. Reynolds, III**, 2561 Lake Oconee Parkway, Greensboro, Georgia 30642, hereinafter Pledgee;

## WITNESSETH:

**Whereas,** Pledgee has loaned to Pledgor the sum of Two Hundred Thousand and No/100 Dollars ($200,000.00) for the purchase of Common Stock of Perky Cap Company as of November 10, 2000 (Loan Documents); and

**Whereas,** in order to induce the Pledgee to make such loan, Pledgor has agreed to pledge the Common Stock hereinafter mentioned to the Pledgee as security for the repayment of said loan.

**Now Therefore,** it is agreed between the parties as follows:

1.

In consideration of the loan made by Pledgee to the Pledgor as hereinbefore mentioned, the Pledgor hereby delivers to the Pledgee 10% percent ownership in Perky Cap Company, Inc., a Georgia Corporation represented by Certificate No. _31_ (_9,000_ shares), together with that certain Pledge Agreement/Irrevocable Limited Power of Attorney and Assignment, and do hereby assign such Common Stock and Certificate to the Pledgee and do hereby appoint Pledgee as their true and lawful attorney for them and in their name, place and stead to cause said Common Stock to be transferred on the books of the said Perky Cap Company to the name of the Pledgee.

2.

The Pledgee shall hold said Common Stock as security for the repayment of the aforesaid loan and loan incentives as described in the Loan Documents, together with interest thereon, shall not at any time dispose of such Common Stock or encumber the same, except as herein otherwise provided.

3.

Pledgor shall repay the indebtedness and loan incentives to the Pledgee with interest thereon according to the terms contained in said Loan Documents.

**AmR.Est 00451**

4.

At all times while Pledgee is the holder of said Common Stock, the Pledgor shall receive any dividends distributed thereon. Provided such dividends shall be approved by Pledgee.

5.

While the Pledgee is the holder of said Common Stock, the Pledgor shall have the right to vote the same at meetings of Perky Cap Company so long as they are not in default in the performance of any of the terms of this Agreement, the payment of the principal and interest of the said loan or under the terms of that certain Loan Agreement by and among the parties hereto (Loan Documents).

6.

Upon the repayment of the entire amount of the loan and interest as herein provided and satisfaction of the Stock Option - Put/Call and equity return guarantee, the Pledgee shall transfer to the Pledgor the Stock Certificate pledged hereunder.

7.

In the event that the Pledgor shall fail to perform any of the terms of this Agreement or to make payment of the principal and interest of said loan as required pursuant to the terms of said loan as evidenced in the Note, fails to comply with the terms of the Loan Agreement or default on any of the Loan Documents, Pledgee may, upon thirty (30) days notice in writing to the Pledgor by Registered Mail, sell any or all of the Common Stock herein mentioned in such manner and for such price as the Pledgee may determine, and out of the proceeds of such sale retain an amount sufficient to pay the principal and interest then due on said loan together with expenses of sale together with any balance due on the Stock Option and guaranteed value of equity participation, and pay any balance of such proceeds to the Pledgor. At any bona fide public sale, the Pledgee may purchase all or part of such Common Stock at such price as he deems proper. In the event that the proceeds of any sale are not sufficient to pay the said loan and interest together with expenses of such sale or any obligations of the pledge or under the Loan Agreement, then the Pledgor shall pay to the Pledgee any deficiency.

8.

All notices hereunder shall be addressed to the Pledgee and sent by Registered Mail, Return Receipt Requested at the following address or such other address as Pledgee shall give to Pledgor in writing making specific reference to this Pledge Agreement, to-wit:

N. D. Horton, Jr. and
James M. Reynolds, III
2561 Lake Oconee Parkway
Greensboro, GA 30642.

**AmR.Est 00452**

E:\DATA\WP\DOCS\50011\194\pledge-cotinacrry.wpd

Cotina Terry
c/o P. O. Box 648
924 South Street
Roanoke, AL  36274

9.

This Agreement shall be governed by the laws of the State of Georgia.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals the day and year first above written.

Executed and acknowledged before me
this ___ day of November, 2000:

_____ (SEAL)
**Cotina Terry**

_____
Notary Public,     My Commission Expires July 20, 2003.
My Commission Expires:
(AFFIX NOTARY SEAL)

Executed and acknowledged before me
this 10 day of November, 2000:

_____ (SEAL)
**N. D. Horton, Jr.**

_____
Notary Public,
My Commission Expires:
(AFFIX NOTARY SEAL)

_____ (SEAL)
**James M. Reynolds, III**

RICHARD SCHMIDT
NOTARY
★
PUBLIC
EXP. JULY 16, 2004
GREENE COUNTY, GEORGIA

**AmR.Est 00453**

E:\DATA\WPDOCS\50011194\pledge-cotinaterry.wpd

## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**GREENE COUNTY, GEORGIA**

FOR AND IN CONSIDERATION OF the sum of Ten and 00/100 ($10.00) Dollars and other good and valuable considerations, paid or delivered to **Terry Manufacturing Company, Inc.** (hereinafter referred to as "Guarantor") the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **N. D. Horton, Jr. and James M. Reynolds, III** (hereinafter "Lender") to extend credit or obligation to **Cotina Terry** (hereinafter referred to as "Borrower"), which extension of credit or obligation will be to the direct interest and advantage of Guarantor, Guarantor does hereby unconditionally guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated November 10, 2000 made by Borrower to the order of Lender in the principal face amount of Two Hundred Thousand and 00\100 Dollars ($200,000.00) (hereinafter referred to as the "Note"), together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under and other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (said other documents and instruments being hereinafter referred to collectively as the "Loan Documents"), and © all present and future obligations and liabilities of Borrower to Lender under any instrument or document given to evidence, secure, support or relate to any indebtedness of Borrower to Lender whether now existing or hereafter arising, contracted or incurred, and whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise, and all extensions or renewals in whole or in part of such liabilities. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, or if any other obligation of Borrower to be performed under the Loan Documents is not performed in accordance with their terms, Guarantor will immediately make such payments or perform such obligations. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

The obligations incurred under this guaranty include all obligations of Borrower to Lender now existing or hereafter coming into existence and of renewals or extensions in whole or in part of any of the obligations before described, together with all damages, losses, costs, interests, charges, expenses, and liabilities of every kind, nature, and description suffered or incurred by Lender, arising in any manner out of or in any way connected with, or growing out of, said indebtedness or liabilities of Borrower to Lender.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time,

1

c:\data\wpdocs\5001\194\gty-cotina-1

without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm, or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any persons or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower of any other undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by any document or instrument securing any of the obligations under the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Borrower or any other person or entity; © any defense based on the failure of Lander to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement, or both; (e)

e:\data\wpdocs\5001\194\gty-cotina-1

AmR.Est 00306

any defense based upon failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (I) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; (l) the invalidity or unenforceability of any of the Loan Documents; (m) any exculpation of liability contained in the Note or in the Loan Documents; (n) any transfer by Borrower of all or any part of the security encumbered by the Loan Documents; (o) the failure of Lender to perfect any security or to extend or renew the perfection of any security; or (p) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successors, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, power and remedies thereunder or hereunder or under any of the Loan Documents in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees, or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to participate in any security for the Note.

Guarantor hereby waives to the fullest extent possible as against Borrower and all other

3

e:\data\wpdocs\5001\194\gty-cotina-1

AmR.Est 00307

persons and entities that may be contingently, secondarily, or indirectly obligated to Lender for any sums due under the Loan Documents (hereinafter the "contingent Obligors"), and as against all assets of Borrower and the Contingent Obligors, any and all rights, whether at law, in equity, by agreement or otherwise, to subrogation, indemnity, reimbursement, contribution, payment or any other claim, cause of action, right or remedy that would otherwise arise out of any payment by Guarantor to Lender of any sums due under the Loan Documents, notwithstanding the manner or nature of such payments, including but not limited to (a) direct payment by Guarantor to Lender, (b) set-off by Lender against any liability or deposit owed by Lender to Guarantor, © recovery by Lender against Guarantor, or any property of Guarantor, as the result of any judgment, judgment lien, or legal process, (d) the application of the proceeds of any disposition of any or all collateral held by Lender to the repayment of any sums due under the Loan Documents, or (e) the conveyance of any or all collateral held by Lender to Lender in satisfaction of any sums due under the Loan Documents.

The waivers set forth in the preceding paragraph are intended by both Guarantor and Lender to be for the benefit of the Borrower, and such waiver shall be enforceable by Borrower or any of the Contingent Obligors, or any of their successors or assigns, as an absolute defense to any action by Guarantor against Borrower or any of the Contingent Obligors, or the assets of Borrower or any of the Contingent Obligors, which action arises out of any payment by Guarantor to Lender of any sum due under the Loan Documents.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as lender in its sole judgment shall see fit to the indebtednesses, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor agrees to furnish Lender within ninety (90) days following the end of Guarantor's fiscal year a statement of income and retained earnings and a balance sheet of Borrower as of the end of such fiscal year, including a listing of all contingent liabilities. Such statement shall be in such form and content as Lender shall reasonably require and shall be prepared in accordance with generally accepted accounting principles. Upon request by Lender, Guarantor shall provide such statement audited by a certified public accountant acceptable to Lender.

Guarantor acknowledges that this Guaranty, the Note and the Loan Documents were negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the

4

n:\data\wpdocs\5001\194\gty-cosina-1

AmR.Est 00308

enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that any and all financial statements heretofore delivered to him by Lender are true and correct in all respects as of the date hereof. Each Guarantor severally waives, for himself and family, any and all homestead and exemption rights which any of them or the family of any of them may have under or by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, any renewal hereof, or any indebtedness represented hereby, and does jointly and severally transfer, convey and assign to Lender a sufficient amount of such homestead or transfer, exemption as may be allowed, including such homestead or set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each o them to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application deposits, accounts, items, or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor until all indebtedness guaranteed hereby has been completely repaid and all

5

c:\data\wpdocs\5001\194\gty-corina-1

AmR.Est 00309

obligations and undertakings of Borrower under, by reason or, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, or sent by registered or certified United States mail, postage prepaid, to the other party at the address set forth below, or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith. The effective date of such notice shall be the date of personal service or the date such notice is deposited in the mail. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response shall be addressed as follows:

If to Lender:    N. D. Horton, Jr. and James M. Reynolds, III
                 2561 Lake Oconee Parkway
                 Greensboro, GA  30642

If to Guarantor:    Terry Manufacturing Company
                    c/o P. O. Box 648
                    924 South Street
                    Roanoke, AL  36274

The provisions of this Guaranty shall be be binding upon each Guarantor and his successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation or partnership.

As used herein, the terms "Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate ember of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively, and all such Guarantors shall be jointly and severally liable for the payment and performance of all obligations imposed hereunder. In case of default in payment or performance by Borrower of any of the obligations to be paid or performed under the Loan Documents, Lender may proceed against the Guarantor jointly or severally, or any of them, without pursuing any rights or remedies against the Borrower or the other Guarantor(s), or against any property taken as security.

Each Guarantor has executed this Guaranty individually and not as a partner or Borrower or of any other member of Guarantor.

6

c:\data\wpdocs\5001\194\gty-cosias-1

AmR.Est 00310

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

If any term or provision of this Guaranty shall be determined to be illegal or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforceable to the fullest extent permitted by law.

This Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Guaranty may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. Any of the Guarantors may execute this Guaranty by signing any such counterpart.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty under seal as of the 10th day of November, 2000

**TERRY MANUFACTURING COMPANY, INC.**

By _____
Its _____

Attest _____
Its _____

Witness:

_____
Notary Public,
My Commission Expires:
(AFFIX NOTARY SEAL)

RICHARD SCHMIDT
NOTARY PUBLIC
EXP. JULY 16, 2004
GREENE COUNTY, GEORGIA

7

c:\data\wpdocs\5001\194\gty-cotins-1

AmR.Est 00311

## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**GREENE COUNTY, GEORGIA**

FOR AND IN CONSIDERATION OF the sum of Ten and 00/100 ($10.00) Dollars and other good and valuable considerations, paid or delivered to **Roy Terry and Rudolph Terry** (hereinafter referred to as "Guarantor") the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **N. D. Horton, Jr. and James M. Reynolds, III** (hereinafter "Lender") to extend credit or obligation to **Cotina Terry** (hereinafter referred to as "Borrower"), which extension of credit or obligation will be to the direct interest and advantage of Guarantor, Guarantor does hereby unconditionally guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated November 10, 2000 made by Borrower to the order of Lender in the principal face amount of Two Hundred Thousand and 00\100 Dollars ($200,000.00) (hereinafter referred to as the "Note"), together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under and other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (said other documents and instruments being hereinafter referred to collectively as the "Loan Documents"), and © all present and future obligations and liabilities of Borrower to Lender under any instrument or document given to evidence, secure, support or relate to any indebtedness of Borrower to Lender whether now existing or hereafter arising, contracted or incurred, and whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise, and all extensions or renewals in whole or in part of such liabilities. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, or if any other obligation of Borrower to be performed under the Loan Documents is not performed in accordance with their terms, Guarantor will immediately make such payments or perform such obligations. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

The obligations incurred under this guaranty include all obligations of Borrower to Lender now existing or hereafter coming into existence and of renewals or extensions in whole or in part of any of the obligations before described, together with all damages, losses, costs, interests, charges, expenses, and liabilities of every kind, nature, and description suffered or incurred by Lender, arising in any manner out of or in any way connected with, or growing out of, said indebtedness or liabilities of Borrower to Lender.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time,

1

c:\data\wpdocs\50011194\gty-cotina

without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm, or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any persons or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note or any other of the Loan Documents; or take or fail to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower of any other undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender.  The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof.  This Guaranty unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by any document or instrument securing any of the obligations under the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Borrower or any other person or entity; © any defense based on the failure of Lander to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement, or both; (e)

2

c:\data\wpdocs\5001\194\gty-coxina

AmR.Est 00313

any defense based upon failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (I) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; (l) the invalidity or unenforceability of any of the Loan Documents; (m) any exculpation of liability contained in the Note or in the Loan Documents; (n) any transfer by Borrower of all or any part of the security encumbered by the Loan Documents; (o) the failure of Lender to perfect any security or to extend or renew the perfection of any security; or (p) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successors, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, power and remedies thereunder or hereunder or under any of the Loan Documents in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees, or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to participate in any security for the Note.

Guarantor hereby waives to the fullest extent possible as against Borrower and all other

3

c:\data\wpdocs\5001\194\gty-cotina

persons and entities that may be contingently, secondarily, or indirectly obligated to Lender for any sums due under the Loan Documents (hereinafter the "contingent Obligors"), and as against all assets of Borrower and the Contingent Obligors, any and all rights, whether at law, in equity, by agreement or otherwise, to subrogation, indemnity, reimbursement, contribution, payment or any other claim, cause of action, right or remedy that would otherwise arise out of any payment by Guarantor to Lender of any sums due under the Loan Documents, notwithstanding the manner or nature of such payments, including but not limited to (a) direct payment by Guarantor to Lender, (b) set-off by Lender against any liability or deposit owed by Lender to Guarantor, © recovery by Lender against Guarantor, or any property of Guarantor, as the result of any judgment, judgment lien, or legal process, (d) the application of the proceeds of any disposition of any or all collateral held by Lender to the repayment of any sums due under the Loan Documents, or (e) the conveyance of any or all collateral held by Lender to Lender in satisfaction of any sums due under the Loan Documents.

The waivers set forth in the preceding paragraph are intended by both Guarantor and Lender to be for the benefit of the Borrower, and such waiver shall be enforceable by Borrower or any of the Contingent Obligors, or any of their successors or assigns, as an absolute defense to any action by Guarantor against Borrower or any of the Contingent Obligors, or the assets of Borrower or any of the Contingent Obligors, which action arises out of any payment by Guarantor to Lender of any sum due under the Loan Documents.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as lender in its sole judgment shall see fit to the indebtednesses, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor agrees to furnish Lender within ninety (90) days following the end of Guarantor's fiscal year a statement of income and retained earnings and a balance sheet of Borrower as of the end of such fiscal year, including a listing of all contingent liabilities. Such statement shall be in such form and content as Lender shall reasonably require and shall be prepared in accordance with generally accepted accounting principles. Upon request by Lender, Guarantor shall provide such statement audited by a certified public accountant acceptable to Lender.

Guarantor acknowledges that this Guaranty, the Note and the Loan Documents were negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the

c:\data\wpdocs\5001\194\gty-cotins

AmR.Est 00315

enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that any and all financial statements heretofore delivered to him by Lender are true and correct in all respects as of the date hereof. Each Guarantor severally waives, for himself and family, any and all homestead and exemption rights which any of them or the family of any of them may have under or by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, any renewal hereof, or any indebtedness represented hereby, and does jointly and severally transfer, convey and assign to Lender a sufficient amount of such homestead or transfer, exemption as may be allowed, including such homestead or set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each o them to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application deposits, accounts, items, or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor until all indebtedness guaranteed hereby has been completely repaid and all

c:\data\wpdocs\5001\194\gty-corina

AmR.Est 00316

obligations and undertakings of Borrower under, by reason or, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, or sent by registered or certified United States mail, postage prepaid, to the other party at the address set forth below, or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith. The effective date of such notice shall be the date of personal service or the date such notice is deposited in the mail. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response shall be addressed as follows:

|  |  |
|---|---|
| If to Lender: | N. D. Horton, Jr. and James M. Reynolds, III<br>2561 Lake Oconee Parkway<br>Greensboro, GA 30642 |
| If to Guarantor: | Cotina Terry<br>c/o P. O. Box 648<br>924 South Street<br>Roanoke, AL   36274 |

The provisions of this Guaranty shall be be binding upon each Guarantor and his successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation or partnership.

As used herein, the terms "Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate ember of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively, and all such Guarantors shall be jointly and severally liable for the payment and performance of all obligations imposed hereunder. In case of default in payment or performance by Borrower of any of the obligations to be paid or performed under the Loan Documents, Lender may proceed against the Guarantor jointly or severally, or any of them, without pursuing any rights or remedies against the Borrower or the other Guarantor(s), or against any property taken as security.

Each Guarantor has executed this Guaranty individually and not as a partner or Borrower or of any other member of Guarantor.

6

c:\data\wpdocs\5001\194\gty-cotina

AmR.Est 00317

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

If any term or provision of this Guaranty shall be determined to be illegal or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforceable to the fullest extent permitted by law.

This Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Guaranty may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. Any of the Guarantors may execute this Guaranty by signing any such counterpart.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty under seal as of the 10th day of November, 2000

_____
Roy Terry

_____
Rudolph Terry

Witness:

Notary Public,
My Commission Expires:
(AFFIX NOTARY SEAL)

RICHARD SCHMIDT
NOTARY
★
PUBLIC
EXP. JULY 16, 2004
GREENE COUNTY, GEORGIA

7

c:\data\wpdocs\5001\194\gty-corina

# A M O R T I Z A T I O N   S C H E D U L E
**********************************************************

| NO. | DUE DATE | REMAINING PRINCIPAL | MONTHLY PAYMENT | INT. RATE | MORTGAGE INSURANCE | PRINCIPAL PAYMENT | INTEREST PAYMENT |
|-----|----------|---------------------|-----------------|-----------|--------------------|--------------------|------------------|
| 1 | 12/10/01 | 189,617.91 | 11,965.42 | 9.500 | | 10,382.09 | 1,583.33 |
| **TOTALS DURING 2001** | | | 11,965.42 | | 0.00 | 10,382.09 | 1,583.33 |
| 2 | 01/10/02 | 179,153.63 | 11,965.42 | 9.500 | | 10,464.28 | 1,501.14 |
| 3 | 02/10/02 | 168,606.51 | 11,965.42 | 9.500 | | 10,547.12 | 1,418.30 |
| 4 | 03/10/02 | 157,975.89 | 11,965.42 | 9.500 | | 10,630.62 | 1,334.80 |
| 5 | 04/10/02 | 147,261.11 | 11,965.42 | 9.500 | | 10,714.78 | 1,250.64 |
| 6 | 05/10/02 | 136,461.51 | 11,965.42 | 9.500 | | 10,799.60 | 1,165.82 |
| 7 | 06/10/02 | 125,576.41 | 11,965.42 | 9.500 | | 10,885.10 | 1,080.32 |
| 8 | 07/10/02 | 114,605.14 | 11,965.42 | 9.500 | | 10,971.27 | 994.15 |
| 9 | 08/10/02 | 103,547.01 | 11,965.42 | 9.500 | | 11,058.13 | 907.29 |
| 10 | 09/10/02 | 92,401.34 | 11,965.42 | 9.500 | | 11,145.67 | 819.75 |
| 11 | 10/10/02 | 81,167.43 | 11,965.42 | 9.500 | | 11,233.91 | 731.51 |
| 12 | 11/10/02 | 69,844.59 | 11,965.42 | 9.500 | | 11,322.84 | 642.58 |
| 13 | 12/10/02 | 58,432.11 | 11,965.42 | 9.500 | | 11,412.48 | 552.94 |
| **TOTALS DURING 2002** | | | 143,585.04 | | 0.00 | 131,185.80 | 12,399.24 |
| 14 | 01/10/03 | 46,929.28 | 11,965.42 | 9.500 | | 11,502.83 | 462.59 |
| 15 | 02/10/03 | 35,335.38 | 11,965.42 | 9.500 | | 11,593.90 | 371.52 |
| 16 | 03/10/03 | 23,649.70 | 11,965.42 | 9.500 | | 11,685.68 | 279.74 |
| 17 | 04/10/03 | 11,871.51 | 11,965.42 | 9.500 | | 11,778.19 | 187.23 |
| 18 | 05/10/03 | 0.00 | 11,965.49 | 9.500 | | 11,871.51 | 93.98 |
| **TOTALS DURING 2003** | | | 59,827.17 | | 0.00 | 58,432.11 | 1,395.06 |

AmR.Est 00294

```
FINANCE CHARGE:...........      15,377.63

TOTAL PAYMENTS:...........     215,377.63

HIGH BALANCE..............     200,000.00

ANNUAL PERCENTAGE RATE:...         9.500

NUMBER OF PAYMENT(S)    17 AT      11,965.42 BEGINNING 12/10/2001

NUMBER OF PAYMENT(S)     1 AT      11,965.49 BEGINNING 05/10/2003
```

```
--------------------------------------------------------------------
HORTON/REYNOLDS NOTE     Loan #1              11-21-2001   Pg    1
--------------------------------------------------------------------
   pounding period...:  Monthly

Nominal annual rate..:     9.500   %
Effective annual rate:     9.925   %
Periodic rate........:     0.7917  %
Equivalent daily rate:     0.02603 %

CASH FLOW DATA
--------------------------------------------------------------------
   Event      Date           Amount    #  Period  End-date
--------------------------------------------------------------------
 1  Loan      11-10-01    200,000.00    1
 2  Payment   12-10-01     11,965.42   18  Monthly 05-10-03
```

AMORTIZATION SCHEDULE - Normal amortization

| Pmt | Date | Payment | Interest | Principal | Balance |
|-----|------|---------|----------|-----------|---------|
| Loan | 11-10-2001 | | | | 200,000.00 |
| 1 | 12-10-2001 | 11,965.42 | 1,583.33 | 10,382.09 | 189,617.91 |
| 2001 | totals | 11,965.42 | 1,583.33 | 10,382.09 | |
| | | | | | |
| 2 | 01-10-2002 | 11,965.42 | 1,501.14 | 10,464.28 | 179,153.63 |
| 3 | 02-10-2002 | 11,965.42 | 1,418.30 | 10,547.12 | 168,606.51 |
| 4 | 03-10-2002 | 11,965.42 | 1,334.80 | 10,630.62 | 157,975.89 |
| 5 | 04-10-2002 | 11,965.42 | 1,250.64 | 10,714.78 | 147,261.11 |
| 6 | 05-10-2002 | 11,965.42 | 1,165.82 | 10,799.60 | 136,461.51 |
| 7 | 06-10-2002 | 11,965.42 | 1,080.32 | 10,885.10 | 125,576.41 |
| 8 | 07-10-2002 | 11,965.42 | 994.15 | 10,971.27 | 114,605.14 |
| 9 | 08-10-2002 | 11,965.42 | 907.29 | 11,058.13 | 103,547.01 |
| 10 | 09-10-2002 | 11,965.42 | 819.75 | 11,145.67 | 92,401.34 |
| 11 | 10-10-2002 | 11,965.42 | 731.51 | 11,233.91 | 81,167.43 |
| 12 | 11-10-2002 | 11,965.42 | 642.58 | 11,322.84 | 69,844.59 |
| 13 | 12-10-2002 | 11,965.42 | 552.94 | 11,412.48 | 58,432.11 |
| 2002 | totals | 143,585.04 | 12,399.24 | 131,185.80 | |
| | | | | | |
| 14 | 01-10-2003 | 11,965.42 | 462.59 | 11,502.83 | 46,929.28 |
| 15 | 02-10-2003 | 11,965.42 | 371.52 | 11,593.90 | 35,335.38 |
| 16 | 03-10-2003 | 11,965.42 | 279.74 | 11,685.68 | 23,649.70 |
| 17 | 04-10-2003 | 11,965.42 | 187.23 | 11,778.19 | 11,871.51 |
| 18 | 05-10-2003 | 11,965.42 | 93.91 | 11,871.51 | 0.00 |
| 2003 | totals | 59,827.10 | 1,394.99 | 58,432.11 | |
| | | | | | |
| Grand totals | | 215,377.56 | 15,377.56 | 200,000.00 | |

AmR.Est 00296

## CONTRACT FOR SALE OF STOCK (PERKY CAP COMPANY, INC.)

This Agreement made as of this 10th day of February, 1994, by and between N. D. Horton, Jr., and James M. Reynolds, III, (hereinafter referred to as "Sellers") and Rudolph Terry and Roy Terry (hereinafter referred to as "Purchasers").

### W I T N E S S E T H

WHEREAS, the parties hereto did on August 10, 1993, enter into that certain agreement wherein Sellers granted to Purchasers an option to purchase 33% of the outstanding common stock of Perky Cap Company, Inc.;

WHEREAS, under paragraph 10 of the initial Stock Purchase Option Purchasers were to consummate the purchase of said stock on or before February 10, 1994;

WHEREAS, Purchasers wish to exercise their option and convert the same into a binding contract for sale pursuant to the terms set forth herein.

NOW THEREFORE, in consideration of the premises the mutual covenants, agreements and undertakings hereinafter set forth the parties do agree and contract as follows:

### 1). EXERCISE OF OPTION:

Purchaser does hereby exercise it's option to purchase 33% of The Common Stock of Perky Cap Company, Inc., pursuant to that certain option agreement between the parties dated August 10, 1993.

### 2). PURCHASE PRICE:

The purchase price herein shall be $600,000.00 cash at closing with credit for non-refundable earnest money as set forth herein.

### 3). NON-REFUNDABLE EARNEST MONEY:

Seller acknowledges that Purchaser has pursuant to the aforesaid option agreement and as of the date hereof paid to Seller the sum of $ *150,000.00* as non-refundable earnest money. Purchaser in order to preserve his rights under this contract shall pay to Seller additional non-refundable earnest money as follows:

$25,000.00 due March 10, 1994.

Should Purchaser consummate the purchase under this contract then Purchaser shall receive credit for such non-refundable earnest money against the purchase price set forth above.

### 4). DATE OF CLOSING:

Closing shall occur on or before April 6, 1994.

### 5). CLOSING EXPENSES:

The parties hereto shall bear expenses of closing equally. Seller guarantees that closing expenses will not exceed $5,000.00.



*Exhibit "A"*



ARE 00848

EXHIBIT

tabbies®

"5"

**6). SURVIVAL OF OPTION AGREEMENT DATED AUGUST 10, 1993:**

The parties hereto agree that any provision contained in said option agreement of August 10, 1993, not in conflict herewith shall survive the execution of this contract and remain in full force and effect between the parties. Said option agreement being incorporated herein and made a part hereof by reference.

**7). DEFAULT:**

Should Purchaser default and fail to close the aforesaid transaction on or before the closing date set forth herein Seller shall be entitled to enforce this contract by all remedies available at law.

**8). ASSIGNABILITY:**

Purchaser shall be able to assign this contract with the written consent of the Seller which said written consent shall not be unreasonably withheld.

**9). NOTICES:**

All notices hereunder shall be given to the addresses set forth in that certain option agreement between the parties dated August 10, 1993, copy of which is affixed hereto and made a part hereof.

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and affixed their seals as of the day and year first herein written.

SELLERS:

_____ (SEAL)
N. D. Horton, Jr.

_____ (SEAL)
James M. Reynolds, III

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission Expires:
1-29-98
(AFFIX NOTARY SEAL)

PURCHASERS:

_____ (SEAL)
Rudolph Terry

_____ (SEAL)
Roy Terry

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission Expires:

(AFFIX NOTARY SEAL)

ARE 00849

COUNTY OF PUTNAM

For and in consideration of the terms and conditions hereinafter set forth and other valuable considerations and Ten and 00/100 ($10.00) Dollars the undersigned N. D. Horton, Jr., and James M. Reynolds, III, (hereinafter Grantor), do hereby grant unto Rudolph Terry and Roy Terry (hereinafter Grantee) their heirs or assigns an irrevocable option to purchase, subject to the terms hereof, certain shares of common stock of the Perky Cap Company, Inc., Eatonton, Putnam County, Georgia.

The terms of this Option are as follows:

Initial Stock Purchase
(Thirty-three (33%) of the outstanding common stock of the Perky Cap Company, Inc.)

1. <u>Option.</u>  The undersigned does during the Option period, offer to sell to the Grantee 33% of the outstanding shares of common stock of the Perky Cap Company, Inc. (Initial Stock Purchase).

2. <u>Purchase Price.</u>  Purchase price for the Initial Stock Purchase is $600,000.00 cash at closing.

3. <u>Term.</u>  The initial term of this Option for the Initial Stock Purchase of 33% of the common stock of Perky Cap Company, Inc., shall be sixty (60) days from the date hereof.

4. <u>Renewal of term of option.</u>  Provided the Grantee makes the Option payments set forth below the undersigned agrees to grant four additional renewals of this Option of thirty (30) days each.  If all renewals are exercised Grantee would have a total of one hundred eighty (180) days for this Option.

5. <u>Option price.</u>  Grantee has paid to the undersigned Grantor $25,000.0 concurrently with the execution of this Agreement which is the option price for the initial sixty (60) day option term; should Grantee desire to renew this Option for the aforesaid thirty (30) day renewal terms, Grantee shall on or before the expiration of the initial term or the then current renewal term pay to the Grantor Twenty Five Thousand ($25,000.00) Dollars for each such thirty (30) day renewal term.

6. The monies paid for this Option shall, if the Option is exercised, be credited against the purchase price.

7. <u>Payment of purchase price.</u>  Should Grantee exercise its rights under this Option they shall pay the purchase price (less credit for option monies actually paid hereunder) in cash at closing on or before the expiration of the initial term or any renewal term of this Option not to exceed One Hundred Eighty (180) days from the date hereof.  Payment hereunder shall be made in cash or other certified or good funds at closing.

ARE 00850

8. <u>Closing Expenses.</u> Grantee and Grantor shall bear the expenses of closing equally. Grantor guarantees that closing expenses will not exceed $5,000.00.

9. <u>Place of Closing.</u> Closing shall occur at the law office of W. Seaborn Ashley, Jr., P.C., P. O. Box 67, 122 N. Main Street, Greensboro, Georgia 30642 or such other place as the undersigned may designate to the Grantee in writing.

10. <u>Notice of exercise of Option / Date of Closing.</u> Should Grantee exercise their rights under this Option Grantee shall notify Grantor at the address set forth herein in writing of their election to exercise this Option. Closing shall occur within ten (10) days from receipt by Grantor of such notice but in no event more than one hundred eight (180) days from the date hereof or the expiration of the Option term, whichever first occur

11. <u>Default by Grantee.</u> Should Grantee fail to renew the term of this Option before the expiration of the then current term or close the trans-action prior to the expiration of the initial or any renewal term then all monies paid herewith for the initial or any renewal term shall be forfeited and constitute liquidated damages hereunder for the benefit of the Grantor.

12. <u>Initial Stock Purchase.</u> Should Grantee purchase the Initial Stock Purchase (33% of the outstanding stock) and at such time own thirty-three (33%) percent of the stock of the Perky Cap Company, Inc., then in that event the undersigned shall provide for the removal from the obligation of Perky Cap Company, Inc., the following Promissory Notes currently payable, by Perky Cap Company, Inc., to wit:

1. $175,000.00 note payable to American Real Estate Investment Company Ltd.

2. $100,000.00 note paid to N. D. Horton, Sr.

<u>CONTINGENT ADDITIONAL STOCK OPTION</u>

Grantor does agree with the Grantee that should Grantee close the sale contemplated by the foregoing Option and acquire pursuant to the terms here-inabove set forth thirty three (33%) percent of the outstanding common stock of the Perky Cap Company, Inc., Initial Stock Purchase then in that event the undersigned shall grant unto the Grantee the irrevocable option to pur-chase an additional fifty-one (51%) percent of the outstanding common stock of the Perky Cap Company, Inc., (Additional Stock Purchase) subject to the terms and conditions hereinafter set forth.

A. Purchase Price: The purchase price for such fifty-one (51%) per cent of the outstanding common stock of the Perky Cap Company, Inc., (Additional Stock Purchase) shall be computed as follows:

ARE 00851



A1

on or before twelve (12) months from the date of closing of the initial
Stock Purchase herein, the purchase price shall be a minimum price of
$1,400,000.00 and a maximum price of $2,000,000.00 cash at closing, ad-
justed for annual earnings (rounded to the nearest $10,000.00) as per
table below.

     (ii)  If this option for additional stock purchase is exercised dur-
ing the thirteen through the twenty-fourth (13-24) months from the date of
closing of the initial Stock Purchase herein, the purchase price shall be a
minimum price of $1,600,000.00 and a maximum price of $2,300,000.00 cash at
closing, adjusted for annual earnings (rounded to the nearest $10,000.00)
as per table below.

| ANNUALIZED EARNINGS | PURCHASE PRICE |
|---|---|
| $150,000.00 | $1,500,000.00 |
| $160,000.00 | $1,600,000.00 |
| $170,000.00 | $1,700,000.00 |
| $180,000.00 | $1,800,000.00 |
| $190,000.00 | $1,900,000.00 |
| $200,000.00 | $2,000,000.00 |
| $210,000.00 | $2,100,000.00 |
| $220,000.00 | $2,200,000.00 |
| $230,000.00 | $2,300,000.00 |

    B.  This Contingent Additional Stock Purchase Option shall expire
twenty-four (24) months after the date of closing of the Initial Stock
Purchase.

    C.  Grantor and Grantee agree that if the Initial Stock Purchase is
made, during the options for the Additional Stock Purchase, no dividends
will be paid to the stockholders unless mutually agreed to by Grantee and
Grantor.

    1.  Provided that all earnings accruing from the date of the Option
shall be calculated to reduce the following:

    (i).  Land and building note of $275,000.00 payable to N. D. Horton,
Sr.

    (ii).  Equipment note of $188,314.34 payable to N. D. Horton, Sr.

    2.  Provided further, that if the earnings during the Additional Stock
Purchase Option Period are not sufficient to repay the said land, building
and equipment notes described in C-1 (i) and (ii) above, then in that event
N. D. Horton, Jr., and James M. Reynolds, III, will retire the balance
owing on such notes at the time of closing of the Additional Stock Purchase
herein.

ARE 00852

    The actual earnings shall remain in the company as working capital
until closing.  At closing on the 51% of the stock an amount equal to earn-
ings from the date of original option to the date of closing on the said
51% of the stock will be paid by Perky Cap Company, Inc. toward the retire-
ment of the herein described two notes.  Until such closing all application
of earnings shall be calculated periodically but actually paid only upon

3.  _Notices._  All notices required to be given herein shall be deemed properly given when given in writing and addressed to the parties at the addresses set forth herein or at such other address as the parties may from time to time give to the other in writing specifically referencing this option agreement:

| GRANTOR | GRANTEE |
|---------|---------|

GRANTOR

N. D. Horton Jr.
P. O. Box 560
Eatonton, Georgia 31024
(706) 453-7842 - Fax

James M. Reynolds, III
2561 Eatonton Highway
Greensboro, Georgia 30642
(706)453-7842 - Fax

With Copy to:
W. Seaborn Ashley, Jr., P. C.
122 N. Main Street
P. O. Box 67
Greensboro , Georgia 30642
(706)453-7842 - Fax

GRANTEE

Rudolph Terry and Roy Terry
c/o Terry Manufacturing Co., Inc.
P. O. Box 648
924 S. Street
Roanoke, Alabama 35274
(205)863-8835 - Fax

IN WITNESS WHEREOF, the undersigned has hereunto set their hands and affixed their seals this _10th_ day of August, 1993.

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public
My commission expires: 8-10-93

(Affix Notary Seal)

_____ (SEAL
N. D. Horton, Jr.

_____ (SEAL
James M. Reynolds, III

**CONSENT TO ACTION DIRECTORS PERKY CAP COMPANY, INC.**

The undersigned being all of the directors currently qualified and acting of Perky Cap Company, Inc., (Corporation) do consent to the following actions and adopt the following resolutions to wit:

1). Resolved that the Corporation consents to the transfer and sale by N. D. Horton, Jr., (Horton) and James M. Reynolds, III, (Reynolds) of an aggregate 30,000 shares of common stock of the corporation currently held and owned by Horton and Reynolds as follows:

> 10,000 shares to Rudolph Terry
> 10,000 shares to Roy Terry
> 10,000 shares to Rudolph Terry and Roy Terry jointly

2). Resolved that the Corporation acknowledges and approves the granting by N. D. Horton, Jr., (Horton) and James M. Reynolds, III, (Reynolds) of an option dated June 6, 1994, to Rudolph and Roy Terry to purchase an additional 45,900 shares (51%) of the current outstanding stock of the corporation.

3). Resolved that the Corporation shall not issue additional shares of common stock without granting preemptive rights to all shareholders so as to preserve and not dilute the ownership of Rudolph and Roy Terry.

4). Resolved that the Corporation currently has issued an outstanding 90,000 shares of common stock.

The above actions consented to and effective as of June 6, 1994.

_____ (SEAL)
N. D. Horton, Jr.

_____ (SEAL)
James M. Reynolds, III

_____ (SEAL)
R. W. Hicks, Jr.

This is to certify that the within and foregoing is a true and correct copy of the original of same executed this _16th_ day of _June_, 19_94_.

_____ _Sec/Secretary_ Perky Cap Company Inc
NOTARY PUBLIC

My Commission Expires _____.

m:agreement/horton.004

ARE 00861

## Covenants from Sellers (Horton & Reynolds)

Between the date hereof and the exercise of the option to purchase additional shares, the Sellers:

1.    Shall not, and will not permit the Corporation to, take any action, or fail to take any action which would prevent, the material inaccuracy of any of the representations and warranties set forth herein.

2.    Will not, and will not allow the Corporation to, create any indebtedness or borrow any money without the approval of purchasers (Terrys & Goodrum).

3.    Will cause the Corporation to maintain its property and assets in good operating condition, with the exception of ordinary wear and tear.

4.    Will not cause or permit the Corporation to issue any additional shares of capital stock; or to declare, set aside or pay any dividend or make any distribution with respect to its capital stock or other equity ownership interests.

5.    Will not cause or permit the Corporation to sell, mortgage, lease, buy or otherwise acquire, or transfer any real or personal property, without the consent of Purchasers. EXCEPTING Inventory and products sold in the ordinary course of business.

6.    Will not cause or permit the Corporation to make any increase in the compensation of (or pay any bonus to) any officer or managerial employee. In Excess of existing personnel compensation agreements

7.    Will not cause or permit the Corporation to enter into any agreement, contract or commitment relating to capital expenditures or investments aggregating more than $5,000, without the consent of Sellers.

8.    Immediately cause stock transfer records of the Corporation to reflect the ownership interests of the Purchasers.

_____
Seller                                         Date

_____
Seller                                         Date

ARE 00862

CLOSING DOCUMENT FROM SELLERS

The Sellers of capital stock of the Perky Cap Company, Inc. represent that:

1. The Corporation has authorized capital stock consisting of:

100,000 shares of common stock, 90,000 shares of which are issued and outstanding.

2. All of the issued and outstanding stock is duly authorized and validly issued, fully-paid and nonassessable, and there are no preemptive rights in respect thereof.

3. Sellers own 89,505 shares of common stock, constituting 99.45% of the issued and outstanding shares.

4. There are no outstanding options, warrants or other rights to subscribe for or purchase from the Corporation, or any contracts or commitments providing for the issuance of, or the granting by the Corporation of rights to acquire, any shares of capital stock or any other equity ownership interest of the Corporation.

5. Sellers have the full power and authority to enter into the transactions contemplated hereby, and such transactions shall not violate any provision (i) of the Corporation's Articles of Incorporation, Bylaws, or other governing document; (ii) any agreement or contract or legally binding commitment to which either the Sellers or the Corporation is a party; or (iii) any judgment, order, decree, injunction or ruling of any court or governmental authority to which either the Sellers or the Corporation is subject.

6. The transactions contemplated hereby shall not (i) give any person any rights of termination, cancellation or acceleration, in or with respect to any agreements, contracts, indenture, or legally binding commitments by which the Sellers or the Corporation is bound; (ii) result in the creation or imposition of (or the obligation to create or impose) any lien, charge or encumbrance upon any of the property or assets of the Corporation.

7. As of April 30, 1994 the Corporation has no debt liability or obligation of any kind, whether accrued, absolute, contingent or otherwise, including, without limitation, any liability or obligation arising out of any governmental charges or penalty, interest or fines, except for those liabilities set forth on Schedule 1.

ARE 00863

8.    The Corporation owns good and marketable title to all real and personal (tangible and intangible) property used in the business of the Corporation, or reflected on the financial statements of the Corporation, free and clear of any liens, charges, mortgages, pledges or other encumbrances, except as reflected on Schedule 2.

9.    All material mortgages, deeds to secure debt, and any other debt which encumbers or affects the personal or real property owned by the Corporation are in good standing, all payments of interest and all reserves, deposits and other charges have been made, and no default or breach exists thereunder.

10.    There is no action, suit, claim or proceeding pending or, to the knowledge of Sellers, threatened against or affecting the Corporation in any court or before any governmental agency, except as set forth in Schedule 3.  Except as set forth in Schedule 3, there are no unsatisfied judgments against the Corporation.

11.    Except as set forth in Schedule 4, the Corporation is not in violation of any applicable law, statute, order, rule, or regulation promulgated or judgment entered by any federal, state, local or foreign court or governmental authority, nor has the Corporation been charged with or is under investigation with respect to any such violation.

12.    Except as set forth on Schedule 5, the Corporation is in compliance in all material respects with all federal, state, and local laws and ordinances relating to clean air, water, waste disposal, toxic substances, and other environmental regulations, as well as those relating to occupational health and safety.

_____    _____
Seller                             Date

_____    _____
Seller                             Date

ARE 00864

Perky Cap Company, Inc.
Attachment to Closing Document from Sellers

| Schedules | Description |
|---|---|
| 1 | Financial statements of April 30, 1994 of Perky Cap Company, Inc. |
| 2 | None Except as shown on the financial statements of April 30, 1994 of Perky Cap Company, Inc. |
| 3 | None |
| 4 | None |
| 5 | None |

ARE 00865

OPTION

STATE OF GEORGIA
COUNTY OF PUTNAM

For and in consideration of the terms and conditions hereinafter set forth and other valuable considerations and Ten and 00/100 ($10.00) Dollars the undersigned **N. D. Horton, Jr.**, and **James M. Reynolds, III,** (hereinafter **Grantor**),do hereby grant unto **Rudolph Terry and Roy Terry** (hereafter **Grantee**) their heirs or assigns an irrevocable option to purchase, subject to the terms hereof, certain shares of common stock of the Perky Cap Company, Inc., Eatonton, Putnam County, Georgia.

The terms of this Option are as follows:

1. **Option.** The undersigned does during the Option period, offer to sell to the Grantee 51% (45,900 shares) of the outstanding shares of common stock of the Perky Cap Company, Inc. (Stock Purchase)

2. **Purchase Price:** The purchase price for such fifty-one (51%) percent of the outstanding common stock of the Perky Cap Company, Inc., shall be computed as follows:

(i) If this Option for Stock Purchase is exercised on or before June 6, 1995, the purchase price shall be a minimum of $1,400,000.00 and a maximum price of $2,000,000.00 cash at closing, adjusted for annual earnings (rounded to the nearest ten thousand dollars) as per table below.

(ii) If this option for Stock Purchase is exercised during the period from June 6, 1995 through June 6, 1996, the purchase price shall be a minimum price of $1,600,000.00 and a maximum price of $2,300,000.00 cash at closing, adjusted for annual earnings (rounded to the nearest $10,000.00) as per table below.

| ANNUALIZED EARNINGS | PURCHASE PRICE |
|---|---|
| $150,000.00 | $1,500,000.00 |
| $160,000.00 | $1,600,000.00 |
| $170,000.00 | $1,700,000.00 |
| $180,000.00 | $1,800,000.00 |
| $190,000.00 | $1,900,000.00 |
| $200,000.00 | $2,000,000.00 |
| $210,000.00 | $2,100,000.00 |
| $220,000.00 | $2,200,000.00 |
| $230,000.00 | $2,300,000.00 |

(iii) Grantor and Grantee agree that no additional shares shall be issued and no dividends will be paid to the stockholders unless mutually agreed to by Grantee and Grantor.

(iv) Provided that all earnings accruing from June 6, 1994, shall be used to reduce the following:

(i). Land and building note of $275,000.00 payable to N. D. Horton, Sr.

m:agreement/horton.004

ARE 00825

(ii). Equipment note of $188,314.34 payable to N. D. Horton, Sr.

(v)  Provided further, that if the earnings during the Stock Purchase Option Period described herein are not sufficient to repay the said land, building and equipment notes described in 2(iv) and (ii) above, then in that event N. D. Horton, Jr., and James M. Reynolds, III, will retire the balance owing on such notes at the time of closing of the Stock Purchase herein.

3.  **Term.**  The term of this Option for the Stock Purchase of 51% of the common stock of Perky Cap Company, Inc., shall be from the date hereof until June 6, 1996.

4.  **Payment of purchase price.**  Should Grantee exercise its rights under this Option they shall pay the purchase price in cash at closing on or before the expiration of the term hereof.  Payment hereunder shall be made in cash or other certified or good funds at closing.

5.  **Closing Expenses.**  Grantee and Grantor shall bear the expenses of closing equally.  Grantor guarantees that closing expenses will not exceed $5,000.00.

6.  **Place of Closing.**  Closing shall occur at the law office of W. Seaborn Ashley, Jr., P.C., P.O. Box 67, 122 N. Main Street, Greensboro, Georgia  30642 or such other place as the undersigned may designate to the Grantee in writing.

7.  **Notice of exercise of Option / Date of Closing.**  Should Grantee exercise their rights under this Option Grantee shall notify Grantor at the address set forth herein in writing of their election to exercise this Option.  Closing shall occur within ten (10) days from receipt by Grantor of such notice but in no event later than June 6, 1996.

8.  **Default by Grantee.**  Should Grantee fail to close the transaction prior to the expiration of the term hereof all rights hereunder shall cease and Grantee shall have no further rights to purchase the stock described herein.

9.  **Notices.**  All notices required to be given herein shall be deemed properly given when given in writing and addressed to the parties at the addresses set forth herein or at such other address as the parties may from time to time give to the other in writing specifically referencing this option agreement:

**GRANTOR**                                      **GRANTEE**

N. D. Horton, Jr.                          Rudolph Terry and Roy  Terry
P.O. Box 560                               c/o Terry Manufacturing Co., Inc.
Eatonton, Georgia  31024                   P.O. Box 648
(706) 453-7842 - Fax                       924 S. Street
                                           Roanoke, Alabama 36274
                                           (205) 863-8835 - Fax

                                           With copy to:
James M. Reynolds, III                     Michael Harrison, P.C.
2561 Eatonton Highway                      3060 Mercer University Dr.
Greensboro, Georgia  30642                 Suite 300
(706) 453-7842 - Fax                       Atlanta, Georgia  30341
                                           Fax (404) 455-4363

m:agreement/horton.004

ARE 00826

With Copy to:
W. Seaborn Ashley, Jr., P.C.
122 N. Main Street
P.O. Box 67
Greensboro, Georgia  30642
(706 453-7842 - Fax

    **IN WITNESS WHEREOF,** the undersigned has hereunto set their hands and affixed their seals this 6th day of June, 1994.

Signed, sealed and delivered
in the presence of:

_N. D. Horton, Jr._     (SEAL)
N. D. Horton, Jr.

_James M. Reynolds_     (SEAL)
Unofficial Witness     James M. Reynolds, III

_Teresa L. Walker_
Notary Public
My Commission Expires:

**(AFFIX NOTARY SEAL)**     Notary Public, Greene County, Georgia
My Commission Expires April 18, 1998

m:agreement/horton.004

ARE 00827



ARE 00828

NUMBER
26

SHARES
29,752.50

INCORPORATED UNDER THE LAW OF THE STATE OF GEORGIA

## Perky Gap Company, Inc.

The Corporation is authorized to issue 100,000 Shares — Par Value $1 Each

This Certifies that _____ N. D. HORTON, JR. _____ is the owner of

_____ TWENTY NINE THOUSAND SEVEN HUNDRED FIFTY TWO AND ONE HALF _____ fully paid and

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated _____ JUNE 6, 1994 _____

ARE 00829



NUMBER
27

SHARES

INCORPORATED UNDER THE LAWS OF THE STATE OF GEORGIA

# Perky Cap Company, Inc.

The Corporation is authorized to issue 100,000 Shares — Par Value $1 Each

This Certifies that   JAMES M. REYNOLDS, III   is the owner of

TWENTY NINE THOUSAND SEVEN HUNDRED FIFTY TWO AND ONE HALF   fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated   JUNE 6, 1994

## ACKNOWLEDGMENT

The undersigned who on this day purchasing Common Stock of the Perky Cap Company, Inc., from N. D. Horton, Jr., and James M. Reynolds, III, as follows:

| | | |
|---|---|---|
| Rudolph Terry | – | 10,000 shares |
| Roy Terry | – | 10,000 shares |
| Rudolph Terry and Roy Terry | – | 10,000 shares |

do certify as follows:

1). That they are aware that this is a sale from existing shareholders and not from Perky Cap Company, Inc..

2). That they are aware and acknowledge that all the shares of the Corporation have been beneficially held by Dr. Barry Darugar, N. D. Horton, Jr., and James M. Reynolds, III, and have been so held for a period in excess of twelve (12) months proceeding the date of sale of June 6, 1994.

3). That the undersigned did not purchase the above shares nor receive any offers for sale of such shares by means of any form of general or public solicitation or advertisement including but not limited to the following:

1). Publicly disseminated advertisement or sale of literature through the mail or otherwise;

2). Any advertisement, article notice or other communication published in any newspaper, magazine or other similar media or broadcast over television or radio;

3). Any seminar or meeting whose attendees have been invited by any general solicitation with general advertising.

The undersigned acknowledge that each of the undersigned have purchased for investment for their own account the foregoing stock without the intent of participating directly, indirectly in a distribution of such securities.

The undersigned acknowledge that the foregoing securities were issued by Perky Cap Company, Inc., to N. D. Horton, Jr., and James M. Reynolds, III, as replacement shares for shares purchased by N. D. Horton, Jr., and James M. Reynolds, III, from previous shareholders and that the transaction is deemed exempt from securities registration in reliance on Paragraph 13 of Code Section 10-5-9 of the Georgia Securities Act of 1973 and may not be sold or transferred except in a transaction which is exempt under such act or pursuant to an effective registration under such act.

_____(SEAL)
Rudolph Terry by his
duly constituted attorney-in-
fact Michael Harrison by Power
of Attorney dated June 6, 1994

_____(SEAL)
Roy Terry by his
duly constituted attorney-in-
fact Michael Harrison by Power
of Attorney dated June 6, 1994

_____(SEAL)
Rudolph Terry and Roy Terry
by their duly constituted
attorney-in-fact Michael Harrison
by Power of Attorney dated June 6,
1994

ARE 00820

RECEIPT OF STOCK SHARE CERTIFICATE

PERKY CAP COMPANY, INC.

The undersigned does acknowledge receipt of certificate #28, representing 10,000 shares of the common stock of Perky Cap Company, Inc.

This 6th day of June, 1994.

_____ (SEAL)
Roy Terry

m:agreement/horton.004

ARE 00812

ARE 00813



NUMBER
38

SHARES
10,000

INCORPORATED UNDER THE LAWS OF THE STATE OF GEORGIA

# Perky Cap Company, Inc.

The Corporation is authorized to issue 100,000 Shares — Par Value $1 Each

This Certifies that    ROY TERRY    is the owner of

TEN THOUSAND    fully paid and

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated    JUNE 6, 1994

SECRETARY

PRESIDENT

EXCELSIOR-LEGAL, INC. P.O. BOX 599 NORCROSS, GA. 30091

RECEIPT OF STOCK SHARE CERTIFICATE

PERKY CAP COMPANY, INC.

The undersigned does acknowledge receipt of certificate #29, representing 10,000 shares of the common stock of Perky Cap Company, Inc.

This 6th day of June, 1994.

for —  _Rudolph Terry_____ (SEAL)

ARE 00814

m:agreement/horton.004



ARE 00815

NUMBER
25

SHARES
10,000

INCORPORATED UNDER THE LAWS OF THE STATE OF GEORGIA

**Perky Cap Company, Inc.**

The Corporation is authorized to issue 100,000 Shares — Par Value $1 Each

This Certifies That   RUDOLPH TERRY   is the owner of

TEN THOUSAND   fully paid and

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated   JUNE 6, 1994

EXCELSIOR-LEGAL, INC. P.O. BOX 589 NORCROSS, GA. 30091

**RECEIPT OF STOCK SHARE CERTIFICATE**

**PERKY CAP COMPANY, INC.**

The undersigned does acknowledge receipt of certificate #30, representing 10,000 shares of the common stock of Perky Cap Company, Inc.

This 6th day of June, 1994.

_____ (SEAL)
Roy Terry

_____ (SEAL)
Rudolph Terry

m:agreement/horton.004

ARE 00816

ARE 00817



NUMBER
30

SHARES
10,000

INCORPORATED UNDER THE LAWS OF THE STATE OF GEORGIA

# Perky Cap Company, Inc.

The Corporation is authorized to issue 100,000 Shares — Par Value $1 Each

**This Certifies that** ROY TERRY AND RUDOLPH TERRY                is the owner of

TEN THOUSAND                                                        fully paid and

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated JUNE 6, 1994

CLOSING STATEMENT

RE:   PURCHASE OF 33 1/3% (30,000 SHARES) OF THE OUTSTANDING SHARES OF
      COMMON STOCK OF PERKY CAP COMPANY, INC., PURSUANT TO OPTION
      AGREEMENT DATED AUGUST 10, 1993, LAST AMENDED APRIL 6, 1994.


      PURCHASE PRICE: (30,000 SHARES - 33 1/3%)   $600,000.00
      CREDIT:
      EARNEST MONEY                               $225,000.00
      BALANCE DUE                                 $375,000.00


The foregoing checked and approved this 6th day of June, 1994.


                         SELLERS:

                         _____ (SEAL)
                         N. D. Horton, Jr.

                         _____ (SEAL)
                         James M. Reynolds, III

                         PURCHASERS:

                    for _____ (SEAL)
                         Rudolph Terry

                    for _____ (SEAL)
                         Roy Terry


ARE 00847

m:agreement/horton.004

# OPTION EXTENSION AGREEMENT

In Re:        Option dated June 6, 1994; N.D. Horton, Jr. and James M.
              Reynolds, III (Grantors) and Rudolph Terry and Roy Terry
              (Grantees) to purchase certain of the common stock of
              Perky Cap Company, Inc.

**STATE OF GEORGIA**       §
                           §
**COUNTY OF PUTNAM**       §

**THIS AGREEMENT** made as of this 6th day of June, 1996 by and

between N.D. Horton, Jr. and James M. Reynolds, III as Grantors and

Rudolph Terry and Roy Terry as Grantees.

### W I T N E S S E T H:

**WHEREAS**, on June 6, 1994 Grantors did grant unto Grantees an

option to purchase fifty-one percent (51%) (forty-five thousand

nine hundred (45,900) shares) of the outstanding common stock of

Perky Cap Company, Inc. (the "Option"); and

**WHEREAS**, the said Option was to expire on June 6, 1996; and

**WHEREAS**, the parties wish to modify the Option to extend the

closing date thereof, provide for extension payments and certain

credits.

**NOW, THEREFORE** in consideration of the premises and other good

and valuable considerations and ten dollars ($10.00) the Grantors

do extend and modify the Option pursuant to the terms hereof as

follows:

1.

Paragraph 2(ii) is amended by striking said paragraph and

substituting in lieu therefore the following:

(ii) If this Option for stock purchase is exercised during the

period from June 6, 1996 through the earlier of the date

of closing or absolute termination date (December 6,

-1-                                        5215\3\option.agr

1996), the purchase price shall be a minimum price of One Million Six Hundred Thousand and No/100 Dollars ($1,600,000.00) and a maximum price of Two Million Three Hundred Thousand and No/100 Dollars ($2,300,000.00) cash at closing, adjusted for annual earnings (rounded to the nearest Ten Thousand and No/100 Dollars ($10,000.00)) as per the table below:

| Annualized Earnings | Purchase Price |
|---|---|
| $160,000.00 | $1,600,000.00 |
| $170,000.00 | $1,700,000.00 |
| $180,000.00 | $1,800,000.00 |
| $190,000.00 | $1,900,000.00 |
| $200,000.00 | $2,000,000.00 |
| $210,000.00 | $2,100,000.00 |
| $220,000.00 | $2,200,000.00 |
| $230,000.00 | $2,300,000.00 |

2.

Paragraph 3. <u>Term</u>: is stricken and the following substituted in lieu thereof:

3.   <u>Term</u>:  The initial extended term of this Option for the stock purchase shall be from the date hereof until July 6, 1996.

3.1  <u>Extension of Term</u>:  This Option may be extended by Grantees from month to month (the 6th day of the month) until December 6, 1996 ("Absolute Option Termination Date") upon the payment of Extension Payments (as defined below) by Grantees to Grantors on or before the 6th day of the ensuing month.

3.2  <u>Extension Payments</u>:  Grantors acknowledge receipt of Twenty-five Thousand and No/100 Dollars ($25,000.00) ("Initial Extension Payment") for

-2-                                    5215\3\option.agr

extending the term of this Option until July 6, 1996. Upon payment of additional Extension Payments in the amount of Twenty-five Thousand and No/100 Dollars ($25,000.00) per month on or before the 6th day of the ensuing month, this Option shall automatically be extended until the 6th day of the month following the ensuing month.

3.3  **Application of Extension Payments:**

(a)  If the Option is not ultimately exercised and stock purchased on or before December 6, 1996 (the "Absolute Option Termination Date"), the Extension Payments and all Option payments shall be forfeited to the Grantors.

(b)  (i)  If the Grantees exercise this Option and close the purchase between June 6, 1996 and October 5, 1996, sixty percent (60%) of the Extension Option Payments made from the date hereof (June 6, 1996) to the date of closing shall be credited to the purchase price (sixty percent (60%) credit).

(ii) If the Grantees exercise this Option and close the purchase between October 6, 1996 and December 6, 1996, one hundred percent (100%) of the Extension Option Payments made on or after October 6, 1996 to the date of closing shall be credited

-3-

to the purchase price in addition to the sixty percent (60%) credit granted in 3.3(b)(i) above.

(iii) The maximum credit available from June 6, 1996 to December 6, 1996 shall be One Hundred Ten Thousand and No/100 Dollars ($110,000.00) provided all Extension Payments (One Hundred Fifty Thousand and No/100 Dollars ($150,000.00)) are made hereunder.

(iv) Failure to make an Extension Payment on or before the 6th day of the ensuing month shall terminate Grantees rights under the Option effective at midnight of the 6th day of such month.

3.4    <u>Absolute Termination Date</u>:    This Option shall terminate, if not sooner terminated as provided in 3.3(b)(iv) above at midnight on December 6, 1996 ("Absolute Termination Date").

3.

Paragraph 7 of the Option is stricken and the following substituted in lieu thereof:

7.    <u>Notice of Exercise of Option/Date of Closing</u>: Should Grantees exercise their rights under this Option, Grantees shall notify Grantors at the addresses set forth herein in writing of their election to exercise this Option.    Closing shall

5215\3\option.agr

occur within ten (10) days from receipt by Grantors of such notice, but in no event later than the Absolute Termination Date (December 6, 1996).

### 4.

The Option Agreement as amended herein is ratified and affirmed by the Grantors.

**IN WITNESS WHEREOF** the undersigned have hereunto set their hands and affixed their seals as of this 6th day of June, 1996.

N.D. Horton, Jr.

James M. Reynolds, III

Signed, sealed and delivered
in the presence of:

Beth Kitchen
Unofficial Witness

Notary Public
My Commission Expires: 1-29-98
[AFFIX NOTARY SEAL]

- 5 -

5215\3\option.agr

Transcript of the Testimony of
# Ira Axelrod

**Date taken:** July 12, 2005

# In Re: Terry Manufacturing Co., Inc.,

# Professional Shorthand Reporters, Inc.
**Phone: 504-529-5255**
**Fax: 504-5295257**
**Email: production@psrdocs.com**
**Internet: www.psrdocs.com**

EXHIBIT

"4"

tabbies'

In Re: Terry Manufacturing Co., Inc.,                                                Ira Axelrod

```
            UNITED STATES BANKRUPTCY COURT
         FOR THE MIDDLE DISTRICT OF ALABAMA

    IN RE:                    NO. 03-32063-WRS
    TERRY MANUFACTURING
    COMPANY, INC.,
         DEBTOR              CHAPTER 7

    IN RE:                    NO. 03-32213-WRS
    TERRY UNIFORM COMPANY,
    LLC,
         DEBTOR              CHAPTER 7

    J. LESTER ALEXANDER  ADVERSARY PROCEEDING
    III, TRUSTEE OF TERRY
    MANUFACTURING COMPANY,     NO. 04-03061
    INC., AND TERRY UNIFORM   C/W 04-03062
    COMPANY, LLC              AND 04-03063


         Deposition of IRA AXELROD,
    777 American Expressway, Plantation,
    Florida 33337, taken in the offices of
    Phelps Dunbar , 365 Canal Street, Suite
    2000, New Orleans, Louisiana, on Tuesday,
    the 12th day of July, 2005.

    APPEARANCES:

      SMITH, GIACOMETTI & CHIKOWSKI,LLC
      (BY:  COLLEEN GARRITY, ESQ.)
      100 SOUTH BROAD STREET, SUITE 200
      PHILADELPHIA, PENNSYLVANIA  19110
      (Present via Telephone)
         ATTORNEYS FOR AMERICAN EXPRESS TRAVEL
         RELATED SERVICES CO., INC.

                                        Page 1
```

```
1              * * *
2        EXAMINATION INDEX
3
4                         Page
5   EXAMINATION BY MS. DETERMAN: ........  5
6              * * *
7        INDEX OF EXHIBITS
8                         Page
9   Exhibit No. 1 ......................  8
10   Account information from Terry
11   Manufacturing
12   Exhibit No. 2 ......................  8
13   Notices of Deposition
14
15
16
17
18
19
20
21
22
23
24
25
                                        Page 3
```

```
1   APPEARANCES CONTINUED:
2
    PHELPS DUNBAR
3   (BY: KATHERINE M. DETERMAN, ESQ.)
    365 CANAL STREET, SUITE 2000
4   NEW ORLEANS, LOUISIANA 70130-6534
5    ATTORNEYS FOR TERRY MANUFACTURING
      COMPANY, INC. AND TERRY UNIFORM
6      COMPANY, LLC
7
    BALCH & BINGHAM
8   (BY: JEREMY RETHERFORD, ESQ.)
    1910 SIXTH AVENUE NORTH, SUITE 2600
9   BIRMINGHAM, ALABAMA 35203
    (Present via Telephone)
10
    ATTORNEYS FOR BANK OF WEDOWEE
11
12
13   REPORTED BY:
14   PAT KENNEDY QUINTINI
      CERTIFIED COURT REPORTER
15
16
17
18
19
20
21
22
23
24
25
                                        Page 2
```

```
1        S T I P U L A T I O N
2      It is stipulated and agreed by and
3   between counsel for the parties hereto that
4   the deposition of the aforementioned witness
5   is hereby being taken for all purposes
6   allowed under the Federal Rules of Civil
7   Procedure, in accordance with law, pursuant
8   to notice;
9      That the formalities of reading and
10   signing are specifically not waived;
11      That the formalities of filing,
12   sealing, and certification are specifically
13   waived;
14      That all objections, save those as to
15   the form of the question and the
16   responsiveness of the answer, are hereby
17   reserved until such time as this deposition,
18   or any part thereof, may be used or sought
19   to be used in evidence.
20              * * *
21      PAT KENNEDY QUINTINI, Certified
22   Shorthand Reporter, in and for the State of
23   Louisiana, officiated in administering the
24   oath to the witness.
25
                                        Page 4
```

                                    1  (Pages 1 to 4)

In Re: Terry Manufacturing Co., Inc.,                                    Ira Axelrod

| | |
|---|---|
| 1       IRA AXELROD,<br>2 having been duly sworn by the above<br>3 mentioned court reporter, did testify as<br>4 follows:<br>5 EXAMINATION BY MS. DETERMAN:<br>6    Q.  This is Kathy Determan from Phelps<br>7 Dunbar.  I represent J. Lester Alexander,<br>8 the Trustee of Terry Manufacturing and Terry<br>9 Uniform Company.<br>10   MS. DETERMAN:<br>11     Do you want to make appearances<br>12 for the record?<br>13   MR. RETHERFORD:<br>14     This is Jeremy Retherford with the<br>15 law firm of Balch & Bingham.  I represent<br>16 the Bank of Wedowee.<br>17   MS. GARRITY:<br>18     Colleen Garrity of the law firm of<br>19 Smith, Giacometti and Chikowski,<br>20 representing American Express Travel Related<br>21 Service Company, Inc.<br>22   MS. DETERMAN:<br>23     Colleen, do you want to reserve<br>24 the right to read and sign the deposition?<br>25   MS. GARRITY:<br>                      Page 5 | 1 is card members that are in collection<br>2 agencies or bankruptcies, if they have<br>3 disputes.<br>4    Q.  During the time that you have been<br>5 manager of creditor operations, did you have<br>6 any responsibility for the Terry<br>7 Manufacturing Company, Inc. account at<br>8 American Express?<br>9    A.  No, I did not.<br>10    Q.  Are you familiar with the records<br>11 that you produced this morning indicating<br>12 what the balances owed to American Express<br>13 by Terry Manufacturing are?<br>14    A.  Yes, I am.<br>15    Q.  And are these records kept in the<br>16 ordinary course of American Express'<br>17 business?<br>18    A.  Yes, they are.<br>19    Q.  Did you assist or supervise in the<br>20 preparation of the documents that you<br>21 produced this morning?<br>22    A.  Yes, I did.<br>23    Q.  I would like to introduce into<br>24 evidence these documents which consist of 12<br>25 pages of balance owed -- I don't know how<br>                      Page 7 |
| 1     Yes, I guess we probably should do<br>2 that.<br>3 EXAMINATION BY MS. DETERMAN:<br>4    Q.  Would the witness please state his<br>5 name for the record?<br>6    A.  Ira Axelrod.<br>7    Q.  And your address, please?<br>8    A.  777 American Express Way,<br>9 Plantation, Florida 33337.<br>10    Q.  And are you currently employed?<br>11    A.  Yes, I am.<br>12    Q.  By whom?<br>13    A.  American Express.<br>14    Q.  And what is your position there?<br>15    A.  Manager credit operations.<br>16    Q.  And how long have you held that<br>17 position?<br>18    A.  That position about eight years.<br>19    Q.  And as manager of credit<br>20 operations, what are the scope of your<br>21 responsibilities at American Express?<br>22    A.  I manage several departments. One<br>23 is the collection department. One is the<br>24 legal assist department, which is what I'm<br>25 doing. One is a customer service area that<br>                      Page 6 | 1 you would describe it -- actual information<br>2 from Terry Manufacturing on the Terry<br>3 Manufacturing account as Exhibit 1.<br>4   (Exhibit No. 1 marked for identification.)<br>5     And I would also like to introduce<br>6 the notices of deposition as Exhibit 2.<br>7   (Exhibit No. 2 marked for identification.)<br>8     Referring to these documents that<br>9 you produced, could you please state the<br>10 balance owed by Terry Manufacturing to<br>11 American Express as of January 1, 1999?<br>12    A.  I don't have it in front of me.<br>13 The oldest date is January 27, 2000.<br>14    Q.  As of January 27, 2000, how much<br>15 money did Terry Manufacturing owe to<br>16 American Express?<br>17    A.  31,638.96.<br>18    Q.  What is the next date that you<br>19 have the balance owed?  Would it also be<br>20 January 27, 2001?<br>21    A.  Yes.<br>22    Q.  And how much did Terry<br>23 Manufacturing owe American Express on<br>24 January 27, 2001?<br>25    A.  $88,195.40.<br>                      Page 8 |

2 (Pages 5 to 8)

In Re: Terry Manufacturing Co., Inc.,                                                    Ira Axelrod

1      Q.  And as of January 27, 2002, how
2  much did Terry Manufacturing owe American
3  Express?
4      A.  $51,546.75.
5      Q.  And as of January 27, 2003, how
6  much money did Terry Manufacturing owe
7  American Express?
8      A.  $98,113.92.
9      Q.  And as of July 7, 2003, which is
10  the date that Terry Manufacturing filed for
11  bankruptcy, do you know what the balance was
12  that Terry Manufacturing owed to American
13  Express?
14      A.  Yes, $103,179.63.
15  MS. DETERMAN:
16      Thank you.  I pass the witness.
17  MR. RETHERFORD:
18      I have no questions.
19
20  (Whereupon, the deposition was concluded.)
21
22      *   *   *
23
24
25
                                    Page 9

1           REPORTER'S CERTIFICATE
2
3      I, Pat Kennedy Quintini, CCR, Certified
4  Court Reporter, State of Louisiana, do
5  hereby certify that the above-named witness,
6  after having been duly sworn by me to
7  testify to the truth, did testify as
8  hereinabove set forth.
9      That this testimony was reported by me
10  in the stenotype reporting method and
11  transcribed thereafter by me on computer,
12  and that same is a true and correct
13  transcript to the best of my ability and
14  understanding.
15      That I am not of counsel, nor related
16  to counsel or the parties hereto, and in no
17  way interested in the outcome of this
18  matter.
19
20
21
22      _____
23      PAT KENNEDY QUINTINI
        CERTIFIED COURT REPORTER
24
25
                                    Page 11

1
2
3
4          WITNESS' CERTIFICATE
5
6
7      I have read or have had the foregoing
8  testimony read to me and hereby certify that
9  it is a true and correct transcription of my
10  testimony with the exception of any attached
11  corrections or changes.
12
13
14
15
16
17      _____
18      (Witness Signature)
19
20  PLEASE INDICATE
21  ( ) NO CORRECTIONS
22  ( ) CORRECTIONS; ERRATA SHEET(S) ENCLOSED
23
24
25
                                    Page 10

                                    3  (Pages 9 to 11)

Transcript of the Testimony of
# Mark Christman

**Date taken:** July 6, 2005

# In Re:  Terry Manufacturing Co., Inc.

# Professional Shorthand Reporters, Inc.
**Phone: 504-529-5255**
**Fax: 504-5295257**
**Email: production@psrdocs.com**
**Internet: www.psrdocs.com**

In Re: Terry Manufacturing Co., Inc.                                          Mark Christman

| | |
|---|---|
| **Page 1** | **Page 3** |

**Page 1**

```
 1      IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE MIDDLE DISTRICT OF ALABAMA
 2
 3
 4      IN RE:        CASE NO. 03-32063-WRS
 5
        TERRY MANUFACTURING    CHAPTER 7
 6      COMPANY, INC.
 7      Debtor
 8      *******************************************
 9      IN RE:        CASE NO. 03-32213-WRS
10      TERRY UNIFORM        CHAPTER 7
        COMPANY, LLC,
11
        Debtor.
12
        *******************************************
13
        J. LESTER ALEXANDER,   ADVERSARY PROCEEDING
14      III, TRUSTEE OF TERRY
        MANUFACTURING COMPANY,  NO. 04-03061 c/w
15      INC. AND TERRY UNIFORM   NO. 04-03062 and
        COMPANY, LLC       NO. 04-03063
16
        VERSUS
17
        THE PEOPLES BANK
18
19
20
21        Rule 30(b)(5) and Rule 7030 Deposition
        via telephone of SOUTHERN MILLS, INC.,
22      through its designated representative, MARK
        DANIEL CHRISTMAN, 6501 Mall Boulevard, Union
23      City, Georgia 30291, taken in the offices of
        Phelps Dunbar, LLP, 365 Canal Street, Suite
24      2000, New Orleans, Louisiana 70130, on
        Wednesday, the 6th day of July, 2005.
25
```

**Page 3**

```
 1           *  *  *
 2         EXAMINATION INDEX
 3                        Page
 4      EXAMINATION BY MS. DETERMAN ....... 5
 5           *  *  *
 6         INDEX OF EXHIBITS
 7                        Page
 8      Exhibit No. 1 ...................  12
 9      Southern Mills, Inc. A/R Aged Summary Trial
10      Balance documents (SM/T000001 through
11      SM/T000008)
12      Exhibit No. 2 ...................  12
13      Notice of Deposition to Southern Mills, Inc.
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 2**

```
 1      APPEARANCES:
 2        PHELPS DUNBAR, L.L.P.
          (By: Katherine M. Determan, Esq.)
 3        365 Canal Street, Suite 2000
          New Orleans, Louisiana 70130
 4
          ATTORNEYS FOR J. LESTER ALEXANDER,
 5        III, TRUSTEE OF TERRY
          MANUFACTURING COMPANY, INC. AND
 6        TERRY UNIFORM COMPANY, LLC
 7        SUTHERLAND, ASBILL & BRENNAN, LLP
          (By: Jennifer M. Rubin, Esq. -
 8        via telephone)
          999 Peachtree Street, N.E.
 9        Atlanta, Georgia 30309
10        ATTORNEYS FOR SOUTHERN MILLS, INC.
          AND MARK CHRISTMAN
11
          BALCH & BINGHAM, LLP
12        (By: Jeremy L. Retherford, Esq. -
          via telephone)
13        1901 Sixth Avenue North, Suite 2600
          Birmingham, Alabama 35203
14
          ATTORNEYS FOR BANK OF WEDOWEE
15
          CHAMBLESS MATH, P.C.
16        (By: Leonard N. Math, Esq. -
          via telephone)
17        5720 Carmichael Road
          Montgomery, Alabama 36117
18
          ATTORNEYS FOR FIRST TUSKEGEE BANK
19
20      REPORTED BY:
21
          JAMES T. BRADLE
22        CERTIFIED COURT REPORTER
23
24
25
```

**Page 4**

```
 1          S T I P U L A T I O N
 2
 3          It is stipulated and agreed by and
 4      between counsel for the parties hereto that
 5      the deposition of the aforementioned witness
 6      is hereby being taken for all purposes
 7      allowed under the Federal Rules of Civil
 8      Procedure, in accordance with law, pursuant
 9      to notice;
10          That the formalities of reading
11      and signing are specifically not waived;
12          That the formalities of sealing,
13      certification and filing are specifically
14      waived;
15          That all objections, save those as
16      to the form of the question and the
17      responsiveness of the answer, are hereby
18      reserved until such time as this deposition,
19      or any part thereof, may be used or sought
20      to be used in evidence.
21          *  *  *  *
22          JAMES T. BRADLE, Certified Court
23      Reporter in and for the State of Louisiana,
24      officiated in administering the oath to the
25      witness.
```

1 (Pages 1 to 4)

Professional Shorthand Reporters, Inc.     1-800-536-5255     New Orleans, Baton Rouge, Shreveport

In Re: Terry Manufacturing Co., Inc.                                    Mark Christman

Page 5

1        MARK DANIEL CHRISTMAN,
2    after having been first duly sworn by the
3    above-mentioned court reporter, did
4    testify as follows:
5    MS. DETERMAN:
6         This is Kathy Determan. I'm
7    counsel for J. Lester Alexander, Trustee of
8    Terry Manufacturing and Terry Uniform.
9         Jennifer, do you want to make an
10   appearance for the record?
11   MS. RUBIN:
12        For the record, my name is
13   Jennifer Rubin. I'm with the firm of
14   Sutherland, Asbill & Brennan and we
15   represent Southern Mills and the witness,
16   Mark Christman, in this deposition.
17   MS. DETERMAN:
18        Jeremy, do you want to make an
19   appearance for the record?
20   MR. RETHERFORD:
21        Sure. This is Jeremy Retherford
22   from the law firm of Balch & Bingham. We
23   represent the Bank of Wedowee.
24   EXAMINATION BY MS. DETERMAN:
25   Q    Mark, this is Kathy Determan.

Page 6

1    Would you please state your full name and
2    address for the record?
3    A    My full name is Mark Daniel
4    Christman. My business address is 6501 Mall
5    Boulevard, Union City, Georgia, 30291.
6    Q    Are you currently employed?
7    A    Yes.
8    Q    And by whom?
9    A    Southern Mills.
10   Q    And Southern Mills is located
11   where?
12   A    At 6501 Mall Boulevard, Union
13   City, Georgia 30291.
14   Q    And what is your position with
15   Southern Mills?
16   A    I'm vice president of finance.
17   Q    And how long have you held that
18   position?
19   A    About 13 months.
20   Q    And how long have you been
21   employed at Southern Mills?
22   A    For six and a half years.
23   Q    And what is the scope of your
24   employment at Southern Mills? What are your
25   job duties?

Page 7

1    A    My current responsibilities, I'm
2    responsible for all aspects of finance and
3    accounting for the company, ranging from
4    cost accounting, financial reporting, tax,
5    payroll, treasury/cash management, trade
6    credit management.
7    Q    And what was your position before
8    you were vice president?
9    A    Immediately before, I was director
10   of finance.
11   Q    And how long did you hold that
12   position?
13   A    For three years.
14   Q    So beginning about 2002?
15   A    It was the summer of 2001, I
16   believe. I better just triple check that
17   I'm not telling you wrong, the timing on
18   that. Do you want to circle back to that in
19   a second after I look something up and make
20   sure I know when it was that my title
21   changed.
22   Q    Sure. What was your position
23   before that?
24   A    Before that, I was assistant
25   treasurer.

Page 8

1    Q    And during the course of your
2    employment, would you have had any
3    responsibility for the Terry Manufacturing
4    account?
5    A    Yes. As assistant treasurer, one
6    of my primary responsibilities was managing
7    trade credit relationships with all of our
8    customers, and then subsequently, as
9    director of finance and vice president of
10   finance, it would be for any large
11   customers, large accounts, I stay involved
12   and keep kind of up to date as to what the
13   status is. And so in the particular case of
14   Terry, I was very involved right up until
15   the bitter end.
16        I do need to go back to the
17   previous question and restate it. It looks
18   like it was September of 2000 that I was
19   promoted to director of finance.
20   Q    All right. And in overseeing the
21   Terry Manufacturing account, what year would
22   you have begun to be involved in that?
23   A    November of 1998.
24   Q    Thank you. I would like to
25   introduce into the record document

                                          2 (Pages 5 to 8)

In Re: Terry Manufacturing Co., Inc.                                                      Mark Christman

| Page 9 | Page 11 |
|---|---|
| 1 SM/T000001 through 8 marked "confidential," which was produced to us through Southern Mills. | 1 Would you repeat that balance just real quick. |
| | 3 THE WITNESS: |
| 4 Mr. Christman, can you identify these documents for me? | 4 Sure. $1,062,402.99. |
| | 5 MS. RUBIN: |
| 6 A I can. Those are from our accounts receivable subledger. Those are summary trial balances as of the indicated dates, and typically we would run those each month end, but in these cases, it's mostly year end dates, and they're generated directly off of our accounts receivable system. | 6 Thank you. |
| | 7 EXAMINATION BY MS. DETERMAN: |
| | 8 Q And referring to SM/T000004, what would the balance have been that Terry Manufacturing owed to Southern Mills as of December 31st, 2001? |
| | 12 A We would have been owed $1,895,506.59. |
| 14 Q And were these documents kept in the ordinary course of Southern Mills's business? | 14 Q And would that balance have been the same on January 1st, 2002? |
| 17 A Yes. | 16 A Yes. |
| 18 Q Referring now to SM/T000008, could you state for the record the balance owed by Terry Manufacturing to Southern Mills as of 12-31-98? | 17 Q And referring to SM/T000001, what was the balance owed by Terry Manufacturing as of December 31st, 2002? |
| 22 A As of 12-31-98, Southern Mills was owed $281,611.51 by Terry Manufacturing. | 20 A As of December 31st, 2002, we were owed $3,039,699.82. |
| 24 Q And would they have been owed that same amount on January 1st, 1999? | 22 Q And would that balance have been the same on January 1st, 2003? |
| | 24 A Yes. |
| | 25 Q And do you know the balance owed |

| Page 10 | Page 12 |
|---|---|
| 1 A Yes. | 1 by Terry Manufacturing to Southern Mills as of July 7th, 2003, which was the date of the filing of the petition? |
| 2 Q And referring to document SM/T000007, could you state for me the balance owed by Terry Manufacturing to Southern Mills as of 12-31-99? | 4 A Yes. Prior to, ignoring any preference activities in a recent settlement that has not yet been approved by the Court, our outstanding balance as of July 7th, 2003, was $3,447,958.78. |
| 6 A Yes. As of 12-31-99, Southern Mills was owed $519,314.85 by Terry Manufacturing. | 9 MS. DETERMAN: |
| 9 Q And would the balance have been the same as of January 1st, 2000? | 10 I would like to introduce into the record Southern Mills Aged Summary Trial Balance, Bates labeled SM/T000001 through 000008 as an in globo Exhibit 1, and I would also like to introduce into the record the Notice of Deposition. |
| 11 A Yes, it would have been the same. | |
| 12 Q And referring to document SM/T000006, would you please state for the record the balance owed by Terry Manufacturing to Southern Mills as of December 31st, 2000, or did we just do that? | 16 I have no further questions of the witness. |
| 17 A We have not done that one yet. | 18 Jeremy, do you have any questions? |
| 18 Q Okay. I'm sorry. | 19 MR. RETHERFORD: |
| 19 A As of 12-31-2000, Southern Mills was owed $1,062,402.99 by Terry Manufacturing. | 20 I do not. |
| | 21 MS. DETERMAN: |
| 22 Q And would the balance have been the same on January 1st, 2001? | 22 I think somebody else joined us. |
| 24 A Yes. | 23 MR. MATH: |
| 25 MS. RUBIN: | 24 It's Mr. Math. |
| | 25 MS. DETERMAN: |

3 (Pages 9 to 12)

In Re: Terry Manufacturing Co., Inc.                                      Mark Christman

| Page 13 | Page 15 |
|---|---|
| 1      Hi, Leo. I'm sorry. We went | 1 |
| 2   ahead. | 2 |
| 3     MR. MATH: | 3 |
| 4      No, that's fine. I was stuck in | 4 |
| 5   court and I anticipated that you would. | 5      WITNESS' CERTIFICATE |
| 6     MS. DETERMAN: | 6 |
| 7      Do you have any questions for the | 7 |
| 8   witness? | 8      I have read or have had the |
| 9     MR. MATH: | 9   foregoing testimony read to me and hereby |
| 10      No, not at this time. I just | 10   certify that it is a true and correct |
| 11   wanted to advise the court reporter that I | 11   transcription of my testimony with the |
| 12   do want to get a copy of the transcript. | 12   exception of any attached corrections or |
| 13     MS. RUBIN: | 13   changes. |
| 14      We will also want a copy of the | 14 |
| 15   transcript. | 15 |
| 16     MR. RETHERFORD: | 16 |
| 17      Yes, we will, too. | 17 |
| 18     MS. RUBIN: | 18 |
| 19      And I believe that we would like | 19   (Witness' signature) |
| 20   to reserve the right for Mr. Christman to | 20 |
| 21   review and sign the transcript. | 21 |
| 22     MS. DETERMAN: | 22   PLEASE INDICATE |
| 23      Is that it? | 23   (X) NO CORRECTIONS |
| 24     MS. RUBIN: | 24   ( ) CORRECTIONS; ERRATA SHEET(S) ENCLOSED |
| 25      That's it from our end. | 25 |

| Page 14 | Page 16 |
|---|---|
| 1     MS. DETERMAN: | 1     REPORTER'S CERTIFICATE |
| 2      That's it from here. | 2 |
| 3   MR. RETHERFORD: | 3      I, James T. Bradle, Certified |
| 4      Okay. | 4   Court Reporter, do hereby certify that the |
| 5   MR. MATH: | 5   above-named witness, after having been first |
| 6      Okay. Thank you. | 6   duly sworn by me to testify to the truth, |
| 7      *   *   *   * | 7   did testify as hereinabove set forth; |
| 8 | 8      That the testimony was reported by |
| 9 | 9   me in shorthand and transcribed under my |
| 10 | 10   personal direction and supervision, and is a |
| 11 | 11   true and correct transcript, to the best of |
| 12 | 12   my ability and understanding; |
| 13 | 13      That I am not of counsel, not |
| 14 | 14   related to counsel or the parties hereto, |
| 15 | 15   and not in any way interested in the outcome |
| 16 | 16   of this matter. |
| 17 | 17 |
| 18 | 18 |
| 19 | 19 |
| 20 | 20 |
| 21 | 21 |
| 22 | 22   JAMES T. BRADLE |
| 23 | 23   Certified Shorthand Reporter |
| 24 | 24 |
| 25 | 25 |

4 (Pages 13 to 16)

Professional Shorthand Reporters, Inc.     1-800-536-5255     New Orleans, Baton Rouge, Shreveport

IN RE: TERRY MANUFACTURING COMPANY

SHEET 1  PAGE 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                )
                                      )  CASE NO. 03-32063-WRS
TERRY MANUFACTURING COMPANY, INC.     )
                                      )  CHAPTER 7
              DEBTOR                   )

IN RE:                                )
                                      )  CASE NO. 03-32213-WRS
TERRY UNIFORM COMPANY, LLC.           )
                                      )  CHAPTER 7
              DEBTOR                   )

J. LESTER ALEXANDER, III,             )
TRUSTEE OF TERRY MANUFACTURING        )
COMPANY, INC. AND                     )  ADVERSARY PROCEEDING
TERRY UNIFORM COMPANY, LLC            )
                                      )  NO. 04-03061
VERSUS                                )  c/w NO. 04-03062 and
                                      )  NO. 04-03063
THE PEOPLES BANK                      )

- - - - - - - - - - - - - - - - - - - - - - -

TELEPHONIC DEPOSITION OF LARRY DICKERSON

TAKEN IN LITTLE ROCK, ARKANSAS

ON JULY 8, 2005

- - - - - - - - - - - - - - - - - - - - - - -

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

---

PAGE 3
                                                              3

      Taken on the 8th day of July, 2005, commencing at 1:59

p.m. at the Arkansas State Highway Department, 10324

Interstate 30, Suite 405, Little Rock, Arkansas.  Said

deposition was taken according to the terms and provisions of

the Federal Rules of Civil Procedure under Rule 26 for all

purposes.

      All forms and formalities as to the taking of this

deposition are expressly waived.  All objections and

exceptions as to the incompetency, irrelevancy and

immateriality of the testimony is expressly reserved, other

than the form of questions as propounded to the witness, and

may be hereinafter asserted at the time of trial without the

necessity of noting same at the time of taking of said

deposition.

                - - - - - - - - - - - - - - -

                      I N D E X

WITNESS:

  LARRY DICKERSON
    Examination by Mr. Barriere . . . . . . . . . page  4

  EXHIBITS:

    Deposition Exhibit One . . . . . . . . . . . . page 21
        Proof of Claim
    Deposition Exhibit Two . . . . . . . . . . . . page 22
        Subordinated Promissory Note, Letter of Terry
        Manufacturing & Payment Schedule

  Certificate of Reporter . . . . . . . . . . . . page 23

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

---

PAGE 2
                                                              2

APPEARANCES: (Via Telephone)

  On Behalf of J. Lester Alexander, Trustee of
    Terry Manufacturing:

        BRENT B. BARRIERE, T.A. Esquire
        Phelps Dunbar
        365 Canal Street, Suite 2000
        New Orleans, LA  70130

  On Behalf of the Steele Law Firm and Brian Steele:

        MONICA VINING, Esquire
        Jones and Walden
        21 Eighth Street
        Atlanta, GA  30309

  On Behalf of the Bank of Widalia:

        JEREMY RUTHERFORD, Esquire
        1901 Sixth Avenue North, Suite 2600
        Birmingham, AL  35203

  On Behalf of Ernest DeLong and DeLong, Caldwell
    Novatney and Bridgers, LLC:

        SUSIE EDWARDS, Esquire
        Malcolm, Anthony and Williams
        301 Adams Avenue
        Montgomery, AL  36103

  On Behalf of First Tuskegee Bank:

        LEO MATH, Esquire
        P.O. Box 230759
        Montgomery, AL  36123

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

---

PAGE 4
                                                              4

1              (Witness sworn)

2    Thereupon,

3              LARRY DEWAYNE DICKERSON,

4    having been called for examination, and having been first duly

5    sworn, was examined and testified as follows:

6          EXAMINATION BY COUNSEL FOR DEBTOR

7    BY MR. BARRIERE:

8    Q    Good afternoon, sir.  Let me reintroduce myself.  I'm

9    Brent Barriere.  I represent J. Lester Alexander, the Trustee

10   of Terry Manufacturing, and I'll be conducting what I trust

11   will be a brief deposition this afternoon.

12        I'll be asking a number of questions.  If at any point

13   during my questioning you find my question confusing or

14   ambiguous in any way, please so advise me and I'll attempt to

15   restate them.

16        My first question, sir, is would you state your full name

17   for the record?

18   A    My name is Larry Dewayne Dickerson.

19   Q    By whom are you employed, sir?

20   A    Arkansas Highway and Transportation Department.

21   Q    What is your position with that department?

22   A    I am the Chief Financial Officer for the department and

23   the Executive Secretary for the retirement system.

24   Q    What is the relationship between the department and the

25   retirement system?

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

---

LARRY DICKERSON                                        7-8-05

IN RE: TERRY MANUFACTURING COMPANY

SHEET 2   PAGE 5

5

1   A    They are the same entity by law with separate
2   appropriation and trust funds.
3   Q    Could you state your business address for me, sir?
4   A    The physical address is 10324 Interstate 30, Little Rock,
5   Arkansas, 72209.  The mailing address is P.O. Box 2261, Little
6   Rock, Arkansas, 72203.
7   Q    Prior to today's deposition we issued a notice in which
8   we requested that the highway employees' retirement system
9   designate a witness most knowledgeable to testify with respect
10  to a debt posed to it by Terry Manufacturing Company.  Have you
11  been so designated?
12  A    Yes.
13  Q    And in the interest of brevity, if I refer to it as "The
14  Retirement System," you'll understand I'm referring to the
15  Arkansas State Highway Employees' Retirement System?
16  A    Absolutely.
17  Q    Very well.  In advance of today's deposition, sir, my
18  office should have faxed you a copy of the Proof of Claim
19  filed by The Retirement System on or about July 17, 2003,
20  together with certain attachments thereto.  Did you receive
21  those documents?
22  A    I received a Notice of Deposition, and I received the
23  notice of this conference call, and the other thing I received
24  was -- it really wasn't a legal document, it's just on the
25  letterhead of Phelps Dunbar stating that--

PAGE 6

6

1   Q    If I can get you to kind of pause for a moment, let me
2   tell you what I'm trying to get to.  I have before me a Proof
3   of Claim showing an unsecured claim by the retirement system
4   for three million six hundred twenty-nine thousand three
5   hundred and ninety-two dollars ($3,629,392.00).
6        I also then have a copy of what appears to be a computer
7   printout showing amounts due under the Subordinated Promissory
8   Note, a letter from Terry Manufacturing to The Retirement
9   System dated June 15, 1998, and a copy of the Subordinated
10  Promissory Note.
11  A    Yes, I have those.
12  Q    Do you have all those materials, sir?
13  A    Yes.
14  Q    Okay, very good.  Starting first with the Proof of Claim,
15  sir, it appears -- well, you tell me, is that your signature
16  that appears on the Proof of Claim?
17  A    Yes.
18  Q    Are you the retirement system employee responsible for
19  overseeing the Terry Manufacturing loan?
20  A    Yes.
21  Q    Does that appear to be a true and correct copy of the
22  Proof of Claim filed by the retirement system?
23  A    Yes, it does.
24  Q    All right.
25       MR. BARRIERE: Madame Court Reporter, I'll ask that

PAGE 7

7

1   that Proof of Claim be marked as Exhibit Number One to
2   the deposition.
3        THE WITNESS: She's doing so right now.
4        MR. BARRIERE: Thank you.
5        THE WITNESS: Okay, I have it back.
6
7   MR. BARRIERE: (Continuing)
8   Q    I would ask you next to turn to the computer printout.
9   Mine does not have a page number, but it's titled Arkansas
10  State Highway Employees' Retirement System, Terry
11  Manufacturing Debt, June 30, 2003.  Do you have that before
12  you, sir?
13  A    Yes, I do.
14  Q    Who prepared that document?
15  A    Our accountant, Jan Garrett.
16  Q    Is this document, along with the other attachments to it,
17  kept in the file maintained by the retirement system on its
18  Terry Manufacturing debt?
19  A    Yes, it is.
20  Q    Are you the custodian of that file?
21  A    Yes, I am.
22  Q    Do you maintain that file with the documents to be placed
23  therein under the Terry Manufacturing head?
24  A    Yes, I do.
25  Q    Is this document among those maintained in the Terry

PAGE 8

8

1   Manufacturing file?
2   A    Yes, it is.
3   Q    Are all the attachments thereto among those maintained in
4   the Terry Manufacturing file?
5   A    Yes, they are.
6   Q    All right.
7        Could you explain, sir, what does this page titled Terry
8   Manufacturing Debt reflect?
9   A    It reflects the initial loan of three-and-a-half million
10  dollars ($3.5 million), the principal payments that we
11  received on that loan, and the balance remaining of three
12  million one hundred and fifty-five thousand dollars
13  ($3,155,000.00), the amount of interest that we received and
14  the dates we received that interest, and then interest that
15  was outstanding through June 15th of '03, along with some
16  penalties.
17  Q    All right.  So I'm clear, sir, under the column of
18  Principal there are two figures in parentheses, one of a
19  hundred sixty-five thousand ($165,000.00) and one a hundred
20  and eighty ($180,000.00).  Do those represent
21  principal payments on this promissory note?
22  A    They sure do.
23  Q    All right.
24       What was the basis for the penalties, as you recall?
25  A    In accordance with the Promissory Note, they were late in

LARRY DICKERSON                    7-8-05

IN RE:  TERRY MANUFACTURING COMPANY

SHEET 3  PAGE 9

9

1   remitting those payments, and the principal would go from
2   eight percent to ten percent, so there would be a two-percent
3   penalty.
4   Q      There is a box below that that shows Interest Not Paid.
5   Could you explain what that reflects?
6   A      Interest Not Paid.  Yes, that would be interest that
7   accrued from June 16th of '01 through June 30th of '03 at a
8   rate of eight percent.
9   Q      Now you have a box called Partial Payments.  What does
10  that represent?
11  A      That would be when Terry Manufacturing became delinquent
12  and we would call them and request that they would send us
13  something, some form of consideration, and they would send us
14  the twenty-five thousand dollars ($25,000.00), and then --
15  four of them at twenty-five thousand ($25,000.00) and one at
16  fifty-one thousand two hundred and twenty dollars
17  ($51,220.00), for a total of a hundred fifty-one thousand two
18  twenty ($151,220.00).
19  Q      And that's the figure that appears in Less Partial
20  Payments under the blocks to the left-hand side of the page?
21  A      Yes.
22  Q      Leaving a grand total of three million six hundred
23  twenty-nine thousand three hundred ninety-two dollars
24  ($3,629,392.00), is that correct?
25  A      Yes, and that would include the accrued interest through

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

PAGE 11

11

1          THE WITNESS: Right.  Okay, I'm back with you.
2          MR. BARRIERE: Very well.
3
4   MR. BARRIERE: (Continuing)
5   Q      My first question, sir, is the letter dated June 15th and
6   addressed to you, could you describe for us generally what
7   role you personally played in the loan made by the retirement
8   system to Terry Manufacturing?
9   A      I would have reviewed the financial statements, the
10  audited financial statements provided by Terry Manufacturing,
11  an audit performed by Richard S. Ross, and based on financial
12  statements and what we're trying to do here in the State of
13  Arkansas with in-state investments, I would make the
14  recommendation to our retirement committee whether or not we
15  should make this investment.
16  Q      What sort of application did Terry Manufacturing make in
17  connection with this loan?
18  A      They, along with the financial statements, and I don't
19  have it in front of me, there would have been some pro forma
20  statements as well.
21  Q      Okay.  And those pro forma statements were related to
22  what?
23  A      Related to the growth, anticipated growth of the company.
24  Q      Would that have been growth anticipated within the State
25  of Arkansas?

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

PAGE 10

10

1   what we just talked about, '01 through June of '03, and then
2   penalties of a hundred seven thousand six sixty-six ninety-
3   four ($107,666.94), and then the remaining principal.
4   Q      Excuse me, sir.  If I could ask you to turn to the next
5   page, which is on the letterhead at least of Terry
6   Manufacturing.
7   A      Okay.  Question, do you need this sheet marked Exhibit
8   Two for anything?
9   Q      Well, if it's like my set, all of these are grouped
10  together and I'm going to mark them en globo as Exhibit Two.
11  A      Okay, I'm with you.  Okay, go ahead, I'm sorry, what was
12  the next?
13         MR. BARRIERE: That's all right.  Why don't we take a
14  moment and have the court reporter mark the entire
15  package as Exhibit Two so we have that done.
16         THE WITNESS: Okay.  And the second part of that
17  package would be what?
18         MR. BARRIERE: Well, in my package at least it is the
19  page we just looked at, and then the letter to you from
20  Terry Manufacturing, and then a copy of the Promissory
21  Note.  If they're in your grouping as three separate --
22         THE WITNESS: Okay.  That would be the letter dated
23  June 15th of '98?
24         MR. BARRIERE: Yes, sir, and the Subordinated
25  Promissory Note itself.

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

PAGE 12

12

1   A      Within the State of Arkansas and outside the State of
2   Arkansas.
3   Q      Okay.  Was there any formal loan application form that
4   Terry Manufacturing would have submitted to you or other
5   representatives of the retirement system?
6   A      No.
7   Q      Are these sorts of loans recommended by local
8   municipalities?  How does a borrower go about being introduced
9   to the retirement system?
10  A      There is a state law that encourages state retirement
11  systems to invest a minimum of five percent and a maximum of
12  ten percent in Arkansas-related investments.  From time to
13  time companies would come to us and request loans from that
14  program.
15  Q      I see.  Did you have occasion to meet Mr. Roy Terry?
16  A      Roy Terry, yes.
17  Q      When did that occur?
18  A      Prior to June of '98.  The exact date I don't know, but
19  then I would think on June of '98, if that was the date we did
20  the promissory note, there was a meeting in Little Rock.
21  Q      Who physically delivered to you the pro forma and audited
22  financial statements that you reviewed?
23  A      Let me think.  There was a minority-owned broker here in
24  town that is no longer here, and right now I can't recall his
25  name.

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

LARRY DICKERSON                                    7-8-05

IN RE:  TERRY MANUFACTURING COMPANY

SHEET 4   PAGE 13

13

```
1   Q    Was that the gentleman who introduced Terry Manufacturing
2   to the retirement system?
3   A    Yes.
4   Q    If I can, I would ask you to turn to the letter for
5   specific comments.  Number one is that ASHERS, as defined as
6   the Arkansas State Highway Employees' Retirement System,
7   agrees to purchase at a purchase price of three million five
8   hundred thousand dollars ($3,500,000.00) a Subordinated
9   Promissory Note in the principal amount of three million five
10  hundred thousand dollars ($3,500,000.00).
11       Is the promissory note, which is the next attachment and
12  styled Subordinated Promissory Note, the note which in fact
13  was purchased by the retirement system?
14  A    Yes, it was.
15  Q    Okay.  It then stated that the purchase price will be
16  remitted by wire to CitiBank N.A.  Did that in fact occur?
17  A    It did occur.
18  Q    All right.  There's a representation or undertaking in
19  Paragraph Four with respect to job creation in the Delta
20  region of Arkansas.  To your knowledge, did that in fact
21  occur?
22  A    No, it did not occur in my thinking.  In Terry
23  Manufacturing's thinking, it did.
24  Q    Can you explain that distinction?
25  A    Yes.  In my thinking it was 100 jobs onsite at the
```

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

PAGE 14

14

```
1   location in Eastern Arkansas.  In Mr. Terry's thinking it was
2   through the ripple effect the economic impact to the area
3   would be 100 jobs, and he felt like that was done.
4   Q    How many employees at point of fact did Terry
5   Manufacturing directly, not the ripple effect, but directly
6   have in that facility?
7   A    There was one count I had of close to 50, but the exact
8   count I do not know.
9   Q    In a prior deposition we discussed a factory located in
10  Marianna, Arkansas.  Is this the same facility we're talking
11  about?
12  A    Yes.
13  Q    Do you know how that facility was employed?
14  A    It was employed with local residents of that area of the
15  state.
16  Q    My question was inartful.  What did they do at that
17  facility?
18  A    It was to produce uniforms or some type of clothing.
19  Q    The fifth paragraph says:  The parties acknowledge that
20  Terry intends to form and organize a company, NEWCO, to
21  conduct the apparel business of Terry on or about January 31,
22  2000.  To your knowledge, was that ever accomplished?
23  A    Not to my knowledge, no.
24  Q    Paragraph Six grants to, as I read it, the retirement
25  system the right to obtain warrants for common stock.  Were
```

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

PAGE 15

15

```
1   those warrants ever issued to the retirement system?
2   A    No.
3   Q    Did the retirement system ever acquire any common stock
4   in Terry Manufacturing?
5   A    No, they did not.
6   Q    Did they acquire any stock, preferred, common or
7   otherwise, in any Terry-related entity?
8   A    No, did not.
9   Q    I'll preface this by saying I'm not an Arkansas lawyer,
10  sir.  Under the laws of the State of Arkansas, is the
11  retirement system in a position to own common stock?
12  A    Yes.
13  Q    At any time did the retirement system seek to acquire
14  common stock in Terry Manufacturing?
15  A    No.
16  Q    At any time did it seek to acquire preferred stock in
17  Terry Manufacturing?
18  A    No.
19  Q    Was it your understanding at any time that what you were
20  receiving under the Subordinated Promissory Note was the
21  functional equivalent of common stock?
22  A    No.
23  Q    Was it ever your understanding what you were receiving
24  was the functional equivalent of preferred stock?
25  A    No.
```

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

PAGE 16

16

```
1   Q    As you appreciate it, sir, to what claim or creditors was
2   the retirement system subordinate?
3   A    There were a couple of banks that we were subordinate
4   to --  Hang on, I've got those here.  --the Southern Trust
5   Bank of Atlanta, Georgia.
6   Q    Okay.
7   A    And the First Bank of Roanoke, Alabama.
8   Q    Did you have any understanding where the retirement
9   system would fall in the event of a liquidation of the assets
10  of Terry Manufacturing?
11  A    We would participate after the secured creditors but
12  before any preferred stockholders or equity holders, common
13  equity holders.
14  Q    What was the basis of that understanding?
15  A    My understanding of where a non-secured creditor falls in
16  business law.
17  Q    Sir, the next -- well, just a question.  I see that
18  there's a choice of law for the City of New York.  Why was
19  that done?
20  A    The attorney that represented Roy Terry and Terry
21  Manufacturing was an attorney in New York City.
22  Q    Do you recall either that gentleman's name or his firm?
23  A    No, I don't, sure don't.
24  Q    Is the next document a true and correct copy of the
25  Subordinated Promissory Note made payable by Terry
```

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

LARRY DICKERSON                    7-8-05

IN RE: TERRY MANUFACTURING COMPANY

SHEET 5 PAGE 17

17

1  Manufacturing to the retirement system?
2  A   Yes, it is.
3  Q   And did in fact the retirement system advance to Terry
4  Manufacturing on or about the day of this note the sum of
5  three million five hundred thousand dollars ($3,500,000.00)?
6  A   Yes.
7  Q   And did Terry Manufacturing make payments as specified in
8  the computer sheet we spoke of a moment ago, the first page of
9  Exhibit Two?
10 A   Yes.
11 Q   At any time did Terry Manufacturing or anyone
12 representing Terry Manufacturing assert that the note was
13 unenforceable?
14 A   No.
15 Q   At any time did anyone representing Terry Manufacturing
16 assert that the retirement system was either a common or
17 preferred shareholder?
18 A   No.
19 Q   Was the retirement system represented by counsel with
20 respect to this note?
21 A   Yes.
22 Q   Who might that be?
23 A   The Mitchell Law Firm here in Little Rock.
24 Q   And I take it it's your recollection that Terry
25 Manufacturing was represented by counsel, although you cannot

PAGE 19

19

1  A   I met an employee of Centas at the creditors' meeting
2  prior to -- and you'll have to forgive me, but the earlier
3  phase of the bankruptcy is Chapter--
4  Q   Eleven.
5  A   -- Eleven.  Okay, that's the lesser, okay?  That's what
6  he voluntarily did.  I met an employee of Centas at the
7  creditors' meeting in Alabama.
8  Q   But you had no dealings with Centas prior to Terry
9  filing for Chapter 11 relief?
10 A   No direct contact.  We owned stock in this retirement
11 system of Centas.
12 Q   All right.  My question was inartful.  You had no
13 dealings with Centas concerning Terry Manufacturing?
14 A   No, have not.
15      MR. BARRIERE: All right.  Thank you very much, sir,
16      for your time.  I'm going to pass the witness.
17      MR. RUTHERFORD: This is Jeremy Rutherford.  I have
18      no questions.
19      MS. EDWARDS: This is Susie Edwards.  I have no
20      questions.
21      MR. MATH: This is Leo Math.  I have no questions.
22      MS. VINING: This is Monica Vining.  I have no
23      questions.  I just want to reserve the right to object
24      that this deposition was taken after discovery had
25      expired.

PAGE 18

18

1  identify the specific attorney?
2  A   That's correct.
3  Q   Did the retirement system ever issue a notice, a written
4  notice of default to Terry Manufacturing?
5  A   No.
6  Q   Did it ever accelerate the note?
7  A   No.
8  Q   Am I correct, sir, that the initial payment under this
9  note was due on December 15, 1998?
10 A   Yes.
11 Q   And the note itself says June 15, 1998, is that correct?
12 A   The note itself says June 15, 1998, and the initial
13 payment was December 15, 1998, that's correct.
14 Q   Can you ascertain from these documents or anything else
15 in your file when the funding was actually made?
16 A   The funding would have been made on the 15th of June,
17 1998.
18 Q   Very good.
19      MR. BARRIERE: I think that concludes my questions,
20      sir.  Oh, I have actually one other.
21
22 MR. BARRIERE: (Continuing)
23 Q   At any time did you have contact with anyone associated
24 with Centas (Phonetic spelling) with respect to Terry
25 Manufacturing?

PAGE 20

20

1      MR. BARRIERE: Mr. Dickerson, thank you very much for
2      your time, sir.
3
4      (Whereupon, said proceeding was concluded at 12:25
5  p.m.)

LARRY DICKERSON                    7-8-05

Transcript of the Testimony of
# Martin Forcina

**Date taken:** July 12, 2005

# In Re: Terry Manufacturing, Inc.,

# Professional Shorthand Reporters, Inc.
**Phone: 504-529-5255**
**Fax: 504-5295257**
**Email: production@psrdocs.com**
**Internet: www.psrdocs.com**

In Re: Terry Manufacturing, Inc.,                                    Martin Forcina

```
        UNITED STATES BANKRUPTCY COURT
      FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                    NO. 03-32063-WRS
TERRY MANUFACTURING
COMPANY, INC.,
      DEBTOR             CHAPTER 7

IN RE:                    NO. 03-32213-WRS
TERRY UNIFORM COMPANY,
LLC,
      DEBTOR             CHAPTER 7

J. LESTER ALEXANDER, ADVERSARY PROCEEDING
III, TRUSTEE OF TERRY
MANUFACTURING COMPANY,    NO. 04-03061
INC., AND TERRY UNIFORM   C/W 04-03062
COMPANY, LLC              AND 04-03063

      Deposition of MARTIN J. FORCINA,
301 South Tryon Street, 2 Wachovia Center,
Charlotte, North Carolina 28202, taken in
the offices of Phelps Dunbar, 365 Canal
Street, Suite 2000, New Orleans, Louisiana,
on Tuesday, the 12th day of July, 2005.

APPEARANCES:

   HAND, ARENDALE, LLC
   (BY:  LOUIS NORVELL, ESQ.)
   1200 PARK PLACE TOWER
   2001 PARK PLACE NORTH
   BIRMINGHAM, ALABAMA  35203
      ATTORNEYS FOR CIT GROUP/COMMERCIAL
      SERVICES, INC.
```

Page 1

```
 1           * * *
 2     EXAMINATION INDEX
 3
 4                    Page
 5 EXAMINATION BY MS. DETERMAN: ........  5
 6           * * *
 7     INDEX OF EXHIBITS
 8                    Page
 9 Exhibit No. 1 .....................  6
10   Notice of Deposition & Subpoena
11 Exhibit No. 2 .....................  8
12   Documents produced by CIT
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1 APPEARANCES CONTINUED:
 2
 3 PHELPS DUNBAR
   (BY: KATHERINE M. DETERMAN, ESQ.)
   365 CANAL STREET, SUITE 2000
 4 NEW ORLEANS, LOUISIANA 70130-6534
 5   ATTORNEYS FOR TERRY MANUFACTURING
     COMPANY, INC. AND TERRY UNIFORM
 6   COMPANY, LLC
 7
   BALCH & BINGHAM
 8 (BY: JEREMY RETHERFORD, ESQ.)
   1910 SIXTH AVENUE NORTH, SUITE 2600
 9 BIRMINGHAM, ALABAMA 35203
   (Present via Telephone)
10
   ATTORNEYS FOR BANK OF WEDOWEE
11
12
   ALSO PRESENT:
13
   JAMES HEAD, ESQ.
14
15 REPORTED BY:
16   PAT KENNEDY QUINTINI
     CERTIFIED COURT REPORTER
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1        S T I P U L A T I O N
 2     It is stipulated and agreed by and
 3 between counsel for the parties hereto that
 4 the deposition of the aforementioned witness
 5 is hereby being taken for all purposes
 6 allowed under the Federal Rules of Civil
 7 Procedure, in accordance with law, pursuant
 8 to notice;
 9     That the formalities of reading and
10 signing are specifically not waived;
11     That the formalities of filing,
12 sealing, and certification are specifically
13 waived;
14     That all objections, save those as to
15 the form of the question and the
16 responsiveness of the answer, are hereby
17 reserved until such time as this deposition,
18 or any part thereof, may be used or sought
19 to be used in evidence.
20           * * *
21     PAT KENNEDY QUINTINI, Certified
22 Shorthand Reporter, in and for the State of
23 Louisiana, officiated in administering the
24 oath to the witness.
25
```

Page 4

1 (Pages 1 to 4)

In Re: Terry Manufacturing, Inc.,                                             Martin Forcina

| | |
|---|---|
| 1       **MARTIN J. FORCINA,** | 1  manager. |
| 2  having been duly sworn by the above | 2     **Q.** Of what division? |
| 3  mentioned court reporter, did testify as | 3     **A.** Of the Charlotte wholesale credit |
| 4  follows: | 4  department. |
| 5  **EXAMINATION BY MS. DETERMAN:** | 5     **Q.** And what is the scope of your |
| 6     **Q.** This is Kathy Determan at Phelps | 6  responsibilities in that position? |
| 7  Dunbar appearing for J. Lester Alexander the | 7     **A.** I oversee a portfolio of clients |
| 8  trustee of Terry Manufacturing and Terry | 8  who -- their customers accounts, the |
| 9  Uniform Company. | 9  indebtedness owed to CIT to the factory of |
| 10    **MS. DETERMAN:** | 10  their accounts receivable. |
| 11     Does anybody else want to make an | 11     **Q.** And how long have you been in your |
| 12  appearance for the record? | 12  current position? |
| 13    **MR. RETHERFORD:** | 13     **A.** Oh, gee, wow. |
| 14     This is Jeremy Retherford with the | 14     **Q.** Approximately. |
| 15  law firm of Balch & Bingham representing the | 15     **A.** Probably -- I would say probably |
| 16  Bank of Wedowee. | 16  close to 20 years. |
| 17    **MS. DETERMAN:** | 17     **Q.** And in the course of your |
| 18     Lou, do you want to reserve the | 18  employment as a vice president and division |
| 19  witness' right to read and sign the | 19  manager, did you have any responsibility for |
| 20  deposition? | 20  the Terry Manufacturing Company, Inc. |
| 21    **MR. NORVELL:** | 21  account? |
| 22     Yes, we will reserve the right to | 22     **A.** I didn't have any day-to-day |
| 23  read and sign. | 23  responsibility but it was in my group, yes. |
| 24  **EXAMINATION BY MS. DETERMAN:** | 24    **MS. DETERMAN:** |
| 25     **Q.** Okay. Mr. Forcina -- | 25     I would like at this time to |
|                       Page 5 |                       Page 7 |

| | |
|---|---|
| 1    **MS. DETERMAN:** | 1  introduce into the record the documents that |
| 2     First I'd like to introduce into | 2  were produced by CIT as in globo Exhibit 2. |
| 3  the record the notices of depositions and | 3     (Exhibit No. 2 marked for identification.) |
| 4  subpoenas and all attached exhibits and they | 4     Can you identify these documents |
| 5  will be marked as Exhibit 1. | 5  for me? |
| 6    (Exhibit No. 1 marked for identification.) | 6    **MR. NORVELL:** |
| 7  **EXAMINATION BY MS. DETERMAN:** | 7     Kathy, if we can just clarify. We |
| 8     **Q.** Mr. Forcina, for the record, would | 8  are talking about the packet of seven |
| 9  you state your full name and address? | 9  documents that start off with this month in |
| 10     **A.** Martin J. Forcina, 301 South Tryon | 10  July 2003? |
| 11  Street, 2 Wachovia Center, Charlotte, North | 11    **MS. DETERMAN:** |
| 12  Carolina 28202. | 12     Right. |
| 13     **Q.** And are you currently employed? | 13    **MR. NORVELL:** |
| 14     **A.** Yes. | 14     The second document is the year |
| 15     **Q.** And by whom are you employed? | 15  end 2002. The third one is the year end |
| 16     **A.** CIT. | 16  2001. The fourth one is year end 2000. The |
| 17     **Q.** Where is that located? Is it the | 17  fifth one is year end 1999. Sixth is year end |
| 18  same address? | 18  1998. And the seventh document is some type |
| 19     **A.** Yes. | 19  of a, apparently a print screen document |
| 20     **Q.** And how long have you been | 20  with a Customer Summary July 1, 2005 at the |
| 21  employed at CIT? | 21  top. Are these the documents that we are |
| 22     **A.** Since July of 1977. | 22  referring to? |
| 23     **Q.** And what is your current position | 23    **MS. DETERMAN:** |
| 24  at CIT? | 24     Yes. |
| 25     **A.** I'm a vice president, division | 25    **MR. NORVELL:** |
|                       Page 6 |                       Page 8 |

2 (Pages 5 to 8)

In Re: Terry Manufacturing, Inc.,                                      Martin Forcina

| | |
|---|---|
| 1      Okay. | 1      A.  Most likely. |
| 2      THE WITNESS: | 2      Q.  Going to the next page of the |
| 3      Can you please repeat the | 3   customer review, could you state the balance |
| 4   question? | 4   owed by Terry Manufacturing as of |
| 5   EXAMINATION BY MS. DETERMAN: | 5   December 31, 2002? |
| 6      Q.  Yes.  Can you identify these | 6      A.  83,794. |
| 7   documents for me the ones just described by | 7      Q.  And would that be the same balance |
| 8   Mr. Norvell? | 8   owed as of January 1, 2003? |
| 9      A.  Yes, these documents are a | 9      A.  Most likely. |
| 10   snapshot of what was outstanding to CIT by | 10      Q.  And as of going to the next page |
| 11   Terry Manufacturing on the dates stated. | 11   of the customer review for the month ended |
| 12      Q.  Were these documents kept in the | 12   July 2003, could you state the balance owed |
| 13   normal course of CIT's business? | 13   as of July 7, 2003, the date Terry |
| 14      A.  Yes. | 14   Manufacturing filed bankruptcy to CIT? |
| 15      Q.  And did you assist or supervise in | 15      A.  It would be 108,748. |
| 16   the preparation of these documents? | 16      Q.  Is that as of July 30? |
| 17      A.  Yes. | 17      A.  This document is as of the end of |
| 18      Q.  Referring now to year end customer | 18   the month. |
| 19   review 1998, could you state for the record | 19      Q.  Uh-huh. |
| 20   how much Terry Manufacturing owed to CIT as | 20      A.  So if he filed bankruptcy on |
| 21   of January 1? | 21   July 7, the balance would be there through |
| 22      A.  That should be December 31. | 22   the entire month. |
| 23      Q.  December 31, 1998? | 23      Q.  That balance would be $108,748? |
| 24      A.  Zero. | 24      A.  Correct. |
| 25      Q.  And based on the customer review | 25      MS. DETERMAN: |
|                                    Page 9 |                                   Page 11 |

| | |
|---|---|
| 1   year end 1999, could you state for the | 1      I have no further questions. |
| 2   record how much was owed by Terry | 2      MR. RETHERFORD: |
| 3   Manufacturing to CIT as of December 31, | 3      I have no questions. |
| 4   1999? | 4 |
| 5      A.  12,000 -- no, that was the | 5   (Whereupon, the deposition was concluded.) |
| 6   total -- the balance was $1,052. | 6 |
| 7      Q.  And would that be the same balance | 7      *   *   * |
| 8   owed as of January 1, 2000? | 8 |
| 9      A.  Most likely. | 9 |
| 10      Q.  And now referring to customer | 10 |
| 11   review year end 2000, could you state the | 11 |
| 12   balance owed by Terry Manufacturing to CIT | 12 |
| 13   on December 31, 2000? | 13 |
| 14      A.  $17,902. | 14 |
| 15      Q.  And would that be the same balance | 15 |
| 16   owed as of January 1, 2001? | 16 |
| 17      A.  Most likely. | 17 |
| 18      Q.  Going to the next page of the | 18 |
| 19   customer review year end 2001, could you | 19 |
| 20   state the balance owed by Terry | 20 |
| 21   Manufacturing to CIT as of December 31, | 21 |
| 22   2001? | 22 |
| 23      A.  5,794. | 23 |
| 24      Q.  Would that be the same balance | 24 |
| 25   owed on January 1, 2002? | 25 |
|                                   Page 10 |                                   Page 12 |

3  (Pages 9 to 12)

In Re: Terry Manufacturing, Inc.,                                    Martin Forcina

```
 1
 2
 3
 4        WITNESS' CERTIFICATE
 5
 6
 7      I have read or have had the foregoing
 8   testimony read to me and hereby certify that
 9   it is a true and correct transcription of my
10   testimony with the exception of any attached
11   corrections or changes.
12
13
14
15
16
17      _____
18      Martin J. Forcina
19
20   PLEASE INDICATE
21   ( ) NO CORRECTIONS
22   ( ) CORRECTIONS; ERRATA SHEET(S) ENCLOSED
23
24
25
                                    Page 13
```

```
 1        REPORTER'S CERTIFICATE
 2
 3      I, Pat Kennedy Quintini, CCR, Certified
 4   Court Reporter, State of Louisiana, do
 5   hereby certify that the above-named witness,
 6   after having been duly sworn by me to
 7   testify to the truth, did testify as
 8   hereinabove set forth.
 9      That this testimony was reported by me
10   in the stenotype reporting method and
11   transcribed thereafter by me on computer,
12   and that same is a true and correct
13   transcript to the best of my ability and
14   understanding.
15      That I am not of counsel, nor related
16   to counsel or the parties hereto, and in no
17   way interested in the outcome of this
18   matter.
19
20
21
22      _____
23      PAT KENNEDY QUINTINI
        CERTIFIED COURT REPORTER
24
25
                                    Page 14
```

4  (Pages 13 to 14)

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

IN RE:                          )
                                )
TERRY MANUFACTURING             ) NO. 03-32063-WRS
  COMPANY, INC.                 )
                                ) CHAPTER 7
      Debtor                    )
                                )
_____

IN RE:                          )
                                )
TERRY UNIFORM                   ) NO. 03-32213-WRS
  COMPANY, LLC,                 )
                                ) CHAPTER 7
      Debtor.                   )
_____

J. LESTER ALEXANDER,            )
III, TRUSTEE OF                 )
TERRY MANUFACTURING             )
COMPANY, INC., AND              ) ADVERSARY
TERRY UNIFORM COMPANY,          ) PROCEEDING
LLC,                            ) NO. 04-03135
                                )
VERSUS                          )
                                )
DELONG, CALDWELL,               )
NOVOTNY & BRIDGERS,             )   **ORIGINAL**
L.L.C. AND EARNEST              )
H. DELONG, JR.                  )

      Telephone deposition of DENIS MATTHEW
GOLDEN, taken on Thursday, the 14th day of
July, 2005.
APPEARANCES:

            PHELPS DUNBAR, L.L.P.
            (By: Katherine M. Determan, Esq.)
            365 Canal Street, Suite 2000
            New Orleans, Louisiana 70130

            ATTORNEYS FOR J. LESTER ALEXANDER,
            III, TRUSTEE OF TERRY
            MANUFACTURING COMPANY, INC., AND
            TERRY UNIFORM COMPANY, L.L.C.

(Appearances cont'd on next page)

J. Lester Alexander, III v. Delong, Caldwell, Novotny & Bridges, et al                    Denis Golden

Page 2

```
 1    APPEARANCES CONTINUED:

 2              OTTERBOURG, STEINDLER, HOUSTON &
                ROSE, P.C.
 3              (By: Stan Lane, Esquire)
                230 Park Avenue
 4              New York, New York  10160

 5              ATTORNEYS FOR MILLIKEN & COMPANY

 6              BALCH & BINGHAM, LLP
                (By: Jeremy Rutherford, Esquire)
 7              1901 Sixth Avenue North
                Suite 2600
 8              Birmingham, Alabama  35203

 9              ATTORNEYS FOR THE BANK OF WEDOWEE

10              MELTON, ESPY & WILLIAMS, P.C.
                (By: Susan Edwards, Esquire)
11              301 Adams Avenue
                Montgomery, Alabama  36104
12
                ATTORNEYS FOR EARNEST DELONG AND
13              DELONG, CALDWELL, NOVOTNY &
                BRIDGERS, L.L.C.
14
      ALSO PRESENT:
15
                Mike Reich
16
      REPORTED BY:
17
                BECKY C. DAME, CCR, RPR
18              CERTIFIED COURT REPORTER

19                     *    *    *

20                 INDEX OF EXHIBITS

21                                          Page

22    Exhibit No. 1  ....................   8

23    Subpoenas

24    Exhibit No. 2  ....................   8

25    Accounts Receivable Trial Balance
```

J. Lester Alexander, III v. Delong, Caldwell, Novotny & Bridges, et al                    Denis Golden

Page 3

1          S T I P U L A T I O N

2

3          It is stipulated and agreed by and

4    between counsel for the parties hereto that

5    the deposition of the aforementioned witness

6    is hereby being taken for all purposes

7    allowed under the Federal Rules of Civil

8    Procedure, in accordance with law, pursuant

9    to notice;

10          That the formalities of reading

11   and signing are specifically waived;

12          That the formalities of sealing,

13   certification and filing are specifically

14   waived;

15          That all objections, save those as

16   to the form of the question and the

17   responsiveness of the answer, are hereby

18   reserved until such time as this deposition,

19   or any part thereof, may be used or sought

20   to be used in evidence.

21          *        *        *        *

22          BECKY C. DAME, Certified Court

23   Reporter in and for the State of Louisiana,

24   officiated in administering the oath to the

25   witness.

Page 4

1

2               DENIS MATTHEW GOLDEN,

3     after having been first duly sworn by the

4     above-mentioned court reporter, did

5     testify as follows:

6         MS. DETERMAN:

7              For appearances purposes this is

8     Katherine Determan of Phelps Dunbar,

9     representing J. Lester Alexander, III,

10    Trustee for Terry Manufacturing Company,

11    Inc.

12        MR. RUTHERFORD:

13             This is Jeremy Rutherford

14    representing Bank of Wedowee.

15        MS. EDWARDS:

16             This is Susie Edwards at Melton,

17    Espy & Williams, representing Earnest Delong

18    and the law firm of Delong, Caldwell,

19    Novotny & Bridges.

20    EXAMINATION BY MS. DETERMAN:

21        Q    Mr. Golden, will you please state

22    your full name and address for the record?

23        A    Sure.  Denis, D-e-n-i-s, Matthew,

24    M-a-t-t-h-e-w, Golden.  My home address is

25    200 West 21st Street, Apartment 3A, New

Page 5

1    York, New York, 10011.

2        Q    And Mr. Golden, are you currently

3    employed?

4        A    I am.

5        Q    And where are you employed?

6        A    I'm employed at Milliken &

7    Company.

8        Q    And where is that company located?

9        A    Our New York office is at 1045

10   Sixth Avenue, New York, New York, 10018.

11       Q    And how long have you been

12   employed at Milliken.

13       A    I've been employed at Milliken for

14   21 years.

15       Q    And what is your current position

16   at Milliken?

17       A    I am general credit manager at

18   Milliken & Company.

19       Q    And as general credit manager,

20   would you have had responsibility or any

21   supervision over the Terry Manufacturing

22   Company, Inc. account with Milliken?

23       A    I would.

24       Q    And what year did that

25   responsibility begin?

Page 6

1          A     Approximately 1990.

2          Q     At this time I would like to

3     introduce into the record the accounts

4     receivable trial balance that was produced

5     by Milliken.  Are you familiar with this

6     document?

7          A     I am.

8          Q     And are these documents kept in

9     the ordinary course of Milliken's business?

10         A     Yes.

11         Q     Did you assist or supervise in the

12    preparation of these documents?

13         A     I did not personally.

14         Q     But can you attest to their

15    accuracy?

16         A     Yes.

17         Q     Could you please state for me the

18    balance owed by Terry Manufacturing to

19    Milliken as of January 1st, 1999?

20         A     I have December 27th, 1999.

21         Q     Okay.  Could you state that

22    balance for me, please?

23         A     $357,713.96.

24         Q     And as of December 27th, 2000,

25    could you tell me the balance owed by Terry

Page 7

1    Manufacturing to Milliken?

2        A    I have as of January 2nd, 2001,

3    the amount owing to Milliken as $723,021.10.

4        Q    And what date would you have for

5    the balance owing as of 2002?

6        A    At the end of 2002?

7        Q    Well, do you have a balance for

8    January 2nd, 2002?

9        A    I have December 31, 2001.

10       Q    Okay.  What would that balance be?

11       A    $537,031.18.

12       Q    And what date would you have a

13    balance for the beginning of the year in

14    2002, or the end of the year in 2001?

15       A    As of December 30th, 2002, the

16    balance was $272,305.20.

17       Q    And would that be the same balance

18    that would be owed as of January 1st, 2003,

19    the balance you stated for December 30th,

20    2002?

21       A    I have July 14th, 2003, balance.

22       Q    And what would that balance be?

23       A    $336,221.22.

24    MS. DETERMAN:

25        Thank you.

J. Lester Alexander, III v. Delong, Caldwell, Novotny & Bridges, et al

Denis Golden

Page 8

1            I have no more questions.

2        MR. RUTHERFORD:

3            This is Jeremy Rutherford.  I have

4    no questions.

5        MS. EDWARDS:

6            This is Susie Edwards.  I have no

7    questions.

8        MS. DETERMAN:

9            Thank you all.

10       MR. LANE:

11           We'll waive reading and signing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

* * * *

CASE NO. 03-32063-WRS

CHAPTER 7

IN RE:

TERRY MANUFACTURING COMPANY, INC.

* * * *

CASE NO. 03-32213-WRS

CHAPTER 7

IN RE:

TERRY UNIFORM COMPANY, LLC

* * * *

ADVERSARY PROCEEDING

NO. 04-03061

c/w NO. 04-03062 and NO. 04-03063

J. LESTER ALEXANDER, III,
TRUSTEE OF TERRY MANUFACTURING COMPANY,
INC. AND TERRY UNIFORM COMPANY, LLC

VERSUS

THE PEOPLES BANK                    ORIGINAL

* * * *

ADVERSARY PROCEEDING

NO. 04-03135

J. LESTER ALEXANDER, III,
TRUSTEE OF TERRY MANUFACTURING COMPANY,
INC. AND TERRY UNIFORM COMPANY, LLC

In Re: Terry Manufacturing Co., Inc.,                                    Patrick Kelley

Page 2

1    VERSUS

2    DELONG, CALDWELL, NOVOTNY & BRIDGERS, LLC
     AND EARNEST H. DELONG, JR.
3

4                    * * * *

5              ADVERSARY PROCEEDING

6                 NO. 05-03042

7    J. LESTER ALEXANDER, III,
     TRUSTEE OF TERRY MANUFACTURING COMPANY, INC.
8    AND TERRY UNIFORM COMPANY, LLC

9    VERSUS

10   N.D. HORTON AND JAMES. M. REYNOLDS, III

11

12                   * * * *

13             ADVERSARY PROCEEDING

14                NO. 04-03114

15   J. LESTER ALEXANDER, III,
     TRUSTEE OF TERRY MANUFACTURING COMPANY, INC.
16   AND TERRY UNIFORM COMPANY, LLC

17   VERSUS

18   THE STEEL LAW FIRM, P.C. AND BRIAN STEEL

19                   * * * *

20       DEPOSITION OF PATRICK KELLEY, VIA
     TELEPHONE, TAKEN AT PHELPS DUNBAR, ON
21   FRIDAY, JULY THE 22ND, 2005.

22

23

24

25

Professional Shorthand Reporters, Inc.      1-800-536-5255      New Orleans, Baton Rouge, Shreveport

In Re: Terry Manufacturing Co., Inc.,                                    Patrick Kelley

Page 3

```
1     APPEARANCES:

2          PHELPS DUNBAR
           BY:  KATHERINE M. DETERMAN, ESQUIRE
3          365 CANAL STREET, SUITE 2000
           NEW ORLEANS, LOUISIANA 70130
4
5               COUNSEL FOR J. LESTER ALEXANDER,
                III, TRUSTEE OF TERRY MANUFACTURING
6               COMPANY, INC. AND TERRY UNIFORM
                COMPANY, LLC
7
8          MELTON, ESPY & WILLIAMS
           BY:  BEN ESPY, ESQUIRE
9          VIA TELEPHONE
           301 ADAMS AVENUE
10         MONTGOMERY, ALABAMA 35203

11              COUNSEL FOR DELONG, CALDWELL,
                NOVOTNY & BRIDGERS
12
13         MOORE, CLARK, DUVALL & RODGERS
           BY:  JIM MOORE, ESQUIRE
14         VIA TELEPHONE
           2829 OLD DAWSON ROAD
15         ALBANY, GEORGIA 31708

16
17              COUNSEL FOR DARWOOD MANUFACTURING

18
19         BALCH & BINGHAM
           BY:  JEREMY RUTHERFORD, ESQUIRE
20         VIA TELEPHONE
           1901 SIXTH AVENUE NORTH, SUITE 2600
21
22              COUNSEL FOR BANK OF WIDALI

23     REPORTED BY:

24     KRISTINA D. REA
       Certified Court Reporter
25
```

In Re: Terry Manufacturing Co., Inc.,                                    Patrick Kelley

Page 4

1                        EXAMINATION INDEX

2                                              PAGE

3       EXAMINATION BY MS. DETERMAN...............5

4

5

6                         EXHIBIT INDEX

7                                              PAGE

8       EXHIBIT NO. 1............................5
        Re-Notices of Deposition
9

10      EXHIBIT NO. 2............................6
        Documents Produced by Mr. Kelley
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                          PATRICK KELLEY,

2       after having been first duly sworn by the

3       above-mentioned court reporter, did testify

4       as follows:

5       EXAMINATION BY MS. DETERMAN:

6            Q    Mr. Kelley, this is Katherine

7       Determan.  I represent J. Lester Alexander,

8       the trustee in the Terry Manufacturing

9       bankruptcy matter.

10               At this time, I would like to

11      introduce the re-notices of deposition into

12      the record for the court reporter.

13               Mr. Kelly, would you please state

14      your full name and address for the record?

15           A    Do you want my home address or

16      what?

17           Q    Business is fine.

18           A    Patrick D. Kelley, 620 West

19      Railroad Street South, Pelham, Georgia

20      31779.

21           Q    Mr. Kelley, are you currently

22      employed?

23           A    Yes.

24           Q    By whom are you employed?

25           A    Darwood Manufacturing.

Page 6

1      Q      Where is that company located?

2      A      Same address.

3      Q      And did Darwood do business with

4    Terry Manufacturing Company, Inc.?

5      A      Yes.

6      Q      And how long have you been

7    employed by Darwood?

8      A      Since 1986.  So 18, 19 years.

9      Q      What is your current position at

10   that company?

11     A      I'm the vice-president and

12   controller.

13     Q      During the scope and course of

14   your employment at Darwood, did you have any

15   responsibility or oversight for the Terry

16   Manufacturing account?

17     A      Yes, I did.

18     Q      And what year did that

19   responsibility begin?

20     A      I'm not really sure.  Probably

21   around '90 or '92, somewhere in that area.

22     Q      And I would like to introduce into

23   evidence the documents that you produced,

24   which appear to me to be accounts receivable

25   aging reports and customer balance reports.

In Re: Terry Manufacturing Co., Inc.,                    Patrick Kelley

Page 7

1          A     Yes, ma'am.

2          Q     Can you identify those documents?

3          A     Okay.  There is one that has my

4     handwritten note on it.  It says 7/07/03,

5     $67,689.13.  That's what you had asked for,

6     or my understanding of what you asked for,

7     of what Terry owed us as of that date.

8          Q     Right.  Are you generally familiar

9     with these documents?

10         A     Yes, ma'am.

11         Q     And were they prepared in the

12    ordinary course of Darwood's business?

13         A     Yes, ma'am.

14         Q     And did you assist or supervise or

15    oversee the preparation of these documents?

16         A     Yes, ma'am.

17         Q     And could you state for the record

18    the balance owed by Terry Manufacturing to

19    Darwood as of January 1st, 1999?

20         A     I think that's the one that we had

21    told you that I could not locate.  And for

22    me to be able to locate those documents, I

23    would have to go back through a year's worth

24    of general ledger entries and there are item

25    numbers, et cetera.

Page 8

1      Q      Could you tell me as of

2   January 1st, or January 6th maybe, how many

3   Terry Manufacturing owed to Darwood?

4      MR. MOORE:

5           For what year?

6      MS. DETERMAN:

7           I'm sorry.  Of 2000.

8   EXAMINATION BY MS. DETERMAN:

9      Q      I believe you produced a document

10  --

11     A      Here it is.  I'm just trying get

12  my notes straight.  $80,611.80.

13     Q      And is that balance as of

14  January 6, 2000?

15     A      Right.

16     Q      Could you tell me as of January 5,

17  2001 how much Terry Manufacturing owed to

18  Darwood?

19     A      $128,083.97.

20     Q      January 5th, 2001?

21     A      Right.

22     Q      And do you know the balance owed

23  by Terry Manufacturing to Darwood as of

24  sometime in the beginning of January 2002?

25     A      Yes.  It is $128,592.45.

In Re: Terry Manufacturing Co., Inc.,                           Patrick Kelley

Page 9

1      Q    What date would that be?  What

2   date and month?

3      A    1/05/02.

4      Q    Do you know the balance owed by

5   Terry Manufacturing to Darwood as of

6   January 5, 2003?

7      A    I don't think that was asked for,

8   so I don't have it in front of me. I think

9   you asked for July 7th, 2003.

10      Q    I think we asked for both.  But

11   it's my understanding that your testimony is

12   as of July 7th, 2003 that Terry owed you

13   $67,689.13; is that correct?

14      A    That's correct.

15   MS. DETERMAN:

16          I pass the witness.  I have no

17   other questions.

18   MR. RUTHERFORD:

19          This is Jeremy Rutherford.  I have

20   no questions.

21   MR. MOORE:

22          I have nothing for witness.  This

23   is Jim Moore.

24   MR. ESPY:

25          This is Ben Espy.  I have nothing

Page 10

1     for witness.

2          MS. DETERMAN:

3               Thank you all.

4     (Whereupon the deposition was concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcript of the Testimony of
# Diane Murphy

**Date taken:** July 12, 2005

# In Re: Terry Manufacturing, Inc.,

**Professional Shorthand Reporters, Inc.**
**Phone: 504-529-5255**
**Fax: 504-5295257**
**Email: production@psrdocs.com**
**Internet: www.psrdocs.com**

In Re: Terry Manufacturing, Inc.,                                                      Diane Murphy

---

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                NO. 03-32063-WRS
TERRY MANUFACTURING
COMPANY, INC.,
        DEBTOR                        CHAPTER 7

IN RE:                                NO. 03-32213-WRS
TERRY UNIFORM COMPANY,
LLC,
        DEBTOR                        CHAPTER 7

J. LESTER ALEXANDER, ADVERSARY PROCEEDING
III, TRUSTEE OF TERRY
MANUFACTURING COMPANY,                NO. 04-03061
INC., AND TERRY UNIFORM               C/W 04-03062
COMPANY, LLC                          AND 04-03063

Deposition of DIANE MURPHY,
812 Fanshaw Street, Philadelphia,
Pennsylvania 19111, taken in the offices of
Phelps Dunbar, 365 Canal Street, Suite 2000,
New Orleans, Louisiana, on Tuesday, the 12th
day of July, 2005.

APPEARANCES:

WOLF, BLOCK, SCHARR & SOLIS-COHEN, LLP
(BY: MICHAEL TEMIN, ESQ.)
1650 ARCH STREET, 22ND FLOOR
PHILADELPHIA, PENNSYLVANIA  19103
(Present Via Telephone)
        ATTORNEYS FOR HLC INDUSTRIES, INC.

Page 1

---

1              * * *
2      EXAMINATION INDEX
3
4                        Page
5  EXAMINATION BY MS. DETERMAN: ........  6
6              * * *
7      INDEX OF EXHIBITS
8                        Page
9  Exhibit No. 1 ......................  8
10  Document produced by HLC showing
11  accounts receivable aging for Terry
12  Manufacturing
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

---

1  APPEARANCES CONTINUED:
2
   PHELPS DUNBAR
3  (BY: KATHERINE M. DETERMAN, ESQ.)
   365 CANAL STREET, SUITE 2000
4  NEW ORLEANS, LOUISIANA 70130-6534
5    ATTORNEYS FOR TERRY MANUFACTURING
     COMPANY, INC. AND TERRY UNIFORM
6    COMPANY, LLC
7
   BALCH & BINGHAM
8  (BY: JEREMY RETHERFORD, ESQ.)
   1910 SIXTH AVENUE NORTH, SUITE 2600
9  BIRMINGHAM, ALABAMA 35203
   (Present via Telephone)
10
     ATTORNEYS FOR BANK OF WEDOWEE
11
12
13
14  REPORTED BY:
15    PAT KENNEDY QUINTINI
      CERTIFIED COURT REPORTER
16
17
18
19
20
21
22
23
24
25

Page 2

---

1          S T I P U L A T I O N
2      It is stipulated and agreed by and
3  between counsel for the parties hereto that
4  the deposition of the aforementioned witness
5  is hereby being taken for all purposes
6  allowed under the Federal Rules of Civil
7  Procedure, in accordance with law, pursuant
8  to notice;
9      That the formalities of reading and
10  signing are specifically not waived;
11      That the formalities of filing,
12  sealing, and certification are specifically
13  waived;
14      That all objections, save those as to
15  the form of the question and the
16  responsiveness of the answer, are hereby
17  reserved until such time as this deposition,
18  or any part thereof, may be used or sought
19  to be used in evidence.
20              * * *
21      PAT KENNEDY QUINTINI, Certified
22  Shorthand Reporter, in and for the State of
23  Louisiana, officiated in administering the
24  oath to the witness.
25

Page 4

---

1 (Pages 1 to 4)

In Re: Terry Manufacturing, Inc.,                                    Diane Murphy

| | |
|---|---|
| 1　　　DIANE MURPHY, | 1　　Q.  And how long have you been |
| 2　having been duly sworn by the above | 2　employed with HLC? |
| 3　mentioned court reporter, did testify as | 3　　A.  Approximately 13 years. |
| 4　follows: | 4　　Q.  And what is your current position |
| 5　　MS. DETERMAN: | 5　with that company? |
| 6　　　Mike, if you and Jeremy would | 6　　A.  Controller. |
| 7　agree, let's make appearances for the | 7　　Q.  How long have you held that |
| 8　record. | 8　position? |
| 9　　　I'm Katherine Determan from Phelps | 9　　A.  Five years. |
| 10　Dunbar.  We represent the trustee, J. | 10　　Q.  And what was your position |
| 11　Lester Alexander in these matters in which | 11　previous to being controller? |
| 12　we are taking this deposition. | 12　　A.  Accounting clerk. |
| 13　　MR. RETHERFORD: | 13　　Q.  And in your current position as |
| 14　　　This is Jeremy Retherford with the | 14　controller, what is the scope of your |
| 15　law firm of Balch & Bingham.  I represent | 15　employment and your job duties in essence? |
| 16　the Bank of Wedowee. | 16　　A.  I maintain the financial records |
| 17　　MR. TEMIN: | 17　and record financial transactions for the |
| 18　　　Michael Temin of Wolf, Block, | 18　company. |
| 19　Scharr & Solis-Cohen, LLP.  I represent HLC | 19　　Q.  And during the scope and course of |
| 20　Industries, Inc., the deponent. | 20　your employment, did you have any |
| 21　　MS. DETERMAN: | 21　responsibility or oversight for the Terry |
| 22　　　If you all would agree, I would | 22　Manufacturing Company, Inc. account? |
| 23　like to stipulate that this deposition is | 23　　A.  Yes, I did. |
| 24　being taken for all purposes allowed under | 24　　Q.  And what was that responsibility? |
| 25　the Federal Rules of Civil Procedure in | 25　　A.  I would apply payments, cash |
| Page 5 | Page 7 |

| | |
|---|---|
| 1　accordance with the law. | 1　payments against their account and check |
| 2　　　Does anybody have an objection to | 2　their credit. |
| 3　that? | 3　　Q.  And what year did you first have |
| 4　　MR. RETHERFORD: | 4　any oversight over the Terry Manufacturing |
| 5　　　I don't know what it means but I | 5　account? |
| 6　don't have an objection. | 6　　A.  I don't remember. |
| 7　　MS. DETERMAN: | 7　　Q.  Does it go back as far as 1999? |
| 8　　　Do you want to reserve the right | 8　　A.  Yes, it would have. |
| 9　to read and sign? | 9　　Q.  Okay.  Thank you.  I would like to |
| 10　　MR. RETHERFORD: | 10　introduce into the record in globo |
| 11　　　Yes. | 11　Exhibit 1, which were documents produced by |
| 12　EXAMINATION BY MS. DETERMAN: | 12　HLC that show the accounts receivable aging |
| 13　　Q.  Ms. Murphy, could you please state | 13　for the Terry Manufacturing account. |
| 14　your name and address for the record? | 14　(Exhibit No. 1 marked for identification.) |
| 15　　A.  Diane Murphy, 812 Fanshaw Street, | 15　　　Ms. Murphy, can you identify those |
| 16　Philadelphia, Pennsylvania 19111. | 16　documents? |
| 17　　Q.  Are you currently employed? | 17　　A.  They are invoices in which HLC |
| 18　　A.  Yes. | 18　shipped goods to Terry Manufacturing. |
| 19　　Q.  By whom are you employed? | 19　　Q.  Were these documents kept in the |
| 20　　A.  HLC Industries. | 20　ordinary course of HLC's business? |
| 21　　Q.  And where is that company located? | 21　　A.  Yes. |
| 22　　A.  Bala Cynwyd, Pennsylvania. | 22　　Q.  Are you familiar with these |
| 23　　Q.  And what is that company's | 23　documents? |
| 24　address? | 24　　A.  Not individually. |
| 25　　A.  Four East Montgomery Avenue. | 25　　Q.  Did you in any way assist or |
| Page 6 | Page 8 |

2  (Pages 5 to 8)

In Re: Terry Manufacturing, Inc.,                                    Diane Murphy

```
 1   supervise in the preparation of these
 2   documents?
 3       A.  Of the invoices?  I may have.  I'm
 4   not sure.
 5       Q.  As controller of the company,
 6   would you have supervision over and be
 7   knowledgable to testify regarding how much
 8   money Terry Manufacturing owed to HLC on
 9   certain dates?
10       A.  Yes.
11       Q.  I would refer you to Page 2 of 13
12   in this accounts receivable aging that you
13   forwarded to us.  Do you know what I'm
14   talking about?
15       A.  Yes.
16       Q.  Could you state for us the balance
17   owed to Terry Manufacturing -- the balance
18   owed to HLC by Terry Manufacturing as of
19   January 1, 19 -- or as of December 31, 1998?
20       A.  As of December 31, 1998, Terry
21   Manufacturing owed HLC Industries
22   $2,549,427.36.
23       Q.  And would that have been -- would
24   that balance have been owed to HLC as of
25   January 1, 1999?
                                      Page 9
```

```
 1       Q.  And would this have been the same
 2   balance that Terry Manufacturing owed to HLC
 3   as of January 1, 2002?
 4       A.  Yes.
 5       Q.  And turning to Page 6 of 13 under
 6   the accounts receivable aging report, would
 7   you state for the record how much money
 8   Terry Manufacturing owed to HLC as of
 9   December 31, 2002?
10       A.  $2,422,084.40.
11       Q.  And would that be the same balance
12   that would have been owed to HLC as of
13   January 1, 2003?
14       A.  Yes.
15       Q.  And turning to Page 7 out of 13 on
16   the accounts receivable aging sheet, would
17   you state for the record how much money HLC
18   was owed by Terry Manufacturing as of
19   June 30, 2003?
20       A.  $1,900,728.98.
21       Q.  Do you know whether that would be
22   the same balance owed to HLC as of July 7,
23   2003?
24       A.  I believe it is.
25       MS. DETERMAN:
                                     Page 11
```

```
 1       A.  Yes.
 2       Q.  And referring to Page 3 of 13 of
 3   that same exhibit under the accounts
 4   receivable aging, could you state the
 5   balance owed to HLC by Terry Manufacturing
 6   as of 12/31/99?
 7       A.  $2,606,749.82.
 8       Q.  And would that have been the same
 9   balance that would have been owed to HLC by
10   Terry Manufacturing as of January 1, 2000?
11       A.  Yes.
12       Q.  And turning to Page 4 of 13, could
13   you state for me the balance owed to HLC by
14   Terry Manufacturing as of 12/31/00?
15       A.  $1,740,137.78.
16       Q.  And would this have been the same
17   balance that would be owed to HLC by Terry
18   Manufacturing as of January 1, 2001?
19       A.  Yes.
20       Q.  And turning to Page 5 of 13 under
21   the accounts receivable aging document,
22   would you state for the record how much
23   money Terry Manufacturing owed to HLC as of
24   12/31/01?
25       A.  $2,261,215.72.
                                     Page 10
```

```
 1       Thank you.  I have no further
 2   questions.  I pass the witness.
 3       MR. TEMIN:
 4           I have no questions.
 5       MS. DETERMAN:
 6           Thank you.
 7
 8   (Whereupon, the deposition was concluded.)
 9
10           *   *   *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                     Page 12
```

                                      3  (Pages 9 to 12)

In Re: Terry Manufacturing, Inc.,                                          Diane Murphy

```
 1
 2
 3
 4        WITNESS' CERTIFICATE
 5
 6
 7      I have read or have had the foregoing
 8  testimony read to me and hereby certify that
 9  it is a true and correct transcription of my
10  testimony with the exception of any attached
11  corrections or changes.
12
13
14
15
16
17      _____
18      Diane Murphy
19
20  PLEASE INDICATE
21  ( ) NO CORRECTIONS
22  ( ) CORRECTIONS; ERRATA SHEET(S) ENCLOSED
23
24
25
                              Page 13
```

```
 1      REPORTER'S CERTIFICATE
 2
 3      I, Pat Kennedy Quintini, CCR, Certified
 4  Court Reporter, State of Louisiana, do
 5  hereby certify that the above-named witness,
 6  after having been duly sworn by me to
 7  testify to the truth, did testify as
 8  hereinabove set forth.
 9      That this testimony was reported by me
10  in the stenotype reporting method and
11  transcribed thereafter by me on computer,
12  and that same is a true and correct
13  transcript to the best of my ability and
14  understanding.
15      That I am not of counsel, nor related
16  to counsel or the parties hereto, and in no
17  way interested in the outcome of this
18  matter.
19
20
21
22      _____
23      PAT KENNEDY QUINTINI
        CERTIFIED COURT REPORTER
24
25
                              Page 14
```

4  (Pages 13 to 14)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                          )
                                )
TERRY MANUFACTURING             )   CASE NO. 03-32063-WRS
   COMPANY, INC.                )
                                )   CHAPTER 7
   Debtor                       )
                                )

IN RE:                          )
                                )   CASE NO. 03-32213-WRS
TERRY UNIFORM                   )
   COMPANY, LLC,                )   CHAPTER 7
                                )
   Debtor,                      )

J. LESTER ALEXANDER, III,       )
TRUSTEE OF                      )
TERRY MANUFACTURING             )
COMPANY, INC., AND              )   ADVERSARY PROCEEDING
TERRY UNIFORM COMPANY, LLC      )
                                )   NO. 04-03061
VERSUS                          )   c/w NO. 04-03062
                                )   and NO. 04-03063
                                )
THE PEOPLES BANK                )


DEPOSITION OF

DAVID NEVALA

     Produced, sworn, and examined in the offices of Williams &

Anderson, 111 Center Street, 22nd Floor, Little Rock, Arkansas

by telephonic communication with the witness, court reporter,

and attorney for Arkansas Department of Economic Development

being present at 111 Center Street, 22nd Floor, Little Rock,

Arkansas; and all others being present as listed below;

commencing at 1:35 p.m., on, July 8, 2005, in the above-

captioned case now pending in the United States Bankruptcy

Court, For the Middle District of Alabama; said deposition

being taken pursuant to provisions of the Federal Rules of

KAY BUTLER, CVR-CM, CCR
(501) 868-8134

2

Civil Procedure, for discovery and all other purposes, at the instance of counsel for J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc., and Terry Uniform Company, LLC.

It is stipulated and agreed that all forms and formalities as to the taking, transcribing, certification, and signing of said deposition in this action are hereby waived; however, the right to object to the testimony of the witness on the grounds of incompetency, irrelevancy and immateriality is expressly reserved, other than as to the form of questions as propounded to the witness, and may be hereinafter asserted if and when presented at the trial of this cause without the necessity of noting same at the time of taking of said deposition.


A P P E A R A N C E S:

    ON BEHALF OF ARKANSAS DEPARTMENT OF ECONOMIC DEVELOPMENT
    BY TELEPHONIC COMMUNICATION BEING PRESENT AT 111 CENTER
    STREET, 22ND FLOOR, LITTLE ROCK, ARKANSAS:

        JOHN KOOISTRA, III, Esquire
        WILLIAMS & ANDERSON, PLC
        111 Center Street, 22nd Floor
        Little Rock, Arkansas


    ON BEHALF OF BANK OF WEDOWEE BY TELEPONIC COMMUNICATION
    BEING PRESENT AT 1901 6TH AVENUE NORTH, SUITE 2600,
    BIRMINGHAM, ALABAMA:

        JEREMY RUTHERFORD, Esquire
        BOSCH & BINGHAM
        1901 6th Avenue North, Suite 2600
        Birmingham, Alabama 35203




                    KAY BUTLER, CVR-CM, CCR
                        (501) 868-8134

3

ON BEHALF OF STEEL LAW FIRM AND BRYAN STEEL BY TELEPHONIC
COMMUNICATION BEING PRESENT AT 21 EIGHTH STREET, ATLANTA,
GEORGIA:

    MONICA VINING, Esquire
    JONES & WALDEN, LLC
    21 Eighth Street
    Atlanta, Georgia 30309


ON BEHALF OF WOODY DELONG, FIRM OF DELONG, CALDWELL,
NOVOTNY and BRIÐGER, LLC BY TELEPHONIC COMMUNICATION
BEING PRESENT AT 301 ADAMS AVENUE, MONTGOMERY,
ALABAMA:

    SUSIE EDWARDS, Esquire
    MELTON, ESPY & WILLIAMS
    301 Adams Avenue
    Montgomery, Alabama 36103


ON BEHALF OF FIRST TUSKEGEE BANK BY TELEPHONIC
COMMUNICATION BEING PRESENT AT MONTGOMERY, ALABAMA:

    LEO MATH, Esquire
    ATTORNEY AT LAW
    P. O. Box 230759
    Montgomery, Alabama 36123

ON BEHALF OF J. LESTER ALEXANDER, III, TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC., AND TERRY UNIFORM COMPANY,
LLC, BY TELEPHONIC COMMUNICATION, BEING PRESENT AT 365
CANAL STREET, SUITE 2000, NEW ORLEANS, LOUISIANA:

    BRENT B. BARRIERE, Esquire
    PHELPS DUNBAR LLP
    365 Canal Street, Suite 2000
    New Orleans, LA 70130-6534

4

# I N D E X

|  | Page |
|---|---|
| Caption . . . . . . . . . . . . | 1 |
| Stipulations. . . . . . . . . . | 1 |
| Appearances . . . . . . . . . . | 2 |
| Index . . . . . . . . . . . . | 4 |
| Examination by Mr. Barriere . . . . . . . | 5 |
| Requests . . . . . . . . . . . | 14,17,19 |
| Reporter's Certificate . . . . . . . . | 22 |

# E X H I B I T S

|  | MARKED | APPENDED |
|---|---|---|
| Trustee's Exhibit 1 . . . . . . . . | 15 | Ex Tab 1 |
|     Proof of Claim and Attachments | | |
| Trustee's Exhibit 2 . . . . . . . . | 15 | Ex Tab 2 |
|     Printouts | | |

5

P R O C E E D I N G S

THEREUPON,

DAVID NEVALA,

having been called for examination by counsel for J. Lester

Alexander, III, Trustee, and having been first duly sworn by

the undersigned notary public, was examined and testified as

follows:

EXAMINATION BY COUNSEL FOR J. LESTER

ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING

COMPANY, INC., AND TERRY UNIFORM COMPANY, INC.,

AND TERRY UNIFORM COMPANY, LLC

BY MR. BARRIERE:

Q   Good afternoon, sir.  Let me re-introduce myself.  My name

is Brent Barriere.  I represent the Trustee of Terry

Manufacturing, J. Lester Alexander.  I'll be asking you some

questions this afternoon.  We anticipate this will be a brief

deposition.  If, at any time during the course of the

deposition, you find my questions to be ambiguous or confusing,

please so advise me, and I'll attempt to restate them.

        MR. BARRIERE:  As the several attorneys on the line

    are participating by telephone, and the court reporter

    cannot identify who is speaking, I would ask that

    whoever's asking a question first identify themselves, and

    likewise, anyone raising an objection identify themselves

    so the court reporter can accurately transcribe the

KAY BUTLER, CVR-CM, CCR
(501) 868-8134

6

1        identity of the speaker.

2   BY MR. BARRIERE:

3   Q    Sir, would you state your full name for the record?

4   A    David Nevala.

5   Q    And by whom are you employed, sir?

6   A    The Arkansas Department of Economic Development.

7   Q    And what is your position with that department?

8   A    I'm currently a loan officer with that department.

9   Q    All right.  And what is your business address, sir?

10  A    1 State Capitol Mall, Little Rock, Arkansas, 72201.

11  Q    All right.  In connection with today's deposition, we

12  asked that the Department designate a representative to speak

13  with respect to -- or testify with respect to indebtedness owed

14  to the Department by Terry Manufacturing.  Have you been so

15  designated?

16  A    Yes.

17  Q    All right.  When were you first employed by the State

18  Department of Economic Development?

19  A    I've been employed since July of 1983.

20  Q    1983.  What role, if any, did you play in the extension of

21  credit by the Arkansas Department of Economic Development to

22  Terry Manufacturing Company?

23  A    In 1998, I was a grant manager.  Basically, I inherited

24  projects that had already -- that had been -- that management

25  had decided to extend grants and loans to companies, and I

14

1   A    Yes.

2   Q    Is this a format typically used by the Department as of

3   November, 1998?

4   A    Yes.

5   Q    The cover page of the package you've been provided shows a

6   claim as of the filing date, calculated at two hundred

7   thousand, four hundred sixteen dollars and seventy-nine cents.

8   What was the basis for that calculation, sir?

9   A    I think it's the balance of our -- like I say, I don't

10  have the file with me, but I think that's the balance, the

11  principal balance, of the loan at the time that this filing was

12  made.

13  Q    Okay.  If I'm understanding you correctly, sir, in order

14  to confirm the balance due on a loan, you would look on to some

15  computer --

16  A    Right.

17  Q    -- system you maintain; is that correct?

18  A    Right.

19  Q    And there would be a -- a screen, or a page on that, that

20  would identify the amounts due under this loan?

21  A    Right.

22            MR. BARRIERE:  John, if I may ask, could I

23        impose upon you to have the witness print that out

24        and attach it to this deposition?

25            MR. KOOISTRA:  Sure.

                KAY BUTLER, CVR-CM, CCR
                     (501) 868-8134

15

1    MR. BARRIERE:  All right.  I'm going to go ahead

2  and mark and attach as Exhibit 1 en globo the

3  documents we've just gone through, which are the

4  Proof of Claim and related attachments, and ask that

5  the computer print-out of the balance due on this

6  loan be attached as Exhibit 2.

7    MR. KOOISTRA:  Let me add one caveat to that.  I

8  don't know the status on your computer system of

9  Terry Manufacturing now, since you've probably

10  written the loan off.  So, you -- David, can you

11  resurrect -- he says he can resurrect that screen.

12  So, we will -- we will have that photocopied and make

13  that as an exhibit and I'll furnish that to the court

14  reporter.

15    MR. BARRIERE:  Thank you, sir.

16    (THEREUPON, twenty pages of documents were

17  marked for identification as Trustee Exhibit 1 and

18  made a part of the record and are appended at Exhibit

19  Tab 1 and three-pages of documents were marked for

20  identification as Trustee Exhibit 2 and made a part

21  of the record and are appended at Exhibit Tab 2.)

22 BY MR. BARRIERE:

23 Q  A question, sir.  I see that you listed a hundred seventy-

24 eight thousand dollars as secured and twenty-one thousand

25 dollars -- pardon me -- a hundred seventy-eight thousand

16

1    dollars unsecured, and twenty-one thousand dollars secured.

2    Can you tell me, first, how the Department determined that

3    twenty-one thousand dollars of its approximate two hundred

4    thousand dollar claim, was secured?

5    A    Ms. Dixon, from the Burr and Foreman Law Firm, was the one

6    that completed that, and I would assume that the determination

7    of the twenty-one seven is -- is what the figure is that was

8    derived by the trustee from the sale of equipment at Marianna,

9    and the rest is -- is what would -- the remaining balance of

10   the loan would be.  That's my assumption only.

11   Q    All right.  You did not make that calculation, I take it?

12   A    Right.

13   Q    Okay.  At any time, to your knowledge, did Terry

14   Manufacturing, or anyone acting on behalf of Terry

15   Manufacturing, contest the company's liability for this

16   promissory note?

17   A    No.

18   Q    All right.

19   A    Not to my knowledge.

20   Q    And to the best of your knowledge, I take it based on your

21   prior testimony, payments were made on this note from July, of

22   1999, up until approximately the Chapter 11 filing in July,

23   2003?

24   A    To the best of my knowledge, yes.

25   Q    Very well.  Sir, as you sit there today, can you tell me

KAY BUTLER, CVR-CM, CCR
(501) 868-8134

J. Lester Alexander, III v. Delong, Caldwell, Novotny & Bridges, et al                    Popi Paragios

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

IN RE:                          )
                                )
TERRY MANUFACTURING             ) NO. 03-32063-WRS
  COMPANY, INC.                 )
                                ) CHAPTER 7
     Debtor                     )
                                )
_____

IN RE:                          )
                                )
TERRY UNIFORM                   ) NO. 03-32213-WRS
  COMPANY, LLC,                 )
                                ) CHAPTER 7
     Debtor.                    )
_____

J. LESTER ALEXANDER,            )
III, TRUSTEE OF                 )
TERRY MANUFACTURING             )
COMPANY, INC., AND              ) ADVERSARY
TERRY UNIFORM COMPANY,          ) PROCEEDING
LLC,                            ) NO. 04-03135
                                )
VERSUS                          )
                                )
DELONG, CALDWELL,               )
NOVOTNY & BRIDGERS,             )
L.L.C. AND EARNEST              )
H. DELONG, JR.                  )

ORIGINAL

     Telephone deposition of POPI PARAGIOS,
taken on Thursday, the 14th day of July,
2005.

APPEARANCES:

          PHELPS DUNBAR, L.L.P.
          (By: Katherine M. Determan, Esq.)
          365 Canal Street, Suite 2000
          New Orleans, Louisiana 70130

          ATTORNEYS FOR J. LESTER ALEXANDER,
          III, TRUSTEE OF TERRY
          MANUFACTURING COMPANY, INC., AND
          TERRY UNIFORM COMPANY, L.L.C.

(Appearances cont'd on next page)

Page 2

```
 1     APPEARANCES CONTINUED:

 2             WALDROP & ASSOCIATES, P.C.
               (By: Raymond D. Waldrop, Jr., Esq)
 3             415 Church Street, Suite E-1
               Huntsville, Alabama  35801
 4
               ATTORNEYS FOR ATLANTIC THREAD &
 5             SUPPLY COMPANY

 6             BALCH & BINGHAM, LLP
               (By: Jeremy Rutherford, Esquire)
 7             1901 Sixth Avenue North
               Suite 2600
 8             Birmingham, Alabama  35203

 9             ATTORNEYS FOR THE BANK OF WEDOWEE

10             MELTON, ESPY & WILLIAMS, P.C.
               (By: Susan Edwards, Esquire)
11             301 Adams Avenue
               Montgomery, Alabama  36104
12
               ATTORNEYS FOR EARNEST DELONG AND
13             DELONG, CALDWELL, NOVOTNY &
               BRIDGES, L.L.C.
14
       REPORTED BY:
15
               BECKY C. DAME, CCR, RPR
16             CERTIFIED COURT REPORTER

17                     *    *    *

18                  INDEX OF EXHIBITS

19                                          Page

20     Exhibit No. 1  ...................   9

21     Subpoenas

22     Exhibit No. 2  ...................   9

23     Aged Trial Balance

24

25
```

Page 3

```
 1              S T I P U L A T I O N

 2

 3              It is stipulated and agreed by and

 4   between counsel for the parties hereto that

 5   the deposition of the aforementioned witness

 6   is hereby being taken for all purposes

 7   allowed under the Federal Rules of Civil

 8   Procedure, in accordance with law, pursuant

 9   to notice;

10              That the formalities of reading

11   and signing are specifically waived;

12              That the formalities of sealing,

13   certification and filing are specifically

14   waived;

15              That all objections, save those as

16   to the form of the question and the

17   responsiveness of the answer, are hereby

18   reserved until such time as this deposition,

19   or any part thereof, may be used or sought

20   to be used in evidence.

21              *       *       *       *

22              BECKY C. DAME, Certified Court

23   Reporter in and for the State of Louisiana,

24   officiated in administering the oath to the

25   witness.
```

Page 4

1                    POPI PARAGIOS,

2      after having been first duly sworn by the

3      above-mentioned court reporter, did

4      testify as follows:

5          MS. DETERMAN:

6              For the record, this is Katherine

7      Determan, representing J. Lester Alexander,

8      the trustee of Terry Manufacturing.   Do

9      y'all want to make appearances for the

10     record?

11         MR. RUTHERFORD:

12             This is Jeremy Rutherford with the

13     law firm of Balch & Bingham, representing

14     the Bank of Wedowee.

15         MS. EDWARDS:

16             This is Susie Edwards from the

17     firm of Melton, Espy & Williams,

18     representing Earnest Delong and the law firm

19     of Delong, Caldwell, Novotny & Bridges.

20         MR. WALDROP:

21             This is Raymond Waldrop, Jr.   I

22     represent the deponent, Atlantic Thread &

23     Supply Co., Inc., and the deponent,

24     Mr. Paragios.

25             THE WITNESS:

Page 5

1          This is Popi Paragios.  I'm the

2    bookkeeper for Atlantic Thread & Supply

3    Company, Inc.

4    EXAMINATION BY MS. DETERMAN:

5          Q    In is Kathy Determan for the

6    Trustee.  For the record, will you state

7    your full name and address?

8          A    Popi Paragios.  Which address did

9    you want me to state, my home or --

10         Q    Business is fine.

11         A    8515 Kelso Drive, Units G and H,

12   Baltimore, Maryland, 21221.

13         Q    And are you currently employed?

14         A    Yes.

15         Q    And by whom are you employed?

16         A    Atlantic Thread & Supply Company,

17   Inc.

18         Q    And is that company located at the

19   same address you just stated?

20         A    Yes.

21         Q    And how long have you been

22   employed at Atlantic Thread?

23         A    Over three years.

24         Q    And what is your position with

25   Atlantic Thread?

Page 6

1       A       Bookkeeper.

2       Q       And what are your responsibilities

3    as the bookkeeper?

4       A       I'm in charge of all financial

5    aspects of the business.

6       Q       And during the scope and course of

7    your employment, did you have any

8    responsibility or oversight for the Terry

9    Manufacturing Company, Inc., account with

10   Atlantic Thread?

11      A       Yes.

12      Q       And what year did that

13   responsibility begin?

14      A       2002.

15      MS. DETERMAN:

16           I would like to introduce into the

17   record at this time the documents produced

18   by Atlantic Thread, which are aged trial

19   balances by due date.

20           Ms. Paragios, do you recognize

21   these documents?

22      MR. WALDROP:

23           How many pages are there?

24   EXAMINATION BY MS. DETERMAN:

25      Q    Ms. Paragios, could you answer

Page 7

1      that?

2          A      Give me one second.   I have one --

3      five trial balances and one cover letter.

4          Q      Did you assist in the preparation

5      of these documents?

6          A      Yes.

7          Q      Are these documents kept in the

8      ordinary course of Atlantic Thread's

9      business?

10         A      Yes.

11         Q      Referring to these documents and

12     indicating which page your answers come

13     from, could you state the balance owed by

14     Terry Manufacturing to Atlantic Thread as of

15     January 1st, 1999?

16         A      $12,343.90.

17         Q      And could you please state the

18     balance owed by Terry Manufacturing to

19     Atlantic Thread as of January 1st, 2000?

20         A      Zero.

21         Q      And could you please state the

22     balance owed by Terry Manufacturing to

23     Atlantic Thread as of January 1st, 2001?

24         A      $27,499.63.

25         Q      And could you please state the

Page 8

1    balance owed by Terry Manufacturing to

2    Atlantic Thread as of January 1st, 2002?

3         A    $57,420.98.

4         Q    And could you please state for the

5    record the balance owed by Terry

6    Manufacturing to Atlantic Thread as of

7    January 1st, 2003?

8         A    $52,602.05.

9         Q    And could you please the balance

10   owed by Terry Manufacturing to Atlantic

11   Thread as of July 7, 2003, which was the

12   petition date of Terry Manufacturing?

13        A    $47,308.56.

14        MS. DETERMAN:

15             I have no more questions for the

16   witness.

17        MR. RUTHERFORD:

18             This is Jeremy Rutherford.  I have

19   no questions.

20        MS. EDWARDS:

21             This is Susie Edwards.  I have no

22   questions.

23        MS. DETERMAN:

24             Thank you.

25        MR. WALDROP:

F O S H E E   &   T U R N E R   C O U R T   R E P O R T E R S

1    IN THE UNITED STATES BANKRUPTCY COURT
2       FOR THE MIDDLE DISTRICT OF ALABAMA
3
4  IN RE:
5
6  CASE NUMBER: 03-32063-WRS
7  CHAPTER 7
8  TERRY MANUFACTURING COMPANY, INC.,
9       Debtor,
10 _____
11 IN RE:
12 CASE NUMBER: 03-32213-WRS
13 TERRY UNIFORM COMPANY, LLC,
14       Debtor,
15 _____
16 ADVERSARY PROCEEDING
17 No. 04-03061
18 Consolidated with No. 04-03062
19 and 04-03063
20
21 J. LESTER ALEXANDER III, TRUSTEE TERRY
22 MANUFACTURING COMPANY, INC. AND TERRY
23 UNIFORM COMPANY, LLC.,

                                          1

1       IT IS FURTHER STIPULATED AND
2  AGREED that it shall not be necessary
3  for any objections to be made by counsel
4  to any questions except as to the form
5  or leading questions, and that counsel
6  for the parties may make objections and
7  assign grounds at the time of the trial,
8  or at the time said deposition is
9  offered in evidence, or prior thereto.
10      IT IS FURTHER STIPULATED AND
11 AGREED that the notice of filing of the
12 deposition by the Commissioner is
13 waived.
14
15
16
17
18
19
20
21
22
23

                                          3

1
2  VERSUS
3
4  PEOPLES BANK OF EATONTON
5
6       S T I P U L A T I O N
7       IT IS STIPULATED AND AGREED by
8  and between the parties through their
9  respective counsel, that the deposition
10 of TERRY PRICE may be taken before
11 Leslie K. Hartsfield, at the United
12 States Courthouse Complex, One Church
13 Street, 36104,
14       DEPOSITION OF TERRY PRICE
15 taken on the 27th of June, 2005.
16      IT IS FURTHER STIPULATED AND
17 AGREED that the signature to and the
18 reading of the deposition by the witness
19 is waived, the deposition to have the
20 same force and effect as if full
21 compliance had been had with all laws
22 and rules of Court relating to the
23 taking of the deposition.

                                          2

1                INDEX
2  EXAMINATION BY:      PAGE NUMBER:
3  Ms. Lasky                7
4
5
6  EXHIBITS:
7  1 - Notice               7
8  2 - Customer balance     8
9  3 - 7-7-03 customer
10    balance              14
11
12
13
14
15
16
17
18
19
20
21
22
23

                                          4

1 BEFORE:
2        LESLIE K. HARTSFIELD,
3        Commissioner.
4
5 APPEARANCES:
6        PHELPS, DUNBAR, LLP, by Ms. Katie
7 E. Lasky, Canal Place, 365 Canal Street,
8 Suite 2000, New Orleans, Louisiana,
9 70130-6534, appearing on behalf of the
10 Trustee J. Lester Alexander, III.
11        MELTON, ESPY & WILLIAMS, by
12 Ms. Suzanne Edwards, 301 Adams Avenue,
13 Montgomery, Alabama, 36103, appearing on
14 behalf of Delong, Caldwell, Novotny and
15 Bridgers and Ernest Delong, Jr.
16
17        ********
18
19        I, LESLIE K. HARTSFIELD, a Court
20 Reporter of Prattville, Alabama, acting
21 as Commissioner, certify that on this
22 date, as provided by the Federal Rules
23 of Civil Procedure and the foregoing
                                        5

1 stipulation of counsel, there came
2 before me at the United States
3 Courthouse Complex, One Church Street,
4 Montgomery, Alabama, 36104, beginning at
5 3:22 p.m., TERRY PRICE, witness in the
6 above cause, for oral examination,
7 whereupon, the following proceedings
8 were had:
9
10        TERRY PRICE
11    being previously sworn, was examined
12        and testified as follows:
13
14        MS. LASKY:  This is the
15 deposition of Terry Price, president of
16 Bonifay Manufacturing, Incorporated in
17 the matter of Jay Lester Alexander, III,
18 trustee of Terry Manufacturing Company,
19 Inc. and Terry Uniform Company, LLC
20 versus the Peoples Bank of Eatonton,
21 Bank of Wedowee, The First Tuskegee
22 Bank.  It is adversary proceeding --
23 accelerated adversary proceeding No.
                                        6

1 04-03061 in the United States Bankruptcy
2 Court for the Middle District of
3 Alabama.
4
5
6        (Exhibit No. 1 was marked for
7        identification.)
8
9 EXAMINATION BY MS. LASKY:
10    Q.    I'm going to introduce as
11 Exhibit 1 -- and I'll give this to you,
12 Mr. Price -- this is the notice of
13 issuance of subpoena to Terry Price.
14 And when was this served upon you,
15 Mr. Price?
16    A.    June 25th at 1:25 p.m.
17    Q.    And you have been deposed
18 before.  You are still under oath.
19    A.    Okay.
20    Q.    Just so we're clear.  What
21 is your position with Bonifay
22 Manufacturing?
23    A.    President.
                                        7

1    Q.    And how long have you served
2 as president of Bonifay Manufacturing?
3    A.    About 25 1/2 years.
4    Q.    And when did Bonifay
5 Manufacturing start to do business with
6 Terry Manufacturing Company to the best
7 of your recollection?
8    A.    1986.
9    Q.    What did Bonifay provide for
10 Terry Manufacturing Company, what was
11 the nature of your --
12    A.    We manufactured knit
13 shirts.
14
15        (Exhibit No. 2 was marked for
16        identification.)
17
18    Q.    And I'm going to show you
19 what I'm going to mark as Exhibit A --
20 sorry, Exhibit 2 in globo.  Can you
21 describe this document for me, please,
22 Mr. Price?
23    A.    This is our customer balance
                                        8

1 detail for Terry Manufacturing.
2      Q.    Does this represent a true
3 and correct copy?
4      A.    Yes, it is.
5      Q.    And just so the record
6 reflects, this was produced by Bonifay
7 Manufacturing to the trustee in
8 litigation between Bonifay Manufacturing
9 and the trustee?
10      A.    Correct.
11      Q.    Was this prepared in the --
12 created in the ordinary course of
13 business of Bonifay Manufacturing?
14      A.    Yes.
15      Q.    And do you know who prepared
16 this document?
17      A.    Kim Williams.
18      Q.    And what was Ms. Williams'
19 position?
20      A.    She was secretary and office
21 manager.
22      Q.    Secretary to you --
23      A.    Yes.
                                        9

1      Q.    -- as president?  And were
2 you and are you currently the custodian
3 of this document?
4      A.    Yes.
5      Q.    Can you read for me the
6 amounts receivable listed on this
7 document as of 1/1/99?
8      A.    1/1/99.
9      Q.    And where do you find
10 that -- on what page do you find that
11 amount?
12      A.    I'm on Page 15 and the
13 amount is $275,643.89.
14      Q.    What does that amount
15 represent?
16      A.    Accounts receivable balance
17 from Terry Manufacturing.
18      Q.    Is that an amount that Terry
19 Manufacturing owed to Bonifay
20 Manufacturing?
21      A.    That's correct.
22      Q.    Can we turn to the entry
23 marked January 4, 2000 and tell me where
                                        10

1 you find that.
2      A.    On Page 21.  The amount owed
3 was $350,571.31.
4      Q.    And again this reflected
5 amounts owed by Terry Manufacturing to
6 Bonifay Manufacturing --
7      A.    That's correct.
8      Q.    -- on January 4, 2000?
9      A.    Correct.
10      Q.    Now, just so I'm clear, the
11 dates on this spread sheet or on this
12 customer balance detail, excuse me, what
13 is the significance of the dates listed?
14      A.    Every time we sent an
15 invoice it's entered here.  And actually
16 this is a program -- computer program
17 that we prepare invoices on so it
18 automatically goes into -- and every
19 time we received a payment.  Every time
20 we received a payment, it went on here
21 and every time we invoiced it went on
22 here.
23      Q.    Can we look at the date
                                        11

1 listed December 20, 2000, please, and
2 tell me what page you find that on.
3      A.    On Page 27 and the figure
4 was $71,000 -- $71,006.12.
5      Q.    And again this was amounts
6 that Terry Manufacturing owed to Bonifay
7 Manufacturing?
8      A.    That's correct.
9      Q.    Can you please read for me
10 the amount below it for January 11,
11 2001?
12      A.    Well, there were two
13 invoices on that day.  The first figure
14 is $75,948.33 and then 76,608.99.
15      Q.    So is it correct that
16 Bonifay Manufacturing issued two
17 invoices to Terry Manufacturing on
18 January 11, 2001?
19      A.    Right.  They requested -- we
20 did the shirts by cut number and they
21 requested that each cut number be a
22 separate invoice.  So if we happened to
23 send two on the same day, there would be
                                        12

FOSHEE & TURNER COURT REPORTERS

1 two invoices.
2    Q.    So as of January 11, 2001
3 the amount owed by Terry Manufacturing
4 to Bonifay Manufacturing was $76,608.99?
5    A.    Correct.
6    Q.    And turn to the amount
7 listed for January 7, 2002 and read what
8 page that's on as well.
9    A.    Page 29. $236,590.05.
10    Q.    And again this was amounts
11 Terry Manufacturing owed to Bonifay
12 Manufacturing?
13    A.    That's correct.
14    Q.    Turn to the entry marked
15 January 8, 2003. Again there appear to
16 be two so if you could read both of
17 those and tell me what page you find
18 them on.
19    A.    Page 31, $248,341.18 and
20 $252,148.57.
21    Q.    If we look at the entry for
22 December 20, 2002 that's listed as
23 payment, can you explain what that

1 3

1 reflects?
2    A.    Prior to that, the balance
3 was $271,642.68. We received a payment
4 of $26,516.79 which subtracted away
5 leaves a balance of 245,125.89.
6    Q.    So as of December 20, 2002
7 Terry Manufacturing owed Bonifay
8 Manufacturing $245,125.89?
9    A.    Correct.
10    Q.    We look at the last entry on
11 this customer balance detail on Page 32.
12    A.    Right.
13    Q.    And just read the date and
14 then the balance.
15    A.    A hundred -- now this is
16 where I may have a more current one
17 right here, I think. I think I do.
18 Yeah.
19    Q.    Let's introduce that and
20 we'll make copies. That's going to be
21 Exhibit 3. This is a document that
22 Mr. Price brought with him in response
23 to the subpoena today.

1 4

1
2    (Exhibit No. 3 was marked for
3     identification.)
4
5    A.    There was a couple more
6 entries that went after the page you
7 had.
8    Q.    Okay. That was on Exhibit
9 2?
10    A.    Right. See, the figure on
11 here is 110,082 and that's 115.
12    Q.    Just so we're clear, the
13 record is clear, the last entry on
14 Exhibit 2, what is the date of that?
15    A.    The date of the last entry
16 is 6/20 of '03. And the figure, the
17 balance is $110,082.49.
18    Q.    What is the last date of the
19 entry on Exhibit 3?
20    A.    7/1 of '03. And the balance
21 is $115,482.52.
22    Q.    And do you know what date
23 Terry Manufacturing filed for

1 5

1 bankruptcy?
2    A.    I think it was July 9th.
3    Q.    Of 2003?
4    A.    2003.
5    Q.    So the amount of
6 $115,482.52, does that represent the
7 proof of claim that Bonifay
8 Manufacturing filed?
9    A.    I believe that's correct.
10    Q.    Was that the amounts that
11 Terry Manufacturing Company owed Bonifay
12 Manufacturing as of the date of its
13 bankruptcy petition?
14    A.    Correct.
15    Q.    And that Exhibit 3 you
16 brought with you today?
17    A.    That's correct.
18    Q.    And again, it was prepared
19 in the ordinary course of business of
20 Bonifay Manufacturing?
21    A.    Right.
22    Q.    And you were the custodian
23 of that document?

1 6

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT ___Middle___ DISTRICT OF ___Alabama___ | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor **Terry Mfg. Co., Inc.** | Case Number **03 32063 DHW** | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**American & Efird, Inc.**

Name and address where notices should be sent:

**American & Efird, Inc.**
**P.O. Box 507**
**Mt. Holly, NC 28120**
Telephone number:  800 436 3614

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

**FILED**

**SEP 26 2003**

**U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA**

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

**88944**

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____

**1. Basis for Claim**
☑ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Your SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)        (date)

**2. Date debt was incurred: 4 & 5 '03**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ ___28,082.27___

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date **9/24/03** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): **L R Heavener- V. Pres Credit** |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT ___Middle___ | DISTRICT OF ___Alabama___ | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>TERRY MANUFACTURING Co. | Case Number<br>03-32063-DHW | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>CARLCRAFT KNITS SALES, INC. | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | **FILED**<br><br>JUL 22 2003<br><br>U.S. BANKRUPTCY COURT<br>MONTGOMERY, ALABAMA |
|---|---|---|
| Name and address where notices should be sent:<br>CARLCRAFT KNITS SALES, INC.<br>245 WEST COMMERCIAL AVE.<br>MOONACHIE, NJ<br>Telephone number: 201/729-9300 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor:<br>18166 75 | Check here<br>if this claim ☐ replaces   a previously filed claim, dated:_____<br>☐ amends |
|---|---|

**1. Basis for Claim**
- ☒ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
         (date)              (date)

**2. Date debt was incurred:** 5/30/03; 6/6/03; 6/18/03
**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 224.75
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>7/14/03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>MICHAEL AARONSON, V.P. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

PHELPS DUNBAR LLP
COUNSELORS AT LAW

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT _MIDDLE_ DISTRICT OF _ALABAMA_ | PROOF OF CLAIM |
|---|---|

| Name of Debtor _TERRY MANUFACTURING_ | Case Number _03-32063-DHW_ |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): _CARLCRAFT KNITS SALES, INC._ | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | **FILED** |
|---|---|---|

Name and address where notices should be sent:

**CARLCRAFT KNITS SALES, INC.**
**245 WEST COMMERCIAL AVE.**
**MOONACHIE, NJ 07074**

Telephone number: _201 | 729-9350_

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

SEP 30 2003

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

Deputy Clerk

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor: _1816675_ | Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _7/14/2003_ |
|---|---|

**1. Basis for Claim**
- ☒ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other _CHARGE BACKS FOR FREIGHT_

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____ _____ _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)        (date)

**2. Date debt was incurred:** _VARIOUS DATES_

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ _2854.75_

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date _9\22\03_ | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): _MICHAEL AARONSON, V.P._ |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| **United States Bankruptcy Court Middle District of Alabama Montgomery** | **Proof of Claim** |
|---|---|

**FILED**

OCT 7 – 2003

U.S. BANKRUPTCY COURT
**MONTGOMERY, ALABAMA**

_____
Deputy Clerk

| Name of Debtor : **TERRY MANUFACTURING COMPANY, INC.** | Case Number: **03-32063** |
|---|---|

Note: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property) **United Parcel Service** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars |
|---|---|

| Name and address where notices should be sent: **United Parcel Service c/o D&B/RMS Bankruptcy Services P.O. Box 4396 Timonium, Maryland 21094** Telephone Number: **(410) 453-6591** | ☐ Check box if you have never received any notices from the bankruptcy court in this case. |
| | ☒ Check box if the address differs from the address on the envelope sent to you by the court |

This space is for court use only

| Account or other number by which creditor identifies debtor: **330095; 49X296** | Check here ☐ Replaces if this claim ☐ Amends a previously filed claim dated _____ |
|---|---|

**1. Basis For Claim**
- ☐ Goods sold
- ☒ Services performed
- ☐ Money loaned
- ☐ Personal injury / wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensations (Fill out below) Your SS# ___-___-___ Unpaid Compensations for services performed from _____ to _____
  (date)          (date)

**2. Date debt was incurred:** See Attached

**3. If court judgement , date obtained:**

**4. Total Amount of Claim at Time Case Filed :**   $ **$93,297.61**

If all or part of your claim is secured or entitled to priority, also complete item 5 or 6 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges

**5. Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
- ☐ Real Estate
- ☐ Motor Vehicle
- ☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim above if any:
$_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim   Amount entitled to priority $_____ Specific the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4000). *earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507 (a) (3)
- ☐ Contribution to an employee benefit plan – 11 U.S.C. § 507 (a) (4)
- ☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use- 11 U.S.C. § 507(a)(6)
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § (a)(7)
- ☐ Taxes or penalties of governmental units – 11 U.S.C. § 507 (a)(6)
- ☐ Other – Specify applicable paragraph of 11 U.S.C. § (a) (__)
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter will respect to cases commenced on or after the date of adjustment

**7. Credits:** The Amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgements, mortgages, security agreements, and evidence of perfecting of lien.

**9. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This space is for court use only

| Date **09/29/03** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) Signed _____ *David J. Lynch* _____ David J. Lynch, D&B/RMS, Agent for Creditor |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                    Case No. 03-32063

TERRY MANUFACTURING                       Chapter 7
COMPANY, INC.

    Debtor.

In re:                                    Case No. 03-32213

TERRY UNIFORM                             Chapter 7
COMPANY, LLC,
    Debtor.

J. LESTER ALEXANDER III,
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC
    Plaintiff,                            Adv. Pro. No. 04-3072-WRS

v.

BONIFAY MANUFACTURING INC.,

    Defendant.

## Summary Report of AEA Group, LLC

By:  J. Lester Alexander, III

As of February 24, 2005

EXHIBIT
"3-A"

### Summary Report of AEA Group, LLC

By: J. Lester Alexander, III

**Terry Manufacturing Company, Inc.,
Terry Uniform Company, LLC,
J. Lester Alexander, III, Trustee
v.
Bonifay Manufacturing Inc.**

As of February 24, 2005

This letter and the attached appendices are my report of findings to date in the above referenced matter.

I am a certified public accountant and have approximately twenty-six years of professional experience. I am a certified fraud examiner and I hold an accounting degree from the University of Alabama. As a certified public accountant, I have experience in auditing which has required the evaluation of accounts receivable aging and the collection of accounts receivable, both in terms of the history of the client and the norms for the relevant industry. I am the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("TMC") and my compensation as Trustee is subject to determination by the Court. I am the Managing Principal of AEA Group, LLC. I was assisted by members of my firm who worked under my direction in performing this analysis. Billing rates for AEA Group for this engagement range from $185 to $55 per hour. My resume, including my testimony experience, is attached as an appendix to this report.

**SCOPE**

As to the above-referenced matter, I am presented as expert witness to report my findings regarding the solvency of TMC; the nature and relationship of payments by TMC to Bonifay Manufacturing, Inc. ("Bonifay") with respect to the TMC bankruptcy; whether payments to Bonifay were or were not in the ordinary course of business; and whether the timing of TMC's payments to Bonifay were or were not typical of TMC's industry classification. I utilized the business records of TMC; to the extent they exist or could be recreated. Since July, 2003, I or people under my direction have reconstructed the records pertaining to accounts payable of TMC. In addition, I utilized certain case pleadings, bank records, business and financial records produced by Bonifay, industry research and other information listed in an appendix to this report.

**FINDINGS AND OPINIONS**

It is my understanding that pursuant to 11 U.S.C. § 547, TMC is presumed to have been insolvent during the 90 days preceding its Chapter 11 filing on July 7, 2003. As a result of my analysis, I have determined that TMC was insolvent throughout the ninety days preceding its Chapter 11 filing with the amount of Terry Manufacturing's liabilities exceeding its assets by an amount in excess of $30,000,000. In addition, if all of the proofs of claim filed in this case

2



accurately state the amount of indebtedness owed by TMC (and such proof of claims have been filed under penalty of perjury), TMC's liabilities exceeded the value of its assets by more than $60,000,000.

TMC made 6 payments to Bonifay totaling $107,713.15 during the 90 day preference period preceding its Chapter 11 filing. Each payment to Bonifay was in satisfaction of an antecedent debt. The payments made to Bonifay during the preference period permitted Bonifay to receive more than it would have received in a liquidation assuming the transfer had not been made. Had Bonifay not received the payments and instead made an additional unsecured claim for these amounts, it is certain that Bonifay would not receive a distribution equal to the challenged payments.

Furthermore the payments made to Bonifay were not made in the ordinary course of business as evidenced by the following:

- All payments were outside of the terms indicated on the related invoice.

- The number of days between the related invoice date and the date the check cleared the bank account of TMC ranged from 138 days to 182 days.

- Analysis of actual payment history data for the textile industry shows that payments on account were made in 39 to 41 days (median of companies reporting to Risk Management Association for the year ended March 31, 2003 and 2004, respectively).

- Analysis of actual trade receivables history for the Apparel and Other Finished Products segment of the textile industry during the second quarter of 2003 shows the median number of days of sales outstanding were 55 days (median for companies reporting to Credit Research Foundation.)

## OTHER CONSIDERATIONS

My report is issued in accordance with the Management Consulting Standards of the American Institute of Certified Public Accountants. This report is to be used solely in connection with proceedings related to the above referenced matter and should not be used for any other purpose. Outside distribution of this report to others is not permitted without the written consent of AEA Group, LLC. The information in this report is based on information learned through February 24, 2005. I reserve the right to consider any additional information that is presented to me. Further, I reserve the right to supplement and amend my opinions for information learned up to and throughout trial.

3

Very truly yours,

By: _Shesh Alexander_____

J. Lester Alexander, III, CPA
Chapter 7 Trustee
Terry Manufacturing Co. Inc and Terry Uniform, LLC

3

## Index of Appendices

Appendix A – Resume and testimony experience

Appendix B – Documents considered

Appendix C – Payments

# Appendix A - Resume of J. Lester Alexander, III

## Professional Experience

Mr. Alexander is the President and Managing Principal of AEA Group LLC, a consulting firm specializing in accounting, economic and appraisal consulting. Mr. Alexander has approximately twenty-six years of experience providing audit and advisory services to a wide range of entities, stakeholders and governing boards. As a former PricewaterhouseCoopers LLP Partner, Mr. Alexander has provided audit and advisory services to various types of companies including financial services, manufacturing, healthcare, technology, real estate, contracting, and retail companies. In addition Mr. Alexander has provided accounting, economic and appraisal consulting services to clients in connection with investment transactions, public securities offerings, private placement security offerings and debt offerings of various types. He holds a Bachelor of Science in Accounting from the University of Alabama and is a Certified Public Accountant and a Certified Fraud Examiner.

Mr. Alexander has provided services and, from time to time, expert testimony in various courts and in situations involving alternative dispute resolution. He has provided services in connection with contract disputes, security issues, insurance coverage issues, non-compete agreements, lost profits, business valuation and various other matters. He has testified in connection with class action certification hearings and class action fairness hearings. Mr. Alexander's experience includes testimony about customary practices and standards of care in auditing, operating and controlling business activities.

Mr. Alexander is experienced in the areas of business valuation, acquisition due diligence and cost accounting matters. He has evaluated the value of ownership interests in businesses in connection with acquisitions, disposals and disputes. He has performed suitability studies in connection with investment transactions in a wide range of financial instruments. In addition, he has performed incremental cost studies, contribution margin studies and other applications of cost accounting for clients in connection with new products, acquisitions, patent valuations and evaluation of trademarks. This experience includes making projections of incremental revenues and costs in connection with profitability analysis of proposed business ventures, new products and other profitability analysis for companies.

Mr. Alexander has advised governing bodies, committees and members on their role in overseeing the activities of companies and senior management. His clients have included publicly-traded companies, privately-held companies, governmental entities and tax-exempt companies. He has advised governing bodies overseeing companies in the start-up/growth, mature and restructuring phases of operational development. He has performed these services for governing bodies overseeing companies operating in the manufacturing, healthcare, technology, financial services, real estate, contracting, and retail industries.

6

## Professional/Business/Community Affiliations

Lecturer on Financial Damages – 2004 Cumberland Law School Continuing Education Seminar, Birmingham Alabama

Lecturer on Financial and Business Fraud Schemes - 2004 Corporate Counsel Seminar, Birmingham Alabama

Lecturer on Detecting Fraud Schemes – Fall Bankruptcy Seminar, Fall 2003, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Accountant's View of Sarbanes Oxley – 2003 Seminar, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Online Fraud Prevention – 2002 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Forensic Computer Investigation – 2001 Discovery Seminar, Alabama Bar Continuing Education Series, Birmingham , Alabama

Lecturer on Online Business & Financial Research Methods – 2001 Federation of Insurance & Corporate Counsel's Internet University, Napa, California

Lecturer on Identifying and Investigating Fraud – 2001 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Interpreting Financial Statements – 1999 National Judicial College, Gulf Shores, Alabama

Panelist on Consumer Fraud Issues – Coopers & Lybrand 1997 National Banking Conference, Washington, DC

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Lecturer on Online Discovery – Defense Research Institute's 2001 Annual Meeting of Young Lawyers, Miami, Florida

Lecturer on Online Expert Witness Research – 2001 Louisiana State Bar 17th Summer School for Lawyers, Destin, Florida

## Professional/Business/Community Affiliations (continued)

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Former National Practice Leader – Coopers & Lybrand's Financial Services Consumer Dispute Resolution Practice

Former Regional Service Line Leader – Coopers & Lybrand's Litigation Consulting Services Southern Region

Former Practice Leader for Dispute Analysis and Investigations - PricewaterhouseCoopers LLP, Birmingham, Alabama

Former Member - Banking and Insurance Industry Groups - PricewaterhouseCoopers LLP

American Institute of Certified Public Accountants

Alabama Society of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

Associate Member-American Bar Association

Commerce Executive Society – University of Alabama

Past Regional Director – Exchange Club of Alabama

Past President, Secretary, Director and Treasurer – Birmingham Breakfast Exchange Club

Past Administrative Board Member and Finance Committee Member – Canterbury United Methodist Church

8



## Testimony in Last Four Years

Vulcan Engineering, Inc. v. FATA Aluminum, Inc. (Federal Court, Michigan Eastern District)

Stockholders of Alalooska Inc. v. Performance Foods Group Companies (Arbitration, Atlanta, Georgia)

SouthTrust Bank v. ServiceMaster Diversified Health Services, L.P. (Federal District Court, Northern District of Alabama-Southern Division)

Sabrina Abernathy, et al. v. Monsanto Company, et al. (Circuit Court of Calhoun County, Alabama)

Central Parking System v. Alta Health and Life Insurance Company (Arbitration Hearing)

Susan K. Kearney v. Regions Bank (Federal Bankruptcy Court, Northern District of Alabama)

Union Healthcare, Inc. Chapter 11 Bankruptcy Proceeding (United States Bankruptcy Court, Southern District of Mississippi)

Hilb Rogal & Hamilton Company of Alabama v. Werner Beiersdoerfer (Alabama District Court, Jefferson County)

Intergraph Corporation v. Bentley Software Systems, Inc (Circuit Court of Madison County, Alabama)

UBS PaineWebber, Inc. v. Roger H. Aiken, Michael S. Boulos, Patrick G. McQuilling and A.G. Edwards & Sons, Inc., et al. (Arbitration Hearing)

Vanderbilt Integrated Providers/Nashville Healthcare Group, LLC and Vanderbilt University v. Prudential Insurance Company of America, Inc. and Prudential Healthcare Plan, Inc. (United States District Court, Middle District of Tennessee, Nashville)

Cothran Inc., James Cothran, Mary Lou Cothran v. Pali USA Ltd, Pali Linens, LLC, Loretto Pali & Richard Levine (Circuit Court of Baldwin County, Alabama)

HydroPower Inc v. Eaton Manufacturing (Circuit Court of Jefferson County Alabama)

The Utilities Board of the City of Daphne v. City of Spanish Fort et al (Federal District Court, Southern District of Alabama)

Compass Bank v. Blitz Media, Inc., et al. (United States District Court, The Northern District of Alabama, Southern Division)

Steward Machine v. White Oak, et al. (United States District Court, Connecticut)

Refrigerated Construction Services v. Coldmatic Building Systems, Inc, et al (United States District Court, Northern District of Alabama, Southern Division)

ABB Automation, Inc. v. DeVries, et al. (Circuit Court of Jefferson County)

Proliance, Inc. v. City of Huntsville (Circuit Court of Madison County, Alabama)

Steve Jamison, et al. v. Kerr-McGee Corporation, et al. (State Court, Mississippi)

Mason Dillard et al v Bellsouth Advertising et al (Circuit Court of Jefferson County, Alabama)

Vesta Insurance v. ACE/Cigna (Arbitration Hearing)

## Appendix B - Documents Considered

Proofs of claim and filings in the bankruptcy proceedings

Pleadings filed to date in adversary proceeding

Defendant account statements and correspondence

Documents produced to date by defendant

Bank statements and enclosures for TMC

Risk Management Association Financial Statement Studies 2004/2005

National Summary of Domestic Trade Receivables, Credit Research Foundation, Second Quarter 2003

Documents listed on the index of documents located at the Trustee's office which is available for inspection.

## Appendix C
### Terry Manufacturing Company, Inc.,
### Bonifay Manufacturing Inc.
### Preference Payments

| Invoice No. | Invoice Date | Due Date | Date of Payment* | Check # | Invoice Amount** | Check Amount | Days from Invoice to Honor of Check | Days Past Due |
|---|---|---|---|---|---|---|---|---|
| 18788 | 10/17/2002 | 11/16/2002 | 4/9/2003 | 71427 | 2,490.90 | | 174 | 144 |
| 18790 | 10/22/2002 | 11/21/2002 | 4/9/2003 | 71427 | 3,453.85 | | 169 | 139 |
| 18791 | 10/23/2002 | 11/22/2002 | 4/9/2003 | 71427 | 2,718.30 | | 168 | 138 |
| 18794 | 10/24/2002 | 11/23/2002 | 4/9/2003 | 71427 | 8,385.37 | | 167 | 137 |
| 18797 | 10/28/2002 | 11/27/2002 | 4/9/2003 | 71427 | 2,969.60 | | 163 | 133 |
| 18799 | 10/29/2002 | 11/28/2002 | 4/9/2003 | 71427 | 2,739.98 | | 162 | 132 |
| | | | 4/9/2003 | 71427 | | 22,758.00 | | |
| 18799 | 10/29/2002 | 11/28/2002 | 4/29/2003 | 71631 | 315.95 | | 182 | 152 |
| 18803 | 10/31/2002 | 11/30/2002 | 4/29/2003 | 71631 | 4,486.91 | | 180 | 150 |
| 18810 | 11/7/2002 | 12/7/2002 | 4/29/2003 | 71631 | 5,340.78 | | 173 | 143 |
| 18815 | 11/8/2002 | 12/8/2002 | 4/29/2003 | 71631 | 4,668.30 | | 172 | 142 |
| 18820 | 11/13/2002 | 12/13/2002 | 4/29/2003 | 71631 | 4,342.95 | | 167 | 137 |
| 18822 | 11/18/2002 | 12/18/2002 | 4/29/2003 | 71631 | 3,534.65 | | 162 | 132 |
| | | | 4/29/2003 | 71631 | | 22,689.54 | | |
| 18822 | 11/18/2002 | 12/18/2002 | 5/9/2003 | 71790 | 347.78 | | 172 | 142 |
| 18825 | 11/20/2002 | 12/20/2002 | 5/9/2003 | 71790 | 4,981.34 | | 170 | 140 |
| 18831 | 11/21/2002 | 12/21/2002 | 5/9/2003 | 71790 | 2,983.36 | | 169 | 139 |
| 18835 | 12/5/2002 | 1/4/2003 | 5/9/2003 | 71790 | 2,402.44 | | 155 | 125 |
| | | | 5/9/2003 | 71790 | | 10,714.92 | | |
| 18835 | 12/5/2002 | 1/4/2003 | 5/15/2003 | 71829 | 5,214.15 | | 161 | 131 |
| 18838 | 12/9/2002 | 1/8/2003 | 5/15/2003 | 71829 | 4,229.91 | | 157 | 127 |
| 18839 | 12/10/2002 | 1/9/2003 | 5/15/2003 | 71829 | 3,454.21 | | 156 | 126 |
| 18842 | 12/12/2002 | 1/11/2003 | 5/15/2003 | 71829 | 4,272.99 | | 154 | 124 |
| 18847 | 12/17/2002 | 1/16/2003 | 5/15/2003 | 71829 | 3,836.43 | | 149 | 119 |
| | | | 5/15/2003 | 71829 | | 21,007.69 | | |
| 18847 | 12/17/2002 | 1/16/2003 | 5/30/2003 | 71998 | 681.51 | | 164 | 134 |
| 18848 | 12/18/2002 | 1/17/2003 | 5/30/2003 | 71998 | 6,681.74 | | 163 | 133 |
| 18853 | 1/8/2003 | 2/7/2003 | 5/30/2003 | 71998 | 3,179.75 | | 142 | 112 |
| | | | 5/30/2003 | 71998 | | 10,543.00 | | |
| 18853 | 1/8/2003 | 2/7/2003 | 6/9/2003 | 72142 | 35.54 | | 152 | 122 |
| 18854 | 1/8/2003 | 2/7/2003 | 6/9/2003 | 72142 | 3,807.39 | | 152 | 122 |
| 18857 | 1/9/2003 | 2/8/2003 | 6/9/2003 | 72142 | 239.49 | | 151 | 121 |
| 18861 | 1/15/2003 | 2/14/2003 | 6/9/2003 | 72142 | 4,482.04 | | 145 | 115 |

11

**Terry Manufacturing Company, Inc.,**
**Bonifay Manufacturing Inc.**
**Preference Payments**
**(Continued)**

| Invoice No. | Invoice Date | Due Date | Date of Payment* | Check # | Invoice Amount | Check Amount | Days from Invoice to Honor of Check | Days Past Due |
|---|---|---|---|---|---|---|---|---|
| 18863 | 1/16/2003 | 2/15/2003 | 6/9/2003 | 72142 | 4,851.86 | | 144 | 114 |
| 18866 | 1/21/2003 | 2/20/2003 | 6/9/2003 | 72142 | 4,354.67 | | 139 | 109 |
| 18868 | 1/22/2003 | 2/21/2003 | 6/9/2003 | 72142 | 2,229.01 | | 138 | 108 |
| | | | 6/9/2003 | 72142 | | 20,000.00 | | |
| | | | | | 107,713.15 | 107,713.15 | | |

*Payment deemed to occur on the date check is honored.

**Allocation of payment to specific invoices according to Payment History by Bonifay Manufacturing Inc.

12

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                              Case No. 03-32063

TERRY MANUFACTURING                                 Chapter 7
COMPANY, INC.

      Debtor.

In re:                                              Case No. 03-32213

TERRY UNIFORM                                       Chapter 7
COMPANY, LLC,
      Debtor.

J. LESTER ALEXANDER III,
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC
      Plaintiff,                                   Adv. Pro. No. 04-3068-WRS

v.

HLC INDUSTRIES,
      Defendant.

<br>

### Summary Report of AEA Group, LLC

By:  J. Lester Alexander, III

**As of February 24, 2005**

## Summary Report of AEA Group, LLC

By: J. Lester Alexander, III

### Terry Manufacturing Company, Inc.,
### Terry Uniform Company, LLC,
### J. Lester Alexander, III, Trustee
### v.
### HLC Industries,

As of February 24, 2005

This letter and the attached appendices are my report of findings to date in the above referenced matter.

I am a certified public accountant and have approximately twenty-six years of professional experience. I am a certified fraud examiner and I hold an accounting degree from the University of Alabama. As a certified public accountant, I have experience in auditing which has required the evaluation of accounts receivable aging and the collection of accounts receivable, both in terms of the history of the client and the norms for the relevant industry. I am the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("TMC") and my compensation as Trustee is subject to determination by the Court. I am the Managing Principal of AEA Group, LLC. I was assisted by members of my firm who worked under my direction in performing this analysis. Billing rates for AEA Group for this engagement range from $185 to $55 per hour. My resume, including my testimony experience, is attached as an appendix to this report.

### SCOPE

As to the above-referenced matter, I am presented as expert witness to report my findings regarding the solvency of TMC; the nature and relationship of payments by TMC to HLC Industries ("HLC") with respect to the TMC bankruptcy; whether payments to HLC were or were not in the ordinary course of business; and whether the timing of TMC's payments to HLC were or were not typical of TMC's industry classification. I utilized the business records of TMC; to the extent they exist or could be recreated. Since July, 2003, I or people under my direction have reconstructed the records pertaining to accounts payable of TMC. In addition, I utilized certain case pleadings, bank records, business and financial records produced by HLC, industry research and other information listed in an appendix to this report.

### FINDINGS AND OPINIONS

It is my understanding that pursuant to 11 U.S.C. § 547, TMC is presumed to have been insolvent during the 90 days preceding its Chapter 11 filing on July 7, 2003. As a result of my analysis, I have determined that TMC was insolvent throughout the ninety days preceding its Chapter 11 filing with the amount of Terry Manufacturing's liabilities exceeding its assets by an amount in excess of $30,000,000. In addition, if all of the proofs of claim filed in this case

2

accurately state the amount of indebtedness owed by TMC (and such proofs of claim have been filed under penalty of perjury), TMC's liabilities exceeded the value of its assets by more than $60,000,000.

TMC made 13 payments to HLC totaling $916,262.04 during the 90 day preference period preceding its Chapter 11 filing. Each payment to HLC was in satisfaction of an antecedent debt. The payments made to HLC during the preference period permitted HLC to receive more than it would have received in a liquidation assuming the transfer had not been made. Had HLC not received the payments and instead made an additional unsecured claim for these amounts, it is certain that HLC would not receive a distribution equal to the challenged payments.

Furthermore the payments made to HLC were not made in the ordinary course of business as evidenced by the following:

- All 13 of the payments were for past due invoices, and were outside of the indicated payment terms.

- The number of days between the related invoice date and the date the check cleared the bank account of TMC ranged from 104 days to 290 days.

- Analysis of actual payment history data for the textile industry shows that payments on account were made in 39 to 41 days (median of companies reporting to Risk Management Association for the year ended March 31, 2003 and 2004, respectively).

- Analysis of actual trade receivables history for the textile mill segment of the textile industry during the second quarter of 2003 shows the median number of days of sales outstanding were 47 days (median for companies reporting to Credit Research Foundation).

- Of the thirteen payments made by TMC to HLC during the 90 day preference period, nine payments were made using post dated trade acceptances. The trade acceptances evidenced TMC's obligation to make payment and served as a pre-authorized payment against TMC's bank account in exactly the same fashion as an ordinary check. For example, all nine payments were signed by the maker; contained an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker; was payable at a definite time; and was payable to order exactly the same as an ordinary check. Furthermore, all nine payments were drawn on TMC's bank and payable to the holder on demand exactly the same as an ordinary check. Moreover, all nine of the post dated trade acceptances were tendered to HLC to settle old, past due invoices, and not for a bona fide, contemporaneous commercial transaction. Based on documentation included with the payments, the payments were marked up by amounts ranging from 7% to 2.5% above the related HLC invoice.

3

## OTHER CONSIDERATIONS

My report is issued in accordance with the Management Consulting Standards of the American Institute of Certified Public Accountants. This report is to be used solely in connection with proceedings related to the above referenced matter and should not be used for any other purpose. Outside distribution of this report to others is not permitted without the written consent of AEA Group, LLC. The information in this report is based on information learned through February 24, 2005. Accordingly, I reserve the right to consider any additional information that is presented to me including, but not limited to, defendant's production which, as of this date, has not been received by me. It is my understanding that the defendant began producing documents late yesterday and, as of this date, I have received no production, nor is there adequate time to review same. Further, I reserve the right to supplement and amend my opinions for information learned up to and throughout trial.

Very truly yours,


By: _J. Lester Alexander, III_

J. Lester Alexander, III, CPA
Chapter 7 Trustee
Terry Manufacturing Co. Inc and Terry Uniform, LLC

4

## Index of Appendices

Appendix A – Resume and testimony experience

Appendix B – Documents considered

Appendix C – Payments

# Appendix A - Resume of J. Lester Alexander, III

## Professional Experience

Mr. Alexander is the President and Managing Principal of AEA Group LLC, a consulting firm specializing in accounting, economic and appraisal consulting. Mr. Alexander has approximately twenty-six years of experience providing audit and advisory services to a wide range of entities, stakeholders and governing boards. As a former PricewaterhouseCoopers LLP Partner, Mr. Alexander has provided audit and advisory services to various types of companies including financial services, manufacturing, healthcare, technology, real estate, contracting, and retail companies. In addition Mr. Alexander has provided accounting, economic and appraisal consulting services to clients in connection with investment transactions, public securities offerings, private placement security offerings and debt offerings of various types. He holds a Bachelor of Science in Accounting from the University of Alabama and is a Certified Public Accountant and a Certified Fraud Examiner.

Mr. Alexander has provided services and, from time to time, expert testimony in various courts and in situations involving alternative dispute resolution. He has provided services in connection with contract disputes, security issues, insurance coverage issues, non-compete agreements, lost profits, business valuation and various other matters. He has testified in connection with class action certification hearings and class action fairness hearings. Mr. Alexander's experience includes testimony about customary practices and standards of care in auditing, operating and controlling business activities.

Mr. Alexander is experienced in the areas of business valuation, acquisition due diligence and cost accounting matters. He has evaluated the value of ownership interests in businesses in connection with acquisitions, disposals and disputes. He has performed suitability studies in connection with investment transactions in a wide range of financial instruments. In addition, he has performed incremental cost studies, contribution margin studies and other applications of cost accounting for clients in connection with new products, acquisitions, patent valuations and evaluation of trademarks. This experience includes making projections of incremental revenues and costs in connection with profitability analysis of proposed business ventures, new products and other profitability analysis for companies.

Mr. Alexander has advised governing bodies, committees and members on their role in overseeing the activities of companies and senior management. His clients have included publicly-traded companies, privately-held companies, governmental entities and tax-exempt companies. He has advised governing bodies overseeing companies in the start-up/growth, mature and restructuring phases of operational development. He has performed these services for governing bodies overseeing companies operating in the manufacturing, healthcare, technology, financial services, real estate, contracting, and retail industries.

## Professional/Business/Community Affiliations

Lecturer on Financial Damages – 2004 Cumberland Law School Continuing Education Seminar, Birmingham Alabama

Lecturer on Financial and Business Fraud Schemes - 2004 Corporate Counsel Seminar, Birmingham Alabama

Lecturer on Detecting Fraud Schemes – Fall Bankruptcy Seminar, Fall 2003, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Accountant's View of Sarbanes Oxley – 2003 Seminar, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Online Fraud Prevention – 2002 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Forensic Computer Investigation – 2001 Discovery Seminar, Alabama Bar Continuing Education Series, Birmingham , Alabama

Lecturer on Online Business & Financial Research Methods – 2001 Federation of Insurance & Corporate Counsel's Internet University, Napa, California

Lecturer on Identifying and Investigating Fraud – 2001 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Interpreting Financial Statements – 1999 National Judicial College, Gulf Shores, Alabama

Panelist on Consumer Fraud Issues – Coopers & Lybrand 1997 National Banking Conference, Washington, DC

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Lecturer on Online Discovery – Defense Research Institute's 2001 Annual Meeting of Young Lawyers, Miami, Florida

Lecturer on Online Expert Witness Research – 2001 Louisiana State Bar 17th Summer School for Lawyers, Destin, Florida



## Professional/Business/Community Affiliations (continued)

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Former National Practice Leader – Coopers & Lybrand's Financial Services Consumer Dispute Resolution Practice

Former Regional Service Line Leader – Coopers & Lybrand's Litigation Consulting Services HLC Region

Former Practice Leader for Dispute Analysis and Investigations - PricewaterhouseCoopers LLP, Birmingham, Alabama

Former Member - Banking and Insurance Industry Groups - PricewaterhouseCoopers LLP

American Institute of Certified Public Accountants

Alabama Society of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

Associate Member-American Bar Association

Commerce Executive Society – University of Alabama

Past Regional Director – Exchange Club of Alabama

Past President, Secretary, Director and Treasurer – Birmingham Breakfast Exchange Club

Past Administrative Board Member and Finance Committee Member – Canterbury United Methodist Church



## Testimony in Last Four Years

Vulcan Engineering, Inc. v. FATA Aluminum, Inc. (Federal Court, Michigan Eastern District)

Stockholders of Alalooska Inc. v. Performance Foods Group Companies (Arbitration, Atlanta, Georgia)

SouthTrust Bank v. ServiceMaster Diversified Health Services, L.P. (Federal District Court, Northern District of Alabama-HLC Division)

Sabrina Abernathy, et al. v. Monsanto Company, et al. (Circuit Court of Calhoun County, Alabama)

Central Parking System v. Alta Health and Life Insurance Company (Arbitration Hearing)

Susan K. Kearney v. Regions Bank (Federal Bankruptcy Court, Northern District of Alabama)

Union Healthcare, Inc. Chapter 11 Bankruptcy Proceeding (United States Bankruptcy Court, HLC District of Mississippi)

Hilb Rogal & Hamilton Company of Alabama v. Werner Beiersdoerfer (Alabama District Court, Jefferson County)

Intergraph Corporation v. Bentley Software Systems, Inc (Circuit Court of Madison County, Alabama)

UBS PaineWebber, Inc. v. Roger H. Aiken, Michael S. Boulos, Patrick G. McQuilling and A.G. Edwards & Sons, Inc., et al. (Arbitration Hearing)

Vanderbilt Integrated Providers/Nashville Healthcare Group, LLC and Vanderbilt University v. Prudential Insurance Company of America, Inc. and Prudential Healthcare Plan, Inc. (United States District Court, Middle District of Tennessee, Nashville)

Cothran Inc., James Cothran, Mary Lou Cothran v. Pali USA Ltd, Pali Linens, LLC, Loretto Pali & Richard Levine (Circuit Court of Baldwin County, Alabama)

HydroPower Inc v. Eaton Manufacturing (Circuit Court of Jefferson County Alabama)

The Utilities Board of the City of Daphne v. City of Spanish Fort et al (Federal District Court, HLC District of Alabama)

Compass Bank v. Blitz Media, Inc., et al. (United States District Court, The Northern District of Alabama, HLC Division)

Steward Machine v. White Oak, et al. (United States District Court, Connecticut)

Refrigerated Construction Services v. Coldmatic Building Systems, Inc, et al (United States District Court, Northern District of Alabama, HLC Division)

ABB Automation, Inc. v. DeVries, et al. (Circuit Court of Jefferson County)

Proliance, Inc. v. City of Huntsville (Circuit Court of Madison County, Alabama)

Steve Jamison, et al. v. Kerr-McGee Corporation, et al. (State Court, Mississippi)

Mason Dillard et al v Bellsouth Advertising et al (Circuit Court of Jefferson County, Alabama)

Vesta Insurance v. ACE/Cigna (Arbitration Hearing)

## Appendix B - Documents Considered

Proofs of claim and filings in the bankruptcy proceedings

Pleadings filed to date in adversary proceeding

Defendant account statements and correspondence

Documents produced to date by defendant

Bank statements and enclosures for TMC

Risk Management Association Financial Statement Studies 2004/2005

National Summary of Domestic Trade Receivables, Second Quarter 2003, Credit Research Foundation

Documents produced to date or made available by Trustee

Actrade Capital, Inc. "Trade Acceptance Draft Program Buyer Acknowledgement," signed on behalf of Terry Manufacturing Company, Inc. by Roy Terry.

Uniform Commercial Code of New York, § 3-104.

**Appendix C**
**Terry Manufacturing Company, Inc.,**
**HLC Industries, Inc.**
**Preference Payments**

| Invoice No. | Invoice Date | Due Date | Date of Payment[2] | Check # | Invoice Amount | Amount Applied | Check Amount | Days from Invoice to Honor of Check | Days Past Due |
|---|---|---|---|---|---|---|---|---|---|
| H33487[1] | 8/16/2002 | 11/14/2002 | 4/8/2003 | 139449 | 253,485.58 | 84,494.39 | 90,409.00 | 235 | 145 |
| H33470[1] | 7/26/2002 | 10/24/2002 | 4/10/2003 | 139321 | 93,545.98 | 31,181.31 | 33,364.00 | 258 | 168 |
| H33677 | 12/31/2002 | 3/31/2003 | 4/14/2003 | 71463 | 2,486.91 | 2,486.91 | 2,486.91 | 104 | 14 |
| H33678 | 12/31/2002 | 3/31/2003 | 4/15/2003 | 71464 | 204,548.83 | 100,000.00 | 100,000.00 | 105 | 15 |
| H33678 | 12/31/2002 | 3/31/2003 | 4/15/2003 | 71465 | 204,548.83 | 104,548.83 | 104,548.83 | 105 | 15 |
| H33476[1] | 8/3/2002 | 11/1/2002 | 4/22/2003 | 139352 | 226,525.71 | 75,508.41 | 80,794.00 | 262 | 172 |
| H33463[1] | 7/20/2002 | 10/18/2002 | 4/25/2003 | 139250 | 139,228.30 | 46,409.61 | 49,658.28 | 279 | 189 |
| H33684 | 1/11/2003 | 4/11/2003 | 5/2/2003 | 71694 | 34,672.83 | 34,672.83 | 34,672.83 | 111 | 21 |
| H33515[1] | 9/10/2002 | 12/9/2002 | 5/5/2003 | 139549 | 241,664.49 | 80,554.21 | 86,193.00 | 237 | 147 |
| H33487[1] | 8/16/2002 | 11/14/2002 | 5/8/2003 | 139450 | 253,485.58 | 84,494.39 | 90,409.00 | 265 | 175 |
| H33470[1] | 7/26/2002 | 10/24/2002 | 5/12/2003 | 139322 | 93,545.98 | 31,183.36 | 33,366.19 | 290 | 200 |
| H33662[1] | 12/10/2002 | 3/10/2003 | 5/14/2003 | 140037 | 232,103.88 | 116,051.71 | 118,953.00 | 155 | 65 |
| H33539[1] | 9/21/2002 | 12/20/2002 | 5/14/2003 | 139568 | 256,281.94 | 85,427.10 | 91,407.00 | 235 | 145 |
|  |  |  |  |  |  | 877,013.06 | 916,262.04 |  |  |

1 -Original Invoice number and date. Invoice subsequently modified by appending "R" to invoice number and altering invoice date.
2- Payment deemed to occur on the date check is honored.

11

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:                                          Case No. 03-32063

TERRY MANUFACTURING                             Chapter 7
COMPANY, INC.

    Debtor.

In re:                                          Case No. 03-32213

TERRY UNIFORM                                   Chapter 7
COMPANY, LLC,
    Debtor.

J. LESTER ALEXANDER III,
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC
AND TERRY UNIFORM COMPANY,
LLC
    Plaintiff,                              Adv. Pro. No. 04-3081-WRS

v.

SOUTHERN MILLS, INC

    Defendant.

**Summary Report of AEA Group, LLC**

By:  J. Lester Alexander, III

As of February 17, 2005

Summary Report of AEA Group, LLC

By: J. Lester Alexander, III

Terry Manufacturing Company, Inc.,
Terry Uniform Company, LLC,
J. Lester Alexander, III, Trustee
v.
Southern Mills, Inc.

As of February 17, 2005

This letter and the attached appendices are my report of findings to date in the above referenced matter.

I am a certified public accountant and have approximately twenty-four years of professional experience. I am a certified fraud examiner and I hold an accounting degree from the University of Alabama. As a certified public accountant, I have experience in auditing which has required the evaluation of accounts receivable aging and the collection of accounts receivable, both in terms of the history of the client and the norms for the relevant industry. I am the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("TMC") and my compensation as trustee is subject to determination by the court. I am the Managing Principal of AEA Group, LLC. I was assisted by members of my firm who worked under my direction in performing this analysis. Billing rates for AEA Group for this engagement range from $185 to $55 per hour. My resume, including my testimony experience, is attached as an appendix to this report.

SCOPE

As to the above-referenced matter, I am presented as expert witness to report my findings regarding the solvency of TMC; the nature and relationship of payments by TMC to Southern Mills, Inc. ("Southern") with respect to the TMC bankruptcy; whether payments to Southern were or were not in the ordinary course of business; and whether the timing of TMC's payments to Southern were or were not typical of TMC's industry classification. I utilized the business records of TMC; to the extent they exist or could be recreated. Since July, 2003, I or people under my direction have reconstructed the records pertaining to accounts payable of TMC. In addition, I utilized certain case pleadings, bank records, business and financial records produced by Southern, industry research and other information listed in an appendix to this report.

FINDINGS AND OPINIONS

It is my understanding that pursuant to 11 U.S.C. § 547, TMC is presumed to have been insolvent during the 90 days preceding its Chapter 11 filing on July 7, 2003. As a result of my analysis, I have determined that TMC was insolvent throughout the ninety days preceding its Chapter 11 filing with the amount of Terry Manufacturing's liabilities exceeding its assets by an amount in excess of $30,000,000. In addition, if all of the proofs of claim filed in this case

accurately state the amount of indebtedness owed by TMC (and such proofs of claim have been filed under penalty of perjury), TMC's liabilities exceeded the value of its assets by more than $45,000,000.

TMC made 8 payments to Southern totaling $981,808.29 during the 90 day preference period preceding its Chapter 11 filing. Each payment to Southern was in satisfaction of an antecedent debt. The payments made to Southern during the preference period permitted Southern to receive more than it would have in a liquidation assuming the transfer had not been made. Had Southern not received the payments and instead made an additional unsecured claim for these amounts, it is certain that Southern would not receive a distribution equal to the challenged payments.

Furthermore the payments made to Southern were not made in the ordinary course of business as evidenced by the following:

- All of the payments were for past due invoices, and were outside of the indicated payment terms.

  The number of days between the related invoice date and the date the check cleared the bank account of TMC ranged from 135 days to 286 days.

  The date of each payment was later than the delinquent date indicated on the related invoice.

- Analysis of actual payment history data for the textile industry shows that payments on account were made in 39 to 41 days (median of companies reporting to Risk Management Association for the year ended March 31, 2003 and 2004, respectively).

  Analysis of actual trade receivables history for the textile mill segment of the textile industry during the second quarter of 2003 shows the median number of days of sales outstanding were 47 days (median for companies reporting to Credit Research Foundation).

- Southern and TMC entered into a letter agreement dated March 25, 2003 that provided for "special terms and conditions." The letter agreement was signed by Roy Terry on March 26, 2003, which is approximately 13 days before the 90 period prior to TMC's bankruptcy filing on July 7, 2003.

- Two checks (#70805 for $156,600 and #71985 for $125,915.22) were listed as "NSF" by Southern on its Proof of Claim. These checks were returned "NSF" per overdraft notices issued by TMC's bank on March 3, 2003 and May 28, 2003 respectively.

2

**OTHER CONSIDERATIONS**

My report is issued in accordance with the Management Consulting Standards of the American Institute of Certified Public Accountants. This report is to be used solely in connection with proceedings related to the above referenced matter and should not be used for any other purpose. Outside distribution of this report to others is not permitted without the written consent of AEA Group, LLC. The information in this report is based on information learned through February 17, 2005. I reserve the right to consider any additional information that is presented to me. Further, I reserve the right to supplement and amend my opinions for information learned up to and throughout trial.

Very truly yours,

By: _____
J. Lester Alexander, III, CPA
Chapter 7 Trustee
Terry Manufacturing Co. Inc and Terry Uniform, LLC

3

# Appendix A - Resume of J. Lester Alexander, III

## Professional Experience

Mr. Alexander is the President and Managing Principal of AEA Group LLC, a consulting firm specializing in accounting, economic and appraisal consulting. Mr. Alexander has approximately twenty-four years of experience providing audit and advisory services to a wide range of entities, stakeholders and governing boards. As a former PricewaterhouseCoopers LLP Partner, Mr. Alexander has provided audit and advisory services to various types of companies including financial services, manufacturing, healthcare, technology, real estate, contracting, and retail companies. In addition Mr. Alexander has provided accounting, economic and appraisal consulting services to clients in connection with investment transactions, public securities offerings, private placement security offerings and debt offerings of various types. He holds a Bachelor of Science in Accounting from the University of Alabama and is a Certified Public Accountant and a Certified Fraud Examiner.

Mr. Alexander has provided services and, from time to time, expert testimony in various courts and in situations involving alternative dispute resolution. He has provided services in connection with contract disputes, security issues, insurance coverage issues, non-compete agreements, lost profits, business valuation and various other matters. He has testified in connection with class action certification hearings and class action fairness hearings. Mr. Alexander's experience includes testimony about customary practices and standards of care in auditing, operating and controlling business activities.

Mr. Alexander is experienced in the areas of business valuation, acquisition due diligence and cost accounting matters. He has evaluated the value of ownership interests in businesses in connection with acquisitions, disposals and disputes. He has performed suitability studies in connection with investment transactions in a wide range of financial instruments. In addition, he has performed incremental cost studies, contribution margin studies and other applications of cost accounting for clients in connection with new products, acquisitions, patent valuations and evaluation of trademarks. This experience includes making projections of incremental revenues and costs in connection with profitability analysis of proposed business ventures, new products and other profitability analysis for companies.

Mr. Alexander has advised governing bodies, committees and members on their role in overseeing the activities of companies and senior management. His clients have included publicly-traded companies, privately-held companies, governmental entities and tax-exempt companies. He has advised governing bodies overseeing companies in the start-up/growth, mature and restructuring phases of operational development. He has performed these services for governing bodies overseeing companies operating in the manufacturing, healthcare, technology, financial services, real estate, contracting, and retail industries.

5

## Professional/Business/Community Affiliations

Lecturer on Financial Damages – 2004 Cumberland Law School Continuing Education Seminar, Birmingham Alabama

Lecturer on Financial and Business Fraud Schemes - 2004 Corporate Counsel Seminar, Birmingham Alabama

Lecturer on Detecting Fraud Schemes – Fall Bankruptcy Seminar, Fall 2003, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Accountant's View of Sarbanes Oxley – 2003 Seminar, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Online Fraud Prevention – 2002 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Forensic Computer Investigation – 2001 Discovery Seminar, Alabama Bar Continuing Education Series, Birmingham , Alabama

Lecturer on Online Business & Financial Research Methods – 2001 Federation of Insurance & Corporate Counsel's Internet University, Napa, California

Lecturer on Identifying and Investigating Fraud – 2001 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Interpreting Financial Statements – 1999 National Judicial College, Gulf Shores, Alabama

Panelist on Consumer Fraud Issues – Coopers & Lybrand 1997 National Banking Conference, Washington, DC

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Lecturer on Online Discovery – Defense Research Institute's 2001 Annual Meeting of Young Lawyers, Miami, Florida

Lecturer on Online Expert Witness Research – 2001 Louisiana State Bar 17th Summer School for Lawyers, Destin, Florida

6

## Professional/Business/Community Affiliations (continued)

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Former National Practice Leader – Coopers & Lybrand's Financial Services Consumer Dispute Resolution Practice

Former Regional Service Line Leader – Coopers & Lybrand's Litigation Consulting Services Southern Region

Former Practice Leader for Dispute Analysis and Investigations - PricewaterhouseCoopers L .P. Birmingham, Alabama

Former Member - Banking and Insurance Industry Groups - PricewaterhouseCoopers LLP

American Institute of Certified Public Accountants

Alabama Society of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

Associate Member-American Bar Association

Commerce Executive Society – University of Alabama

Past Regional Director – Exchange Club of Alabama

Past President, Secretary, Director and Treasurer – Birmingham Breakfast Exchange Club

Past Administrative Board Member and Finance Committee Member – Canterbury United Methodist Church

## Testimony in Last Four Years

Vulcan Engineering, Inc. v. FATA Aluminum, Inc. (Federal Court, Michigan Eastern District)

Stockholders of Alalooska Inc. v. Performance Foods Group Companies (Arbitration, Atlanta, Georgia)

SouthTrust Bank v. ServiceMaster Diversified Health Services, L.P. (Federal District Court, Northern District of Alabama-Southern Division)

Sabrina Abernathy, et al. v. Monsanto Company, et al. (Circuit Court of Calhoun County, Alabama)

Central Parking System v. Alta Health and Life Insurance Company (Arbitration Hearing)

Susan K. Kearney v. Regions Bank (Federal Bankruptcy Court, Northern District of Alabama)

Union Healthcare, Inc. Chapter 11 Bankruptcy Proceeding (United States Bankruptcy Court, Southern District of Mississippi)

Hilb Rogal & Hamilton Company of Alabama v. Werner Beiersdoerfer (Alabama District Court, Jefferson County)

Intergraph Corporation v. Bentley Software Systems, Inc (Circuit Court of Madison County, Alabama)

UBS PaineWebber, Inc. v. Roger H. Aiken, Michael S. Boulos, Patrick G. McQuilling and A.G. Edwards & Sons, Inc., et al. (Arbitration Hearing)

Vanderbilt Integrated Providers/Nashville Healthcare Group, LLC and Vanderbilt University v. Prudential Insurance Company of America, Inc. and Prudential Healthcare Plan, Inc. (United States District Court, Middle District of Tennessee, Nashville)

Cothran Inc., James Cothran, Mary Lou Cothran v. Pali USA Ltd, Pali Linens, LLC, Loretto Pali & Richard Levine (Circuit Court of Baldwin County, Alabama)

HydroPower Inc v. Eaton Manufacturing (Circuit Court of Jefferson County Alabama)

The Utilities Board of the City of Daphne v. City of Spanish Fort et al (Federal District Court, Southern District of Alabama)

Compass Bank v. Blitz Media, Inc., et al. (United States District Court, The Northern District of Alabama, Southern Division)

Steward Machine v. White Oak, et al. (United States District Court, Connecticut)

Refrigerated Construction Services v. Coldmatic Building Systems, Inc, et al (United States District Court, Northern District of Alabama, Southern Division)

ABB Automation, Inc. v. DeVries, et al. (Circuit Court of Jefferson County)

Proliance, Inc. v. City of Huntsville (Circuit Court of Madison County, Alabama)

Steve Jamison, et al. v. Kerr-McGee Corporation, et al. (State Court, Mississippi)

Mason Dillard et al v Bellsouth Advertising et al (Circuit Court of Jefferson County, Alabama)

Vesta Insurance v. ACE/Cigna (Arbitration Hearing)

## Documents Considered

Proofs of claim and filings in the bankruptcy proceedings

Pleadings filed to date in adversary proceeding

Defendant account statements and correspondence

Documents produced to date by defendant

Bank statements and enclosures for TMC

Risk Management Association Financial Statement Studies 2004/2005

National Summary of Domestic Trade Receivables, Second Quarter 2003, Credit Research Foundation

**Terry Manufacturing Company, Inc.,**
**Southern Mills, Inc.**
**Preference Payments**

| Invoice No. | Invoice Date | Due Date | Date of Payment[1] | Check # | Invoice Amount | Amount Applied[2] | Check Amount | Days from Invoice to Honor of Check | Days Past Due |
|---|---|---|---|---|---|---|---|---|---|
| 206610 | 8/20/2002 | | 4/9/2003 | | 99,271.58 | 46,796.72 | | 232 | |
| 207253 | 9/4/2002 | | 4/9/2003 | | 87,436.68 | 6,078.28 | | 217 | |
| | | | 4/9/2003 | | | | 52,875.00 | | |
| 207253 | 9/4/2002 | | 4/14/2003 | | 87,436.68 | 56.58 | | 222 | 162 |
| 211287 | 11/30/2002 | | 4/14/2003 | | 31,432.51 | 31,432.51 | | 135 | 125 |
| 206947 | 8/27/2002 | | 4/14/2003 | | 124,684.63 | 124,684.63 | | 230 | 170 |
| 208528 | 10/1/2002 | | 4/14/2003 | | 123,120.00 | 6,078.28 | | 195 | 135 |
| | | | 4/14/2003 | | | | 162,252.00 | | |
| 207253 | 9/4/2002 | | 4/24/2003 | | 87,436.68 | 57,991.95 | | 232 | 172 |
| | | | 4/24/2003 | | | | 57,991.95 | | |
| 207254 | 9/4/2002 | | 4/28/2003 | | 39,629.16 | 39,629.16 | | 236 | 176 |
| 207583 | 9/10/2002 | | 4/28/2003 | | 122,380.86 | 122,380.86 | | 230 | 170 |
| 207902 | 9/17/2002 | | 4/28/2003 | | 92,163.54 | 14,532.18 | | 223 | 163 |
| | | | 4/28/2003 | | | | 176,542.20 | | |
| 207253 | 9/4/2002 | | 5/6/2003 | | 87,436.68 | 23,309.87 | | 244 | 184 |
| 207902 | 9/17/2002 | | 5/6/2003 | | 92,163.54 | 77,631.36 | | 231 | 171 |
| 208224 | 9/24/2002 | | 5/6/2003 | | 125,511.91 | 93,407.47 | | 224 | 164 |
| | | | 5/6/2003 | | | | 194,348.70 | | |
| 208224 | 9/24/2002 | | 5/15/2003 | | 125,511.91 | 32,104.44 | | 233 | 173 |
| 207903 | 9/17/2002 | | 5/15/2003 | | 27,300.91 | 27,300.91 | | 240 | 180 |
| 208528 | 10/1/2002 | | 5/15/2003 | | 123,120.00 | 21,594.65 | | 226 | 166 |
| | | | 5/15/2003 | | | | 81,000.00 | | |
| 212233 | 12/31/2002 | | 5/20/2003 | | 36,494.62 | 36,494.62 | | 140 | 130 |
| 208528 | 10/1/2002 | | 5/20/2003 | | 123,120.00 | 90,216.74 | | 231 | 171 |
| | | | 5/20/2003 | | | | 126,711.36 | | |
| 204781 | 7/16/02 | | 02/28/03 | | 119,340.89 | 101,720.47 | | 280 | 220 |
| 204547 | 7/10/02 | | 02/28/03 | | 31,156.85 | 31,156.85 | | 286 | 226 |
| 208557 | 9/30/02 | | 02/28/03 | | 23,722.68 | 23,722.68 | | 204 | 194 |
| | | | | | | (156,600.00) | | | |
| NSF Check #70805 [3, 4, 5] | | | | | 156,600.00 | 130,087.08 | | | |
| | | | 4/22/2003 | 71569 | | | 130,087.08 | | |
| | | | | | | 981,808.29 | | | |

1 - Payment deemed to occur on the date check is honored.
2 - Payment allocation per Southern Mills Customer Statements and Finance Charge Invoices for dates referenced.
3 - Per Southern Mills Proof of Claim and Finance Charge Invoice dated 2/28/2003
4 - Payment deemed to occur on date replacement check honored. Check # 71569, as replacement for NSF Check # 70805.
5 - As shown on Proof of Claim, the amount of Replacement check # 71569 is $26,405.56 less than check #70805.

## Fair Value of Assets and Liabilities
### (Rounded to the nearest thousand)

| | Using Reconstructed Records | | Based upon Income Tax Returns | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | July 7, 2003 | December 31, 2002 | December 31, 2001 | December 31, 2000 | December 31, 1999 | December 31, 1998 |
| Cash | $ 236,000 [1] | $ 1,596,000 [1] | $ 163,000 [7] | $ 137,000 [7] | $ 224,000 [7] | $ 394,000 [7] |
| Accounts receivables | 855,000 [10] | 855,000 [10] | 2,713,000 [7] | 2,107,000 [7] | 2,356,000 [7] | 2,648,000 [7] |
| Inventories | 556,000 [2] | 556,000 [2] | 8,014,000 [8] | 7,348,000 [8] | 6,375,000 [8] | 6,677,000 [8] |
| Land and building | 300,000 [2] | 300,000 [2] | 300,000 [2] | 300,000 [2] | 300,000 [2] | 300,000 [2] |
| Fixed assets | 354,000 [2] | 354,000 [2] | 354,000 [2] | 354,000 [2] | 354,000 [2] | 354,000 [2] |
| 431 Building | | | | 1,000,000 [6] | 1,000,000 [6] | 1,000,000 [6] |
| Land sold to Rudolph Terry | - | - | - | - | 341,000 [9] | 341,000 [9] |
| Total Assets | 2,301,000 | 3,661,000 | 11,544,000 | 11,246,000 | 10,950,000 | 11,714,000 |
| | | | | | | |
| Accounts payable | 41,945,000 [3] | 40,215,000 [4] | 3,818,000 [7] | 3,808,000 [7] | 3,907,000 [7] | 3,635,000 [7] |
| Notes payable | 19,791,000 [3] | 17,899,000 [5] | 19,270,000 [7] | 13,086,000 [7] | 14,886,000 [7] | 7,684,000 [7] |
| Subordinated note payable | 3,629,000 [3] | 3,490,000 [5] | 3,155,000 [5] | 3,335,000 [5] | 3,500,000 [5] | 3,500,000 [5] |
| Capital lease obligation | 830,000 [6] | 865,000 [6] | 945,000 [6] | - | - | - |
| Total liabilities [11] | 66,195,000 | 62,469,000 | 27,188,000 | 20,229,000 | 22,293,000 | 14,819,000 |
| | | | | | | |
| Liabilities exceed Assets | $ (63,894,000) | $ (58,808,000) | $ (15,644,000) | $ (8,983,000) | $ (11,343,000) | $ (3,105,000) |

[1] Bank statements as of period end.

[2] Actual sale of property, before selling cost.

[3] Per claims register filed with Bankruptcy Court.

[4] Estimated based on July 7, 2003 accounts payable minus net cash flow from operations for the six months ending July 7, 2003.

[5] Statement provided by lender.

[6] Sale leaseback between Paul Marshall and Terry Manufacturing Co., Inc. in June 2001 of $1,000,000. The obligation is $1,000,000 less payments made to date.

[7] Form 1120, Schedule L, as filed with the Internal Revenue Service.

[8] Inventory marked up to estimated value assuming goods were finished. Inventory markup was determineed using gross receipts and disbursements other than those classified as selling, insurance, utilities, other disbursements, and salary wages (including 28% benefit/tax load)

[9] Land subsequently sold to Rudolph Terry on August 4, 2000 with a cost basis of $215,594.

[10] Cash collections from customers since July 7, 2003.

[11] Total liabilities exclude lease and contingent liabilities including, but not limited, to leases having gross annual rents in 2002 of $268,000 excluding Marshall lease.



EXHIBIT

"3"

FOSHEE & TURNER COURT REPORTERS

Page 1

```
 1     IN THE UNITED STATES BANKRUPTCY COURT

 2       FOR THE MIDDLE DISTRICT OF ALABAMA

 3
                                  ORIGINAL
 4

 5     IN RE:                      Case No.

 6     TERRY MANUFACTURING          03-32063-WRS

 7     COMPANY, INC.,              Chapter 7

 8     Debtor.

 9

10     IN RE:                      Case No.

11     TERRY UNIFORM                03-32213-WRS

12     COMPANY, L.L.C.,            Chapter 7

13     Debtor.

14

15     J. LESTER ALEXANDER, III, TRUSTEE,

16          Plaintiff,

17     vs.                         Adv. Pro. No.

18     THE BANK OF WEDOWEE,         04-03062

19          Defendant.

20

21     DEPOSITION TESTIMONY VIA TELEPHONE OF:

22          JAMES F. HENDERSON

23                              Job #41132
```

EXHIBIT

"2"

Page 6

1              I, Lane C. Butler, a Court

2    Reporter and Notary Public, State of

3    Alabama at Large, acting as Notary,

4    certify that on this date, pursuant to

5    the Federal Rules of Civil Procedure and

6    the foregoing stipulation of counsel,

7    there came before me at the offices of

8    AEA Group, LLC, Two Twentieth Street

9    North, Suite 1400, Birmingham, Alabama

10   35203, commencing at approximately 10:00

11   a.m., on the 24th day of June, 2005,

12   JAMES F. HENDERSON, witness in the above

13   cause, for oral examination, whereupon

14   the following proceedings were had:

15

16              JAMES F. HENDERSON,

17   being first duly sworn, was examined and

18              testified as follows:

19

20   EXAMINATION BY MR. BARRIERE:

21      Q.    Good morning again,

22   Mr. Henderson.  My name is Brent

23   Barriere.  I represent Lester Alexander,

Page 7

1    who is the trustee of Terry Manufacturing

2    and the plaintiff, as trustee, in

3    litigation against People's Bank, Bank of

4    Tuskegee, and Bank of Wedowee.  I'm going

5    to be asking you a number of questions

6    here today, the first of which:  Have you

7    previously been deposed?

8        A.    No.

9        Q.    All right.  Well, let me briefly

10   explain the rules of engagement.  I will

11   be asking you a series of questions.  I

12   will need an oral response so the

13   stenographer can pick it up.  This is as

14   if you're testifying in a court of law.

15   You're subject to the rules with respect

16   to perjury.  If at any time during the

17   course of the deposition, my questions

18   are ambiguous or confusing, please so

19   advise me, and I will attempt to restate

20   them in a more lucid manner.

21          My first subsequent question,

22   sir, is:  Can you state your full name

23   and address, please.

Page 8

1      A.    My official name is James F.

2    Henderson, Jr.  I go by the name of

3    Frank.  My address at the office, 1

4    Waits Drive Industrial Park, Andalusia,

5    Alabama 36420.  My home address is

6    Antioch Road, Andalusia, Alabama 36420.

7      Q.    And by whom are you employed,

8    sir?

9      A.    Henderson Sewing Machine Company,

10   Inc.

11     Q.    And what is your position with

12   Henderson Sewing Machine Company, Inc.?

13     A.    Vice president and CEO.

14     Q.    Okay.  How long have you been

15   employed by Henderson Sewing Machine?

16     A.    Since 1976.

17     Q.    All right.  Sir, in connection

18   with today's deposition, I sent, through

19   Mr. Vogtle, a notice to you requesting

20   certain documents.  I'll ask the court

21   reporter to mark that as Henderson

22   Exhibit No. 1.  Am I correct that you

23   have brought with you today a number of

Page 71

1    I were him, to get the maximum value for

2    that factory, would be to try to market

3    it as a going concern to one of these

4    people.   The reason I gave him Mr. Hodo's

5    name and phone number is because I knew

6    at that particular point in time they

7    were trying to expand that product.

8        Q.   "That product" being government

9    contract work?

10       A.   The government contract product

11   work.   They had more production than they

12   could do on the equipment they had.   And

13   I believed that they could for -- Bill

14   Long could get more value than what I

15   could offer him, even though I knew that

16   I would be -- that I would not get this

17   price.   Because I have to take a product,

18   put it on the trucks, bring it back to

19   our location, refurbish the equipment,

20   stand a chance of selling it or not

21   selling it over a number of years.   And I

22   have a limited marketplace for that

23   product.   That's why I believe the value

FOSHEE & TURNER COURT REPORTERS

Page 72

1   was $91,760.

2       Q.   Are you able to offer to us today

3   what the fair market value -- a

4   nonliquidation value, a fair market value

5   would have been as of that time?

6       A.   If I owned that equipment,

7   probably at that time, I would have most

8   likely sold it for somewhere in the

9   range -- after we refurbished and all the

10  other things, somewhere in the range of

11  $200,000.

12      Q.   So is that, in your opinion, what

13  the fair market value was as of July

14  2003?

15      A.   I can't say exact.  But I would

16  say within close proximity.

17      Q.   Okay.  Would that be within a

18  range of plus or minus ten percent?

19      A.   Sure.

20      Q.   Okay.  Would that have been the

21  fair market value of that equipment, as

22  of January 1, 1999?

23      A.   In my opinion, yes.

FOSHEE & TURNER COURT REPORTERS

Page 73

1    Q.    Would that have been the value of

2    that equipment between January 1, 1999,

3    and July 2003?

4    A.    Yes.

5    Q.    Thank you very much, sir.

6

7

8              END OF DEPOSITION

9              (11:30 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# Resume of J. Lester Alexander, III

**Professional Experience**

Mr. Alexander is the President and Managing Principal of AEA Group LLC, a consulting firm specializing in accounting, economic and appraisal consulting. Mr. Alexander has approximately twenty-six years of experience providing audit and advisory services to a wide range of entities, stakeholders and governing boards. As a former PricewaterhouseCoopers LLP Partner, Mr. Alexander has provided audit and advisory services to various types of companies including financial services, manufacturing, healthcare, technology, real estate, contracting, and retail companies. In addition Mr. Alexander has provided accounting, economic and appraisal consulting services to clients in connection with investment transactions, public securities offerings, private placement security offerings and debt offerings of various types. He holds a Bachelor of Science in Accounting from the University of Alabama and is a Certified Public Accountant and a Certified Fraud Examiner.

Mr. Alexander has provided services and, from time to time, expert testimony in various courts and in situations involving alternative dispute resolution. He has provided services in connection with contract disputes, security issues, insurance coverage issues, non-compete agreements, lost profits, business valuation and various other matters. He has testified in connection with class action certification hearings and class action fairness hearings. Mr. Alexander's experience includes testimony about customary practices and standards of care in auditing, operating and controlling business activities.

Mr. Alexander is experienced in the areas of business valuation, acquisition due diligence and cost accounting matters. He has evaluated the value of ownership interests in businesses in connection with acquisitions, disposals and disputes. He has performed suitability studies in connection with investment transactions in a wide range of financial instruments, In addition, he has performed incremental cost studies, contribution margin studies and other applications of cost accounting for clients in connection with new products, acquisitions, patent valuations and evaluation of trademarks. This experience includes making projections of incremental revenues and costs in connection with profitability analysis of proposed business ventures, new products and other profitability analysis for companies.

Mr. Alexander has advised governing bodies, committees and members on their role in overseeing the activities of companies and senior management. His clients have included publicly-traded companies, privately-held companies, governmental entities and tax-exempt companies. He has advised governing bodies overseeing companies in the start-up/growth, mature and restructuring phases of operational development. He has performed these services for governing bodies overseeing companies operating in the manufacturing, healthcare, technology, financial services, real estate, contracting, and retail industries.

**Professional/Business/Community Affiliations**



EXHIBIT
"1"

Lecturer on Financial Damages - 2004 Cumberland Law School Continuing Education Seminar, Birmingham Alabama

Lecturer on Financial and Business Fraud Schemes - 2004 Corporate Counsel Seminar, Birmingham Alabama

Lecturer on Detecting Fraud Schemes - Fall Bankruptcy Seminar, Fall 2003, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Accountant's View of Sarbanes Oxley - 2003 Seminar, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Online Fraud Prevention - 2002 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Forensic Computer Investigation - 2001 Discovery Seminar, Alabama Bar Continuing Education Series, Birmingham , Alabama

Lecturer on Online Business & Financial Research Methods - 2001 Federation of Insurance & Corporate Counsel's Internet University, Napa, California

Lecturer on Identifying and Investigating Fraud - 2001 Institute of Management Accountants, Birmingham, Alabama

"Expert Witness Research Post Kumho Tire", presented at the American Bar Association's 2000 Annual Meeting, New York, New York

Lecturer on Interpreting Financial Statements - 1999 National Judicial College, Gulf Shores, Alabama

Panelist on Consumer Fraud Issues - Coopers & Lybrand 1997 National Banking Conference, Washington, DC

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls - Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Lecturer on Online Discovery - Defense Research Institute's 2001 Annual Meeting of Young Lawyers, Miami, Florida

Lecturer on Online Expert Witness Research - 2001 Louisiana State Bar 17th Summer School for Lawyers, Destin, Florida

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls - Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Former National Practice Leader - Coopers & Lybrand's Financial Services Consumer Dispute Resolution Practice

Former Regional Service Line Leader - Coopers & Lybrand's Litigation Consulting Services Southern Region

Former Practice Leader for Dispute Analysis and Investigations - PricewaterhouseCoopers LLP, Birmingham, Alabama

Former Member - Banking and Insurance Industry Groups - PricewaterhouseCoopers LLP

American Institute of Certified Public Accountants

Alabama Society of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

Associate Member-American Bar Association

Commerce Executive Society - University of Alabama

Past Regional Director - Exchange Club of Alabama

Past President, Secretary, Director and Treasurer - Birmingham Breakfast Exchange Club

Past Administrative Board Member and Finance Committee Member - Canterbury United Methodist Church

**Testimony in Last Four Years**

Vulcan Engineering, Inc. v. FATA Aluminum, Inc. (Federal Court, Michigan Eastern District)

Stockholders of Alalooska Inc. v. Performance Foods Group Companies (Arbitration, Atlanta, Georgia)

SouthTrust Bank v. ServiceMaster Diversified Health Services, L.P. (Federal District Court, Northern District of Alabama-Southern Division)

Sabrina Abernathy, et al. v. Monsanto Company, et al. (Circuit Court of Calhoun County, Alabama)

Central Parking System v. Alta Health and Life Insurance Company (Arbitration Hearing)

Susan K. Kearney v. Regions Bank (Federal Bankruptcy Court, Northern District of Alabama)

Union Healthcare, Inc. Chapter 11 Bankruptcy Proceeding (United States Bankruptcy Court, Southern District of Mississippi)

Hilb Rogal & Hamilton Company of Alabama v. Werner Beiersdoerfer (Alabama District Court, Jefferson County)

Intergraph Corporation v. Bentley Software Systems, Inc (Circuit Court of Madison County, Alabama)

UBS PaineWebber, Inc. v. Roger H. Aiken, Michael S. Boulos, Patrick G. McQuilling and A.G. Edwards & Sons, Inc., et al. (Arbitration Hearing)

Vanderbilt Integrated Providers/Nashville Healthcare Group, LLC and Vanderbilt University v. Prudential Insurance Company of America, Inc. and Prudential Healthcare Plan, Inc. (United States District Court, Middle District of Tennessee, Nashville)

Cothran Inc., James Cothran, Mary Lou Cothran v. Pali USA Ltd, Pali Linens, LLC, Loretto Pali & Richard Levine (Circuit Court of Baldwin County, Alabama)

HydroPower Inc v. Eaton Manufacturing (Circuit Court of Jefferson County Alabama)

The Utilities Board of the City of Daphne v. City of Spanish Fort et al (Federal District Court, Southern District of Alabama)

Compass Bank v. Blitz Media, Inc., et al. (United States District Court, The Northern District of Alabama, Southern Division)

Steward Machine v. White Oak, et al. (United States District Court, Connecticut)

Refrigerated Construction Services v. Coldmatic Building Systems, Inc, et al (United States District Court, Northern District of Alabama, Southern Division)
ABB Automation, Inc. v. DeVries, et al. (Circuit Court of Jefferson County)

Proliance, Inc. v. City of Huntsville (Circuit Court of Madison County, Alabama)

Steve Jamison, et al. v. Kerr-McGee Corporation, et al. (State Court, Mississippi)

Mason Dillard et al v Bellsouth Advertising et al (Circuit Court of Jefferson County, Alabama)

Vesta Insurance v. ACE/Cigna (Arbitration Hearing)



# PURCHASE MONEY
# PROMISSORY NOTE

$200,000.00                    Greensboro, Georgia                    November 10, 2000

**FOR VALUE RECEIVED**, the undersigned promise to pay to the order of **N. D. HORTON, JR. AND JAMES M. REYNOLDS, III, equally** ("Holder") the principal sum of Two Hundred Thousand and No/100 Dollars ($200,000.00) with interest from date at the rate of Nine and One-Half percent (9.5%) per annum, interest only payable monthly, beginning December 10, 2000, and monthly thereafter through November 10, 2001, then payable in 18 equal monthly installments of principal, plus accrued interest in the amount of $11,965.42 beginning December 10, 2001, and monthly thereafter with a final installment of principal and all accrued but unpaid interest due on May 10, 2003, (the "Maturity Date").

Principal and interest are payable at 2561 Lake Oconee Parkway, Greensboro, Georgia 30642 or at such other place as the Holder hereof may designate in writing.

Should payment not be paid when due, or should the Maker, or Makers, hereof fail to comply with any of the terms or requirements of a Pledge Agreement of even date herewith, the entire unpaid principal sum evidenced by this note, with all accrued interest, shall at the option of the Holder, and without notice to the undersigned, become due and may be collected forthwith, time being of the essence of this contract. It is further agreed that failure of the Holder to exercise this right of accelerating the maturity of the debt, or indulgence granted form time to time, shall in no event be considered as a waiver of such right of acceleration or estop the Holder from exercising such right.

In case this note is collected by law, as through an attorney at law, all costs of collection, including fifteen percent (15%) of the principal and interest as attorney's fees, shall be paid by the Maker hereof.

And each of us, whether Maker, endorser, guarantor, or surety, hereby severally waives and renounces, for himself and family, any and all exemption rights either of us, or the family of either of us, may have under or by virtue of the Constitution or laws of Georgia, or any other State, or the United States, as against this debt or any renewal thereof; and each further waives demand, protest and notice of demand, protest and non-payment.

In case of default in the payment of the note when due, and in case the Holder of this note should elect on account of such default, to declare the unpaid balance of the principal sum due and payable, said principal sum, or so much thereof as may remain unpaid at the time of such

E:\DATA\WPDOCS\5001\194\note-robinson.wpd



**EXHIBIT**

"8"

**AmR.Est 00265**

default, shall bear interest at the rate of fifteen percent (15%) per annum from the date of such default.

Purchase Money Security Interest:  To secure payment of this note and any other indebtedness of the Maker to Holder, whether now or existing or arising hereinafter, the Maker hereby delivers, pledges, assigns, conveys and transfers to the Holder the following described property (hereinafter referred to as collateral):

The undersigned's right, title and interest in and to:

1.    All of the undersigned's common stock in Perky Cap Company, Inc., including but not limited to Certificate Number 32 ( 9,000 shares).

This contract is to be construed in all respects and enforced according to the laws of the State of Georgia.

Prepayment Privilege:    Maker may prepay in whole or in part at any time without penalty.

If all or any part of the property described in the aforementioned Security Agreement or any interest in it is sold or transferred without Holder's prior written consent, Holder may at its option require immediate payment of all sums owing hereunder.

Signed, sealed and delivered by the undersigned the date first above written.

_____ (Seal)
**Allie R. Robinson**

c/o Post Office Box 648
924 South Street
Roanoke, Alabama 36274
(205) 863-8835 (facsimile)

E:\DATA\WPDOCS\5001\194\note-robinson.wpd

**AmR.Est 00266**

## BILL OF SALE OF COMMON STOCK

For and in consideration of the sum of Two Hundred Thousand Dollars ($200,000.00) evidenced by Promissory Note from Grantee to Grantors and applicable security documents, the undersigned N. D. Horton, Jr. and James M Reynolds, III, Grantors do hereby transfer unto Allie R. Robinson, Grantee, Nine Thousand Shares (10%) of the outstanding Common Stock of Perky Cap Company, Inc. and by these presents do bargain, sell, convey and set over unto Grantee the aforesaid Stock.

The undersigned warrant that said Stock is unencumbered and they shall take such action as is necessary to transfer the same on the books of the Company.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this the 10th day of November, 2000.

_____ (SEAL)
N. D. Horton, Jr.

_____ (SEAL)
James M. Reynolds, III

e:\data\wpdocs\5001\194\bill-sale

**AmR.Est 00270**

# PLEDGE AGREEMENT

**This Agreement** made this _10th_ day of November, 2000, by and between **Allie R. Robinson**, hereinafter Pledgor, and **N. D. Horton, Jr. and James M. Reynolds, III**, 2561 Lake Oconee Parkway, Greensboro, Georgia 30642, hereinafter Pledgee;

## W I T N E S S E T H:

**Whereas,** Pledgee has loaned to Pledgor the sum of Two Hundred Thousand and No/100 Dollars ($200,000.00) for the purchase of Common Stock of Perky Cap Company as of November 10, 2000 (Loan Documents); and

**Whereas,** in order to induce the Pledgee to make such loan, Pledgor has agreed to pledge the Common Stock hereinafter mentioned to the Pledgee as security for the repayment of said loan.

**Now Therefore,** it is agreed between the parties as follows:

1.

In consideration of the loan made by Pledgee to the Pledgor as hereinbefore mentioned, the Pledgor hereby delivers to the Pledgee Ten percent ownership in Perky Cap Company,Inc., a Georgia Corporation represented by Certificate No. 32 ( 9,000 shares), together with that certain Pledge Agreement/Irrevocable Limited Power of Attorney and Assignment, and do hereby assign such Common Stock and Certificate to the Pledgee and do hereby appoint Pledgee as their true and lawful attorney for them and in their name, place and stead to cause said Common Stock to be transferred on the books of the said Perky Cap Company to the name of the Pledgee.

2.

The Pledgee shall hold said Common Stock as security for the repayment of the aforesaid loan and loan incentives as described in the Loan Documents, together with interest thereon, shall not at any time dispose of such Common Stock or encumber the same, except as herein otherwise provided.

3.

Pledgor shall repay the indebtedness and loan incentives to the Pledgee with interest thereon according to the terms contained in said Loan Documents.

**AmR.Est 00454**

E:\DATA\WPDOCS\5001\194\pledge-robinson.wpd

4.

At all times while Pledgee is the holder of said Common Stock, the Pledgor shall receive any dividends distributed thereon. Provided such dividends shall be approved by Pledgee.

5.

While the Pledgee is the holder of said Common Stock, the Pledgor shall have the right to vote the same at meetings of Perky Cap Company so long as they are not in default in the performance of any of the terms of this Agreement, the payment of the principal and interest of the said loan or under the terms of that certain Loan Agreement by and among the parties hereto (Loan Documents).

6.

Upon the repayment of the entire amount of the loan and interest as herein provided and satisfaction of the Stock Option - Put/Call and equity return guarantee, the Pledgee shall transfer to the Pledgor the Stock Certificate pledged hereunder.

7.

In the event that the Pledgor shall fail to perform any of the terms of this Agreement or to make payment of the principal and interest of said loan as required pursuant to the terms of said loan as evidenced in the Note, fails to comply with the terms of the Loan Agreement or default on any of the Loan Documents, Pledgee may, upon thirty (30) days notice in writing to the Pledgor by Registered Mail, sell any or all of the Common Stock herein mentioned in such manner and for such price as the Pledgee may determine, and out of the proceeds of such sale retain an amount sufficient to pay the principal and interest then due on said loan together with expenses of sale together with any balance due on the Stock Option and guaranteed value of equity participation, and pay any balance of such proceeds to the Pledgor. At any bona fide public sale, the Pledgee may purchase all or part of such Common Stock at such price as he deems proper. In the event that the proceeds of any sale are not sufficient to pay the said loan and interest together with expenses of such sale or any obligations of the pledge or under the Loan Agreement, then the Pledgor shall pay to the Pledgee any deficiency.

8.

All notices hereunder shall be addressed to the Pledgee and sent by Registered Mail, Return Receipt Requested at the following address or such other address as Pledgee shall give to Pledgor in writing making specific reference to this Pledge Agreement, to-wit:

N. D. Horton, Jr. and
James M. Reynolds, III
2561 Lake Oconee Parkway
Greensboro, GA 30642.

AmR.Est 00455

E:\DATA\WPDOCS\5001\194\pledge-robinson.wpd

Allie R. Robinson
c/o P. O. Box 648
924 South Street
Roanoke, AL   36274

9.

This Agreement shall be governed by the laws of the State of Georgia.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals the day and year first above written.

Executed and acknowledged before me this _9th_ day of November, 2000:

_____ (SEAL)
**Allie R. Robinson**

Notary Public,
My Commission Expires:
(AFFIX NOTARY SEAL)

Notary Public, DeKalb County, Georgia
My Commission Expires January 10, 2003

Executed and acknowledged before me this _9th_ day of November, 2000:

_____ (SEAL)
**N. D. Horton, Jr.**

Notary Public,
My Commission Expires:
(AFFIX NOTARY SEAL)

_____ (SEAL)
**James M. Reynolds, III**

RICHARD SCHMIDT
NOTARY
★
PUBLIC
EXP. JULY 16, 2004
GREENE COUNTY, GEORGIA

**AmR.Est 00456**

E:\DATA\WPDOCS\50011194\pledge-robinson.wpd

## PLEDGE AGREEMENT/IRREVOCABLE LIMITED POWER
## OF ATTORNEY AND ASSIGNMENT

**FOR VALUE RECEIVED** and to secure a loan from N. D. Horton, Jr. and James M. Reynolds, III, **equally** to the undersigned dated November 10, 2000 in the original amount of $200,000.00 (Note), the undersigned does (do) hereby sell, assign and transfer to N. D. Horton, Jr. and James M. Reynolds, III, Ten percent ownership of Perky Cap Company, Inc., (Company) represented by Certificate No. _32_ thirty Two ( 32 ), inclusive, standing in the name of the undersigned on the books of said Company.

Upon default of the undersigned under the Note, or Pledge Agreement or Loan Documents, the undersigned does hereby irrevocably constitute and appoint N. D. Horton, Jr. and James M. Reynolds, III, attorney, or such person as they may appoint in writing, to transfer the said Common Stock on the books of said Company, with full power of substitution in the premises.

Dated: _11-9-00_          _____ (SEAL)

Allie R. Robinson

Executed and acknowledged before me
this _9th_ day of November, 2000:

_Eunice W Underwood_
Notary Public,
My Commission Expires:
(AFFIX NOTARY SEAL)

[ Notary Public, DeKalb County, Georgia
My Commission Expires January 10, 2003 ]

E:\DATA\WPDOCS\5001\194\irrev-hd-robinson.wpd
November 8, 2000

**AmR.Est 00271**



19

# UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

## GREENE COUNTY, GEORGIA

FOR AND IN CONSIDERATION OF the sum of Ten and 00/100 ($10.00) Dollars and other good and valuable considerations, paid or delivered to **Terry Manufacturing Company, Inc.** (hereinafter referred to as "Guarantor") the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **N. D. Horton, Jr. and James M. Reynolds, III** (hereinafter "Lender") to extend credit or obligation to **Allie R. Robinson** (hereinafter referred to as "Borrower"), which extension of credit or obligation will be to the direct interest and advantage of Guarantor, Guarantor does hereby unconditionally guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated November 10, 2000 made by Borrower to the order of Lender in the principal face amount of Two Hundred Thousand and 00\100 Dollars ($200,000.00) (hereinafter referred to as the "Note"), together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under and other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (said other documents and instruments being hereinafter referred to collectively as the "Loan Documents"), and © all present and future obligations and liabilities of Borrower to Lender under any instrument or document given to evidence, secure, support or relate to any indebtedness of Borrower to Lender whether now existing or hereafter arising, contracted or incurred, and whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise, and all extensions or renewals in whole or in part of such liabilities. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, or if any other obligation of Borrower to be performed under the Loan Documents is not performed in accordance with their terms, Guarantor will immediately make such payments or perform such obligations. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

The obligations incurred under this guaranty include all obligations of Borrower to Lender now existing or hereafter coming into existence and of renewals or extensions in whole or in part of any of the obligations before described, together with all damages, losses, costs, interests, charges, expenses, and liabilities of every kind, nature, and description suffered or incurred by Lender, arising in any manner out of or in any way connected with, or growing out of, said indebtedness or liabilities of Borrower to Lender.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time,

c:\data\wpdocs\5001\194\gty-robinson-1

AmR.Est 00469



without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm, or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any persons or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower of any other undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by any document or instrument securing any of the obligations under the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Borrower or any other person or entity; © any defense based on the failure of Lander to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement, or both; (e)



c:\data\wpdocs\5001\194\gty-robinson-1

AmR.Est 00470

any defense based upon failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (I) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; (l) the invalidity or unenforceability of any of the Loan Documents; (m) any exculpation of liability contained in the Note or in the Loan Documents; (n) any transfer by Borrower of all or any part of the security encumbered by the Loan Documents; (o) the failure of Lender to perfect any security or to extend or renew the perfection of any security; or (p) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successors, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, power and remedies thereunder or hereunder or under any of the Loan Documents in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees, or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to participate in any security for the Note.

Guarantor hereby waives to the fullest extent possible as against Borrower and all other

3

AmR.Est 00471

persons and entities that may be contingently, secondarily, or indirectly obligated to Lender for any sums due under the Loan Documents (hereinafter the "contingent Obligors"), and as against all assets of Borrower and the Contingent Obligors, any and all rights, whether at law, in equity, by agreement or otherwise, to subrogation, indemnity, reimbursement, contribution, payment or any other claim, cause of action, right or remedy that would otherwise arise out of any payment by Guarantor to Lender of any sums due under the Loan Documents, notwithstanding the manner or nature of such payments, including but not limited to (a) direct payment by Guarantor to Lender, (b) set-off by Lender against any liability or deposit owed by Lender to Guarantor, © recovery by Lender against Guarantor, or any property of Guarantor, as the result of any judgment, judgment lien, or legal process, (d) the application of the proceeds of any disposition of any or all collateral held by Lender to the repayment of any sums due under the Loan Documents, or (e) the conveyance of any or all collateral held by Lender to Lender in satisfaction of any sums due under the Loan Documents.

The waivers set forth in the preceding paragraph are intended by both Guarantor and Lender to be for the benefit of the Borrower, and such waiver shall be enforceable by Borrower or any of the Contingent Obligors, or any of their successors or assigns, as an absolute defense to any action by Guarantor against Borrower or any of the Contingent Obligors, or the assets of Borrower or any of the Contingent Obligors, which action arises out of any payment by Guarantor to Lender of any sum due under the Loan Documents.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as lender in its sole judgment shall see fit to the indebtednesses, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor agrees to furnish Lender within ninety (90) days following the end of Guarantor's fiscal year a statement of income and retained earnings and a balance sheet of Borrower as of the end of such fiscal year, including a listing of all contingent liabilities. Such statement shall be in such form and content as Lender shall reasonably require and shall be prepared in accordance with generally accepted accounting principles. Upon request by Lender, Guarantor shall provide such statement audited by a certified public accountant acceptable to Lender.

Guarantor acknowledges that this Guaranty, the Note and the Loan Documents were negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the

4

C:\data\wpdocs\5001\194\gty-robinson-1

AmR.Est 00472

enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that any and all financial statements heretofore delivered to him by Lender are true and correct in all respects as of the date hereof. Each Guarantor severally waives, for himself and family, any and all homestead and exemption rights which any of them or the family of any of them may have under or by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, any renewal hereof, or any indebtedness represented hereby, and does jointly and severally transfer, convey and assign to Lender a sufficient amount of such homestead or transfer, exemption as may be allowed, including such homestead or set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each o them to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application deposits, accounts, items, or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor until all indebtedness guaranteed hereby has been completely repaid and all

5

c:\data\wpdocs\5001\194\gty-robinson-1

AmR.Est 00473

obligations and undertakings of Borrower under, by reason or, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, or sent by registered or certified United States mail, postage prepaid, to the other party at the address set forth below, or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith. The effective date of such notice shall be the date of personal service or the date such notice is deposited in the mail. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response shall be addressed as follows:

|  |  |
|---|---|
| If to Lender: | N. D. Horton, Jr. and James M. Reynolds, III<br>2561 Lake Oconee Parkway<br>Greensboro, GA  30642 |
| If to Guarantor: | Terry Manufacturing Company<br>c/o P. O. Box 648<br>924 South Street<br>Roanoke, AL  36274 |

The provisions of this Guaranty shall be be binding upon each Guarantor and his successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation or partnership.

As used herein, the terms "Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate ember of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively, and all such Guarantors shall be jointly and severally liable for the payment and performance of all obligations imposed hereunder. In case of default in payment or performance by Borrower of any of the obligations to be paid or performed under the Loan Documents, Lender may proceed against the Guarantor jointly or severally, or any of them, without pursuing any rights or remedies against the Borrower or the other Guarantor(s), or against any property taken as security.

Each Guarantor has executed this Guaranty individually and not as a partner or Borrower or of any other member of Guarantor.

c:\data\wpdocs\5001\194\gty-robinson-1

AmR.Est 00474

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

If any term or provision of this Guaranty shall be determined to be illegal or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforceable to the fullest extent permitted by law.

This Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Guaranty may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. Any of the Guarantors may execute this Guaranty by signing any such counterpart.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty under seal as of the 10th day of November, 2000



**TERRY MANUFACTURING COMPANY, INC.**

By _____
Its _____

Attest _____
Its _____

Witness: _____

Notary Public _____
My Commission Expires: _____
(AFFIX NOTARY SEAL)

7

AmR.Est 00475

19

# UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

## GREENE COUNTY, GEORGIA

FOR AND IN CONSIDERATION OF the sum of Ten and 00/100 ($10.00) Dollars and other good and valuable considerations, paid or delivered to **Roy Terry and Rudolph Terry** (hereinafter referred to as "Guarantor") the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **N. D. Horton, Jr. and James M. Reynolds, III** (hereinafter "Lender") to extend credit or obligation to **Allie R. Robinson** (hereinafter referred to as "Borrower"), which extension of credit or obligation will be to the direct interest and advantage of Guarantor, Guarantor does hereby unconditionally guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated November 10, 2000 made by Borrower to the order of Lender in the principal face amount of Two Hundred Thousand and 00\100 Dollars ($200,000.00) (hereinafter referred to as the "Note"), together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under and other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (said other documents and instruments being hereinafter referred to collectively as the "Loan Documents"), and © all present and future obligations and liabilities of Borrower to Lender under any instrument or document given to evidence, secure, support or relate to any indebtedness of Borrower to Lender whether now existing or hereafter arising, contracted or incurred, and whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise, and all extensions or renewals in whole or in part of such liabilities. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, or if any other obligation of Borrower to be performed under the Loan Documents is not performed in accordance with their terms, Guarantor will immediately make such payments or perform such obligations. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

The obligations incurred under this guaranty include all obligations of Borrower to Lender now existing or hereafter coming into existence and of renewals or extensions in whole or in part of any of the obligations before described, together with all damages, losses, costs, interests, charges, expenses, and liabilities of every kind, nature, and description suffered or incurred by Lender, arising in any manner out of or in any way connected with, or growing out of, said indebtedness or liabilities of Borrower to Lender.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time,

1

c:\data\wpdocs\5001\194\gty-robinson

AmR.Est 00462

without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm, or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any persons or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note or any other of the Loan Documents; or take or fail to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower of any other undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender.  The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof.  This Guaranty unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by any document or instrument securing any of the obligations under the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Borrower or any other person or entity; © any defense based on the failure of Lander to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement, or both; (e)

2

c:\data\wpdocs\5007\194\gty-robinson

AmR.Est 00463

any defense based upon failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (I) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; (l) the invalidity or unenforceability of any of the Loan Documents; (m) any exculpation of liability contained in the Note or in the Loan Documents; (n) any transfer by Borrower of all or any part of the security encumbered by the Loan Documents; (o) the failure of Lender to perfect any security or to extend or renew the perfection of any security; or (p) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successors, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, power and remedies thereunder or hereunder or under any of the Loan Documents in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees, or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to participate in any security for the Note.

Guarantor hereby waives to the fullest extent possible as against Borrower and all other

3

e:\data\wpdocs\5001\194\gty-robinson

AmR.Est 00464

persons and entities that may be contingently, secondarily, or indirectly obligated to Lender for any sums due under the Loan Documents (hereinafter the "contingent Obligors"), and as against all assets of Borrower and the Contingent Obligors, any and all rights, whether at law, in equity, by agreement or otherwise, to subrogation, indemnity, reimbursement, contribution, payment or any other claim, cause of action, right or remedy that would otherwise arise out of any payment by Guarantor to Lender of any sums due under the Loan Documents, notwithstanding the manner or nature of such payments, including but not limited to (a) direct payment by Guarantor to Lender, (b) set-off by Lender against any liability or deposit owed by Lender to Guarantor, © recovery by Lender against Guarantor, or any property of Guarantor, as the result of any judgment, judgment lien, or legal process, (d) the application of the proceeds of any disposition of any or all collateral held by Lender to the repayment of any sums due under the Loan Documents, or (e) the conveyance of any or all collateral held by Lender to Lender in satisfaction of any sums due under the Loan Documents.

The waivers set forth in the preceding paragraph are intended by both Guarantor and Lender to be for the benefit of the Borrower, and such waiver shall be enforceable by Borrower or any of the Contingent Obligors, or any of their successors or assigns, as an absolute defense to any action by Guarantor against Borrower or any of the Contingent Obligors, or the assets of Borrower or any of the Contingent Obligors, which action arises out of any payment by Guarantor to Lender of any sum due under the Loan Documents.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as lender in its sole judgment shall see fit to the indebtednesses, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor agrees to furnish Lender within ninety (90) days following the end of Guarantor's fiscal year a statement of income and retained earnings and a balance sheet of Borrower as of the end of such fiscal year, including a listing of all contingent liabilities. Such statement shall be in such form and content as Lender shall reasonably require and shall be prepared in accordance with generally accepted accounting principles. Upon request by Lender, Guarantor shall provide such statement audited by a certified public accountant acceptable to Lender.

Guarantor acknowledges that this Guaranty, the Note and the Loan Documents were negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the

4

e:\data\wpdocs\5001\194\gty-robinson

AmR.Est 00465

enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that any and all financial statements heretofore delivered to him by Lender are true and correct in all respects as of the date hereof. Each Guarantor severally waives, for himself and family, any and all homestead and exemption rights which any of them or the family of any of them may have under or by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, any renewal hereof, or any indebtedness represented hereby, and does jointly and severally transfer, convey and assign to Lender a sufficient amount of such homestead or transfer, exemption as may be allowed, including such homestead or set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each o them to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application deposits, accounts, items, or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor until all indebtedness guaranteed hereby has been completely repaid and all

c:\data\wpdocs\5001\194\gty-robinson

AmR.Est 00466

obligations and undertakings of Borrower under, by reason or, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, or sent by registered or certified United States mail, postage prepaid, to the other party at the address set forth below, or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith. The effective date of such notice shall be the date of personal service or the date such notice is deposited in the mail. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response shall be addressed as follows:

| | |
|---|---|
| If to Lender: | N. D. Horton, Jr. and James M. Reynolds, III<br>2561 Lake Oconee Parkway<br>Greensboro, GA   30642 |
| If to Guarantor: | Allie R. Robinson<br>P. O. Box 648<br>924 South Street<br>Roanoke, AL   36274 |

The provisions of this Guaranty shall be binding upon each Guarantor and his successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation or partnership.

As used herein, the terms "Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate ember of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively, and all such Guarantors shall be jointly and severally liable for the payment and performance of all obligations imposed hereunder. In case of default in payment or performance by Borrower of any of the obligations to be paid or performed under the Loan Documents, Lender may proceed against the Guarantor jointly or severally, or any of them, without pursuing any rights or remedies against the Borrower or the other Guarantor(s), or against any property taken as security.

Each Guarantor has executed this Guaranty individually and not as a partner or Borrower or of any other member of Guarantor.

c:\data\wpdocs\5001\194\gty-robinson

**AmR.Est 00467**

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

If any term or provision of this Guaranty shall be determined to be illegal or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforceable to the fullest extent permitted by law.

This Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Guaranty may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. Any of the Guarantors may execute this Guaranty by signing any such counterpart.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty under seal as of the 10th day of November, 2000

_____
Roy Terry

_____
Rudolph Terry

Witness:

_____
Notary Public:
My Commission Expires:
(AFFIX NOTARY SEAL)

[Notary Seal: RICHARD SCHMIDT, NOTARY PUBLIC, GREENE COUNTY, GEORGIA, EXP. JULY 16, 2004]

7

c:\data\wpdocs\5001\194\gty-robinson

AmR.Est 00468

# A M O R T I Z A T I O N   S C H E D U L E
**************************************************

| NO. | DUE DATE | REMAINING PRINCIPAL | MONTHLY PAYMENT | INT. RATE | MORTGAGE INSURANCE | PRINCIPAL PAYMENT | INTEREST PAYMENT |
|---|---|---|---|---|---|---|---|
| 1 | 12/10/01 | 189,617.91 | 11,965.42 | 9.500 | | 10,382.09 | 1,583.33 |
| TOTALS DURING 2001 | | | 11,965.42 | | 0.00 | 10,382.09 | 1,583.33 |
| 2 | 01/10/02 | 179,153.63 | 11,965.42 | 9.500 | | 10,464.28 | 1,501.14 |
| 3 | 02/10/02 | 168,606.51 | 11,965.42 | 9.500 | | 10,547.12 | 1,418.30 |
| 4 | 03/10/02 | 157,975.89 | 11,965.42 | 9.500 | | 10,630.62 | 1,334.80 |
| 5 | 04/10/02 | 147,261.11 | 11,965.42 | 9.500 | | 10,714.78 | 1,250.64 |
| 6 | 05/10/02 | 136,461.51 | 11,965.42 | 9.500 | | 10,799.60 | 1,165.82 |
| 7 | 06/10/02 | 125,576.41 | 11,965.42 | 9.500 | | 10,885.10 | 1,080.32 |
| 8 | 07/10/02 | 114,605.14 | 11,965.42 | 9.500 | | 10,971.27 | 994.15 |
| 9 | 08/10/02 | 103,547.01 | 11,965.42 | 9.500 | | 11,058.13 | 907.29 |
| 10 | 09/10/02 | 92,401.34 | 11,965.42 | 9.500 | | 11,145.67 | 819.75 |
| 11 | 10/10/02 | 81,167.43 | 11,965.42 | 9.500 | | 11,233.91 | 731.51 |
| 12 | 11/10/02 | 69,844.59 | 11,965.42 | 9.500 | | 11,322.84 | 642.58 |
| 13 | 12/10/02 | 58,432.11 | 11,965.42 | 9.500 | | 11,412.48 | 552.94 |
| TOTALS DURING 2002 | | | 143,585.04 | | 0.00 | 131,185.80 | 12,399.24 |
| 14 | 01/10/03 | 46,929.28 | 11,965.42 | 9.500 | | 11,502.83 | 462.59 |
| 15 | 02/10/03 | 35,335.38 | 11,965.42 | 9.500 | | 11,593.90 | 371.52 |
| 16 | 03/10/03 | 23,649.70 | 11,965.42 | 9.500 | | 11,685.68 | 279.74 |
| 17 | 04/10/03 | 11,871.51 | 11,965.42 | 9.500 | | 11,778.19 | 187.23 |
| 18 | 05/10/03 | 0.00 | 11,965.49 | 9.500 | | 11,871.51 | 93.98 |
| TOTALS DURING 2003 | | | 59,827.17 | | 0.00 | 58,432.11 | 1,395.06 |

AmR.Est 00267

FINANCE CHARGE:. . . . . . . . . . .    15,377.63

TOTAL PAYMENTS:. . . . . . . . . . .    215,377.63

HIGH BALANCE. . . . . . . . . . . . .    200,000.00

ANNUAL PERCENTAGE RATE:. . .    9.500

NUMBER OF PAYMENT(S)    17 AT    11,965.42 BEGINNING 12/10/2001

NUMBER OF PAYMENT(S)    1 AT    11,965.49 BEGINNING 05/10/2003

AmR.Est 00268

```
----------------------------------------------------------------------
HORTON/REYNOLDS NOTE          Loan #2              11-21-2001  Pg   1
----------------------------------------------------------------------
C  pounding period...:  Monthly

Nominal annual rate..:    9.500   %
Effective annual rate:    9.925   %
Periodic rate........:    0.7917  %
Equivalent daily rate:    0.02603 %
```

CASH FLOW DATA

| | Event | Date | Amount | # | Period | End-date |
|---|---|---|---|---|---|---|
| 1 | Loan | 11-10-01 | 200,000.00 | 1 | | |
| 2 | Payment | 12-10-01 | 11,965.42 | 18 | Monthly | 05-10-03 |

AMORTIZATION SCHEDULE - Normal amortization

| Pmt | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 11-10-2001 | | | | 200,000.00 |
| 1 | 12-10-2001 | 11,965.42 | 1,583.33 | 10,382.09 | 189,617.91 |
| 2001 | totals | 11,965.42 | 1,583.33 | 10,382.09 | |
| 2 | 01-10-2002 | 11,965.42 | 1,501.14 | 10,464.28 | 179,153.63 |
| 3 | 02-10-2002 | 11,965.42 | 1,418.30 | 10,547.12 | 168,606.51 |
| 4 | 03-10-2002 | 11,965.42 | 1,334.80 | 10,630.62 | 157,975.89 |
| 5 | 04-10-2002 | 11,965.42 | 1,250.64 | 10,714.78 | 147,261.11 |
| 6 | 05-10-2002 | 11,965.42 | 1,165.82 | 10,799.60 | 136,461.51 |
| 7 | 06-10-2002 | 11,965.42 | 1,080.32 | 10,885.10 | 125,576.41 |
| 8 | 07-10-2002 | 11,965.42 | 994.15 | 10,971.27 | 114,605.14 |
| 9 | 08-10-2002 | 11,965.42 | 907.29 | 11,058.13 | 103,547.01 |
| 10 | 09-10-2002 | 11,965.42 | 819.75 | 11,145.67 | 92,401.34 |
| 11 | 10-10-2002 | 11,965.42 | 731.51 | 11,233.91 | 81,167.43 |
| 12 | 11-10-2002 | 11,965.42 | 642.58 | 11,322.84 | 69,844.59 |
| 13 | 12-10-2002 | 11,965.42 | 552.94 | 11,412.48 | 58,432.11 |
| 2002 | totals | 143,585.04 | 12,399.24 | 131,185.80 | |
| 14 | 01-10-2003 | 11,965.42 | 462.59 | 11,502.83 | 46,929.28 |
| 15 | 02-10-2003 | 11,965.42 | 371.52 | 11,593.90 | 35,335.38 |
| 16 | 03-10-2003 | 11,965.42 | 279.74 | 11,685.68 | 23,649.70 |
| 17 | 04-10-2003 | 11,965.42 | 187.23 | 11,778.19 | 11,871.51 |
| 18 | 05-10-2003 | 11,965.42 | 93.91 | 11,871.51 | 0.00 |
| 2003 | totals | 59,827.10 | 1,394.99 | 58,432.11 | |
| | Grand totals | 215,377.56 | 15,377.56 | 200,000.00 | |

AmR.Est 00269

## PROXY

For value received and in order to secure a Purchase Money Promissory Note, the undersigned, **Allie R. Robinson** (Owner) do hereby grant unto **N. D. Horton, Jr. and James M. Reynolds, III,** Proxy to vote at any and all shareholder meetings which may be had in the company known as Perky Cap Company, Inc., proxy for nine thousand shares (10%) of the outstanding Common Stock of Perky Cap Company, Inc.

Provided however, that for so long as the following obligations are current and not in default this Proxy shall be suspended, but upon default in any of the following named obligations this Proxy shall be valid and active and shall not be revoked for so long as such default may exist:

1.      Purchase Money Note from Allie R. Robinson to N. D. Horton, Jr., James M. Reynolds, III dated November 10, 2000 secured by Nine Thousand Shares of the Common Stock of Perky Cap Company, Inc.

2.      5.5 Million Dollar Line of Credit and affiliated documents evidenced by Promissory Note from Terry Manufacturing Company, Inc., Roy Terry and Rudolph Terry to American Real Estate Investment Company, Ltd., L.P. dated November 10, 2000.

3.      Promissory Note from Roy Terry and Rudolph Terry to American Real Estate Investment Company, Ltd., L.P. dated November 24, 1999 in the original principal amount of One Million Dollars.

4.      Stock Options granted under Agreements dated November 10, 2000 to American Real Estate Investment Company, Ltd., L.P. and equity participation percentage in Terry Promotional Products granted in Agreements dated November 10, 2000 between Terry Manufacturing Company, Inc. and American Real Estate Investment Company, Ltd., L.P.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this 10th day of November, 2000.

_____ (SEAL)

**Allie R. Robinson**

c:\data\wpdocs\5001\194\bill-sale

**AmR.Est 00274**

# PROMISSORY NOTE

**$624,000.00**              **Greensboro, Georgia**              **May 30, 2002**

**FOR VALUE RECEIVED**, the undersigned promise to pay to the order of **N. D. Horton, Jr. and James M. Reynolds, III** ("Holder") the principal sum of Six Hundred Twenty-Four Thousand and No/100 Dollars ($624,000.00) with interest from date at the rate of Nine percent (9.00%) per annum, interest only in the amount of $4,680.00 payable monthly beginning on July 2, 2002 for a period of six (6) months until December 2, 2002 when the outstanding balance shall be amortized over thirty-six (36) equal payments of principal and interest in the amount of $19,843.03 beginning January 2, 2003 and due and payable in full on December 2, 2005.

Principal and interest are payable at 2561 Lake Oconee Parkway, Greensboro, Georgia 30642, or at such other place as the Holder hereof may designate in writing.

Should payment not be paid when due, or should the Maker, or Makers, hereof fail to comply with any of the terms or requirements of a security agreement of even date herewith, the entire unpaid principal sum evidenced by this note, with all accrued interest, shall at the option of the Holder, and without notice to the undersigned, become due and may be collected forthwith, time being of the essence of this contract. It is further agreed that failure of the Holder to exercise this right of accelerating the maturity of the debt, or indulgence granted form time to time, shall in no event be considered as a waiver of such right of acceleration or estop the Holder from exercising such right.

In case this note is collected by law, as through an attorney at law, all costs of collection, including fifteen percent (15%) of the principal and interest as attorney's fees, shall be paid by the Maker hereof.

And each of us, whether Maker, endorser, guarantor, or surety, hereby severally waives and renounces, for himself and family, any and all exemption rights either of us, or the family of either of us, may have under or by virtue of the Constitution or laws of Georgia, or any other State, or the United States, as against this debt or any renewal thereof; and each further waives demand, protest and notice of demand, protest and non-payment.

In case of default in the payment of the note when due, and in case the Holder of this note should elect on account of such default, to declare the unpaid balance of the principal sum due and payable, said principal sum, or so much thereof as may remain unpaid at the time of such default, shall bear interest at the rate of fifteen percent (15%) per annum from the date of such default.

In the event any payment due hereunder has not been received by the tenth (10th) day following the date it is due hereunder, the undersigned agrees to pay a late charge in the amount of five percent (5%) of the payment amount then due.

- 1 -

**EXHIBIT**

tabbies*

_"13"_

**AmR.Est 00363**

Security Interest:  To secure payment of this note and any other indebtedness of the Maker to Holder, whether now or existing or arising hereinafter, the Maker hereby delivers, pledges, assigns, conveys and transfers to the Holder the following described property (hereinafter referred to as collateral):

All of Cotina W. Terry's right, title and interest in and to:

Thirty-One percent (31%) percent of the common stock of Perky Cap Company, Inc., including those shares represented by Certificate Number ____ (27,900 shares).

This contract is to be construed in all respects and enforced according to the laws of the State of Georgia.

Prepayment Privilege:          Maker may prepay in whole or in part at any time without penalty.

If all or any part of the property described in the aforementioned Security Agreement or any interest in it is sold or transferred without Holder's prior written consent, Holder may at its option require immediate payment of all sums owing hereunder.

Signed, sealed and delivered by the undersigned the date first above written.

_____ (Seal)
Roy Terry

_____ (Seal)
Rudolph Terry

Post Office Box 648
924 South Street
Roanoke, Alabama 36274
(205) 863-8835 (facsimile)

- 2 -

AmR.Est 00364

| NO. | DUE DATE | REMAINING PRINCIPAL | MONTHLY PAYMENT | INT. RATE | MORTGAGE INSURANCE | PRINCIPAL PAYMENT | INTEREST PAYMENT |
|---|---|---|---|---|---|---|---|
| 1 | 01/02/03 | 608,836.97 | 19,843.03 | 9.000 | | 15,163.03 | 4,680.00 |
| 2 | 02/02/03 | 593,560.22 | 19,843.03 | 9.000 | | 15,276.75 | 4,566.28 |
| 3 | 03/02/03 | 578,168.89 | 19,843.03 | 9.000 | | 15,391.33 | 4,451.70 |
| 4 | 04/02/03 | 562,662.13 | 19,843.03 | 9.000 | | 15,506.76 | 4,336.27 |
| 5 | 05/02/03 | 547,039.07 | 19,843.03 | 9.000 | | 15,623.06 | 4,219.97 |
| 6 | 06/02/03 | 531,298.83 | 19,843.03 | 9.000 | | 15,740.24 | 4,102.79 |
| 7 | 07/02/03 | 515,440.54 | 19,843.03 | 9.000 | | 15,858.29 | 3,984.74 |
| 8 | 08/02/03 | 499,463.31 | 19,843.03 | 9.000 | | 15,977.23 | 3,865.80 |
| 9 | 09/02/03 | 483,366.25 | 19,843.03 | 9.000 | | 16,097.06 | 3,745.97 |
| 10 | 10/02/03 | 467,148.47 | 19,843.03 | 9.000 | | 16,217.78 | 3,625.25 |
| 11 | 11/02/03 | 450,809.05 | 19,843.03 | 9.000 | | 16,339.42 | 3,503.61 |
| 12 | 12/02/03 | 434,347.09 | 19,843.03 | 9.000 | | 16,461.96 | 3,381.07 |
| TOTALS DURING 2003 | | | 238,116.36 | | 0.00 | 189,652.91 | 48,463.45 |
| 13 | 01/02/04 | 417,761.66 | 19,843.03 | 9.000 | | 16,585.43 | 3,257.60 |
| 14 | 02/02/04 | 401,051.84 | 19,843.03 | 9.000 | | 16,709.82 | 3,133.21 |
| 15 | 03/02/04 | 384,216.70 | 19,843.03 | 9.000 | | 16,835.14 | 3,007.89 |
| 16 | 04/02/04 | 367,255.30 | 19,843.03 | 9.000 | | 16,961.40 | 2,881.63 |
| 17 | 05/02/04 | 350,166.68 | 19,843.03 | 9.000 | | 17,088.62 | 2,754.41 |
| 18 | 06/02/04 | 332,949.90 | 19,843.03 | 9.000 | | 17,216.78 | 2,626.25 |
| 19 | 07/02/04 | 315,603.99 | 19,843.03 | 9.000 | | 17,345.91 | 2,497.12 |
| 20 | 08/02/04 | 298,127.99 | 19,843.03 | 9.000 | | 17,476.00 | 2,367.03 |
| 21 | 09/02/04 | 280,520.92 | 19,843.03 | 9.000 | | 17,607.07 | 2,235.96 |
| 22 | 10/02/04 | 262,781.80 | 19,843.03 | 9.000 | | 17,739.12 | 2,103.91 |
| 23 | 11/02/04 | 244,909.63 | 19,843.03 | 9.000 | | 17,872.17 | 1,970.86 |
| 24 | 12/02/04 | 226,903.42 | 19,843.03 | 9.000 | | 18,006.21 | 1,836.82 |
| TOTALS DURING 2004 | | | 238,116.36 | | 0.00 | 207,443.67 | 30,672.69 |
| 25 | 01/02/05 | 208,762.17 | 19,843.03 | 9.000 | | 18,141.25 | 1,701.78 |
| 26 | 02/02/05 | 190,484.86 | 19,843.03 | 9.000 | | 18,277.31 | 1,565.72 |
| 27 | 03/02/05 | 172,070.47 | 19,843.03 | 9.000 | | 18,414.39 | 1,428.64 |
| 28 | 04/02/05 | 153,517.97 | 19,843.03 | 9.000 | | 18,552.50 | 1,290.53 |
| 29 | 05/02/05 | 134,826.32 | 19,843.03 | 9.000 | | 18,691.65 | 1,151.38 |
| 30 | 06/02/05 | 115,994.49 | 19,843.03 | 9.000 | | 18,831.83 | 1,011.20 |
| 31 | 07/02/05 | 97,021.42 | 19,843.03 | 9.000 | | 18,973.07 | 869.96 |
| 32 | 08/02/05 | 77,906.05 | 19,843.03 | 9.000 | | 19,115.37 | 727.66 |
| 33 | 09/02/05 | 58,647.32 | 19,843.03 | 9.000 | | 19,258.73 | 584.30 |
| 34 | 10/02/05 | 39,244.14 | 19,843.03 | 9.000 | | 19,403.18 | 439.85 |
| 35 | 11/02/05 | 19,695.44 | 19,843.03 | 9.000 | | 19,548.70 | 294.33 |
| 36 | 12/02/05 | 0.00 | 19,843.16 | 9.000 | | 19,695.44 | 147.72 |
| TOTALS DURING 2005 | | | 238,116.49 | | 0.00 | 226,903.42 | 11,213.07 |

AmR.Est 00365

TOTAL PAYMENTS:............    714,349.21

HIGH BALANCE..............    624,000.00

ANNUAL PERCENTAGE RATE:...        9.000

NUMBER OF PAYMENT(S)    35 AT    19,843.03 BEGINNING 01/02/2003

NUMBER OF PAYMENT(S)     1 AT    19,843.16 BEGINNING 12/02/2005

AmR.Est 00366

## BILL OF SALE OF COMMON STOCK

For and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the undersigned N. D. Horton, Jr. and James M Reynolds, III, Grantors do hereby transfer unto Jack Perkinson, Grantee, Fourteen Thousand Four Hundred Shares (16%) of the outstanding Common Stock of Perky Cap Company, Inc. and by these presents do bargain, sell, convey and set over unto Grantees the aforesaid Stock.

The undersigned warrant that said Stock is unencumbered and they shall take such action as is necessary to transfer the same on the books of the Company.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this the 30th day of May, 2002.

_____ (SEAL)
N. D. Horton, Jr.

_____ (SEAL)
James M. Reynolds, III

c:\data\wpdocs\5001\271\bill-sale.JP

AmR.Est 00385

## BILL OF SALE OF COMMON STOCK

For and in consideration of the sum of Six Hundred Twenty-Four Thousand Dollars ($624,000.00) evidenced by Promissory Note from Roy Terry and Rudolph Terry to Grantors and applicable security documents, the undersigned N. D. Horton, Jr. and James M Reynolds, III, Grantors do hereby transfer unto Cotina W. Terry, Grantee, Twenty-Seven Thousand Nine Hundred Shares (31%) of the outstanding Common Stock of Perky Cap Company, Inc. evidenced by Stock Certificate No. _____ representing 27,900 shares, and by these presents do bargain, sell, convey and set over unto Grantees the aforesaid Stock.

The undersigned warrant that said Stock is unencumbered and they shall take such action as is necessary to transfer the same on the books of the Company.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this the 30th day of May, 2002.

_____(SEAL)
N. D. Horton, Jr.

_____(SEAL)
James M. Reynolds, III

c:\data\wpdocs\50011271\bill-sale

**AmR.Est 00368**

# CONSENT TO ACTION BY THE BOARD OF DIRECTORS
## OF PERKY CAP COMPANY, INC.

The undersigned, being all of the Board of Directors of Perky Cap Company, Inc. (hereinafter "Corporation"), acting by unanimous written consent, pursuant to O.C.G.A. §14-2-821, do hereby adopt the following resolutions, to-wit:

BE IT RESOLVED, that on the effective date hereof, the directions of the Corporation, with the resignation of N. D. Horton, Jr. and James M. Reynolds, III, shall be the following:

Roy Terry,　Chairman

Rudolph Terry

Jack Perkinson

The foregoing Resolutions adopted by unanimous written consent of the Board this _30_ day of ___May___, 2002.

_____
Roy Terry

_____
Rudolph Terry

_____
N. D. Horton, Jr.

_____
James M. Reynolds, III

e:\data\wpdocs\5001\271\consent-action3

**AmR.Est 00369**

## RESIGNATION OF OFFICERS AND DIRECTORS OF
## PERKY CAP COMPANY, INC.

Comes now N. D. Horton, Jr. and James M. Reynolds, III and do hereby resign each and every position as members of the Board of Directors and as officers of Perky Cap Company, Inc. effective the 30th day of May, 2002.

_____
N. D. Horton, Jr.

_____
James M. Reynolds, III

e:\data\wpdocs\5001\271\resignation

AmR.Est 00370

## CONSENT TO ACTION BY THE BOARD OF DIRECTORS
## OF PERKY CAP COMPANY, INC.

The undersigned, being all of the Board of Directors of Perky Cap Company, Inc. (hereinafter "Corporation"), acting by unanimous written consent, pursuant to O.C.G.A. §14-2-821, do hereby adopt the following resolutions, to-wit:

BE IT RESOLVED, that on the effective date hereof, the following slate of officers are hereby elected and designated as officers of the Corporation, to-wit:

| | | |
|---|---|---|
| President | - | Jack Perkinson |
| Vice President | - | Roy Terry |
| Secretary/Treasurer | - | Rudolph Terry |

FURTHER RESOLVED, that the President with his signature attested by the Vice President or Secretary/Treasurer shall be authorized to execute on behalf of the Corporation all contracts or other documents necessary or proper in the discretion of such officers or their attorneys to facilitate and consummate the proper operation and business of the Corporation. Provided, however, that the power of the officers to incur debt, other than thirty day accounts in ordinary course of business, shall require Board resolution and the signature of the President and one other officer.

FURTHER RESOLVED, that any of the above officers shall be authorized to enter into contracts and agreements for services for general operation of the Corporation and its business subject to such restrictions as set forth herein.

The foregoing Resolutions adopted by unanimous written consent of the Board this 30 day of May, 2002.

_____
Roy Terry

_____
Rudolph Terry

_____
Jack Perkinson

c:\data\wpdocs\5001\271\consent-action2

**AmR.Est 00371**

## LOAN AGREEMENT

This Loan Agreement made this 30th day of May, 2002, by and between **ROY TERRY and RUDOLPH TERRY** as Borrower and **COTINA W. TERRY**, as Pledgor and **N. D. HORTON, JR. and JAMES M. REYNOLDS, III**, as Lender.

### W I T N E S S E T H:

**WHEREAS**, Borrower has requested of Lender a loan in the principal amount of Six Hundred Twenty-Four Thousand and 00\100 ($624,000.00) Dollars and Lender has agreed to make such loan pursuant to the Promissory Note attached hereto and marked as Exhibit "A"; and

**WHEREAS**, Cotina W. Terry is pledging to Lender as security and collateral for such loan thirty-one percent (31%) of Cotina W. Terry's common stock in the company known as Perky Cap Company, Inc..

**NOW THEREFORE**, in consideration of the premises, the mutual covenants, agreements, and undertakings herein set forth, the making of the loan by Lender to Borrower, and other good and valuable consideration, the parties do agree as follows:

1.

Lender shall lend to Borrower and Borrower shall borrow and repay to Lender the sum of Six Hundred Twenty-Four Thousand and 00\100 ($624,000.00) Dollars, which said sum shall bear interest at the rate of twelve (12%) percent per annum, interest only in the amount of $4,680.00 payable monthly beginning on July 2, 2002 for a period of six (6) months until December 2, 2002 when the outstanding balance shall be amortized over thirty-six (36) equal

1

AmR.Est 00372

payments of principal and interest in the amount of $19,843.03 beginning January 2, 2003 and due and payable in full on December 2, 2005.

2.

Cotina W. Terry does grant unto Lender a security interest and security title and pledge of the following common stock, to wit:

Thirty-One percent (31%) of the common stock of Perky Cap Company, Inc., owned by Cotina W. Terry, the same being represented by share Certificate Number _____ (27,900 shares).

3.

This Loan Agreement may be executed in counterparts.

4.

Time is of the essence hereof.

5.

This Agreement, the Promissory Note, the Security Agreement, and the Irrevocable Stock Powers, and any other documents hereinafter the "loan documents", constitute the entire agreement between the parties.  No representation, covenant, or warranties not herein expressly set forth shall be binding on the parties hereto.  No modification hereof shall be effective unless in writing and subscribed by the parties hereto.

6.

This Loan Agreement and the loan documents shall be construed with the laws in the State of Georgia.  In any action commenced hereunder, the parties do hereby designate venue in the Superior Court of Putnam County, Georgia.

2

c:\data\wpdocs\5001\271\loan-agr

AmR.Est 00373

**IN WITNESS WHEREOF**, the parties hereto have set their hands and affixed their seals

this ~~2nd day of June~~, 2002.
30th day of May

| | |
|---|---|
| | **Borrower:** |
| _(signature)_ | _(signature)_ |
| Witness | Roy Terry |
| _(signature)_ | _(signature)_ |
| Witness | Rudolph Terry |
| | |
| | **Pledgor:** |
| | |
| Witness | Cotina W. Terry |
| | |
| | **Lender:** |
| Carol E Jones | _(signature)_ |
| Witness | N. D. Horton, Jr. |
| Carol E Jones | _(signature)_ |
| Witness | James M. Reynolds, III |

3

c:\data\wpdocs\5001\271\loan-agr

**AmR.Est 00374**

**IN WITNESS WHEREOF,** the parties hereto have set their hands and affixed their seals

this 30th day of May, 2002.

**Borrower:**

_____     _____
Witness                             Roy Terry

_____     _____
Witness                             Rudolph Terry

**Pledgor:**

_____     _____
Witness                             Cotina W. Terry

**Lender:**

_____     _____
Witness                             N. D. Horton, Jr.

_____     _____
Witness                             James M. Reynolds, III

3

# PLEDGE AGREEMENT

**This Agreement** made this 30th day of May, 2002, by and between **Jack Perkinson,** hereinafter Pledgor, and **N. D. Horton, Jr. and James M. Reynolds, III,** 2561 Lake Oconee Parkway, Greensboro, Georgia 30642, hereinafter Pledgee;

## WITNESSETH:

**Whereas,** Pledgee has conveyed to Pledgor 14,400 shares of the outstanding stock of Perky Cap Company, Inc.; and

**Whereas,** Pledgee has loaned to Cotina W. Terry (hereinafter "Terrys") the sum of Six Hundred Twenty-Four Thousand and No/100 Dollars ($624,000.00) to fund the Terrys purchase of 27,900 shares (thirty-one percent [31%]) of the outstanding stock in Perky Cap Company, Inc.; and

**Whereas,** in order to induce the Pledgee to make such loan, Pledgor has agreed to pledge the Common Stock hereinafter mentioned to the Pledgee as additional security for the repayment of said loan.

**Now Therefore,** it is agreed between the parties as follows:

### 1.

In consideration of the loan made by Pledgee to the Terrys as hereinbefore mentioned, the Pledgor hereby delivers to the Pledgee sixteen percent (16.0%) ownership in Perky Cap Company, a Georgia Corporation represented by Certificate No. _____ (14,400 shares), together with that certain Irrevocable Stock Power, and do hereby assign such Common Stock and Certificate to the Pledgee and do hereby appoint Pledgee as their true and lawful attorney for them and in their name, place and stead to cause said Common Stock to be transferred on the books of the said Perky Cap Company to the name of the Pledgee.

### 2.

The Pledgee shall hold said Common Stock as security for the repayment of the aforesaid loan as described in the Loan Documents, together with interest thereon, and shall not at any time dispose of such Common Stock or encumber the same, except as herein otherwise provided.

### 3.

Pledgor shall repay the indebtedness to the Pledgee with interest thereon according to the terms contained in said Loan Documents.

E:\DATA\WPDOCS\5001\271pledge-agr-JPwpd.wpd

**AmR.Est 00386**

4.

At all times while Pledgee is the holder of said Common Stock, the Pledgor shall receive any dividends distributed thereon.  Provided such dividends shall be approved by Pledgee.

5.

While the Pledgee is the holder of said Common Stock, the Pledgor shall have the right to vote the same at meetings of Perky Cap Company so long as they are not in default in the performance of any of the terms of this Agreement, the payment of the principal and interest of the said loan or under the terms of that certain Loan Agreement by and among the parties hereto (Loan Documents).

6.

Upon the repayment of the entire amount of the loan and interest as herein provided, the Pledgee shall transfer to the Pledgor the Stock Certificate pledged hereunder.

7.

In the event that the Pledgor shall fail to perform any of the terms of this Agreement or to make payment of the principal and interest of said loan as required pursuant to the terms of said loan as evidenced in the Note, fails to comply with the terms of the Loan Agreement or default on any of the Loan Documents, Pledgee may, upon thirty (30) days notice in writing to the Pledgor by Registered Mail, sell any or all of the Common Stock herein mentioned in such manner and for such price as the Pledgee may determine, and out of the proceeds of such sale retain an amount sufficient to pay the principal and interest then due on said loan together with expenses of sale, and pay any balance of such proceeds to the Pledgor.  At any bona fide public sale, the Pledgee may purchase all or part of such Common Stock at such price as he deems proper.  In the event that the proceeds of any sale are not sufficient to pay the said loan and interest together with expenses of such sale or any obligations of the pledge or under the Loan Agreement, then the Pledgor shall pay to the Pledgee any deficiency.

8.

All notices hereunder shall be addressed to the Pledgee and sent by Registered Mail, Return Receipt Requested at the following address or such other address as Pledgee shall give to Pledgor · in writing making specific reference to this Pledge Agreement, to-wit:

N. D. Horton, Jr. and
James M. Reynolds, III
2561 Lake Oconee Parkway
Greensboro, GA   30642

E:\DATA\WPDOCS\5001\271\pledge-agr-JP.wpd.wpd

**AmR.Est 00387**

With copy to:
Richard W. Schmidt
Attorney at Law
P. O. Box 67
Greensboro, GA 30642

Jack Perkinson
Perky Cap Company, Inc.
186 Industrial Blvd., SE
Eatonton, GA  31024

9.

This Agreement shall be governed by the laws of the State of Georgia.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals the day and year first above written.

Executed and acknowledged before me
this 2ⁿᵈ day of June, 2002:

_____
Notary Public,
My Commission Expires
(AFFIX NOTARY SEAL)

_____ (SEAL)
Jack Perkinson

Executed and acknowledged before me
this 2ⁿᵈ day of June, 2002:

_____
Notary Public,
My Commission Expires
(AFFIX NOTARY SEAL)

_____ (SEAL)
N. D. Horton, Jr.

_____ (SEAL)
James M. Reynolds, III

E:\DATA\WPDOCS\5001\271\pledge-agr-JPwpd.wpd

AmR.Est 00388

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED**, the undersigned does hereby sell, assign and transfer to

**N. D. Norton, Jr. and James M. Reynolds, III**, Fourteen Thousand Four Hundred shares of the

common stock of Perky Cap Company, Inc., represented by Certificate No. _____ (14,400

shares) standing in the name of the undersigned on the books of said Company.

The undersigned do hereby irrevocably constitute and appoint either N. D. Horton, Jr.

or James M. Reynolds, III, Attorney to transfer the said stock on the books of said Company,

with full power of substitution in the premises.

Dated: May 30, 2002

Jack Perkinson

AmR.Est 00389

# PROXY

For value received and in order to secure a Purchase Money Promissory Note, the undersigned, **Jack Perkinson** (Owner) does hereby grant unto **N. D. Horton, Jr. and James M. Reynolds, III,** Proxy to vote at any and all shareholder meetings which may be had in the company known as Perky Cap Company, Inc., proxy for 14,400 shares of the outstanding Common Stock of Perky Cap Company, Inc.

Provided however, that for so long as the following obligations are current and not in default this Proxy shall be suspended, but upon default in any of the following named obligations this Proxy shall be valid and active and shall not be revoked for so long as such default may exist:

1.    Purchase Money Note from Cotina W. Terry to N. D. Horton, Jr., James M. Reynolds, III dated June 2, 2002 secured by 27,900 Shares of the Common Stock **of Perky Cap Company, Inc.**

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this 30th day of May, 2002.

_____ (SEAL)
Jack Perkinson

e:\data\wpdocs\5001\271\proxyJP

**AmR.Est 00390**

## PLEDGE AGREEMENT

**This Agreement** made this 30th day of May, 2002, by and between **Cotina W. Terry,** hereinafter Pledgor, and **N. D. Horton, Jr. and James M. Reynolds, III,** 2561 Lake Oconee Parkway, Greensboro, Georgia 30642, hereinafter Pledgee;

### W I T N E S S E T H:

**Whereas,** Pledgee has loaned to Roy Terry and Rudolph Terry the sum of Six Hundred Twenty-Four Thousand and No/100 Dollars ($624,000.00) to fund Pledgor's purchase of 27,900 shares evidenced by Note, and Loan Agreement, dated as of May 30, 2002 (Loan Documents) and thirty-one percent (31%) of the outstanding stock in Perky Cap Company, Inc.; and

**Whereas,** in order to induce the Pledgee to make such loan, Pledgor has agreed to pledge the Common Stock hereinafter mentioned to the Pledgee as security for the repayment of said loan.

**Now Therefore,** it is agreed between the parties as follows:

### 1.

In consideration of the loan made by Pledgee to the Roy Terry and Rudolph Terry as hereinbefore mentioned, the Pledgor hereby delivers to the Pledgee thirty-one percent ownership in Perky Cap Company, a Georgia Corporation represented by Certificate No. _____ (27,900 shares), together with that certain Irrevocable Stock Power, and do hereby assign such Common Stock and Certificate to the Pledgee and do hereby appoint Pledgee as their true and lawful attorney for them and in their name, place and stead to cause said Common Stock to be transferred on the books of the said Perky Cap Company to the name of the Pledgee.

### 2.

The Pledgee shall hold said Common Stock as security for the repayment of the aforesaid loan as described in the Loan Documents, together with interest thereon, and shall not at any time dispose of such Common Stock or encumber the same, except as herein otherwise provided.

### 3.

Roy Terry and Rudolph Terry shall repay the indebtedness to the Pledgee with interest thereon according to the terms contained in said Loan Documents.

### 4.

At all times while Pledgee is the holder of said Common Stock, the Pledgor shall receive any dividends distributed thereon. Provided such dividends shall be approved by Pledgee.

C:\My Documents\Files\pledge-agrm.wpd

AmR.Est 00378

5.

While the Pledgee is the holder of said Common Stock, the Pledgor shall have the right to vote the same at meetings of Perky Cap Company so long as they are not in default in the performance of any of the terms of this Agreement, the payment of the principal and interest of the said loan or under the terms of that certain Loan Agreement by and among the parties hereto (Loan Documents).

6.

Upon the repayment of the entire amount of the loan and interest as herein provided, the Pledgee shall transfer to the Pledgor the Stock Certificate pledged hereunder.

7.

In the event that the Pledgor shall fail to perform any of the terms of this Agreement or if Roy Terry and Rudolph Terry fail to make payment of the principal and interest of said loan as required pursuant to the terms of said loan as evidenced in the Note, or fails to comply with the terms of the Loan Agreement or default on any of the Loan Documents, Pledgee may, upon thirty (30) days notice in writing to the Pledgor by Registered Mail, sell any or all of the Common Stock herein mentioned in such manner and for such price as the Pledgee may determine, and out of the proceeds of such sale retain an amount sufficient to pay the principal and interest then due on said loan together with expenses of sale, and pay any balance of such proceeds to Roy Terry and Rudolph Terry. At any bona fide public sale, the Pledgee may purchase all or part of such Common Stock at such price as he deems proper. In the event that the proceeds of any sale are not sufficient to pay the said loan and interest together with expenses of such sale or any obligations of the pledge or under the Loan Agreement, then the Roy Terry and Rudolph Terry shall pay to the Pledgee any deficiency.

8.

All notices hereunder shall be addressed to the Pledgee and sent by Registered Mail, Return Receipt Requested at the following address or such other address as Pledgee shall give to Pledgor in writing making specific reference to this Pledge Agreement, to-wit:

N. D. Horton, Jr. and
James M. Reynolds, III
2561 Lake Oconee Parkway
Greensboro, GA 30642

With copy to:
Richard W. Schmidt
Attorney at Law
P. O. Box 67
Greensboro, GA 30642

C:\My Download Files\pledge-agrn.wpd

Cotina W. Terry
P. O. Box 648
924 South Street
Roanoke, AL   36274

9.

This Agreement shall be governed by the laws of the State of Georgia.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals the day and year first above written.

Executed and acknowledged before me
this 30th day of May, 2002:

_____ (SEAL)
**Cotina W. Terry**

Notary Public,
My Commission Expires:    My Commission Expires July 20, 2003.
(AFFIX NOTARY SEAL)

Executed and acknowledged before me
this 30th day of May, 2002:

_____ (SEAL)
**N. D. Horton, Jr.**

Notary Public,

_____ (SEAL)
**James M. Reynolds, III**

My Commission Expires:
(AFFIX NOTARY SEAL)

NOTARY
—
PUBLIC
CAROL E. JONES
Exp. Nov. 14, 2006
OCONEE COUNTY, GA

C:\My Download Printcfrdeleaseagrr wpd

**AmR.Est 00380**

# PROXY

For value received and in order to secure a Purchase Money Promissory Note to Roy Terry and Rudolph Terry, the undersigned, **Cotina W. Terry** (Owner) does hereby grant unto **N. D. Horton, Jr. and James M. Reynolds, III**, Proxy to vote at any and all shareholder meetings which may be had in the company known as Perky Cap Company, Inc., proxy for 27,900 shares of the outstanding Common Stock of Perky Cap Company, Inc.

Provided however, that for so long as the following obligations are current and not in default this Proxy shall be suspended, but upon default in any of the following named obligations this Proxy shall be valid and active and shall not be revoked for so long as such default may exist:

1.  Purchase Money Note from Roy Terry and Rudolph Terry to N. D. Horton, Jr. and James M. Reynolds, III dated May 30, 2002 secured by 27,900 Shares of the Common Stock of Perky Cap Company, Inc.

In Witness Whereof, the undersigned have hereunto set their hands and affixed their seals this 30th day of May, 2002.

_Cotina W. Terry_ (SEAL)
Cotina W. Terry

e. total/w-pdoca.2001271 i-proxy

**AmR.Est 00381**

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does hereby sell, assign and transfer to **N. D. Horton, Jr. and James M. Reynolds, III,** Twenty-Seven Thousand Nine Hundred shares of the common stock of Perky Cap Company, Inc., represented by Certificate No. _____ (27,900 shares) standing in the name of the undersigned on the books of said Company.

The undersigned do hereby irrevocably constitute and appoint either N. D. Horton, Jr. or James M. Reynolds, III, Attorney to transfer the said stock on the books of said Company, with full power of substitution in the premises.

Dated: May 30, 2002

_Cotina W. Terry_
Cotina W. Terry

AmR.Est 00382

**CLOSING STATEMENT**
**$624,000.00 LOAN**
**ROY TERRY AND RUDOLPH TERRY**
**FROM N. D. HORTON, JR. AND JAMES M. REYNOLDS, III**
**FOR THE PURCHASE OF 31% OF PERKY CAP COMPANY, INC. STOCK**

Total Loan Proceeds                                   $ 624,000.00


Disbursements by Borrower:

First draw                            $         - 0 -

Attorney's fees - Blasingame, Burch, et al.-        3,500.00



Total Due From Borrower                       $   3,500.00


The above checked and acknowledged this 30th  day of May, 2002.


_____                _____
Roy Terry                              N. D. Horton, Jr.

_____                _____
Rudolph Terry                          James M. Reynolds, III


e:\data\wpdocs\5001\271\clos-state


**AmR.Est 00367**

✿ ✿ ✿ SECURITY AGREEMENT ✿ ✿ ✿
(HYPOTHECATION)

Eatonton, Putnam County, Georgia

May 30, 2002

KNOW ALL MEN BY THESE PRESENTS THAT, in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to **Perky Cap Company, Inc.** (hereinafter called "Perky") or Cotina W. Terry or to the undersigned (or any of them), by **N. D. Horton, Jr. and James M. Reynolds, III** (hereinafter, together with their heirs and assigns, called "Horton and Reynolds"), the undersigned agree(s) with Horton and Reynolds that, to secure the payment of the Liabilities (hereinafter defined), Horton and Reynolds shall have a lien upon, security title to, and a security interest in Stock Certificate Number ____ representing 14,400 shares (16.0%) of Perky Cap Company, Inc.. together with all other property at any time delivered, pledged, assigned, conveyed or transferred by the undersigned (or any of them) to Horton and Reynolds and any other property of every kind or description of the undersigned (or any of them) now or hereafter in the possession or control of Horton and Reynolds for any reason, including all dividends and distributions on or other rights in connection with any property hereinabove referred to (all such property, dividends, distributions and rights being hereinafter collectively called the "Collateral"). The term "Liabilities," as used herein, shall mean all obligations of Perky or the undersigned (or any of them), to Horton and Reynolds, however incurred or evidenced, whether direct or indirect, absolute or contingent, or now or hereafter existing, or due or to become due. The undersigned waive(s) notice of the existence or creation of all or any of the Liabilities.

The undersigned who has delivered, pledged, assigned or transferred property to Horton and Reynolds warrants that such undersigned is the sole and lawful owner of such property, free of all claims and liens other than the security interest hereunder, with full right to deliver, pledge, assign, convey and transfer such property to Horton and Reynolds as Collateral hereunder.

Horton and Reynolds shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if it takes such action for that purpose as the undersigned (or if more than one, such of the undersigned as shall have an ownership interest in such Collateral) shall request in writing, but failure of Horton and Reynolds to comply with any such request shall not of itself be deemed a failure to exercise reasonable care, and no failure of Horton and Reynolds to preserve or protect any rights with respect to the Collateral against prior parties, or to do any act with respect to preservation of the Collateral not so requested by the undersigned, shall be deemed a failure to exercise reasonable care in the custody or preservation of the Collateral.

Horton and Reynolds, from time to time, whether before or after any of the Liabilities shall become due and payable, may, without notice to the undersigned (or any of them), (a) transfer all or any part of the Collateral into the name of Horton and Reynolds or its nominee, with or without disclosing that such Collateral is subject to the lien, security title and security interest hereunder, (b) notify the parties obligated on any of the Collateral to make payment to Horton and Reynolds of any amounts due or to become due thereunder, (c) enforce collection of any of the Collateral by suit or otherwise, and surrender, release or exchange all or any part thereof, or compromise or extend or renew from time to time for any period (whether or not longer than the original period) any indebtedness evidenced thereby, and (d) take control of any proceeds of the Collateral.

Horton and Reynolds may, from time to time, without notice to the undersigned (or any of them), (a) retain or obtain security title to or a security interest in any property, in addition to the Collateral, to secure any of the Liabilities, (b) retain or obtain the primary or secondary liability of any parties, in addition to the undersigned (or any of them), with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period) or exchange any of the Liabilities or release or compromise any liability of any party or parties primarily or secondarily liable thereon, (d) release its security title to and security interest in all or any property, in addition to the Collateral securing any of the Liabilities and permit any substitution or exchange for any such property, and (e) resort to the Collateral for payment of any of the Liabilities, whether or not it shall have resorted to any other property or shall have proceeded against any party primarily or secondarily liable on any of the Liabilities.

Non-payment, when due, whether by declaration or otherwise, of any amount payable on any of the Liabilities shall constitute a default hereunder. Upon such default, (a) Horton and Reynolds may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in Georgia or otherwise available to it, and (b) Horton and Reynolds may, without demand or notice of any kind, appropriate and apply toward the payment of such of the Liabilities, and in such order of application as Horton and Reynolds may from time to time elect, any balances, credits, deposits, accounts, items or monies of the undersigned (or any of them). If any notification of intended disposition of any of the Collateral is required by law, such notification, if mailed, shall be deemed reasonably and properly given if mailed at least five days before such disposition, postage prepaid, addressed to the undersigned (or if more than one, to such of the undersigned as shall have an ownership interest in such Collateral), either at the address of such undersigned shown below, or at any other address of such undersigned appearing on the records of Horton and Reynolds. Any proceeds of any disposition of Collateral may be applied by Horton and Reynolds to the payment of expenses in connection with the Collateral, including reasonable attorneys' fees and legal expenses, and any balance of such proceeds may be applied by Horton and Reynolds toward the payment of such of the Liabilities, and in such order of application, as Horton and Reynolds may from time to time elect. All rights and remedies of Horton and Reynolds expressed hereunder are in addition to all other rights and remedies possessed by it, including those under any other agreement or instrument relating to any of the Liabilities or any security therefor. No delay or failure on the part of Horton and Reynolds in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Horton and Reynolds of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action of Horton and Reynolds permitted hereunder shall impair or affect the rights of Horton and Reynolds in and to the Collateral. Time is of the essence of this Agreement.

This Agreement has been made in the State of Georgia and shall be governed by the laws of that State. Wherever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

If more than one party shall execute this Agreement the term undersigned as used herein shall mean all parties signing and each of them, who shall be jointly and severally bound hereunder.

Given under the hand and seal of each of the undersigned.

Address:  125 WINDSOR DRIVE
          EATONTON, GA. 31024

_Jack Perkinson_ _____ (SEAL)
Jack Perkinson

AmR.Est 00391

E:\DATA\WPDOCS\5001\2719\ppcsba-agr.wpd

J. Lester Alexander III v. N. D. Horton and J. Reynolds

**November 10, 2000 Loans to Allie Robinson in the principal amount of $200,000 and to Cotina Terry in the principal amount of $200,000**

| Payor | Payee | Amt | Check No. | Date Issued | Bank | Date Invoiced | Invoice Description |
|-------|-------|-----|-----------|-------------|------|---------------|---------------------|
| Terry Manufacturing | N. D. Horton, Jr. | $1,561.50 | 61506 | 12/11/2000 | First Bank | 12/6/2000 | Interest 11/10/2000-12/10/2000 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 61836 | 1/9/2001 | First Bank | 12/29/2000 | Interest 12/10/2000-1/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 62225 | 2/9/2001 | First Bank | 1/21/2001 | Interest 1/10/2001-2/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,457.40 | 62530 | 3/9/2001 | First Bank | 2/28/2001 | Interest 2/10/2001-3/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 62869 | 4/9/2001 | First Bank | 3/30/2001 | Interest 3/10/2001-4/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,561.50 | 63221 | 5/9/2001 | First Bank | 4/30/2001 | Interest 4/10/2001-5/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 63646 | 6/8/2001 | First Bank | 5/31/2001 | Interest 5/10/2001-6/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,561.50 | 63944 | 7/7/2001 | First Bank | 6/29/2001 | Interest 6/10/2001-7/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 64357 | 8/9/2001 | First Bank | 7/31/2001 | Interest 7/10/2001-8/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 64739 | 9/8/2001 | First Bank | 8/31/2001 | Interest 8/10/2001-9/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,561.50 | 65090 | 10/9/2001 | First Bank | 9/28/2001 | Interest 9/10/2001-10/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $1,613.55 | 65469 | 11/10/2001 | First Bank | 10/30/2001 | Interest 10/10/2001-11/10/2001 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 4418 | 12/10/2001 | Bank of America | 11/30/2001 | Loan 1, Installment 1 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 66042 | 1/9/2002 | First Bank | 12/29/2001 | Loan 1, Installment 2 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 66431 | 2/8/2002 | First Bank | 1/31/2002 | Loan 1, Installment 3 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 66788 | 3/8/2002 | First Bank | 02/??/2002 | Loan 1, Installment 4 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 67156 | 4/10/2002 | First Bank | 3/29/2002 | Loan 1, Installment 5 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 67470 | 5/9/2002 | First Bank | 4/29/2002 | Loan 1, Installment 6 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 67795 | 6/7/2002 | First Bank | 5/31/2002 | Loan 1, Installment 7 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 68132 | 7/9/2002 | First Bank | 6/28/2002 | Loan 1, Installment 8 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 68521 | 8/9/2002 | First Bank | 7/29/2002 | Loan 1, Installment 9 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 68906 | 9/9/2002 | First Bank | 8/30/2002 | Loan 1, Installment 10 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 69311 | 10/8/2002 | First Bank | 9/30/2002 | Loan 1, Installment 11 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 69610 | 11/8/2002 | First Bank | 10/31/2002 | Loan 1, Installment 12 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 69983 | 12/9/2002 | First Bank | 11/25/2002 | Loan 1, Installment 13 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 70380 | 1/9/2003 | First Bank | 12/23/2002 | Loan 1, Installment 14 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 70765 | 2/7/2003 | First Bank | 1/23/2003 | Loan 1, Installment 15 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 71063 | 3/8/2003 | First Bank | 2/24/2003 | Loan 1, Installment 16 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 71514 | 4/9/2003 | First Bank | 3/24/2003 | Loan 1, Installment 17 |
| Terry Manufacturing | N. D. Horton, Jr. | $11,965.42 | 71869 | 5/9/2003 | First Bank | 4/22/2003 | Loan 1, Installment 18 |

**Checks total:** **$234,375.81**



tabbies®

EXHIBIT

"12"

# First Bank

1109308                           09/30/2002                          PAGE   20

| | | |
|---|---|---|
| 68905    09/12/2002    44,376.50 | 68906    09/12/2002    11,965.42 | 68907    09/30/2002    11,965.42 |
| 68908    09/13/2002    609.12 | 68909    09/13/2002    18,404.23 | 68910    09/20/2002    5,450.50 |
| 68911    09/20/2002    6,230.51 | 68912    09/18/2002    1,200.00 | 68913    09/16/2002    9,032.40 |
| 68914    09/10/2002    40,000.00 | 68915    09/16/2002    1,262.60 | 68916    09/18/2002    1,091.45 |
| 68917    09/16/2002    241.50 | 68918    09/16/2002    1,174.09 | 68919    09/18/2002    8,018.04 |
| 68920    09/10/2002    80.00 | 68921    09/10/2002    80.00 | 68922    09/11/2002    60.00 |
| 68923    09/10/2002    80.00 | 68925    09/10/2002    80.00 | 68926    09/13/2002    40,000.00 |

# First Bank

1109308                                    11/29/2002                                    PAGE  18

| | | |
|---|---|---|
| 69601  11/14/2002  159.00 | 69602  11/18/2002  4,755.24 | 69603  11/15/2002  2,996.78 |
| 69604  11/19/2002  4,818.75 | 69605  11/21/2002  23,101.46 | 69606  11/15/2002  13,479.60 |
| 69607  11/15/2002  2,565.93 | 69608  11/13/2002  9,898.54 | 69609  11/14/2002  44,376.50 |
| 69610  11/14/2002  11,965.42 | 69611  11/18/2002  11,965.42 | 69612  11/13/2002  168.42 |
| 69613  11/13/2002  810.18 | 69614  11/18/2002  244.63 | 69615  11/14/2002  27.71 |
| 69616  11/12/2002  120.18 | 69618  11/13/2002  28.24 | 69619  11/13/2002  111,500.00 |
| 69620  11/12/2002  15,000.00 | 69621  11/19/2002  2,510.42 | 69622  11/13/2002  1,491.29 |

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  61507

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG CO. INC. I 5 6 I DOLS 5O CTS _____ DOLLARS

TO THE
ORDER OF   James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 12-11-00 | 61507 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

⑈"061507"⑈ ⑈:062203638: ⑈"11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  61506

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG CO. INC. I 5 6 I DOLS 5 CTS _____ DOLLARS

TO THE
ORDER OF   N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 12-11-00 | 61506 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

⑈"061506"⑈ ⑈:062203638: ⑈"11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  61508

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. I 5 6 I 6 DOLS 5 CTS _____ DOLLARS

TO THE
ORDER OF   American Real Estate
Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 12-11-00 | 61508 | 15616 | 50 |

TERRY MANUFACTURING CO., INC.

⑈"061508"⑈ ⑈:062203638: ⑈"11 0930 8"⑈

ARE 03256

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 61835

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG ___ 22904 DOLS 07 CTS _____ **DOLLARS**

TO THE ORDER OF  AMERICAN REAL ESTATE
INVESTMENT COMPANY, LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 1-9-01 | 61835 | 22904 | 07 |

TERRY MANUFACTURING CO., INC.

⑈"061835"⑈ ⑆062203638⑆ ⑈11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 61837

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG ___ 1613 DOLS 55 CTS _____ **DOLLARS**

TO THE ORDER OF  JAMES M. REYNOLDS, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 1-09-01 | 61837 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈"061837"⑈ ⑆062203638⑆ ⑈11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 61836

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG ___ 1613 DOLS 55 CTS _____ **DOLLARS**

TO THE ORDER OF  N. D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 1-9-01 | 61836 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈"061836"⑈ ⑆062203638⑆ ⑈11 0930 8"⑈

ARE 03251

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62224

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG _30972 DOLS 90 CTS _____ **DOLLARS**

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 2-9-01 | 62224 | 3097 | 90 |

TO THE
ORDER OF   AMERICAN REAL ESTATE
INVESTMENT COMPANY, LTD

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062224"  ⑊:062203638⑊:  "11 0930 8"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62225

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG 1613 DOLS 55 CTS _____ **DOLLARS**

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 2-9-01 | 62225 | 1613 | 55 |

TO THE
ORDER OF   N.D. HORTON, JR.

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062225"  ⑊:062203638⑊:  "11 0930 8"

ARE 03246

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62226

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG 1613 DOLS 55 CTS _____ **DOLLARS**

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 2-09-01 | 62226 | 1613 | 55 |

TO THE
ORDER OF   JAMES M. REYNOLDS, III

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062226"  ⑊:062203638⑊:  "11 0930 8"

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62528

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG 35 137 DOLS 01 CTS _____ **DOLLARS**

TO THE
ORDER OF  AMERICAN REAL ESTATE
INVESTMENT COMPANY, LTD

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 3-9-01 | 62528 | 35137 | 01 |

TERRY MANUFACTURING CO., INC.

⑈062528⑈ ⑊062203638⑊ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62530

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG I 457 DOLS 40 CTS _____ **DOLLARS**

TO THE
ORDER OF  N. D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 3-9-01 | 62530 | 1457 | 40 |

TERRY MANUFACTURING CO., INC.

⑈062530⑈ ⑊062203638⑊ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62531

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG I 457 DOLS 40 CTS _____ **DOLLARS**

TO THE
ORDER OF  JAMES M. REYNOLDS, III

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 3-9-01 | 62531 | 1457 | 40 |

TERRY MANUFACTURING CO., INC.

⑈062531⑈ ⑊062203638⑊ ⑈11 0930 8⑈

ARE 03239

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  62872

61-363
622

PAY _____ TERRY MFG. *43725 DOLS 85 CTS* _____ DOLLARS
CO. INC.

TO THE
ORDER OF   AmERICAN REAL EStAtE
           INVESTMENT Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 4-9-01 | 62872 | 43725 | 85 |

TERRY MANUFACTURING CO., INC.

MP

⑈"O62872"⑈ ⑈:O62203638:⑈ ⑈11 O93O 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  62869

61-363
622

PAY _____ TERRY MFG. *I6I3 DOLS 55 CTS* _____ DOLLARS
CO. INC.

TO THE
ORDER OF   N.D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 4-9-01 | 62869 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

MP

⑈"O62869"⑈ ⑈:O62203638:⑈ ⑈11 O93O 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  62870

61-363
622

PAY _____ TERRY MFG. *I6I3 DOLS 55 CTS* _____ DOLLARS
CO. INC.

TO THE
ORDER OF   JAmes M. REYNOLDS, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 4-9-01 | 62870 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

MP

⑈"O62870"⑈ ⑈:O62203638:⑈ ⑈11 O93O 8"⑈

ARE 01994

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63220

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG CO. INC. 42945 DOLS 00 CTS

DOLLARS

TO THE
ORDER OF    American Real Estate
Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-09-01 | 63220 | 42945 | 00 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈063220⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63221

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG CO. INC. 1561 DOLS 50 CTS

DOLLARS

TO THE
ORDER OF    N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-09-01 | 63221 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈063221⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63222

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG CO. INC. 1561 DOLS 50 CTS

DOLLARS

TO THE
ORDER OF    James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-9-01 | 63222 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈063222⑈ ⑈062203638⑈ ⑈11 0930 8⑈

ARE 03229

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63645

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 44376 DOLS 50 CTS                    **DOLLARS**

TO THE
ORDER OF    American Real Estate
Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 6-8-01 | 63645 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈063645⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63646

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 1613 DOLS 55 CTS                    **DOLLARS**

TO THE
ORDER OF    N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 6-08-01 | 63646 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈063646⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63648

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 1613 DOLS 55 CTS                    **DOLLARS**

TO THE
ORDER OF    James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 6-8-01 | 63648 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈063648⑈ ⑆062203638⑆ ⑈11 0930 8⑈

ARE 03224

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  63945

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY — TERRY MFG. CO. INC.▶ 42945 DOLS 00 CTS — **DOLLARS**

TO THE
ORDER OF  American Real Estate Invstmt Co.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 7-07-01 | | 42945 | 00 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

MP

⑈063945⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  63943

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY — TERRY MFG. CO. INC.▶ 1561 DOLS 50 CTS — **DOLLARS**

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 7-07-01 | | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

MP

⑈063943⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  63944

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY — TERRY MFG. CO. INC.▶ 1561 DOLS 50 CTS — **DOLLARS**

TO THE
ORDER OF  N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 7-07-01 | | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

MP

⑈063944⑈ ⑆062203638⑆ ⑈11 0930 8⑈

ARE 03219

**F 64358**

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

TERRY MFG. CO. INC. ► *1613 DOLS 55 CTS*    DOLLARS

PAY

TO THE ORDER OF  *James M. Reynolds, III*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 8-9-01 | 64358 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈064358⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**F 64357**

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

TERRY MFG. CO. INC. ► *1613 DOLS 55 CTS*    DOLLARS

PAY

TO THE ORDER OF  *N. D. Horton, Jr.*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 8-09-01 | 64357 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈064357⑈ ⑆062203638⑆ ⑈11 0930 8⑈

ARE 03214

---

**F 64356**

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

TERRY MFG. CO. INC. ► *44376 DOLS 50 CTS*    DOLLARS

PAY

TO THE ORDER OF  *American Real Estate Investment Company, LTD*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 8-09-01 | 64356 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

⑈064356⑈ ⑆062203638⑆ ⑈11 0930 8⑈

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F  64738

PAY ___ TERRY MFG. CO. INC. ▶ *44376 DOLS 50 CTS* ___ DOLLARS

TO THE ORDER OF  American Real Estate Investment Company, LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 9-8-01 | 64738 | 4437b | 50 |

TERRY MANUFACTURING CO., INC.

⑆064738⑆ ⑈062203638⑈ ⑆11 0930 8⑆

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F  64739

PAY ___ TERRY MFG. CO. INC. ▶ *1613 DOLS 55 CTS* ___ DOLLARS

TO THE ORDER OF  N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 9-8-01 | 64739 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑆064739⑆ ⑈062203638⑈ ⑆11 0930 8⑆

ARE 01971

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F  64740

PAY ___ TERRY MFG. CO. INC. ▶ *1613 DOLS 55 CTS* ___ DOLLARS

TO THE ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 9-8-01 | 64740 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑆064740⑆ ⑈062203638⑈ ⑆11 0930 8⑆

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  65089

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **42945 DOLS 00 CTS** _____ DOLLARS

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 10-9-01 | 65089 | 42945 | 00 |

TO THE ORDER OF   American Real Estate Investment Co., LTD

TERRY MANUFACTURING CO., INC.

⑈065089⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  65090

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **1561 DOLS 50 CTS** _____ DOLLARS

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 10-9-01 | 65090 | 1561 | 50 |

TO THE ORDER OF   N. D. Horton, Jr.

TERRY MANUFACTURING CO., INC.

⑈065090⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  65091

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **1561 DOLS 50 CTS** _____ DOLLARS

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 10-9-01 | 65091 | 1561 | 50 |

TO THE ORDER OF   James M. Reynolds, III

TERRY MANUFACTURING CO., INC.

⑈065091⑈ ⑈062203638⑈ ⑈11 0930 8⑈

ARE 03204

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F  65468

PAY

TERRY MFG. CO. INC. ▶ 44376 DOLS 50 CTS

TO THE ORDER OF  AMERICAN REAL ESTATE INVESTMENT CO., LTD

| | DATE | CHECK NO. | AMOUNT | |
| | | | DOLLARS | CENTS |
|---|---|---|---|---|
| | 11-10-01 | 65468 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

⑈065468⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F  65469

PAY

TERRY MFG. CO. INC. ▶ 1613 DOLS 55 CTS

TO THE ORDER OF  N. D. HORTON, JR.

| | DATE | CHECK NO. | AMOUNT | |
| | | | DOLLARS | CENTS |
|---|---|---|---|---|
| | 11-10-01 | 65469 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈065469⑈ ⑈062203638⑈ ⑈11 0930 8⑈

ARE 03201

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F  65470

PAY

TERRY MFG. CO. INC. ▶ 1613 DOLS 55 CTS

TO THE ORDER OF  JAMES M. REYNOLDS, III

| | DATE | CHECK NO. | AMOUNT | |
| | | | DOLLARS | CENTS |
|---|---|---|---|---|
| | 11-10-01 | 65470 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈065470⑈ ⑈062203638⑈ ⑈11 0930 8⑈

ARE 03093

4419

**TERRY MFG. CO. INC. ATLANTA GEN.**
P.O. BOX 16629   404-761-8888
ATLANTA, GA  30321

DATE 12/10/2001

64-5/610 GA
360

PAY TO THE ORDER OF James M. Reynolds III      $ 11,965.41

REGISTERED T I 965 DOLS 42 CTS      DOLLARS

Bank of America.
ACH R/T 081000052

FOR #1

⑈004419⑈ ⑆061000052⑆ 00010254 1035⑈

---

4418

**TERRY MFG. CO. INC. ATLANTA GEN.**
P.O. BOX 16629   404-761-8888
ATLANTA, GA  30321

DATE 12/10/2001

64-5/610 GA
360

PAY TO THE ORDER OF N.D. HORTON      $ 11,965.41

REGISTERED T I 965 DOLS 42 CTS      DOLLARS

Bank of America.
ACH R/T 081000052

FOR #1

⑈004418⑈ ⑆061000052⑆ 00010254 1035⑈

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66045

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY      TERRY MFG. 44376 DOLS 50 CTS      DOLLARS
         CO. INC.

| | DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|---|
| | | | DOLLARS | CENTS |
TO THE
ORDER OF   AMERICAN REAL ESTATE
           INVESTMENT COMPANY, LTD

| | 1-9-02 | 66045 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

⌗"066045⌗" ⌗:062203638⌗: ⌗"11 0930 8⌗"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66044

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY      TERRY MFG. II 965 DOLS 42 CTS      DOLLARS
         CO. INC.

TO THE
ORDER OF   JAMES M. REYNOLDS, III

| | DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|---|
| | 1-9-02 | 66044 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⌗"066044⌗" ⌗:062203638⌗: ⌗"11 0930 8⌗"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66042

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY      TERRY MFG. II 965 DOLS 42 CTS      DOLLARS
         CO. INC.

TO THE
ORDER OF   N. D. HORTON, JR.

| | DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|---|
| | | | DOLLARS | CENTS |
| | 1-9-02 | 66042 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⌗"066042⌗" ⌗:062203638⌗: ⌗"11 0930 8⌗"

ARE 03095

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66431

FIRST BANK
ROANOKE, ALABAMA

61-383
622

PAY

TERRY MFG
CO. INC. *I I 965 DOLS 42 CTS*

DOLLARS

TO THE
ORDER OF    N. D. Horton, Jr.

| | DATE | CHECK NO. | AMOUNT |
| | 2-8-02 | 66431 | 11 965 42 |

TERRY MANUFACTURING CO. INC.

66431      02/12/2002      11,965.42

ARE 00465

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66432

FIRST BANK
ROANOKE, ALABAMA

51-363
502

PAY    TERRY MFG.
       CO. INC. *II 965 DOLS 42 CTS

DOLLARS

TO THE
CHECK OF    James M. Reynolds III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLAR | CENTS |
| 2-08-02 | 66432 | 11,965 | 42 |

TERRY MANUFACTURING CO., INC.

45001 6057 3130 3157  15 02 03 02

310200352 0045 1330/23 03 15 02

"066432"  "062203638"  "11 0930 8"    "000119654 2"

66432       03/06/2002       11,965.42

ARE 00450



TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66788

FIRST BANK
ROANOKE, ALABAMA

PAY    TERRY MFG.
CO. INC. ▶ I I 9 6 5 DOLS 4 2 CTS                                    DOLLARS

TO THE
ORDER OF   N.D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 3-8-02 | 66788 | 11965 42 |

TERRY MANUFACTURING CO., INC.

⑈⑈⑈066788⑈ ⑈062203636⑈ ⑈11 0930 8⑈ ⑈098 11965 42⑈

66788          03/12/2002          11,965.42

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 66789

FIRST BANK
ROANOKE, ALABAMA

01-363
622

PAY    TERRY MFG.
CO. INC. ► I I 965 DOLS 42 CTS

DOLLARS

TO THE
ORDER OF    James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| | | DOLLARS \| CENTS |
| 3-19-02 | 66789 | 11965 \| 42 |

TERRY MANUFACTURING CO., INC.

⑈066789⑈ ⑆062203638⑆ ⑈11 0930 8⑈    ⑈00011965 42⑈

66789          03/19/2002          11,965.42

ARE 00454

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  67156

FIRST BANK
ROANOKE, ALABAMA

PAY

TERRY MFG. II 965 DOLS 42 CTS
CO. INC.

DOLLARS

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| 4-10-02 | 67156 | 11,965 | 42 |

TO THE
ORDER OF  N. D. Horton, Jr.

67156        04/15/2002        11,965.42

ARE  00437

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 67157

81-363
622

FIRST BANK
ROANOKE, ALABAMA

PAY ___ TERRY MFG. **II 965** DOLS **42** CTS

DOLLARS

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 4-10-02 | 67157 | 11,965.42 |

TO THE ORDER OF **James M. Reynolds III**

TERRY MANUFACTURING CO. INC.

67157    04/23/2002    11,965.42

ARE 00438

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  67470

FIRST BANK
ROANOKE, ALABAMA

61-363
622

TERRY MFG. CO. INC. ▶ *I I 9 6 5 DOLS 4 2 CTS*

**DOLLARS**

TO THE ORDER OF   N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-9-02 | 67470 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑈067470⑈ ⑆062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  67471

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY   TERRY MFG. CO. INC. ▶ *I I 9 6 5 DOLS 4 2 CTS*

**DOLLARS**

TO THE ORDER OF   James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-9-02 | 67471 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑈067471⑈ ⑆062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  67472

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY   TERRY MFG. CO. INC. *42945 DOLS 00 CTS*

**DOLLARS**

TO THE ORDER OF   American Real Estate Investment Co., LTD.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-9-02 | 67472 | 42945 | 00 |

TERRY MANUFACTURING CO., INC.

⑈067472⑈ ⑆062203638⑈ ⑈11 0930 8⑈

ARE 03132

F67796

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

21-363
622

PAY      TERRY MFG.  II 965 DOLS 42 CTS                    DOLLARS
         CO., INC.

TO THE    James M. Reynolds, III
ORDER OF

| DATE | CHECK NO. | AMOUNT DOLLARS CENTS |
|------|-----------|----------------------|
| 6-7-02 | 67796 | 11965 42 |

TERRY MANUFACTURING CO., INC.

340307259 1437 1437 23 06-27-02

45003330SC 3129-3124

67796      06/25/2002      11,965.42

F67795

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY    TERRY MFG    T T 965 DOLS 42 CTS    DOLLARS

510069753 3226 3233 03

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| 06-12-02 | 67795 | 11965 | 42 |

TO THE ORDER OF  N. D. Horton Jr.

TERRY MANUFACTURING CO., INC.

310400672 1437 1437

⑈067795⑈ ⑆06220303880⑆ ⑈11 0830 8⑈    ⑆000011965420⑆

67795        06/12/2002        11,965.42

ARE 00405

F68132

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. *I I 965 DOLS 42 CTS* _____ DOLLARS

TO THE
ORDER OF _ N. D. Horton, Jr. _

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| 7-9-02 | 68132 | 11965 42 |

TERRY MANUFACTURING CO., INC.

⑆068132⑆ ⑆062203636⑆ ⑈11 0930 8⑈ ⑆0001⑈965 42⑈

68132        07/11/2002        11,965 42

ARE 00384

F68133

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    T TERRY MFG. I I 9 6 5 DOLS 4 2 CTS    DOLLARS

TO THE
ORDER OF  James M. Reynolds III

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 7-19-02 | 68133 | 11965 42 |

500029132  3919  3902   TERRY MANUFACTURING CO. INC.

310231469  1437  1437  23/07/22 02

⑆068133⑆ ⑆062203638⑆ ⑆11 0930 8⑆    ⑈000119654⑈

68133    07/23/2002    11,965.42

ARE  00385

F68521

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

TERRY MFG.
CO., INC. *11965 DOLS 42 CTS* DOLLARS

PAY

41606709E 325F

TO THE
ORDER OF  N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT |
| | | DOLLARS CENTS |
| 8-9-02 | 68521 | 11965 42 |

TERRY MANUFACTURING CO., INC.

340344178 0353 1313 23 08-13-02

⑆068521⑆ ⑆062203838⑆ ⑆11 0930 8⑆     ⑈0001198542⑈

68521          08/14/2002          11,965.42

ARE 00365

F68522

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-358
622

PAY    TERRY MFG. **II 965 DOLS 42 CTS**    DOLLARS
CO., INC.

TO THE
ORDER OF    James M. Reynolds, III

420052692  3115  5005.15

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| Y-9-82 | 68522 | 11 965 42 |

TERRY MANUFACTURING CO., INC.

320281215  0167  1329    09-14-02

⑆068522⑆ ⑆062203638⑆ ⑈11 0930 8⑈    ⑈000111965 42⑈

68522         08/15/2002         11,965.42

ARE 00366

F 68907

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY    TERRY MFG.
       CO. INC.    I I 965 DOLS 42 CTS    DOLLARS

TO THE
ORDER OF    James M.

TERRY MANUFACTURING CO., INC.

| 68907    09/30/2002    11,965.42

ARE 00346

F 69312

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-383
622

PAY ____ TERRY MFG. CO. INC ____ II 965 DOLS 42 CTS ____ DOLLARS

TO THE
ORDER OF ___ James M. Reynolds, III

| | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|
| | 10-8-02 | 69312 | 11765 42 |

TERRY MANUFACTURING CO., INC.

310279723 0037 320    10/23-02

⑈069312⑈ ⑆0622036386⑆ ⑆11 0930 8⑈    ⑈00011965542⑈

69312      10/24/2002      11,965.42

ARE 00328

F 69311

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY     TERRY MFG. *T T 9 6 5 DOLS 42 CTS*                DOLLARS

TO THE
ORDER OF     N. D. Horton

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 10-8-02 | 69311 | 11965 42 |

TERRY MANUFACTURING CO., INC.

⑆069311⑆ ⑈062203638⑈ ⑈11 0930 8⑈        ⑈0001196542⑈

69311        10/15/2002        11,965.42

ARE 00327

F 69982

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY     TERRY MFG. CO. INC. ▶ *I76I8I DOLS 22 CTS*     DOLLARS

TO THE ORDER OF: American Real Estate Investment Company, LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-9-02 | 69982 | 176181 | 22 |

TERRY MANUFACTURING CO., INC.

MP

⑈069982⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69983

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY     TERRY MFG. CO. INC. ▶ *I I965 DOLS 42 CTS*     DOLLARS

TO THE ORDER OF: N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-9-02 | 69983 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈069983⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69984

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY     TERRY MFG. CO. INC. ▶ *I I965 DOLS 42 CTS*     DOLLARS

TO THE ORDER OF: James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-9-02 | 67984 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

ARE 01904

MP

⑈069984⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 70380

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ___ TERRY MFG. CO. INC. ▶ I I 9 6 5 DOLS 4 2 CTS ___ DOLLARS

TO THE ORDER OF N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 1-9-03 | 70380 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑆070380⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 70381

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ___ TERRY MFG. CO. INC. ▶ I I 9 6 5 DOLS 4 2 CTS ___ DOLLARS

TO THE ORDER OF James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 1-9-03 | 70381 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑆070381⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 70764

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *I76I8I DOLS 22 CTS* _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF  American Real Estate
          Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 2-7-03 | 7076 4 | 176181 | 22 |

TERRY MANUFACTURING CO., INC.

MP

⑈070764⑈ ⑆0622036Ⅱ⑆ Ⅱ11 0930 8Ⅱ

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70765

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *II965 DOLS 42 CTS* _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF  N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 2-7-03 | 70765 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈070765⑈ ⑆0622036Ⅱ⑆ Ⅱ11 0930 8Ⅱ

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70766

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *II965 DOLS 42 CTS* _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 2-7-03 | 70766 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈070766⑈ ⑆0622036Ⅱ⑆ Ⅱ11 0930 8Ⅱ

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN O

ARE 01851

F 71063

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ___ TERRY MFG. CO. INC. ▶ *I I 965 DOLS 42 CTS* ___ DOLLARS

TO THE ORDER OF N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 3-8-03 | 71063 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈"071063"⑈ ⑆:062203638: ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 71064

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ___ TERRY MFG. CO. INC. ▶ *I I 965 DOLS 42 CTS* ___ DOLLARS

TO THE ORDER OF James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 3-8-03 | 71064 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈"071064"⑈ ⑆:062203638: ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 03117

F 71514

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY_____ TERRY MFG. CO. INC. ▶ *I I 965 DOLS 42 CTS*_____ **DOLLARS**

TO THE ORDER OF N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 4-9-03 | 71514 | 1196S | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈071514⑈ ⑈062203638⑈ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 71515

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY_____ TERRY MFG. CO. INC. ▶ *I I 965 DOLS 42 CTS*_____ **DOLLARS**

TO THE ORDER OF James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 4-9-03 | 71515 | 1196S | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈071515⑈ ⑈062203638⑈ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 03151

F 71869

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY          TERRY MFG
CO., INC. ▶ I I 965 DOLS 42 CTS          **DOLLARS**

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 5-9-03 | 71869 | 11965 42 |

TO THE
ORDER OF   N. D. Horton Jr.

TERRY MANUFACTURING CO., INC.

⑈071869⑈ ⑆062203638⑈ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 71870

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY          TERRY MFG
CO., INC. ▶ I I 965 DOLS 42 CTS          **DOLLARS**

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 5-9-03 | 71870 | 11965 42 |

TO THE
ORDER OF   James M. Reynolds III

TERRY MANUFACTURING CO., INC.

⑈071870⑈ ⑆062203638⑈ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01921

**J. Lester Alexander III v. N. D. Horton and J. Reynolds**

**November 10, 2000 Loans to Allie Robinson in the principal amount of $200,000 and to Cotina Terry in the principal amount of $200,000**

| Payor | Payee | Amt | Check No. | Date Issued | Bank | Date Invoiced | Invoice Description |
|---|---|---|---|---|---|---|---|
| Terry Manufacturing | James M. Reynolds, III | $1,561.50 | 61507 | 12/11/2000 | First Bank | 12/6/2000 | Interest 11/10/2000-12/10/2000 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 61837 | 1/9/2001 | First Bank | 12/29/2000 | Interest 12/10/2000-1/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 62226 | 2/9/2001 | First Bank | 1/21/2001 | Interest 1/10/2001-2/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,457.40 | 62531 | 3/9/2001 | First Bank | 2/28/2001 | Interest 2/10/2001-3/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 62870 | 4/9/2001 | First Bank | 3/30/2001 | Interest 3/10/2001-4/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,561.50 | 63222 | 5/9/2001 | First Bank | 4/30/2001 | Interest 4/10/2001-5/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 63648 | 6/8/2001 | First Bank | 5/31/2001 | Interest 5/10/2001-6/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,561.50 | 63943 | 7/7/2001 | First Bank | 6/29/2001 | Interest 6/10/2001-7/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 64358 | 8/9/2001 | First Bank | 7/31/2001 | Interest 7/10/2001-8/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 64740 | 9/8/2001 | First Bank | 8/31/2001 | Interest 8/10/2001-9/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,561.50 | 65091 | 10/9/2001 | First Bank | 9/28/2001 | Interest 9/10/2001-10/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $1,613.55 | 65470 | 11/10/2001 | First Bank | 10/30/2001 | Interest 10/10/2001-11/10/2001 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 4419 | 12/10/2001 | Bank of America | 11/30/2001 | Loan 2, Installment 1 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 66044 | 1/9/2002 | First Bank | 12/29/2001 | Loan 2, Installment 2 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 66432 | 2/8/2002 | First Bank | 1/31/2002 | Loan 2, Installment 3 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 66789 | 3/8/2002 | First Bank | 02/??/2002 | Loan 2, Installment 4 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 67157 | 4/10/2002 | First Bank | 3/29/2002 | Loan 2, Installment 5 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 67471 | 5/9/2002 | First Bank | 4/29/2002 | Loan 2, Installment 6 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 67796 | 6/7/2002 | First Bank | 5/31/2002 | Loan 2, Installment 7 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 68133 | 7/9/2002 | First Bank | 6/28/2002 | Loan 2, Installment 8 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 68522 | 8/9/2002 | First Bank | 7/29/2002 | Loan 2, Installment 9 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 68907 | 9/9/2002 | First Bank | 8/30/2002 | Loan 2, Installment 10 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 69312 | 10/8/2002 | First Bank | 9/30/2002 | Loan 2, Installment 11 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 69611 | 11/8/2002 | First Bank | 10/31/2002 | Loan 1, Installment 12 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 69984 | 12/9/2002 | First Bank | 11/25/2002 | Loan 2, Installment 13 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 70381 | 1/9/2003 | First Bank | 12/23/2002 | Loan 2, Installment 14 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 70766 | 2/7/2003 | First Bank | 1/23/2003 | Loan 2, Installment 15 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 71064 | 3/8/2003 | First Bank | 2/24/2003 | Loan 2, Installment 16 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 71515 | 4/9/2003 | First Bank | 3/24/2003 | Loan 2, Installment 17 |
| Terry Manufacturing | James M. Reynolds, III | $11,965.42 | 71870 | 5/9/2003 | First Bank | 4/22/2003 | Loan 2, Installment 18 |

Checks total: **$234,375.81**

tabbies®

EXHIBIT "11"

# First Bank

1109308            11/29/2002          PAGE  18

| | | |
|---|---|---|
| 69601  11/14/2002  159.00 | 69602  11/18/2002  4,755.24 | 69603  11/15/2002  2,996.78 |
| 69604  11/19/2002  4,818.75 | 69605  11/21/2002  23,101.46 | 69606  11/15/2002  13,479.60 |
| 69607  11/15/2002  2,565.93 | 69608  11/13/2002  9,898.54 | 69609  11/14/2002  44,376.50 |
| 69610  11/14/2002  11,965.42 | 69611  11/18/2002  11,965.42 | 69612  11/13/2002  168.42 |
| 69613  11/13/2002  810.18 | 69614  11/18/2002  244.63 | 69615  11/14/2002  27.71 |
| 69616  11/12/2002  120.18 | 69618  11/13/2002  28.24 | 69619  11/13/2002  111,500.00 |
| 69620  11/12/2002  15,000.00 | 69621  11/19/2002  2,510.42 | 69622  11/13/2002  1,491.29 |

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  61507

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ____ TERRY MFG. I 5 6 I DOLS 5 0 CTS ____ **DOLLARS**

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-11-00 | 61507 | 15 61 | 50 |

TERRY MANUFACTURING CO., INC.

⑆061507⑈ ⑆062203638⑆ ⑆11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  61506

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ____ TERRY MFG. I 5 6 I DOLS 5 0 CTS ____ **DOLLARS**

TO THE
ORDER OF  N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-11-00 | 61506 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

⑆061506⑈ ⑆062203638⑆ ⑆11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  61508

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ____ TERRY MFG. I 5 6 I 6 DOLS 5 0 CTS ____ **DOLLARS**

TO THE
ORDER OF  American Real Estate Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-11-00 | 61508 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

⑆061508⑈ ⑆062203638⑆ ⑆11 0930 8⑈

ARE 03256

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   61835

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG *22904 DOLS 07 CTS_____ DOLLARS

TO THE
ORDER OF   American Real Estate
Investment Company, LTD

| DATE | CHECK NO. | AMOUNT | |
| --- | --- | --- | --- |
| | | DOLLARS | CENTS |
| 1-9-01 | 61835 | 22904 | 07 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈061835⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   61837

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *1613 DOLS 55 CTS_____ DOLLARS

TO THE
ORDER OF   James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
| --- | --- | --- | --- |
| | | DOLLARS | CENTS |
| 1-09-01 | 61837 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈061837⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   61836

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *1613 DOLS 55 CTS_____ DOLLARS

TO THE
ORDER OF   N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
| --- | --- | --- | --- |
| | | DOLLARS | CENTS |
| 1-9-01 | 61836 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈061836⑈ ⑆062203638⑆ ⑈11 0930 8⑈

ARE 03251

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62224

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY — TERRY MFG CO. INC.** 30972 DOLS 90 CTS — **DOLLARS**

TO THE
ORDER OF  American Real Estate
Investment Company, LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 2-9-01 | 62224 | 30972 | 90 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062224"⑈ ⑆062203638⑆ ⑈11 0930 8⑈"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62225

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY — TERRY MFG CO. INC.** 1613 DOLS 55 CTS — **DOLLARS**

TO THE
ORDER OF  N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 2-9-01 | 62225 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062225"⑈ ⑆062203638⑆ ⑈11 0930 8⑈"

ARE 03246

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  62226

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY — TERRY MFG CO. INC.** 1613 DOLS 55 CTS — **DOLLARS**

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 2-09-01 | 62226 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062226"⑈ ⑆062203638⑆ ⑈11 0930 8⑈"

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   62528

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG 35 237 DOLS 01 CTS _____ DOLLARS

| | DATE | CHECK NO. | AMOUNT | |
| | | | DOLLARS | CENTS |
| TO THE ORDER OF | 3-9-01 | 62528 | 35137 | 01 |

American Real Estate
Investment Company, Ltd

TERRY MANUFACTURING CO., INC.

⑃"062528"⑃ ⑃:062203638:⑃ ⑃11 0930 8"⑃

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   62530

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG I 45 7 DOLS 40 CTS _____ DOLLARS

| | DATE | CHECK NO. | AMOUNT | |
| | | | DOLLARS | CENTS |
| TO THE ORDER OF | 3-9-01 | 62530 | 1457 | 40 |

N.D. Horton, Jr.

TERRY MANUFACTURING CO., INC.

⑃"062530"⑃ ⑃:062203638:⑃ ⑃11 0930 8"⑃

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   62531

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG I 45 7 DOLS 40 CTS _____ DOLLARS

| | DATE | CHECK NO. | AMOUNT | |
| | | | DOLLARS | CENTS |
| TO THE ORDER OF | 3-9-01 | 62531 | 1457 | 40 |

James M. Reynolds, III

TERRY MANUFACTURING CO., INC.

⑃"062531"⑃ ⑃:062203638:⑃ ⑃11 0930 8"⑃

ARE 03239

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  62872

61-363
622

PAY _____ TERRY MFG. 43725 DOLS 85 CTS _____ DOLLARS

TO THE
ORDER OF  American Real Estate
Investment Co., LTD

| DATE | CHECK NO. | AMOUNT |
| | | DOLLARS | CENTS |
| 4-9-01 | 62872 | 43725 | 85 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062872"⑈ ⑈:062203638: ⑈"11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  62869

61-363
622

PAY _____ TERRY MFG. 1613 DOLS 55 CTS _____ DOLLARS

TO THE
ORDER OF  N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT |
| | | DOLLARS | CENTS |
| 4-9-01 | 62869 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062869"⑈ ⑈:062203638: ⑈"11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  62870

61-363
622

PAY _____ TERRY MFG. 1613 DOLS 55 CTS _____ DOLLARS

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT |
| | | DOLLARS | CENTS |
| 4-9-01 | 62870 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"062870"⑈ ⑈:062203638: ⑈"11 0930 8"⑈

ARE 01994

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63220

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY TERRY MFG CO. INC. 42945 DOLS 00 CTS                    DOLLARS

TO THE
ORDER OF    American Real Estate
Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-09-01 | 63220 | 42945 | 00 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"063220"⑈ ⑈062203638⑈ ⑈11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63221

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY TERRY MFG CO. INC. 156 1 DOLS 50 CTS                    DOLLARS

TO THE
ORDER OF    N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 5-09-01 | 63221 | 156 1 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"063221"⑈ ⑈062203638⑈ ⑈11 0930 8"⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63222

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY TERRY MFG CO. INC. 156 1 DOLS 50 CTS                    DOLLARS

TO THE
ORDER OF    James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| 5-9-01 | 63222 | 156 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

⑈"063222"⑈ ⑈062203638⑈ ⑈11 0930 8"⑈

ARE 03229

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63645

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC.▶ *44376* DOLS *50* CTS

DOLLARS

TO THE ORDER OF    AMERICAN REAL ESTATE
INVESTMENT CO., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 6-8-01 | 63645 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

⑆063645⑆ ⑈062203638⑈ ⑆11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63646

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC.▶ *1613* DOLS *55* CTS

DOLLARS

TO THE ORDER OF    N. D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 6-08-01 | 63646 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑆063646⑆ ⑈062203638⑈ ⑆11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 63648

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC.▶ *1613* DOLS *55* CTS

DOLLARS

TO THE ORDER OF    JAMES M. REYNOLDS, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 6-8-01 | 63648 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑆063648⑆ ⑈062203638⑈ ⑆11 0930 8⑈

ARE 03224

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  63945

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY  TERRY MFG. CO. INC. ▶ *42945 DOLS 00 CTS*  **DOLLARS**

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| | | DOLLARS | CENTS |
| 7-07-01 | | 42945 | 00 |

TO THE ORDER OF  American Real Estate Invstmt Co.

TERRY MANUFACTURING CO., INC.

Security features included. Details on back.

⑈063945⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  63943

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY  TERRY MFG. CO. INC. ▶ *1561 DOLS 50 CTS*  **DOLLARS**

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| | | DOLLARS | CENTS |
| 7-07-01 | | 1561 | 50 |

TO THE ORDER OF  James M. Reynolds, III

TERRY MANUFACTURING CO., INC.

Security features included. Details on back.

⑈063943⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  63944

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY  TERRY MFG. CO. INC. ▶ *1561 DOLS 50 CTS*  **DOLLARS**

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| | | DOLLARS | CENTS |
| 7-07-01 | | 1561 | 50 |

TO THE ORDER OF  N. D. Horton, Jr.

TERRY MANUFACTURING CO., INC.

Security features included. Details on back.

⑈063944⑈ ⑆062203638⑆ ⑈11 0930 8⑈

ARE 03219

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 64358

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 1 6 I 3 DOLS 5 5 CTS                    DOLLARS

TO THE ORDER OF   JAMES M. REYNOLDS, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 8-9-01 | 64358 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

"064358" ⑆062203638⑆ "11 0930 8"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 64357

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 1 6 I 3 DOLS 5 5 CTS                    DOLLARS

TO THE ORDER OF   N. D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 8-09-01 | 64357 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

"064357" ⑆062203638⑆ "11 0930 8"

ARE 03214

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 64356

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 4 4 3 7 6 DOLS 5 0 CTS                    DOLLARS

TO THE ORDER OF   AMERICAN REAL ESTATE INVESTMENT COMPANY, LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 8-09-01 | 64356 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

"064356" ⑆062203638⑆ "11 0930 8"

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  64738

61-363
622

PAY    TERRY MFG. CO. INC. **44376 DOLS 50 CTS**    DOLLARS

TO THE
ORDER OF    American Real Estate Investment Company, LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 9-8-01 | 64738 | 4436 | 50 |

TERRY MANUFACTURING CO., INC.

⑆064738⑆ ⑆062203638⑆ ⑆11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  64739

61-363
622

PAY    TERRY MFG. CO. INC. **1613 DOLS 55 CTS**    DOLLARS

TO THE
ORDER OF    N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 9-8-01 | 64739 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑆064739⑆ ⑆062203638⑆ ⑆11 0930 8⑈

ARE 01971

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  64740

61-363
622

PAY    TERRY MFG. CO. INC. **1613 DOLS 55 CTS**    DOLLARS

TO THE
ORDER OF    James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 9-8-01 | 64740 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑆064740⑆ ⑆062203638⑆ ⑆11 0930 8⑈

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  65089

61-363
622

PAY ___ TERRY MFG. CO. INC. ▸ *42945 DOLS 00 CTS* ___ DOLLARS

TO THE
ORDER OF   American Real Estate
Investment Co, LTD

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 10-9-01 | 65089 | 42945 | 00 |

TERRY MANUFACTURING CO., INC.

"065089" ":062203638:" "11 0930 8"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  65090

61-363
622

PAY ___ TERRY MFG. CO. INC. ▸ *I561 DOLS 50 CTS* ___ DOLLARS

TO THE
ORDER OF   N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 10-9-01 | 65090 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

"065090" ":062203638:" "11 0930 8"

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  65091

61-363
622

PAY ___ TERRY MFG. CO. INC. ▸ *I561 DOLS 50 CTS* ___ DOLLARS

TO THE
ORDER OF   James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 10-9-01 | 65091 | 1561 | 50 |

TERRY MANUFACTURING CO., INC.

"065091" ":062203638:" "11 0930 8"

ARE 03204

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 65468

61-363
622

FIRST BANK
ROANOKE, ALABAMA

PAY _____ TERRY MFG. CO. INC. ▶ 4 4 3 7 6 DOLS 5 0 CTS _____ **DOLLARS**

TO THE ORDER OF  AMERICAN REAL ESTATE INVESTMENT CO., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 11-10-01 | 65468 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

Security features included. Details on back.

⑈065468⑈ ⑆062203638⑆ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 65469

61-363
622

FIRST BANK
ROANOKE, ALABAMA

PAY _____ TERRY MFG. CO. INC. ▶ 1 6 1 3 DOLS 5 5 CTS _____ **DOLLARS**

TO THE ORDER OF  N. D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 11-10-01 | 65469 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

Security features included. Details on back.

⑈065469⑈ ⑆062203638⑆ ⑈11 0930 8⑈

ARE 03201

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 65470

61-363
622

FIRST BANK
ROANOKE, ALABAMA

PAY _____ TERRY MFG. CO. INC. ▶ 1 6 1 3 DOLS 5 5 CTS _____ **DOLLARS**

TO THE ORDER OF  JAMES M. REYNOLDS, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 11-10-01 | 65470 | 1613 | 55 |

TERRY MANUFACTURING CO., INC.

⑈065470⑈ ⑆062203638⑆ ⑈11

Look for: blue background on the front of this check, and the ImageSafe® logo on back. If not present, do not cash.

4419

**TERRY MFG. CO. INC. ATLANTA GEN.**
P.O. BOX 16629  404-761-8888
ATLANTA, GA  30321

DATE 12/10/2001

64-5/610  GA
360

PAY TO THE ORDER OF  James M. Reynolds III          $ 11,965.42

REGISTERED **II965 DOLS 42 CTS**          DOLLARS

**Bank of America.**

ACH R/T 081000052

FOR #(

⑈004419⑈ ⑈061000052⑈ 000102541035⑈

---

Look for: blue background on the front of this check, and the ImageSafe® logo on back. If not present, do not cash.

4418

**TERRY MFG. CO. INC. ATLANTA GEN.**
P.O. BOX 16629  404-761-8888
ATLANTA, GA  30321

DATE 12/10/2001

64-5/610  GA
360

PAY TO THE ORDER OF  N. D. Horton          $ 11,965.42

REGISTERED **II965 DOLS 42 CTS**          DOLLARS

**Bank of America.**

ACH R/T 081000052

FOR #(

⑈004418⑈ ⑈061000052⑈ 000102541035⑈

ARE 03093

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66045

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *44376 DOLS 50 CTS* _____ DOLLARS
CO. INC.▶

| | DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|---|
| | | | DOLLARS | CENTS |
TO THE
ORDER OF  American Real Estate Investment Company, LTD

| | 1-9-02 | 66045 | 44376 | 50 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

ꞁꞁ'066045ꞁꞁ' ꞁ:0622036363ꞁ: ꞁꞁ'11 0930 8ꞁ'

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66044

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *11965 DOLS 42 CTS* _____ DOLLARS
CO. INC.▶

| | DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|---|
| | | | DOLLARS | CENTS |
TO THE
ORDER OF  James M. Reynolds, III

| | 1-9-02 | 66044 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

ꞁꞁ'066044ꞁꞁ' ꞁ:0622036363ꞁ: ꞁꞁ'11 0930 8ꞁ'

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F  66042

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *11965 DOLS 42 CTS* _____ DOLLARS
CO. INC.▶

| | DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|---|
| | | | DOLLARS | CENTS |
TO THE
ORDER OF  N. D. Horton, Jr.

| | 1-9-02 | 66042 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

Security features
included.
Details on back.

ꞁꞁ'066042ꞁꞁ' ꞁ:0622036363ꞁ: ꞁꞁ'11 0930 8ꞁ'

ARE 03095

TERRY MANUFACTURING CO., INC.

F 66431

P.O. BOX 648
ROANOKE, ALABAMA 36274

61-369
622

FIRST BANK
ROANOKE, ALABAMA

PAY            TERRY MFG.    *11965 DOLS 42 CTS
CO., INC.

DOLLARS

TO THE
ORDER OF    N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT DOLLARS CENTS |
|------|-----------|---------------------|
| 2-8-02 | 66431 | 11965 42 |

TERRY MANUFACTURING CO., INC.

02-12-02

66431    02/12/2002    11,965.42

ARE 00465

TERRY MANUFACTURING CO., INC.
P.O. BOX 649
ROANOKE, ALABAMA 36274

F  66432

FIRST BANK
ROANOKE, ALABAMA

61-363
522

PAY  TERRY MFG.  *II 965 DOLS 42 CTS
CO. INC.

DOLLARS

TO THE
ORDER OF  James M. Reynolds III

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| 2-08-02 | 66432 | 11,965 42 |

TERRY MANUFACTURING, INC.

450016657 3130 3157  15 02 03-02

310200352 2045 1350   05-15-02

⑈066432⑈ ⑆0522036380⑆ ⑈11 0930 8⑈        ⑆0001196542⑈

66432        03/06/2002        11,965.42

ARE  00450



TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   66788

FIRST BANK
ROANOKE, ALABAMA

91-382
622

PAY   TERRY MFG.
CO. INC.   II 965 DOLS 42 CTS

DOLLARS

TO THE
ORDER OF   N.D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT |
| 3-8-02 | 66788 | 11965 42 |

TERRY MANUFACTURING CO., INC.

⑈066788⑈ ⑈062203638⑈ ⑈11 0930 8⑈   ⑈000 1196542⑈

66788        03/12/2002        11,965.42

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

F 66789

FIRST BANK
ROANOKE, ALABAMA

01-363
622

PAY TERRY MFG.
CO. INC. ▶ I I 9 6 5 DOLS 4 2 CTS

DOLLARS

TO THE
ORDER OF James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT |
| | | DOLLARS | CENTS |
| 3-19-02 | 66789 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑈066789⑈ ⑆0622036386⑆ ⑈11 0930 8⑈

⑈0001965 42⑈

66789        03/19/2002        11,965.42

ARE 00454

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F 67156

81-382
622

PAY

TERRY MFG. II 965 DOLS 42 CTS

DOLLARS

TO THE
ORDER OF N. D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| 4-10-02 | 67156 | 11,965 | 42 |

TERRY MANUFACTURING CO., INC.

04-15-02

⑆067156⑆ ⑈062203638⑈ ⑇11 0930 8⑈ ⑆0001196542⑇

67156          04/15/2002          11,965.42

ARE 00437

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F  67157

81-363
622

PAY  TERRY MFG $ I I 9 6 5 DOLS 4 2 CTS                    DOLLARS

| | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|
TO THE ORDER OF  James M. Reynolds III | 4-10-02 | 67157 | 11965 42 |

TERRY MANUFACTURING CO., INC.

"067157"  ":062203636":  "11 0930 B"  "000119654 2"

67157        04/23/2002        11,965.42

ARE 00438

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   67470

FIRST BANK
ROANOKE, ALABAMA

61-363
622

TERRY MFG.
CO. INC.▶ *I I 965 DOLS 42 CTS*

**DOLLARS**

TO THE
ORDER OF  N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 5-9-02 | 67470 | 11965 | 42 |

TERRY MANUFACTURING, INC.

⑈067470⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   67471

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY

TERRY MFG.
CO. INC.▶ *I I 965 DOLS 42 CTS*

**DOLLARS**

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 5-9-02 | 67471 | 11965 | 42 |

TERRY MANUFACTURING, INC.

⑈067471⑈ ⑈062203638⑈ ⑈11 0930 8⑈

---

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

F   67472

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY

TERRY MFG.
CO. INC.▶ *42945 DOLS 00 CTS*

**DOLLARS**

TO THE
ORDER OF  American Real Estate Investment Co., LTD.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 5-9-02 | 67472 | 42945 | 00 |

TERRY MANUFACTURING, INC.

⑈067472⑈ ⑈062203638⑈ ⑈11 0930 8⑈

ARE 03132

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST B ANK
ROANOKE, ALABAMA

F67796

PAY  TERRY MFG  *II 965 DOIS 42 CTS*  DOLLARS
CO. INC.

TO THE
ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| 6-7-02 | 67796 | 11965 42 |

TERRY MANUFACTURING CO., INC.

67796    06/25/2002    11,965.42

ARE 00406

F67795

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY    TERRY MFG    *I*I*965 DLLS 42 CTS    DOLLARS

510069753 3226 3233 03

TO THE
ORDER OF    N. D. Horton Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| 6-7-02 | 67795 | 1965 | 42 |

TERRY MANUFACTURING CO., INC.

310400872 1437 1437

67795        06/12/2002        11,965.42

ARE 00405

F68132

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY _____ TERRY MFG. *I I 965 DOLS 42 CTS* _____ DOLLARS

| | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|
| TO THE ORDER OF | N. D. Horton, Jr. | 7-9-02 | 68132 | 11965 42 |

TERRY MANUFACTURING CO., INC.

68132    07/11/2002    11,965.42

ARE 00384

F68133

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY        TERRY MFG.
CO. INC.   II 965 DOLS 42 CTS                    DOLLARS

TO THE
ORDER OF   James M. Reynolds III

500029132 3919 3901        TERRY MANUFACTURING CO., INC.

310231469 1437 1437

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 7-18-02 | 68133 | 11965 42 |

23/07/22-02

⑈068133⑈ ⑆062203638⑉ ⑈11 0930 8⑈          ⑈000116554 2⑈

68133          07/23/2002          11,965.42

ARE 00385

F68521

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY    TERRY MFG. **I I 965 DOLS 42 CTS**    DOLLARS
CO. INC.
4100670983239

TO THE
ORDER OF    N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| 8-9-02 | 68521 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

340344178 0353 1313 23 08-13-02

⑈068521⑈ ⑆062203838⑆ ⑈11 0930 8⑈    ⑆000198542⑆

68521    08/14/2002    11,965.42

ARE 00365

F68522

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY _____ TERRY/ MFG. _II I965 DOLS 42 CTS _____ DOLLARS
CO. INC. P

| | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|
TO THE  James M. Reynolds, III    420052602   3115   3005.15  08-14-02
ORDER OF

1-9-82   68522   11965 42

TERRY MANUFACTURING CO., INC.

320281215  0167  1329    09-14-02

⑆068522⑆ ⑈0622036384⑈ ⑉11 0530 8⑈    ⑆0081196542⑆

68522        08/15/2002        11,965.42

ARE  00366

F 68907

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

PAY ____ TERRY MFG. I I 965 DOLS 42 CTS    DOLLARS

TO THE ORDER OF  JAMES M.

TERRY MANUFACTURING CO., INC.

| 68907    09/30/2002    11,965.42

ARE 00346

F 69312

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-383
622

PAY ***TT965 DOlS 42 CTS*** DOLLARS

TO THE ORDER OF  James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT |
| | | DOLLARS CENTS |
| 10-8-02 | 69312 | 11765 42 |

TERRY MANUFACTURING CO., INC.

310279723 0037 1320

69312    10/24/2002    11,965.42

ARE 00328

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

F 69311

21-262
622

PAY  TERRY MFG T T 965 DOLS 42 CTS                    DOLLARS
CO. INC.

TO THE
ORDER OF  N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT |
| --- | --- | --- |
| 10-8-02 | 69311 | 11965 42 |

TERRY MANUFACTURING CO., INC.

69311      10/15/2002      11,965.42

ARE 00327

F 69982

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *I 76 I 8 I DOLS 22 CTS* _____ **DOLLARS**
CO. INC.

TO THE ORDER OF *American Real Estate Investment Company, LTD*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-9-02 | 69982 | 176181 | 22 |

TERRY MANUFACTURING CO., INC.

MP

⑈069982⑈ ⑆062203638⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69983

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *I I 965 DOLS 42 CTS* _____ **DOLLARS**
CO. INC.

TO THE ORDER OF *N.D. Horton, Jr.*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-9-02 | 69983 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑈069983⑈ ⑆062203638⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69984

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *I I 965 DOLS 42 CTS* _____ **DOLLARS**
CO. INC.

TO THE ORDER OF *James M. Reynolds, III*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 12-9-02 | 67984 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

ARE 01904

MP

⑈069984⑈ ⑆062203638⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 70380

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY_____ TERRY MFG. CO., INC. ▶ *I I 965 DOLS 42 CTS* ____ **DOLLARS**

TO THE ORDER OF **N. D. Horton, Jr.**

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 1-9-03 | 70380 | 1196 5 | 42 |

**TERRY MANUFACTURING CO., INC.**

MP

⑈"070380"⑈ ⑆:062203638⑆: ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70381

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY_____ TERRY MFG. CO., INC. ▶ *I I 965 DOLS 42 CTS* ____ **DOLLARS**

TO THE ORDER OF **James M. Reynolds, III**

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 1-9-03 | 70381 | 1196 5 | 42 |

**TERRY MANUFACTURING CO., INC.**

MP

⑈"070381"⑈ ⑆:062203638⑆: ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 03088

F 70764

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ *I76I8I DOLS 22 CTS* _____ **DOLLARS**

TO THE ORDER OF: American Real Estate Investment Co., LTD

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 2-7-03 | 70764 | 176181 | 22 |

TERRY MANUFACTURING CO., INC.

MP

⑆070764⑆ ⑈062203638⑈ ⑈11 0930 8⑆

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70765

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ *II965 DOLS 42 CTS* _____ **DOLLARS**

TO THE ORDER OF: N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 2-7-03 | 70765 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑆070765⑆ ⑈062203638⑈ ⑈11 0930 8⑆

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70766

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ *II965 DOLS 42 CTS* _____ **DOLLARS**

TO THE ORDER OF: James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--------|
| | | DOLLARS | CENTS |
| 2-7-03 | 70766 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑆070766⑆ ⑈062203638⑈ ⑈11 0930 8⑆

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN O

ARE 01851

F 71063

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. II 965 DOLS 42 CTS _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 3-8-03 | 71063 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑆071063⑆ ⑉062203638⑉ ⑈11 0930 8⑇

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON

---

F 71064

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. II 965 DOLS 42 CTS _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 3-8-03 | 71064 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

⑆071064⑆ ⑉062203638⑉ ⑈11 0930 8⑇

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON

ARE 03117

F 71514

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ___ TERRY MFG. CO. INC.▶ I I 965 DOLS 42 CTS ___ DOLLARS

TO THE ORDER OF N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 4-9-03 | 71514 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑊071514⑊ ⑊062203638⑊ ⑊11 0930 8⑊

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 71515

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY ___ TERRY MFG. CO. INC.▶ I I 965 DOLS 42 CTS ___ DOLLARS

TO THE ORDER OF James M. Reynolds, III

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 4-9-03 | 71515 | 11965 | 42 |

TERRY MANUFACTURING CO., INC.

MP

⑊071515⑊ ⑊062203638⑊ ⑊11 0930 8⑊

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 03151

F 71869

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG ► II965 DOLS 42 CTS    **DOLLARS**
CO. INC.

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|

TO THE
ORDER OF    N.D. Horton Jr.    5-9-03    71869    11965 42

TERRY MANUFACTURING CO., INC.

⑈071869⑈ ⑆062203636⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 71870

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG ► II965 DOLS 42 CTS    **DOLLARS**
CO. INC.

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|

TO THE
ORDER OF    James M. Reynolds III    5-9-03    71870    11965 42

TERRY MANUFACTURING CO., INC.

⑈071870⑈ ⑆062203636⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01921

12/11/2000  13:39     4047616999                 TERRY MFG ATLANTA AM                    PAGE   04

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel. (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds. III

December 6, 2000

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. November 10, 2000 - December 10, 2000...........$  1,561.50
2. November 10, 2000 - December 10, 2000...........$  1,561.50
                                                   $  3,123.00

Please makes checks payable as follows:

    N. D. Horton, Jr.         $1,561.50
    James M. Reynolds, III    $1,561.50

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

EXHIBIT

tabbies

"10"

ARE 03257

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel. (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

December 29, 2000

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA   30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. December 10, 2000 - January 10, 2001.............$  1,613.55
2. December 10, 2000 - January 10, 2001.............$  1,613.55
                                                    $  3,227.10

Please makes checks payable as follows:

    N. D. Horton, Jr.         $1,613.55
    James M. Reynolds, III    $1,613.55

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA   20642

CEJ/

ARE 02361

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel. (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

January 31, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. January 10, 2001 - February 10, 2001.............$ 1,613.55
2. January 10, 2001 - February 10, 2001.............$ 1,613.55
                                                   $ 3,227.10

Please makes checks payable as follows:

    N. D. Horton, Jr.        $1,613.55
    James M. Reynolds, III   $1,613.55

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 03245

# American Real Estate
# Investment Company, Ltd.

2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel. (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

February 28, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. February 10, 2001 - March 10, 2001..............$  1,457.40
2. February 10, 2001 - March 10, 2001..............$  1,457.40
                                                   $  2,914.80

Please makes checks payable as follows:

    N. D. Horton, Jr.        $1,457.40
    James M. Reynolds, III   $1,457.40

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 03238

04/09/01  MON 11:49 FAX 706 453 9737    AMERICAN REAL ESTATE INV    @003

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel. (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

March 30, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. March 10, 2001 - April 10, 2001.................$  1,613.55
2. March 10, 2001 - April 10, 2001.................$  1,613.55
                                                    $  3,227.10

Please make checks payable as follows:

    N. D. Horton, Jr.        $1,613.55
    James M. Reynolds, III   $1,613.55

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

BC: Dudley

ARE 03234



Received  04-08-01  10:53am    From-706 453 9737    To-TERRY MANUFACTURING    Page  03

05/08/2001  13:21    4047616999    TERRY MFG ATLANTA AM    PAGE 03

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel. (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

April 30, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. April 10, 2001 - May 10, 2001.....................$  1,561.50
2. April 10, 2001 - May 10, 2001.....................$  1,561.50
                                                     $  3,123.00

Please make checks payable as follows:

    N. D. Horton, Jr.        $1,561.50
    James M. Reynolds, III   $1,561.50

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 03228

## American Real Estate
## Investment Company, Ltd.
2561 Lake Oconee Parkway
Greensboro. Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton. Jr.
James Reynolds. III

May 31, 2001


Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00


Interest Due @ 9.5%
1. May 10, 2001 - June 10, 2001......................$  1,613.55
2. May 10, 2001 - June 10, 2001......................$  1,613.55
                                                      $  3,227.10

Please make checks payable as follows:

     N. D. Horton, Jr.         $1,613.55
     James M. Reynolds, III    $1,613.55

Please mail or deliver to:

     2561 Lake Oconee Parkway
     Greensboro, GA  20642


CEJ/


*ARE 03223*



**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

June 29, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. June 10, 2001 - July 10, 2001....................$  1,561.50
2. June 10, 2001 - July 10, 2001....................$  1,561.50
                                                    $  3,123.00

Please make checks payable as follows:

    N. D. Horton, Jr.        $1,561.50
    James M. Reynolds, III   $1,561.50

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 03218

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

July 31, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. July 10, 2001 - Aug. 10, 2001....................$  1,613.55
2. July 10, 2001 - Aug. 10, 2001....................$  1,613.55
                                                    $  3,227.10

Please make checks payable as follows:

    N. D. Horton, Jr.        $1,613.55
    James M. Reynolds, III   $1,613.55

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 03213

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

August 31, 2001


Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00


Interest Due @ 9.5%
1. Aug. 10, 2001 - Sept. 10, 2001....................$  1,613.55
2. Aug. 10, 2001 - Sept. 10, 2001....................$  1,613.55
                                                    $  3,227.10

Please make checks payable as follows:

    N. D. Horton, Jr.         $1,613.55
    James M. Reynolds, III    $1,613.55

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642


    CEJ/


ARE 03209

10/09/2001 TUE 09:23  FAX 706 485 0572 PERKY CAP  →→→ TERRY MFG ATL.                    ☒002/003

From: AMERICAN REAL ESTATE        706 453 4749        10/08/2001 22:16 #430 P.003

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

September 28, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. Sept. 10, 2001 - Oct. 10, 2001....................$  1,561.50
2. Sept. 10, 2001 - Oct. 10, 2001....................$  1,561.50
                                                     $  3,123.00

Please make checks payable as follows:

    N. D. Horton, Jr.        $1,561.50
    James M. Reynolds, III   $1,561.50

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 02405

11/05/2001  18:44    4047616999    TERRY MFG ATLANTA AM    PAGE  02

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

October 30, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Interest Due @ 9.5%
1. Oct. 10, 2001 - Nov. 10, 2001.....................$  1,613.55
2. Oct. 10, 2001 - Nov. 10, 2001.....................$  1,613.55
                                                      $  3,227.10

Please make checks payable as follows:

    N. D. Horton, Jr.        $1,613.55
    James M. Reynolds, III   $1,613.55

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

*Send ups nxt Day
on 11/10/01*

ARE 01960

12/10/2001 MON 09:37  FAX 706 485 0572 PERKY CAP  →→→ TERRY MFG ATL.                    ☑002/002

From: AMERICAN REAL ESTATE        706 453 4749        12/09/2001 22:31 #649 P.002

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

November 30, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #1..................................$11,965.42
Loan 2. Installment #1.................................. 11,965.42
                                                        $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.        $11,965.42
    James M. Reynolds, III   $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

BC: Dudley

*Pd from Atlanta
12/18/01*

ARE 01886

01/09/2002  10:31    4047616999                    TERRY MFG ATLANTA AM

PAGE  02

# American Real Estate
# Investment Company, Ltd.
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

December 29, 2001

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #2................................$11,965.42
Loan 2.  Installment #2................................ 11,965.42
                                                       $23,930.84

Please make checks payable as follows:

     N. D. Horton, Jr.        $11,965.42
     James M. Reynolds, III   $11,965.42

Please mail or deliver to:

     2561 Lake Oconee Parkway
     Greensboro, GA  20642

CEJ/

ARE 01887

Received  Jan-09-02  10:28am    From-4047616999           To-TERRY MANUFACTURING    Page  02

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

January 31, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #3..............................$11,965.42
Loan 2.  Installment #3.............................. 11,965.42
                                                     $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.        $11,965.42
    James M. Reynolds, III   $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

*PD VPS ~xt Day 2/08/02*

ARE 03119

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

February, 2002


Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #4.................................$11,965.42
Loan 2.  Installment #4.................................__11,965.42
                                                          $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.         $11,965.42
    James M. Reynolds, III    $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642


CEJ/

ARE 03120

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

March 29, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #5 Due April 10, 2002...........$11,965.42
Loan 2.  Installment #5 Due April 10, 2002........... 11,965.42
                                                     $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.           $11,965.42
    James M. Reynolds, III      $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 03127

# American Real Estate
## Investment Company, Ltd.

2501 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2597    Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

April 29, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

1. Loan Dated November 10, 2000, Principal Amount: $200,000.00
2. Loan Dated November 10, 2000, Principal Amount: $200,000.00

Effective with the December 10, 2001, payment, the two loans become payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #6 Due May 10, 2002 ·········· $11,965.42
Loan 2. Installment #6 Due May 10, 2002 ·········· $11,965.42
                                                    $23,930.84

Please make checks payable as follows:

N. D. Horton, Jr.           $11,965.42
James M. Reynolds, III      $11,965.42

Please mail or deliver to:
2561 Lake Oconee Parkway
Greensboro, GA 20642

CBJ/

ARE 01897

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-9737

N.D. Horton, Jr.
James Reynolds, III

May 31, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #7 Due June 10, 2002..........$11,965.42
Loan 2. Installment #7 Due June 10, 2002.......... 11,965.42
                                                   $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.        $11,965.42
    James M. Reynolds, III   $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, CA  20642

CEJ/

ARE 03133

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

June 28, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #8 Due July 10, 2002...........$11,965.42
Loan 2. Installment #8 Due July 10, 2002...........  11,965.42
                                                    $23,930.84

Please make checks payable as follows:

     N. D. Horton, Jr.        $11,965.42
     James M. Reynolds, III   $11,965.42

Please mail or deliver to:

     2561 Lake Oconee Parkway
     Greensboro, GA  20642

CEJ/

ARE 01901

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

July 29, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #9 Due Aug. 10, 2002...........$11,965.42
Loan 2. Installment #9 Due Aug. 10, 2002........... 11,965.42
                                                    $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.        $11,965.42
    James M. Reynolds, III   $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 01909

08/08/2002  17:33    4047616999          TERRY MFG ATLANTA AM                    PAGE  03

**American Real Estate Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

August 30, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #10 due Sept. 10, 2002.........$11,965.42
Loan 2. Installment #10 due Sept. 10, 2002.........  11,965.42
                                                     $23,930.84

Please make checks payable as follows:

      N. D. Horton, Jr.       $11,965.42
      James M. Reynolds, III  $11,965.42

Please mail or deliver to:

      2561 Lake Oconee Parkway
      Greensboro, GA  20642

CEJ/

ARE 01914

Received  Oct-08-02  01:32pm    From-4047615238    TO-TERRY MANUFACTURING    Page 03

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

September 30, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #11 due Oct. 10, 2002........$11,965.42
Loan 2. Installment #11 due Oct. 10, 2002........ 11,965.42
                                                 $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.        $11,965.42
    James M. Reynolds, III   $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CEJ/

ARE 01907

12/02/2002  16:37    4047616995         TERRY MFG ATLANTA HR                PAGE  03

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

November 25, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #13 due Dec. 10, 2002........$11,965.42
Loan 2.  Installment #13 due Dec. 10, 2002........ 11,965.42
                                                   $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.          $11,965.42
    James M. Reynolds, III     $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CBJ/

ARE 01903

Received    Jan-02-03 09:12am    From-404761523B    To-TERRY MANUFACTURING    Page 03

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

December 23, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

1. Loan Dated November 10, 2000, Principal Amount: $200,000.00
2. Loan Dated November 10, 2000, Principal Amount: $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #14 due Jan. 10, 2003.........$11,965.42
Loan 2. Installment #14 due Jan. 10, 2003.........  11,965.42
                                                    $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.      $11,965.42
    James M. Reynolds, III    $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA 20642

CEJ/

ARE 01915

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

January 23, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA   30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #15 due Feb. 10, 2003.........$11,965.42
Loan 2.  Installment #15 due Feb. 10, 2003.........  11,965.42
                                                    $23,930.84

Please make checks payable as follows:

       N. D. Horton, Jr.        $11,965.42
       James M. Reynolds, III   $11,965.42

Please mail or deliver to:

       2561 Lake Oconee Parkway
       Greensboro, GA   20642

CEJ/

PD Vid [?] Terry
Courier to Horton
on 2/10/03.

ARE 01916

Received    03-07-03   03:41pm    From-404761523    To-TERRY MANUFACTURING    Page 03

From: AMERICAN REAL ESTATE          706 453 4749          03/07/2003 03:46 #019 P.002

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway          Tel: (706) 453-2397
Greensboro, Georgia 30642          Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

February 24, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1.  Installment #16 due March 10, 2003.........$11,965.42
Loan 2.  Installment #16 due March 10, 2003.........  11,965.42
                                                     $23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.          $11,965.42
    James M. Reynolds, III     $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA  20642

CBJ/

ARE 01882

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

March 24, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

<u>1. Loan Dated November 10, 2000, Principal Amount: $200,000.00</u>
<u>2. Loan Dated November 10, 2000, Principal Amount: $200,000.00</u>

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #17 due April 10, 2003.........$11,965.42
Loan 2. Installment #17 due April 10, 2003.........<u>11,965.42</u>

$23,930.84

Please make checks payable as follows

N. D. Horton, Jr.          $11,965.42
James M. Reynolds, III     $11,965.42

Please mail or deliver to:

2561 Lake Oconee Parkway
Greensboro, GA 20642

CEJ/

ARE 01823

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

April 22, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #18 due May 10, 2003....  ..$11,965.42
Loan 2. Installment #18 due May 10, 2003....  ..11,965.42

$23,930.84

Please make checks payable as follows:

N. D. Horton, Jr.        $11,965.42
James M. Reynolds, III   $11,965.42

Please mail or deliver to

2561 Lake Oconee Parkway
Greensboro, GA  20642

CEJ/

ARE 03050

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

April 22, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

1. Loan Dated November 10, 2000, Principal Amount:  $200,000.00
2. Loan Dated November 10, 2000, Principal Amount:  $200,000.00

Effective with the December 10, 2001, payment, the two loans become
payable in 18 equal monthly installments of $11,965.42 each.

Loan 1. Installment #18 due May 10, 2003.........$11,965.42
Loan 2. Installment #18 due May 10, 2003.........  11,965.42

$23,930.84

Please make checks payable as follows:

    N. D. Horton, Jr.       $11,965.42
    James M. Reynolds, III  $11,965.42

Please mail or deliver to:

    2561 Lake Oconee Parkway
    Greensboro, GA   20642

CEJ/

ARE 02483



INCORPORATED UNDER THE LAWS OF THE STATE OF GEORGIA

**Perky Cap Company, Inc.**

The Corporation is authorized to issue 100,000 Shares, Par Value $1 Each

This Certifies that **Allie R. Robinson** is the owner of **Nine thousand** fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated **Nov. 10, 2000**

EXHIBIT "9"

AmR.Est 00272

EXCELSIOR-LEGAL, INC. P.O. BOX 99 NORCROSS, GA. 30091

**RECEIPT OF STOCK SHARE CERTIFICATE**
**PERKY CAP COMPANY, INC.**

The undersigned does acknowledge receipt of Certificate Number 32 representing

9,000 shares of the common stock of Perky Cap Company, Inc.

This 10th day of November, 2000.

_____

**Allie R. Robinson**

c:\data\wpdocs\5001\194\share-cert-2

**AmR.Est 00273**

**J. Lester Alexander III v. N. D. Horton and J. Reynolds**

**May 30, 2002 Loan to Roy and Rudolph Terry in the principal amount of $624,000**

| Payor | Payee | Amt | Check No. | Date Issued | Bank | Date Invoiced | Invoice Description |
|---|---|---|---|---|---|---|---|
| Terry Manufacturing | James M. Reynolds, | $2,538.69 | 68079 | 7/1/2002 | First Bank | 6/20/2002 | Interest 5/30/2002-7/2/2002 |
| Terry Manufacturing | James M. Reynolds, | $2,384.83 | 68428 | 8/1/2002 | First Bank | 7/19/2002 | Interest 7/2/2002-8/2/2002 |
| Terry Manufacturing | James M. Reynolds, | $2,384.83 | 68824 | 8/29/2002 | First Bank | NO INVOICE | |
| Terry Manufacturing | James M. Reynolds, | $2,384.83 | 69211 | 10/1/2002 | First Bank | 9/20/2002 | Interest 9/2/2002-10//2002 |
| Terry Manufacturing | James M. Reynolds, | $2,384.83 | 69533 | 11/1/2002 | First Bank | 10/22/2002 | Interest 10/2/2002-11/2/2002 |
| Terry Manufacturing | James M. Reynolds, | $2,307.90 | 69846 | 12/2/2002 | First Bank | 11/22/2002 | Interest 11/2/2002-12/2/2002 |
| Terry Manufacturing | James M. Reynolds, | $9,921.51 | 70233 | 1/3/2003 | First Bank | 12/23/2002 | Installment 1 |
| Terry Manufacturing | James M. Reynolds, | $9,921.51 | 70657 | 1/31/2003 | First Bank | 1/23/2003 | Installment 2 |
| Terry Manufacturing | James M. Reynolds, | $9,921.51 | 71062 | 3/8/2003 | First Bank | 2/24/2003 | Installment 3 |
| Terry Manufacturing | James M. Reynolds, | $9,921.51 | 71786 | 5/2/2003 | First Bank | 4/22/2003 | Installment 5 |
| Terry Manufacturing | N. D. Horton, Jr. | $9,921.52 | 5823 | 4/1/2003 | Bank of America | 3/24/2003 | Installment 4 * |
| Terry Manufacturing | N. D. Horton, Jr. | $2,538.69 | 68080 | 7/1/2002 | First Bank | 6/20/2002 | Interest 5/30/2002-7/2/2002 |
| Terry Manufacturing | N. D. Horton, Jr. | $2,384.83 | 68427 | 8/1/2002 | First Bank | 7/19/2002 | Interest 7/2/2002-8/2/2002 |
| Terry Manufacturing | N. D. Horton, Jr. | $2,384.83 | 68823 | 8/29/2002 | First Bank | NO INVOICE | |
| Terry Manufacturing | N. D. Horton, Jr. | $2,384.83 | 69210 | 10/1/2002 | First Bank | 9/20/2002 | Interest 9/2/2002-10//2002 |
| Terry Manufacturing | N. D. Horton, Jr. | $2,384.83 | 69532 | 11/1/2002 | First Bank | 10/22/2002 | Interest 10/2/2002-11/2/2002 |
| Terry Manufacturing | N. D. Horton, Jr. | $2,307.90 | 69845 | 12/2/2002 | First Bank | 11/22/2002 | Interest 11/2/2002-12/2/2002 |
| Terry Manufacturing | N. D. Horton, Jr. | $9,921.52 | 70232 | 1/3/2003 | First Bank | 12/23/2002 | Installment 1 |
| Terry Manufacturing | N. D. Horton, Jr. | $9,921.52 | 70656 | 1/31/2003 | First Bank | 1/23/2003 | Installment 2 |
| Terry Manufacturing | N. D. Horton, Jr. | $9,921.52 | 70161 | 3/8/2003 | First Bank | 2/24/2003 | Installment 3 |
| Terry Manufacturing | N. D. Horton, Jr. | $9,921.52 | 5822 | 4/1/2003 | Bank of America | 3/24/2003 | Installment 4 |
| Terry Manufacturing | N. D. Horton, Jr. | $9,921.52 | 71785 | 5/2/2003 | First Bank | 4/22/2003 | Installment 5 |

* Check was endorsed to James M. Reynolds

| | | |
|---|---|---|
| **Reynolds payments - this loan** | **$63,993.47** | |
| **Horton payments - this loan** | **$63,993.51** | |
| **Total page 1** | 234,375.81 | |
| **Total page 2** | 234,375.81 | |
| | **Total** | **$596,738.60** |



**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

June 20, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Interest Due (9.0%).................................. $ 5,077.38
    (5/30/02 - 7/2/02, 33 days @ $153.86)

Interest Due July 2, 2002..............................$ 5,077.38

Please write checks as follows:
    N. D. Horton, Jr.          $2,538.69
    Jamie Reynolds             $2,538.69

Please Mail or Deliver to:
            American Real Estate
            2561 Lake Oconee Parkway
            Greensboro, GA  30642



ARE 03060

F68079

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **2538** DOLS **69** CTS _____ **DOLLARS**

TO THE
ORDER OF _____ *JAMIE REYNOLDS*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 7-01-02 | 68079 | 2538 | 69 |

TERRY MANUFACTURING CO., INC.

MP

⑈068079⑈ ⑆062203638⑈ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F68080

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **2538** DOLS **69** CTS _____ **DOLLARS**

TO THE
ORDER OF _____ *N.D. HORTON, JR.*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 7-01-02 | 68080 | 2538 | 69 |

TERRY MANUFACTURING CO., INC.

MP

⑈068080⑈ ⑆062203638⑈ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

07/30/2002  18:17    4047616999              TERRY MFG ATLANTA AM              PAGE  02

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

July 19, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

Promissory Note Dated May 30, 2002 in the amount of $624,000.00

Interest Due (9.0%)................................  $ 4,769.66
    (7/2/02 - 8/2/02, 31 days @ $153.86)

Interest Due August 2, 2002.........................$ 4,769.66

Please write checks as follows:
    N. D. Horton, Jr.          $2,384.83
    Jamie Reynolds             $2,384.83

Please Mail or Deliver to:

            American Real Estate
            2561 Lake Oconee Parkway
            Greensboro, GA  30642

ARE 01828

F68427

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY          TERRY MFG. CO. INC. ▶ 2384 DOLS 83 CTS          DOLLARS

TO THE
ORDER OF   N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 8-01-02 | 68427 | 2384 | 83 |

TERRY MANUFACTURING CO., INC.

MP

⑆068427⑆ ⑇062203638⑇ ⑆11 0930 8⑆

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F68428

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY          TERRY MFG. CO. INC. ▶ 2384 DOLS 83 CTS          DOLLARS

TO THE
ORDER OF   Jamie Reynolds

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 8-01-02 | 68928 | 2384 | 83 |

TERRY MANUFACTURING CO., INC.

MP

⑆068428⑆ ⑇062203638⑇ ⑆11 0930 8⑆

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 03064

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

July 19, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

Promissory Note Dated May 30, 2002 in the amount of $624,000.00

Interest Due (9.0%)............................. $ 4,769.66
    (7/2/02 - 8/2/02, 31 days @ $153.86)

Interest Due August 2, 2002.....................$ 4,769.66

Please write checks as follows:
    N. D. Horton, Jr.          $2,384.83
    Jamie Reynolds             $2,384.83

Please Mail or Deliver to:

                American Real Estate
                2561 Lake Oconee Parkway
                Greensboro, GA  30642



ARE 01829

TERRY MANUFACTURING CO., INC.
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

F68824

PAY _____ TERRY MFG. **2384** DOLS **83** CTS _____ DOLLARS

TO THE
ORDER OF  Jamie  Reynolds

5000157S7 3144 30

320201347 1437 1437  TERRY MANUFACTURING CO., INC.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| 9-12-02 | 68824 | 2384 | 13 |

TERRY MANUFACTURING CO., INC.

0000 2384 83

⑆068824⑆ ⑈06 2203638⑈ ⑆11 0930 8⑈

68824        09/12/2002        2,384.83

ARE 00342

From: AMERICAN REAL ESTATE        706 453 4749        10/01/2002 03:59 #108 P.001

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

September 20, 2002

Fax: 334- 863 -<del>217</del># 8835

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Interest Due (9.0%)................................. $ 4,615.80
    (9/2/02 - 10/2/02, 30 days @ $153.86)
                                                   _____

Interest Due October 2, 2002........................$ 4,615.80

Please write checks as follows:
    N. D. Horton, Jr.          $2,384.83
    Jamie Reynolds             $2,384.83

Please Mail or Deliver to:

              American Real Estate
             2561 Lake Oconee Parkway
              Greensboro, GA  30642



ARE 03065

F 69210

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. 2384 DOLS 83 CTS _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF _N.D. Horton, Jr._

| DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|
| | | DOLLARS | CENTS |
| 10-01-02 | 69210 | 2384 | 83 |

TERRY MANUFACTURING CO., INC.

MP

⑈"069210"⑈ ⑈:062203638: ⑈11 0930 8"⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69211

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. 2384 DOLS 83 CTS _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF _Jamie Reynolds_

| DATE | CHECK NO. | AMOUNT | |
|---|---|---|---|
| | | DOLLARS | CENTS |
| 10-01-02 | 69211 | 2384 | 83 |

TERRY MANUFACTURING CO., INC.

MP

⑈"069211"⑈ ⑈:062203638: ⑈11 0930 8"⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 03066

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

October 22, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

Promissory Note Dated May 30, 2002 in the amount of $624,000.00

Interest Due (9.0%).......................................  $ 4,769.66
    (10/2/02 - 11/2/02, 31 days @ $153.86)

Interest Due November 2, 2002........................$ 4,769.66

Please write checks as follows:
    N. D. Horton, Jr.          $2,384.83
    Jamie Reynolds             $2,384.83

Please Mail or Deliver to:

              American Real Estate
              2561 Lake Oconee Parkway
              Greensboro, GA  30642

ARE 03067

F 69532

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ T̲ERRY MFG. 2384 DOLS 83 CTS _____ DOLLARS
     CO. INC.

TO THE
ORDER OF  N.D. HORTON, JR.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 11-01-02 | 69532 | 2384 | 83 |

TERRY MANUFACTURING CO., INC.

MP

⑈069532⑈ ⑆062203638⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69533

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ T̲ERRY MFG. 2384 DOLS 83 CTS _____ DOLLARS
     CO. INC.

TO THE
ORDER OF  JAMIE REYNOLDS

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|---|
| | | DOLLARS | CENTS |
| 11-01-02 | 69533 | 2384 | 83 |

TERRY MANUFACTURING CO., INC.

MP

⑈069533⑈ ⑆062203638⑆ ⑈11 0930 8⑈
THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01834

From: AMERICAN REAL ESTATE     706 453 4749     12/02/2002 04:57 #289 P.001

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

November 22, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

Promissory Note Dated May 30, 2002 in the amount of $624,000.00

Interest Due (9.0%)................................ $ 4,615.80
      (11/2/02 - 12/2/02, 30 days @ $153.86)

Interest Due December 2, 2002.......................$ 4,615.80

Please write checks as follows:
   N. D. Horton, Jr.          $2,307.90
   Jamie Reynolds             $2,307.90

Please Mail or Deliver to:

            American Real Estate
            2561 Lake Oconee Parkway
            Greensboro, GA  30642

ARE 00157

F 69845

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **2307** DOLS **90** CTS _____ **DOLLARS**

TO THE ORDER OF  N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 12-2-02 | 69845 | 2307 | 90 |

TERRY MANUFACTURING CO., INC.

MP

⑈069845⑈ ⑆0622036381⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 69846

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. CO. INC. ▶ **2307** DOLS **90** CTS _____ **DOLLARS**

TO THE ORDER OF  Jamie Reynolds

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 12-2-02 | 69846 | 2307 | 90 |

TERRY MANUFACTURING CO., INC.

MP

⑈069846⑈ ⑆0622036381⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01837

From: AMERICAN REAL ESTATE     706 459 4749     12/02/2002 04:57 #289 P.001

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

November 22, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Interest Due (9.0%) . . . . . . . . . . . . . . . . . . . . . . . . . . .    $ 4,615.80
  (11/2/02 - 12/2/02, 30 days @ $153.86)
                     _____

Interest Due December 2, 2002: . . . . . . . . . . . . . . . . . . . . $ 4,615.80

Please write checks as follows:
  N. D. Horton, Jr.      $2,307.90
  Jamie Reynolds       $2,307.90

Please Mail or Deliver to:

      American Real Estate
      2561 Lake Oconee Parkway
      Greensboro, GA  30642

*PD 12/02/02*
*VJS NXt Day*

ARE 03070

Received   Jan-02-03 08:12am   From-4047615238   To-TERRY MANUFACTURING   Page 02

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

December 23, 2002

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Effective with the January 2, 2003 payment, the note becomes
payable in 36 equal installments of $$19,843.03 each:

Payment Due January 2, 2003.......................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.              $9,921.52
    Jamie Reynolds                 $9,921.51

Please Mail or Deliver to:

                American Real Estate
                2561 Lake Oconee Parkway
                Greensboro, GA  30642



ARE 03073

F 70232

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. **992 I** DOLS **5 2** CTS _____ DOLLARS
CO. INC.

TO THE
ORDER OF  N.D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 1-3-03 | 70232 | 9921 | 52 |

TERRY MANUFACTURING CO., INC.

MP

⑈070232⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70233

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. **992 I** DOLS **5 I** CTS _____ DOLLARS
CO. INC.

TO THE
ORDER OF  Jamie Reynolds

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|------|
| | | DOLLARS | CENTS |
| 1-2-03 | 70233 | 9921 | 51 |

TERRY MANUFACTURING CO., INC.

MP

⑈070233⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01840

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

January 23, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

Promissory Note Dated May 30, 2002 in the amount of $624,000.00

Effective with the January 2, 2003 payment, the note becomes
payable in 36 equal installments of $$19,843.03 each:

Installment #2 Due February 2, 2003...................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.          $9,921.52
    Jamie Reynolds           $9,921.51

Please Mail or Deliver to:

        American Real Estate
        2561 Lake Oconee Parkway
        Greensboro, GA  30642

ARE 01841

F 70656

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 9921 DOLS 52 CTS                          DOLLARS

TO THE
ORDER OF  N. D. Horton, Jr.

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 1-31-03 | 70656 | 9921 | 52 |

TERRY MANUFACTURING CO., INC.

MP

⑆070656⑈ ⑆062203638⑈ ⑆11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

---

F 70657

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY    TERRY MFG. CO. INC. ▶ 9921 DOLS 51 CTS                          DOLLARS

TO THE
ORDER OF  Jamie Reynolds

| DATE | CHECK NO. | AMOUNT | |
| | | DOLLARS | CENTS |
| 1-31-03 | 70657 | 9921 | 51 |

TERRY MANUFACTURING CO., INC.

MP

⑆070657⑈ ⑆062203638⑈ ⑆11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01842

From: AMERICAN REAL ESTATE        706 453 4749        03/07/2003 03:45 #018 P.001

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway                                    Tel: (706) 453-2397
Greensboro, Georgia 30642                                   Fax: (706) 453-4749

                                                            N.D. Horton, Jr.
                                                            James Reynolds, III


February 24, 2003


Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>


Effective with the January 2, 2003 payment, the note becomes
payable in 36 equal installments of $$19,843.03 each:


Installment #3 Due March 2, 2003...................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.              $9,921.52
    Jamie Reynolds                 $9,921.51


Please Mail or Deliver to:

            American Real Estate
            2561 Lake Oconee Parkway
            Greensboro, GA  30642


*AN PD VPS NXT Day*
*3/08/03*

ARE 03077

F 71062

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *9921 DOLS 51 CTS* _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF *JAMIE REYNOLDS*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 3-8-03 | 71062 | 9921 | 51 |

TERRY MANUFACTURING CO., INC.

MP

⑈071062⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 71061

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY _____ TERRY MFG. *9921 DOLS 52 CTS* _____ **DOLLARS**
CO. INC.▶

TO THE
ORDER OF *N. D. HORTON, JR.*

| DATE | CHECK NO. | AMOUNT | |
|------|-----------|--------|--|
| | | DOLLARS | CENTS |
| 3-8-03 | 71061 | 9921 | 52 |

TERRY MANUFACTURING CO., INC.

MP

⑈071061⑈ ⑆062203638⑆ ⑈11 0930 8⑈

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01884

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

March 24, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Effective with the January 2, 2003 payment, the note becomes payable in 36 equal installments of $$19,843.03 each:

Installment #4 Due April 2, 2003 .................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.          $9,921.52
    Jamie Reynolds             $9,921.51

Please Mail or Deliver to

                American Real Estate
                2561 Lake Oconee Parkway
                Greensboro, GA  30642

ARE 01821

04/07/2003  19:07    4047616999    TERRY MFG ATLANTA AM    PAGE  03

**TERRY MFG. CO. INC. ATLANTA GEN.**    5822
P.O. BOX 16629  404-761-8888
ATLANTA, GA  30321

64-5/610 6A
362

DATE  4/1/03

PAY
TO THE
ORDER OF  N. D. HORTON    $ 9,921.52

REGISTERED  N502341 9921 DOLS 52 CTS    DOLLARS

**Bank of America.**
ACH R/T 061000052

FOR _____

⑈005822⑈ ⑆061000052⑆ 000102541035⑈

---

**TERRY MFG. CO. INC. ATLANTA GEN.**    5823
P.O. BOX 16629  404-761-8888
ATLANTA, GA  30321

64-5/610 6A
362

DATE  4/1/03

PAY
TO THE
ORDER OF  N. D. HORTON    $ 9921.52

REGISTERED  N502341 9921 DOLS 52 CTS    DOLLARS

**Bank of America.**
ACH R/T 061000052

FOR _____

⑈005823⑈ ⑆061000052⑆ 000102541035⑈

ARE 01845

04/07/2003 19:07    4047616999    TERRY MFG ATLANTA AM    PAGE 02

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

March 24, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA   30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Effective with the January 2, 2003 payment, the note becomes
payable in 36 equal installments of $$19,843.03 each:

Installment #4 Due April 2, 2003.................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.            $9,921.52
    Jamie Reynolds               $9,921.51

Please Mail or Deliver to:

                American Real Estate
                2561 Lake Oconee Parkway
                Greensboro, GA   30642

*[handwritten note: PD from Atlanta By Rudolph — Copy of Checks Attached]*

ARE 03078

**American Real Estate
Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

April 22, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA  30354

Promissory Note Dated May 30, 2002 in the amount of $624,000.00

Effective with the January 2, 2003 payment, the note becomes payable in 36 equal installments of $$19,843.03 each:

Installment #5 Due May 2, 2003....................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.          $9,921.52
    Jamie Reynolds             $9,921.51

Please Mail or Deliver to:

                American Real Estate
                2561 Lake Oconee Parkway
                Greensboro, GA  30642

ARE 03049

F 71785

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY                TERRY MFG 9921 DOLS 52 CTS              DOLLARS

| | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|
| TO THE ORDER OF N. D. Horton Jr | 5-2-03 | 71785 | 9921 52 |

TERRY MANUFACTURING CO., INC.

MP

⑆071785⑆ ⑈062203638⑈ ⑉11 0930 8⑉

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

F 71786

**TERRY MANUFACTURING CO., INC.**
P.O. BOX 648
ROANOKE, ALABAMA 36274

FIRST BANK
ROANOKE, ALABAMA

61-363
622

PAY                TERRY MFG 9921 DOLS 51 CTS              DOLLARS

| | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|
| TO THE ORDER OF Jamie Reynolds | 5-2-03 | 71786 | 9921 51 |

TERRY MANUFACTURING CO., INC.

MP

⑆071786⑆ ⑈062203638⑈ ⑉11 0930 8⑉

THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

ARE 01849

Received May-02-03 02:04pm    From-4047615238    To-TERRY MANUFACTURING    Page 02

**American Real Estate**
**Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

April 22, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Effective with the January 2, 2003 payment, the note becomes payable in 36 equal installments of $$19,843.03 each:

Installment #5 Due May 2, 2003....................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.      $9,921.52
    Jamie Reynolds       $9,921.51

Please Mail or Deliver to:

    American Real Estate
    2561 Lake Oconee Parkway
    Greensboro, GA 30642

*5/02/03*

*Sidney /*
*Please write checks*
*for the above. Give*
*to Rt for UPS. Nxt Day*

ARE 01847

**American Real Estate Investment Company, Ltd.**
2561 Lake Oconee Parkway
Greensboro, Georgia 30642

Tel: (706) 453-2397
Fax: (706) 453-4749

N.D. Horton, Jr.
James Reynolds, III

May 22, 2003

Mr. Rudolph Terry
3725 Zip Industrial Boulevard
Atlanta, GA 30354

<u>Promissory Note Dated May 30, 2002 in the amount of $624,000.00</u>

Effective with the January 2, 2003 payment, the note becomes payable in 36 equal installments of $19,843.03 each:

Installment #6 Due June 2, 2003....................$19,843.03

Please write checks as follows:
    N. D. Horton, Jr.      $9,921.52
    Jamie Reynolds        $9,921.51

Please Mail or Deliver to:

        American Real Estate
        2561 Lake Oconee Parkway
        Greensboro, GA  30642

ARE 00045



5822

**TERRY MFG. CO. INC. ATLANTA GEN.**
P.O. BOX 16629   404-761-8888
ATLANTA, GA  30321

64-5/610 G4
362

DATE 4/1/03

PAY
TO THE
ORDER OF  *N.D. Horton*                                    $ 9,921.52

REGISTERED 9921 MS 52

DOLLARS

**Bank of America.**

ACH R/T 061000052

4502253891  2005 2168 00  04-03-03

FOR

⑈005822⑈ ⑆061000052⑆ 000102541035⑈        ⑈000049215 2⑈

For Deposit Only
N.D. Horton

04/02/2003 02 006 2270 IP05

# First Bank

1109308 09/30/2002 PAGE 16



| | | |
|---|---|---|
| 68798  09/04/2002  210,771.90 | 68804  09/04/2002  11,118.38 | 68806  09/03/2002  6,107.66 |
| 68807  09/04/2002  14,359.70 | 68808  09/09/2002  433.00 | 68809  09/05/2002  30,000.00 |
| 68810  09/06/2002  12,414.99 | 68814  09/06/2002  8,176.56 | 68818  09/04/2002  10,342.46 |
| 68819  09/04/2002  10,253.37 | 68820  09/05/2002  267.30 | 68821  09/03/2002  2,000.00 |
| 68823  09/10/2002  2,384.83 | 68824  09/12/2002  2,384.83 | 68825  09/05/2002  80.00 |
| 68826  09/03/2002  60.00 | 68827  09/03/2002  80.00 | 68829  09/10/2002  172.34 |
| 68830  09/05/2002  125.00 | 68834  09/03/2002  80.00 | 68836  09/05/2002  1,875.00 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

IN RE:                                      )
                                            )
TERRY MANUFACTURING                         )          CASE NO.  03-32063-WRS
    COMPANY, INC.                           )
                                            )          CHAPTER 7
    Debtor                                  )
                                            )
_____

IN RE:                                      )
                                            )          CASE NO.  03-32213-WRS
TERRY UNIFORM                               )
    COMPANY, LLC,                           )          CHAPTER 7
                                            )
    Debtor.                                 )
_____

J. LESTER ALEXANDER, III,                   )
TRUSTEE OF TERRY                            )
MANUFACTURING COMPANY, INC.                 )
AND TERRY UNIFORM                           )
COMPANY, LLC                                )          ADVERSARY PROCEEDING
                                            )          NO. 05-03042
VERSUS                                      )
                                            )
N.D. HORTON, JR. AND JAMES                  )
M. REYNOLDS, III                            )

**TRUSTEE'S REPLY TO DEFENDANTS' OPPOSITION TO SUMMARY
JUDGMENT**

J. Lester Alexander, III, Trustee of debtor Terry Manufacturing Company, Inc.

("Terry Manufacturing") respectfully submits this Reply to defendants' opposition to

Summary Judgment.

This case is the classic example of fraudulent transfer involving principals using an insolvent company's funds to pay their personal obligations. Terry Manufacturing at no time received a single benefit from payments made to Defendants on promissory notes executed by Cotina Terry, Allie Robinson, and Roy and Rudolph Terry for the purchase of Perky Cap stock from Defendants. Notably, Defendants do not contest that the Trustee has satisfied most of the core components of his cause of action under the Alabama Fraudulent Conveyance statute. Specifically, Defendants do not contest that they received transfers, some $596,000 paid on promissory notes given by Terry family members for the Defendants' common stock in Perky Cap Company. Nor do Defendants challenge that these payments were made at a time when Terry Manufacturing was insolvent, had unreasonably small capital and incurred, and knowingly incurred, debts which it could not repay timely. Likewise, Defendants do not dispute that the payments were in satisfaction of promissory notes given by Terry family members in consideration of the Defendants' Perky Cap stock, that the stock was registered in the name of the Terry family members and that they alone received the benefits of being stockholders. Indeed, Defendants' only response is that Terry Manufacturing received some indirect benefits for its payments, and that these indirect benefits are reasonably equivalent to the payments. Specifically, Defendants cite:

> (a)     Terry Manufacturing guaranteed payment of the notes of Cotina Terry and Allie Robinson. Terry Manufacturing admittedly received no consideration for the guaranty, but somehow received "value" as it reduced its exposure under the guaranty;

> (b)     Terry family members obtained the Defendants' stock in Perky Cap which had some value. According to Defendants, under Alabama law, value provided to insiders qualifies as value to the debtor;

> (c)     Terry Manufacturing required caps for McDonalds uniforms, and these caps were produced by Perky Cap Company. Stock ownership by Terry family members made this possible; and

(d)    Mr. Horton and American Real Estate Limited Partnership, a Georgia limited partnership controlled by Messrs. Horton and Reynolds, made other loans to Terry Manufacturing or Terry family members.

Notably, Defendants do not assign any monetary value to these supposed benefits. In fact, none of these represent meaningful economic value for the payments by Terry Manufacturing, much less value equivalent to its payments.

**Terry Manufacturing received no value, let alone reasonably equivalent value, for payments to the defendants as the guarantor of third party promissory notes.**

Defendants claim that Terry Manufacturing received reasonably equivalent value because it received a reduction in its obligation as guarantor of the promissory notes of Cotina Terry and Allie Robinson.[1] But this analysis misses the central point – whether the transactions at issue diminished the estate available to creditors. "[T]he decisive issue is whether the payment of [Cotina Terry's and Allie Robinson's] obligation conferred an economic benefit upon the debtor sufficient to preserve the debtor's net worth." *In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990). And, the payments made by Terry Manufacturing diminished its net worth. Terry Manufacturing did not receive any economic benefit from its payments to the defendants. Not directly or indirectly.

If a debtor grants a guaranty for no consideration, payments on that guaranty are likewise for no consideration. The payee cannot boot strap reasonably equivalent value by supposedly reducing its exposure on an instrument which itself represents a fraudulent conveyance. Again, the basic question is what is the net effect on the debtor's estate. When, as here, the debtor guarantees the debt of an insider and assumes a contingent liability for no consideration, its payment of that contingent liability reduces its net worth without corresponding benefit. *See,*

---

[1]    Terry Manufacturing did guaranty the Robinson and Cotina Terry notes. It did not guaranty that of Roy and Rudolph Terry.

*e.g. In re BBL Group, Inc.*, 205 B.R. 625, 636 (Bankr. N.D. Ala. 1996) (holding that in order to determine whether the debtor received value in consideration of its guarantee, the court must specifically "measure the value of all benefits and burdens to the debtor, direct or indirect").

Defendants cite *In re Rodriguez* for the proposition that reduction of a contingent liability represents value and regardless of whether the debtor received value for assuming the contingent liability.  The *Rodriguez* court did not reach this conclusion.  It simply held that if the debtor had no liability for a loan, whether as a principal obligor or guarantor, it could not have received any value for the payment.  The converse was not addressed.

In satisfying Cotina Terry and Allie Robinson's obligation, Terry Manufacturing transferred tangible assets – cash – which could have been used to satisfy creditor claims for what at most amounts to an intangible benefit, release from a contingent liability (which itself was not supported by consideration) and a right of reimbursement.  This Court has recognized that this trade of tangible property for potential intangible benefits does not constitute equivalent value because the net result will be to "deplete the tangible assets of the estate to the detriment of the other creditors."  *In re Martin*, 205 B.R. 646, 650 (Bankr. M.D. Ala. 1993).

### Terry Manufacturing was not required to pay the debts of its insiders in order to purchase product form Perky Cap.

The Defendants' opposition appears to suggest that the Terry family members' purchase of Defendants' stock was somehow tied to Terry Manufacturing's purchase of caps.  Not surprisingly, there is no evidence of this arrangement, and the plain fact is that the Terry Manufacturing's purchase of caps was wholly unrelated to the stock sales.  According to Mr. Horton, Terry Manufacturing was Perky Cap's largest customer for several years before the Terry's initial purchase of stock in 1994.  See Transcript of February 8, 2006 Deposition of N.D. Horton, Jr. at 21:10-21:14; relevant excerpts attached hereto as Exhibit A.  It continued to

purchase caps before the stock sales at issue here which occurred in 2000 and 2002.  In fact, Terry Manufacturing purchased **more** caps before the stock was purchased than after.  See Affidavit of J. Lester Alexander, II attached hereto as Exhibit B.

The Trustee acknowledges that, in appropriate cases, an indirect benefit may constitute reasonably equivalent value.  But "indirect benefits must be of measurable economic benefit. . ." *In re Martin*, 205 B.R. 646, 650 (Bankr. M.D. Ala. 1993).  The bold assertion that payments of its insiders' notes permitted Terry Manufacturing to buy caps does not provide this "measurable economic benefit" particularly when it is at direct odds with the actual buying history of the parties.

### The Defendants are not entitled to a set off under Alabama Code §8-9A-8(d) and <u>may not assert this provision as a defense.</u>

The Defendants assert that under Ala. Code §8-9A-8(d) they are entitled to an offset for value given to parties other than the debtor.  Defendants claim they are entitled to an offset for the value of the stock given to Allie Robinson, Cotina Terry and Roy and Rudolph Terry.  This oversimplifies the language of the statute and is not properly applicable to this case.  Alabama Code §8-9A-8(d) grants a reduction in liability in fraudulent transfer cases for value given to another person "<u>as a consequence of the debtor's making such transfer</u>." (emphasis added). Neither of the defendants transferred anything to Allie Robinson, Cotina Terry, or Roy and Rudolph Terry "as a consequence" of Terry Manufacturing making payments on their promissory notes.  Terry Manufacturing made payments on the notes after the funds were advanced for the personal purchases of stock, and therefore, after the value was given to the third parties at issue.

Furthermore, under any possible theory of recoupment, the defendant may reduce the amount of a plaintiff's claim <u>only</u> by asserting a claim against the debtor <u>arising out of the same</u>

transaction. *In re Affiliated of Florida, Inc.*, 258 B.R. 495 (Bankr. M.D. Fla. 2000). The payments were separate transactions from the stock to Ms. Robinson, Ms. Terry, or Roy and Rudolph Terry by the Defendants to purchase stock. These transactions were separate and unrelated. Defendants may not seek recoupment for value given to a third party that benefited Terry Manufacturing in no measurable manner.

The statutory provision cited by the Defendants speaks to a limitation on the damages relating to the transfer rather than whether the transfer itself is avoidable. In any event, the statute cannot fairly be read to hold that a giving of value by a transfer to an insider somehow insulates the transferee from liability. By Defendants' reasoning insiders are free to loot the debtor by causing the debtor to make transfers to a third party. This cannot be what is intended by the statute for it permits diminution (and potentially exhaustive waste) of the debtor's estate. Rather, the statute should be read to implicitly require that the debtor receive direct benefit as a result of the transfer to the third party such as when the debtor's payment has the results of satisfying its own obligation to that third party. To rule, as suggested by the Defendants, that a transfer is insulated if the value may be given to an insider or another entity, related or unrelated to the debtor, effectively nullifies the requirement that a transaction is subject to avoidance unless the debtor receives reasonably equivalent value. The Official Comments do not indicate any intent to make such a fundamental change in the law, and it is simply not credible to suggest this is what the Alabama legislature intended.

### Subsequent Loans by Mr. Horton or His Related Entities Do Not Provide Equivalent Value.

For purposes of the Reply, the Trustee will accept that Mr. Horton or entities controlled by him made loans either directly to Terry Manufacturing or to Roy and Rudolph Terry, but guaranteed by Terry Manufacturing. These loans occurred after the giving of the notes for the

insider stock; Mr. Horton has repeatedly acknowledged that the loans were entirely unrelated.

Typical is the following exchange:

> Q.  At the time (sic) Exhibit 14 the $624,000 note was signed by Roy and Rudolph Terry, did you personally commit to them that you would make additional loans to either them personally or to Terry Manufacturing?
>
> A.  Not in connection with this.  We were working on that Terry Promotional Products, but it was totally two different deals.
>
> Q.  Totally separate?
>
> A.  Yes.

See Transcript of February 8, 2006 Deposition of N.D. Horton, Jr. at 80:21-81:9, relevant excerpts attached hereto as Exhibit A.

The transfers at issue here were wholly unrelated to additional loans, and those loans forming parts of separate and unrelated transactions cannot provide reasonably equivalent value for the transfers by Terry Manufacturing on the promissory notes executed by Allie Robinson, Cotina Terry and Roy and Rudolph Terry.

The core fraudulent conveyance analysis is whether the debtor's net worth has been diminished as a result of the transfer.  *See, e.g., In re Grabill Corp.*, 12 B.R. 983, 994 (N.D. Ill. 1990).  Terry Manufacturing paid nearly $600,000 so that its insiders could purchase stock.  It received nothing in return.  The transfers should be voided and summary judgment should be granted in favor of the Trustee.

PHELPS DUNBAR LLP

By:    /s/ Brent B. Barriere
       Brent B. Barriere, T.A.  (La. Bar No. 2818)
       David L. Patrón (La. Bar No. 22566)
       Catherine E. Lasky (La. Bar No. 28652)
       One Canal Place
       365 Canal Street, Suite 2000
       New Orleans, LA 70130-6534
       Telephone:  504-566-1311
       Facsimile:  504-568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, L.L.C.**

## CERTIFICATE OF SERVICE

I, Brent B. Barriere, hereby certify that on the 15th day of February, 2006 and on behalf of J. Lester Alexander III, Trustee of Terry Manufacturing Co., Inc. and Terry Uniform Company, L.L.C., I served a copy of Trustee's Reply to Defendant's Opposition to Summary Judgment by  First Class mail to James M. Reynolds, III and N.D. Horton, Jr. upon C. Ellis Brazeal III, Watson, Wells, Anderson & Berchall LLP, 1819 5th Avenue North, Suite 1100, Birmingham, AL 35203.

              /s/ Brent B. Barriere            .

**FOSHEE & TURNER COURT REPORTERS**

1  no, sir.  I remember they paid something

2  down and paid for it over a period of

3  time.  But I do not have any recollection

4  of it.

5      Q.    To the best of your recollection,

6  was Terry Manufacturing a customer of

7  Perky Cap prior to the Terrys'

8  acquisition of the stock in the company

9  in 1994?

10     A.    Yes, sir.  They had been their

11 largest account for several years before

12 they approached us about buying part of

13 the stock.

14     Q.    Okay.

15     A.    Or part interest in the company.

16 They really negotiated to buy the whole

17 thing.  But they never did until, you

18 know, many years later.

19     Q.    Prior to any conversations you

20 may have had concerning the sale of

21 stock, as contemplated by Exhibit 2, had

22 you had any direct dealings with Rudolph

23 Terry?

EXHIBIT

tabbies

_A_

Page 80

1    you agreed to here?

2        A.   Yes.

3        Q.   All right.  And you agree with

4    me, sir, there's nothing in this

5    agreement concerning the Terrys'

6    acquisition of your remaining stock?

7        A.   No, sir.

8        Q.   All right.  To your knowledge, is

9    there any document that describes this

10   conversation you had with the Terrys

11   where they wanted to be able to use Perky

12   Cap's assets to float a loan?

13       A.   I've seen a document documenting

14   it, and maybe it was a write-up from the

15   Peoples Bank stating the application made

16   and what was going to be done with the

17   money.

18       Q.   Now, let me ask you another

19   question, sir, because I don't think I

20   have the document you're referring to.

21   At the time Exhibit 14, the $624,000

22   note, was signed by Roy and Rudolph

23   Terry, did you personally commit to them

Page 81

1      that you would make additional loans to

2      either them personally or to Terry

3      Manufacturing?

4          A.     Not in connection with this.  We

5      were working on that Terry Promotional

6      Products, but it was totally two

7      different deals.

8          Q.     Totally separate?

9          A.     Yes.

10         Q.     All right.  Did American Real

11     Estate, at the time of the execution of

12     this note, make any commitment that it

13     would make additional loans to the Terrys

14     personally or Terry Manufacturing?

15         A.     Not in connection with this loan.

16     We were negotiating the five and a half

17     million dollar loan with them to do Terry

18     Promotional Products.

19         Q.     But that was a completely

20     separate deal?

21         A.     Yes.  And I know that I have

22     acted pretty stupidly to get snookered

23     the way I have, but I am not stupid

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                              )
                                    )
TERRY MANUFACTURING                 )    CASE NO.  03-32063-WRS
    COMPANY, INC.                   )
                                    )    CHAPTER 7
    Debtor                          )
                                    )

IN RE:                              )
                                    )    CASE NO.  03-32213-WRS
TERRY UNIFORM                       )
    COMPANY, LLC,                   )    CHAPTER 7
                                    )
    Debtor.                         )

J. LESTER ALEXANDER, III,           )
TRUSTEE OF TERRY                    )
MANUFACTURING COMPANY, INC.         )
AND TERRY UNIFORM COMPANY,          )    ADVERSARY PROCEEDING
LLC                                 )
                                    )    NO.  05-03042
VERSUS                              )
                                    )
N. D. HORTON, JR. AND JAMES         )
M. REYNOLDS, III                    )

SECOND AFFIDAVIT OF J. LESTER ALEXANDER, III, IN SUPPORT OF
THE SUMMARY JUDGMENT MOTION OF J. LESTER ALEXANDER, III,
TRUSTEE OF TERRY MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY, LLC

STATE OF ALABAMA
COUNTY OF JEFFERSON

NO.99585278.1



BEFORE ME, Notary Public, personally came and appeared,

## J. LESTER ALEXANDER III

who, after being first duly sworn, did depose and declare as follows:

1.

I am the duly-appointed and acting Chapter 11 Trustee (the "Trustee") of Terry Manufacturing Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC.

2.

I have reviewed the records of Perky Cap Company ("Perky Cap") reflecting the sales by Perky Cap to Terry Manufacturing.

3.

Based upon my review of those records, I have determined that there is no correlation between the ownership of Perky Cap stock by the Terry family members, specifically Allie Robinson, Cotina Terry, and Roy and Rudolph Terry, and the amount of product purchased by Terry Manufacturing from Perky Cap.

4.

In fact, Terry Manufacturing's largest purchases of product from Perky Cap occurred prior to the purchase of Perky Cap stock by Cotina Terry and Allie Robinson in 2000 and Roy

-2-

and Rudolph Terry in 2002. A graph detailing Terry Manufacturing's purchases from Perky Cap

from August 1991 to June 2003 is attached hereto as Exhibit "1".

5.

     The foregoing facts are known to me personally, and I would so testify were I called upon

to do so in a court of law.


                    _____

                    J. LESTER ALEXANDER, III

Sworn to and subscribed before me,
this _____ day of February, 2006.

_____
      NOTARY PUBLIC

My Commission expires _____.

-3-



TMC Purchases from Perky Cap

2/10/94 - Terry's Purchased Stock

5/31/02 - Terry's Purchased Stock

Trendline

Purchases

DRAFT: Attorney-Client Work Product, Privileged and Confidential

EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
| COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | ADVERSARY PROCEEDING |
| | ) | NO. 05-03042 |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON, JR. AND JAMES | ) | |
| M. REYNOLDS, III | ) | |

## TRUSTEE'S OBJECTIONS TO THE PRETRIAL DISCLOSURES FILED BY DEFENDANTS N.D. HORTON JR. AND JAMES M. REYNOLDS, III

NOW INTO COURT, through undersigned counsel, comes plaintiff, J. Lester Alexander, III, the duly appointed and acting Chapter 7 Trustee (the "Trustee") of Terry Manufacturing Company, Inc., ("Terry Manufacturing") and Terry Uniform, L.L.C. ("Terry Uniform") and hereby files his objections to the pretrial disclosures filed by the defendants.

The Trustee objects to the defendants' listing of Randy Averett and Dick Schmidt as witnesses the defendants expect to present at trial.  Randy Averett did not prepare the report

-1-

NO.99588760.1

submitted by the defendants in this matter and has no knowledge or information relevant to this proceeding. Dick Schmidt is legal counsel for the defendants and should not be permitted to testify as a fact witness.

Finally, the Trustee objects to the defendants' identification of the "Report of Randy Averett together with any supporting documents" as an exhibit defendants expert to offer as evidence. No report prepared by Randy Averett has been prepared nor produced to the Trustee in this proceeding.

For the foregoing reasons, the Trustee respectfully requests that this Court strike Randy Averett, Dick Schmidt and the Report of Randy Averett from the defendants' pretrial disclosures.

Respectfully submitted this 7th day of March, 2006.

Respectfully submitted,

By:    /s/ Brent B. Barriere
Brent B. Barriere, T.A. (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

-2-

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 7th day of March, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.


$\underline{\quad /s/ \text{ Catherine E. Lasky} \qquad\qquad}$

NO.99588760.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
|   COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
|   Debtor | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
|   COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
|   Debtor. | ) | |

_____

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | ADVERSARY PROCEEDING |
| | ) | NO. 05-03042 |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON, JR. AND JAMES | ) | |
| M. REYNOLDS, III | ) | |

**TRUSTEE'S SUPPLEMENT TO HIS OBJECTION TO
ADMISSION OF TESTIMONY OF RANDY AVERETT AND
MOTION TO STRIKE
RANDY AVERETT AND JESSE SLATON AS EXPERT WITNESSES**

NOW INTO COURT, through undersigned counsel, comes plaintiff, J. Lester Alexander, III, the duly appointed and acting Chapter 7 Trustee (the "Trustee") of Terry Manufacturing Company, Inc., ("Terry Manufacturing") and Terry Uniform, L.L.C. ("Terry Uniform") and respectfully requests that the Court (i) refuse to permit Randy Averett to testify at the trial of the

-1-

captioned Adversary Proceeding, and (ii) that Mr. Averett and Mr. Jesse Slaton be stricken as expert witnesses for the following reasons.

(i)    Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7026 (the "Rules") require that a proffered expert witness be specifically identified and tender "a written report prepared and signed by the witness." The expert report rendered by defendants was prepared and signed by Mr. Slaton; Mr. Averett has testified that he did not draft, edit or sign the report. Indeed, he did not even review the report until **after** it was delivered to counsel for the Trustee. Likewise, Mr. Averett has not made any of the other disclosures required by the Rules. Mr. Slaton, the author and signatory of the report, is available for trial, and Mr. Averett, who has not complied with any of the requirements of the Rules, should not be permitted to testify.

(ii)    This case concerns the Trustee's demand for avoidance of payments made by Terry Manufacturing in satisfaction of promissory notes given to the defendants by Cotina Terry, Allie Robinson, Roy Terry and Rudolph Terry. The report prepared by Mr. Slaton ignores those transactions entirely, and instead attempts to track the application of proceeds of three loans which are not at issue in this case and made by entities who are not even defendants. In his report, Mr. Slaton purports to provide "analysis…on specific loans that are the subject of the claims against the defendants made by the Trustee…." Mr. Slaton simply got it wrong. The Trustee has made no claim whatsoever with respect to the three loans Mr. Slaton analyzed.

(iii)    Whether defendants would engage an expert and, if so, when he would render a report were the subject of extensive discussions between counsel for the Trustee and counsel for the defendants over a several week period. On multiple occasions, both the Trustee and his

counsel were advised that whatever expert might be engaged by defendants, he would not address solvency issues. Consistent with that position, Mr. Slaton's report makes no mention of the solvency issue. On March 17th, a bare ten days before trial, counsel for defendants reversed position and first announced that Mr. Averett (or in his absence Mr. Slaton) would provide expert testimony on whether Terry Manufacturing was insolvent at the time of the various transactions in question. This tardy reversal plainly violates the requirement of the Rules that "[t]he report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Further, permitting this tidy and undisclosed testimony on solvency will significantly prejudice the Trustee. Mr. Averett did offer some opinions on the financial conditions of Terry Manufacturing in connection with his engagement by the Bank of Wedowee and First Tuskegee Bank. Those opinions are founded on certain appraisals by the Terrys, which the Trustee will seek to prove are either wildly inflated or outright fraudulent. That showing will require testimony by the appraisers, and, given the late date, the Trustee will not be able to obtain their attendance at trial.

### The expert report submitted by defendants is not relevant to this litigation.

The Supreme Court has emphasized that it is the duty of a trial court "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The expert report submitted by the defendants does not provide any analysis relevant to this litigation. According to the expert report, the "purpose of the analysis was to determine the specific use of loan proceeds from loans made by N.D. Horton and James M. Reynolds, II. Terry Manufacturing, Inc. (sic). **The analysis was performed on specific loans that are the subject of the claims against the Defendants made by the Trustee** of Terry

-3-

Manufacturing Company, Inc."  See Defendants' Expert Report, dated February 24, 2006, at 1 (emphasis supplied).  The report is attached hereto without exhibits as Exhibit A.

Exhibit D-1 to the expert report defines the loans that were the subject of Mr. Slaton's analysis; a loan dated November 20, 2000[1] from American Real Estate to Terry Manufacturing in the amount of $5,500,000.00; a loan dated August 6, 2001 from American Real Estate to Terry Manufacturing in the amount of $1,500,000.00; and a loan dated May 30, 2002 from Peoples Bank of Eatonton to Perky Cap Company in the amount of $1,500,000.00.  *See* Exhibit D-1 to Defendants' Expert Report dated February 24, 2006, attached hereto as Exhibit B.  None of the loans that were listed on Exhibit D-1 as the subject of the defendants' expert analysis are at issue in this case.

The Trustee's complaint in this litigation asserts that the purchases of Perky Cap stock by Cotina Terry, Allie Robinson, Roy Terry and Rudolph Terry from the defendants, but paid for by Terry Manufacturing, are fraudulent conveyances under federal and state law.  He does not seek to recover any amounts paid by Terry Manufacturing in connection with the loans listed on Exhibit D-1 and exclusively addressed by the report.

Messrs. Slaton and Averett did not conduct any analyses, nor even consider the transactions which are at issue in this litigation.  Mr. Slaton and Mr. Averett acknowledged in their depositions that they made no analysis concerning the Cotina Terry, Allie Robinson, Roy Terry or Rudolph Terry stock transactions.  *See* Deposition of Randy Averett at 30-35, attached hereto as Exhibit C; Deposition of Jesse Slaton at 13-15, attached hereto as Exhibit D.  Both admitted that their only knowledge of the transactions at issue in this litigation was what they

---

1    Mr. Averett testified that this is a typographical error.  The loan actually closed on November 10, 2000.

read in the Trustee's expert report, and that they first read that report some time in the two hours

preceding the depositions. *Id.* Typical is the exchange with Mr. Slaton :

> "Q.   All right.  Have you done any analysis whatsoever with respect to a transactions involving Cotina Terry, N.D. Horton, and James Reynolds?
> A.    No.
> Q.    Have you done any analysis whatsoever in connection with a transaction involving Allie Robinson, N. D. Horton, and James Reynolds?
> A.    No.
> Q.    Are you aware of either of those transactions having taken place?
> A.    I am aware of them.
> Q.    Based on what?
> A.    Based on the summary report prepared by AEA Group, dated November 1st, 2005.
> Q.    When did you first review that instrument, sir?
> A.    This morning at 9:00.
> Q.    All right.  Likewise, did you do any analysis in connection with a transaction involving Rudolph Terry, Roy Terry, individually, N.D. Horton, and James Reynolds?
> A.    No.

Exhibit D at 14:1-14:20.

Mr. Slaton simply got it wrong.  The Trustee has not asserted any claims with respect to

the three loans he analyzed.  Put simply, his analysis and proposed testimony are irrelevant, and

should not be admitted.

**Mr. Averett may not testify because he has failed to comply with any of the <u>disclosure obligations imposed by Federal Rule of Civil Procedure 26(a)(2)(B) and</u> <u>Bankruptcy Rule 7026</u>**

Rule 26(a)(2)(B) requires that the written report submitted by the expert be "prepared and

signed by the witness."  The expert report produced by defendants to the Trustee was signed by

Jesse Slaton alone.  The letter dated February 27, 2006, and submitted by defendants in

conjunction with the expert report was also signed by Mr. Slaton only.

At his deposition, Mr. Averett admitted that he neither drafted the report nor did he review or edit the report before it was delivered to Trustee's counsel. In fact, Mr. Averett had not even read the February 27th letter until it was presented to him at his deposition. *See* Deposition of Randy Averett at 23-26, 68-70, attached hereto as Exhibit E; Deposition of Jesse Slaton at 9-13, attached hereto as Exhibit F.

Mr. Averett is neither the author nor signatory of the report as required by the Rules. Likewise, he has not provided the other disclosures such as compensation, publications and prior expert experience required by the Rules. Indeed, he has not complied with **any** of the Rules.[2]

### <u>The Defendants Should Not Be Permitted to Offer Expert Testimony on Solvency</u>

Counsel for defendants and for the Trustee had multiple discussions over the six-week period ending February 22nd on whether the defendants would engage an expert, and, if so, the timing of his report. Initially, the report was to be tendered by the end of January, and that date was extended until the first week of February, then February 10th, and ultimately February 24th. The report was tendered on February 27th.[3] Importantly, in these discussions and discussions which also involved the Trustee, counsel for defendants repeatedly stated that he did not intend to contest the Trustee's findings with respect to insolvency and that the defendants' expert would

---

2    Inexplicably, Mr. Slaton, likewise, failed to provide the disclosures required by the Rules with respect to his qualifications, compensation, publications and prior experience as an expert. The Trustee does not object to his testifying solely on this basis.

3    On February 24th, counsel for defendants attempted to correspond with counsel for the Trustee to advise that the report would not be available until February 27th. The letter was only sent by email, and the records of Trustee's counsel do not indicate that it was received. In any event, the letter did not state that defendants would reverse their decision and offer an expert opinion on solvency. The letter did note that "Mr. Averett or Mr. Slaton would testify as to…the opinions expressed in Mr. Averett's previous report in the case against the banks." In fact, Mr. Averett's firm provided multiple reports in the bank cases totaling over 60 pages in length. The focus of most of that work was Mr. Averett's attempt to trace loan proceeds, the same topic counsel for defendants had indicated would be the scope of Mr. Averett's work in this case.

not address solvency. Consistent with that repeated representation, the report authored by Mr. Slaton and tendered on February 27th makes no mention of solvency whatsoever.

Mr. Averett's deposition was conducted on March 17th. Moments before it was to commence, counsel for defendants announced that he was reversing his long announced and often repeated position that his expert would not address solvency and advised that Mr. Averett might be asked to opine on that issue. Counsel further stated that Mr. Averett would be relying on reports he had rendered in litigation filed against Bank of Wedowee and First Tuskegee Bank. On March 21st, counsel for defendants advised that he had decided to examine his expert on solvency at trial.

The report rendered in this case makes no mention of any issue pertaining to solvency, and for an expert to offer an opinion in court, his "report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions…." Fed. R. Civ. Pro. 26(a)(2)(B). None of this required information appears in Mr. Slaton's report.

Defendants' failure to provide any notice that they would not honor their counsel's repeated representations concerning the scope of their experts' testimony will significantly prejudice the Trustee. At this stage and given the flagrant disregard of defendants' disclosure obligations, the Trustee is uncertain of what opinions and what supporting data will be offered. Assuming the defense expert testifies in a manner consistent with a May 31, 2005 report in the

bank cases,[4] it will be to the effect that Terry Manufacturing was marginally solvent as of December 31, 2000. In turn, that opinion is dependent upon the validity of two appraisals accepted by Mr. Averett. Given proper notice, the Trustee would call the appraisers who allegedly rendered those reports, Messrs. Henderson and Lambert, to establish that one of the appraisals is an outright fraud prepared by Roy Terry and that the other is wildly inflated. Having only learned today of the Trustee's need for these witnesses, they have not been subpoenaed, and counsel for the Trustee has been told that both will be out of the country on the date of trial.

The required disclosures of Rule 26(a)(2)(B) and Bankruptcy Rule 7026 are designed to insure full and timely disclosure of the opinions and qualifications of the expert witness who will actually testify so that counsel can avoid trial by ambush. And trial by ambush is what the Trustee is now facing. He respectfully requests that the Court bar Mr. Averett from testifying, that the Court reject defendants' grossly tardy attempt to offer solvency opinions, and that it reject Mr. Slaton's opinions and analysis as irrelevant.

Respectfully submitted this 22nd day of March, 2006.

Respectfully submitted,

By:    /s/ Brent B. Barriere_____
Brent B. Barriere, T.A. (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534

---

4    The several subsequent reports in those cases only addressed tracing of proceeds from bank loans.

Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 22nd day of March, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.


    /s/ Catherine E. Lasky

NO.99591510.1

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 23

1          MR. BRAZEAL:  Yes.

2          MR. BARRIERE:  Very good.

3      Q.   (By Mr. Barriere) Mr. Averett,

4  what role did you take in the drafting of

5  Exhibit 2?

6  (Plaintiff's Exhibit 2 was marked for

7  identification and is attached.)

8      A.   What role did I take in the

9  drafting of Exhibit 2?  Jesse Slaton

10  drafted the report, and he talked with me

11  before the drafting of the report.  And I

12  was aware of what was going in the

13  report, and I was aware of the

14  conclusions included in the report.

15      Q.   And how were you made aware of

16  those inclusions?

17      A.   From a discussion with Jesse.

18      Q.   All right.  The report is dated

19  February 24th.  Is that the date, to the

20  best of your knowledge, it was issued to

21  Mr. Brazeal?

22      A.   I would say it was issued around

23  that date, pretty close, yes.

**EXHIBIT**

tabbies®   "E"

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 24

1    Q.   All right.  Did you review the

2    report prior to its being delivered to

3    Mr. Brazeal?

4    A.   No.

5    Q.   Did you play any role in the

6    actual writing of the report, the

7    creation and revision of the prose?

8    A.   To the extent that it was similar

9    to the other report we rendered, yes.

10   Beyond that, no.

11   Q.   All right.  So just so the

12   record's clear, Jesse wrote this report,

13   he edited the report, and sent it to

14   Mr. Brazeal without your involvement?

15   A.   No, that's not true.

16   MR. BRAZEAL:  Objection.  Let me

17   object to the form of the question.  I

18   believe that mischaracterizes his

19   testimony.

20   Q.   Okay.  Well, explain to me how my

21   comment is inaccurate.

22   MR. BRAZEAL:  I'll let

23   Mr. Averett do that.

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 25

1     A.   I would say -- but I would have

2   to repeat what I said just a moment ago,

3   that Jesse and I worked on this together,

4   that I was clear on the methodology, that

5   it was similar to the previous report

6   that we issued in the other case, and

7   that it was pretty clear where we were

8   headed with this, that I talked with

9   Jesse several times along the way as to

10   the progress.  And that he actually

11   drafted the report, wrote the report, but

12   he and I had dialogue about it.

13     Q.   All right.  And my question was

14   inartful.  I was really focusing on the

15   actual writing of the report.  He did

16   that, not you; correct?

17     A.   That's right.

18     Q.   And the editing of the report was

19   also performed by him, not you?

20     A.   Correct.

21     Q.   And the first time you read the

22   report was after it was delivered to

23   Mr. Brazeal; is that also correct?

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 26

1      A.   Yes.  It might be splitting hairs
2   here.  Like the day that it was delivered
3   to Mr. Brazeal, I might have looked at
4   it.
5      Q.   Okay.
6      A.   Yeah.
7      Q.   All right.  Let's turn to the
8   substance, if we may.  The first
9   paragraph, "Purpose of Engagement,"
10  reads, and I quote:  "The purpose of the
11  analysis was to determine a specific use
12  of loan proceeds from loans made by N. D.
13  Horton and James Reynolds, II. Terry
14  Manufacturing, Inc.  The analysis was
15  performed on specific loans that are the
16  subject of the claims against the
17  defendants made by the trustee of Terry
18  Manufacturing Company, Inc."
19          You see where I'm reading from,
20  sir?
21     A.   Yes.
22     Q.   All right.  How did your firm
23  identify those which are the, quote,

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 68

1    deposition, no.

2        Q.   All right.  Have you been asked

3    to do any additional work?

4        A.   No.

5        Q.   Have you been asked to render any

6    opinions other than those set forth in

7    your report?

8        A.   There's been some discussion

9    about the solvency issue, or insolvency

10   issue.  And then, as I understand it,

11   there was some testimony by Lester that

12   the company didn't need this money that

13   was advanced to it.  And then there was

14   some discussion about since they didn't

15   need it, they received no value.  And

16   we've had some discussion about whether

17   they in fact did receive value or not.

18       Q.   In that regard, may I ask you to

19   look at the copy of the letter dated

20   February 27th, 2006.  Mine is not an

21   executed copy, but it appears over

22   Mr. Slaton's name, and it's directed to

23   Ellis Brazeal.  Do you have a copy before

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 69

1    you, sir?

2        A.    Yes.

3        Q.    We've marked this previously as

4    Exhibit 3, and I'll ask that it be

5    attached to the deposition.  Did you play

6    any role in the drafting of Exhibit 3?

7    (Plaintiff's Exhibit 3 was marked for

8    identification and is attached.)

9        A.    No.

10       Q.    Did you review it prior to its

11   being issued to Mr. Brazeal?

12       A.    No.

13       Q.    All right.  Have you reviewed it

14   since February 27, 2006?

15       A.    I'm reviewing it now.

16       Q.    Is this the first time you've

17   looked at it?

18       A.    No.  I saw it yesterday, but I

19   didn't read it.

20       Q.    All right.  So I'm better served

21   in addressing my questions as to the

22   author, Mr. Slaton; correct?

23       A.    Well, that's up to you.  I mean,

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 70

1   I'm reading it while we're sitting here.

2       Q.    Okay.  Well, would I be correct

3   in understanding, sir, that any research

4   done in connection with this letter, or

5   the opinions set forth in this letter,

6   would have been performed by Mr. Slaton

7   and not you?

8       A.    Yes.

9       Q.    All right.

10          MR. BRAZEAL:  Brent, it's Ellis.

11  Just I don't know whether you know, I

12  mean, there have been several cases.  Les

13  has had his deposition taken several

14  times.  You know the report that he's

15  done in this case is dated November 15th

16  of 2005 --I'm sorry, November 1st of

17  2005.

18          What I had requested Warren,

19  Averett to do was there was a specific

20  line of questioning in Les's deposition,

21  I think in the bank case, and I had

22  forwarded to you.  Well, I need to go

23  resend that e-mail.  I'll do that over

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 13

1        A.    He said it appeared to be

2    adequate.

3        Q.    Did you have any other

4    discussions besides his comments that it

5    appeared to be adequate?

6        A.    No.

7        Q.    Okay.  The first paragraph,

8    "Purpose of Engagement," states, and I

9    quote, The analysis was performed on

10   specific loans that are the subject of

11   the claims against the defendants made by

12   the trustee of Terry Manufacturing

13   Company, Inc.

14        Do you see where I'm reading

15   from, sir?

16        A.    Yes.

17        Q.    All right.  Did Mr. Brazeal ever

18   suggest to you that there were other

19   loans at issue in the action brought by

20   the trustee?

21        A.    No.  He asked us to trace the

22   loan proceeds related to these particular

23   loans.

EXHIBIT

tabbies®    "D"

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

Page 14

1    Q.   All right.  Have you done any

2  analysis whatsoever with respect to a

3  transaction involving Cotina Terry, N.D.

4  Horton, and James Reynolds?

5    A.   No.

6    Q.   Have you done any analysis

7  whatsoever in connection with a

8  transaction involving Allie Robinson,

9  N.D. Horton, and James Reynolds?

10   A.   No.

11   Q.   Are you aware of either of those

12  transactions having taken place?

13   A.   I am aware of them.

14   Q.   Based on what?

15   A.   Based on the summary report

16  prepared by AEA Group, dated November

17  1st, 2005.

18   Q.   When did you first review that

19  instrument, sir?

20   A.   This morning at 9:00.

21   Q.   All right.  Likewise, did you do

22  any analysis in connection with a

23  transaction involving Rudolph Terry, Roy

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

Page 15

1    Terry, individually, N.D. Horton, and

2    James Reynolds?

3        A.   No.

4        Q.   All right.  Based upon your prior

5    testimony, would I be correct in

6    understanding your sole knowledge

7    concerning that transaction is derived

8    from your review of Mr. Alexander's

9    report, which you did sometime this

10   morning?

11       A.   Yes.

12       Q.   All right.  Have you been asked

13   to do any analysis with respect to any of

14   those three transactions?

15       A.   No.

16       Q.   All right.

17       MR. BARRIERE:  I've got no

18   further questions for this witness.  I'll

19   pass him over to Mr. Brazeal.

20       MR. BRAZEAL:  No questions.

21

22           END OF DEPOSITION

23             (12:10 p.m.)

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 30

1    amount of $5,500,000; correct?  A loan

2    dated August the 6th, 2001, American Real

3    Estate to Terry Manufacturing Company, in

4    the amount of $1,500,000; and a loan

5    dated May the 30th, 2002, by People's

6    Bank of Eatonton to Perky Cap Company in

7    the amount of $1,500,000.  Is that

8    correct?

9        A.    The first loan is dated November

10   10th.

11       Q.    Okay.  I'm referring to D-1, you

12   have a loan dated 11/20; correct?

13       A.    Yes, that's correct.

14       Q.    We're talking about the same

15   loan?

16       A.    That's right.

17       Q.    That's just a typographical

18   error?

19       A.    Correct.

20       Q.    All right.  And so the record's

21   clear, these are the three loans and only

22   the three loans that you have considered

23   in connection with this engagement?

**EXHIBIT**

"C"

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 31

1     A.   Yes.

2     Q.   And have you considered any other

3  transactions besides these three loans

4  involving Mr. Horton and Mr. Reynolds?

5     A.   No.

6     Q.   Now, specifically, sir, in

7  connection with your work in this case,

8  have you in any way considered a

9  transaction between Cotina Terry and Mr.

10  Horton and Reynolds which occurred on

11  November 10th, 2000, by which Ms. Terry,

12  Cotina Terry, tendered a note for

13  $200,000 to Mr. Horton and Mr. Reynolds?

14     A.   No.

15     Q.   Prior to my asking this question,

16  had you ever been heard of that

17  transaction?

18     A.   Yes.

19     Q.   All right.  Tell me what you know

20  about it.

21     A.   I heard about it for the first

22  time this morning.

23     Q.   Okay.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

90ea6d19-94d3-4c79-ba5c-21adf768f338

Page 32

1      A.   And what I know about it, I saw

2   it in Lester's expert report involving

3   this case.

4      Q.   All right.  Was this morning the

5   first chance you had to review

6   Mr. Alexander's report?

7      A.   Yes.

8      Q.   So I would infer, given that it's

9   still only ten till 11:00, you've done no

10  analysis concerning this transaction

11  between Cotina Terry, Messrs. Horton and

12  Reynolds whatsoever; is that correct?

13     A.   Yes.

14     Q.   All right.  And whatever

15  knowledge you have about that is limited

16  to what may be gleaned from Mr.

17  Alexander's report rendered in this

18  litigation?

19     A.   Yes.

20     Q.   All right.  Likewise, sir, have

21  you done any analysis whatsoever, or

22  anyone at your firm done any analysis

23  whatsoever, with respect to a transaction

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 33

1    involving Allie Robinson -- that's

2    spelled, by the way, A-L-L-I-E Robinson

3    -- N. D. Horton, and James Reynolds on

4    November 10th, 2000, by which

5    Ms. Robinson tendered a $200,000

6    promissory note to Mr. Horton and

7    Mr. Reynolds?

8        A.   No.  Did that start out by saying

9    have I done any work regarding that?

10       Q.   Yes, sir.

11       A.   Okay.  The answer to that is no.

12       Q.   And what knowledge, if any, do

13   you have concerning that transaction?

14       A.   Other than what's in this report

15   and this morning, none.

16       Q.   "This report" referring to the

17   Alexander expert report?

18       A.   Yes.

19       Q.   And again, as I understand it,

20   whatever information you have is what you

21   may have picked up from reading Mr.

22   Alexander's report, which you did some

23   time between, what, 9:00 and 11:00 this

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 34

1    morning?

2        A.    Yes.

3        Q.    All right.  Do you have any

4    knowledge as to what payments were made

5    on the note given by Cotina Terry to Mr.

6    Horton and Mr. Reynolds?

7        A.    No.

8        Q.    Do you have any knowledge with

9    respect to any payments made on the note

10   given by Allie Robinson to Mr. Horton and

11   Mr. Reynolds?

12       A.    No.

13       Q.    Do you have any knowledge as to

14   either the amount of or the payee on

15   those payments?

16       A.    No.  Other than what I'm reading

17   in these reports, no.

18       Q.    Okay.  Sir, have you done any

19   analysis with respect to a transaction

20   between Roy and Rudolph Terry and Mr.

21   Horton and Mr. Reynolds on May the 20th,

22   2000, by which the two Terry brothers

23   gave a note of $624,000?

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 35

1    A.    No.

2    Q.    Am I correct that what

3 information, if any, you may have

4 concerning that transaction is derived

5 solely from this morning's review of Mr.

6 Alexander's report?

7    A.    That's correct.

8    Q.    Okay.  And just so the record's

9 clear, with respect to all three

10 transactions we've spoken of, you were

11 not asked to address those in any way as

12 part of your engagement in this

13 litigation?

14    A.    That's correct.

15    Q.    And indeed, were not even aware

16 of those until your review of that report

17 sometime between 9:00 and 11:00 this

18 morning?

19    A.    That's correct.

20    Q.    Returning to your report, sir,

21 Exhibit 2.  Information used, I'm going

22 to quote here:  "Warren, Averett,

23 Kimbrough & Marino relied on numerous

90ea6d19-94d3-4c79-ba5c-21adf768f338

**TERRY MANUFACTURING VS N.D. HORTON & JAMES M. REYNOLDS, II**
Loans to Terry Manufacturing & Related Entities

| Preparer | JDS |
|---|---|
| Date | 2/27/06 |

| Loan Date | Creditor | Debtor | Loan Amount | Draw Date | Net Proceeds | Ref | Bank of Deposit/ Purpose | Acct. of Deposit |
|---|---|---|---|---|---|---|---|---|
| | | | A-2 | | D-1.1 | | | |
| 11/20/00 | American Real Estate | Terry Manufacturing Co., Inc. | $ 5,500,000 | 11/13/00 | $ 1,994,960 | BOW-1 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | 12/18/00 | 1,000,000 | BOW-2 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | 01/16/01 | 1,000,000 | BOW-3 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | 02/16/01 | 1,000,000 | BOW-4 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | 03/16/01 | 500,000 | BOW-5 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | Unknown | 5,040.00 | | Unknown | |
| | | | | | $ 5,500,000 | | | |
| | | | | | | | | |
| 08/06/01 | American Real Estate | Terry Manufacturing Co., Inc. | $ 1,500,000 | 08/06/01 | $ 16,032 | | Legal Fees | |
| | | | | 08/09/01 | 733,968 | BOW-8 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | 09/04/01 | 750,000 | BOW-9 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |
| | | | | | $ 1,500,000 | | | |
| | | | | | | | | |
| 05/30/02 | Peoples Bank of Eatonton | Perky Cap Company, Inc. | $ 1,500,000 | 05/30/02 | 1,500,000 | BOW-10 | ᵮ Bank of Wedowee | 5011256 Sweep ✓ |

✓ The account is confirmed to be a Terry Manufacturing Company, Inc. operating account.

ᵮ Traced into the account on the deposit date and reviewed copy of the deposit ticket

D-1

c:\pfx engagement\win\workpapers\{4c88c88f-31bd-46a3-80f6-a52012f0781}\{0af6685c1-2904-4892-9ad2-ac45c872a7a7}\{517e553c-ca36-4c5a-8fd5-54cc8f48ceb6e}.xls

EXHIBIT "B" tabbies



# Warren, Averett, Kimbrough & Marino, LLC
### Certified Public Accountants • Business & Financial Consultants

February 24, 2006

Terry Manufacturing Company, Inc
Lester Alexander, Trustee
v.
N.D. Horton & James M. Reynolds, II.

**Purpose of the Engagement**

Warren, Averett, Kimbrough & Marino was engaged by the Walston, Wells & Birchall, LLP. to perform a tracing analysis and report on our findings. The purpose of the analysis was to determine the specific use of loan proceeds from loans made by N.D. Horton & James M. Reynolds, II. Terry Manufacturing Company, Inc. The analysis was performed on specific loans that are the subject of the claims against the Defendants made by the Trustee of Terry Manufacturing Company, Inc.

**Information Used**

Warren, Averett, Kimbrough & Marino relied on numerous documents in performance of this analysis and the preparation of this report. The documents include those provided by the trustee to support his reconstructed financial reports, cash and loan account statements, detailed deposit and disbursement images.

**Approach Used**

To perform this analysis we first identified the loans that are the subject of the claims against the defendants and obtained copies of the original loan documents. From these documents we traced the disbursement of loan proceeds to a corresponding deposit into a bank account controlled by the Terry's. Upon identification of a deposit from the loan proceeds into a Terry Controlled account a determination of the exact cash balance prior to the deposit was made based on the bank statement. The transactions making up the beginning balance and the amount of the loan proceeds were then identified in total. These disbursements were then traced to the bank statement and then to an image of the original transaction, to the extent one was available. Whenever possible a comparison was made to the classification used by the Trustee in the work papers that support the



**EXHIBIT**

"A"



Sources and Uses of Cash Report included in his expert opinion. If one of the disbursements was a transfer to another account, the amount was traced to a corresponding deposit in the receiving account. The same steps previously described were then performed until the final use of the funds could be determined.

Because the general ledger and supporting records of the company are not reliable or available and because management likely held checks and was supposedly involved in check kiting activities, we used the bank statements to determine the timing of the transactions. When necessary, our analysis uses a FIFO (First In First Out) cash flow assumption in order to determine the specific uses of funds that are not readily determinable due to combining deposits and or disbursements.

**Findings Related to the Loans**

Schedule D-1 was cross referenced from a schedule (D-1.1) prepared by the Trustee, which details disbursements of loan proceeds. Schedule D-1 provides a tracing of each loan disbursement from the defendants into the initial account of deposit. In all cases these deposits were made to an account in the name of Terry Manufacturing, Inc. From the initial deposits into a Terry Manufacturing account each loan is traced in separate schedules.

**$5,500,000 Loan Dated 11/20/00**

On November 20, 2000 American Real Estate loaned Terry Manufacturing Company $5,500,000 to be disbursed in various draws. The following schedules provide tracing detail for the draws related to this loan.

**Tracing Schedule BOW-1**

On November 13, 2000 Terry Manufacturing Co., Inc. made a draw of $1,994,960 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on 11/13/00. Upon Deposit the account had a balance of $1,884.77. On November 13, 2000 $1,995,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $1,995,000 was transferred back to account 5011256 in various amounts between November 13th and December 7th. From the $1,995,000 loan proceeds, $400,670.89 was disbursed to the U.S Treasury, $33,405 was disbursed to the Bank of Wedowee, $41,666.67 was disbursed to American Real Estate and $1,520,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between November 13th and December 7th.



Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-2**

On December 18, 2000 Terry Manufacturing Co., Inc. made a draw of $1,000,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on December 18, 2000. Upon Deposit the account had a balance of $1,602.21. On November 13, 2000 $866,500 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $869,500 was transferred back to account 5011256 in various amounts between December 19th and December 28th. From the $1,000,000 loan proceeds, $166,717.50 was disbursed to the Bank of Wedowee and $836,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between December 18th and December 28th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-3**

On January 16, 2001 Terry Manufacturing Co., Inc. made a draw of $1,000,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on January 16, 2001. Upon



Warren, Averett, Kimbrough & Marino, LLC
Certified Public Accountants • Business & Financial Consultants

Deposit the account had a balance of $1,865.46. On January 16, 2001 $1,000,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $1,000,000 was transferred back to account 5011256 in various amounts between January 18th and January 25th. From the $1,000,000 loan proceeds $1,000,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between January 18th and January 25th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-4**

On February 16, 2001 Terry Manufacturing Co., Inc. made a draw of $1,000,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on February 16, 2001. Upon Deposit the account had a balance of $1,865.46. On February 16, 2001 $1,000,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $899,000 was transferred back to account 5011256 in various amounts between February 20th and March 15th this left a $101,000 of the February 16th loan proceeds in the 13006819 account on March 15th . From the $899,000 of remaining loan proceeds $33,000 was disbursed the Bank of Wedowee and $866,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between February 20th and March 15th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary



type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-5**

On March 16, 2001 Terry Manufacturing Co., Inc. made a final draw of $500,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on March 16, 2001. Upon Deposit the account had a balance of $1,560.46. On March 16, 2001 $500,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. As of March 15th the Bank of Wedowee account 13006819 contained $101,500 of loan proceeds from the February 16th loan, therefore subsequent to sweeps of $500,000 on March 16th the account had $601,500 available for disbursement. $601,500 was transferred back to account 5011256 in various amounts between March 20th and June 11th. From the $601,500 loan proceeds $122,100 was disbursed to the Bank of Wedowee, $50,000 was disbursed to Perky Cap Company, $35,400 was disbursed to Terry Properties and $394,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were each made on March 20, March 30, and June 11.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**$1,500,000 Loan Dated 8/06/01**

On August 6, 2001 American Real Estate loaned Terry Manufacturing Company $1,500,000 to be disbursed in two draws. Legal fees totaling $16,032 associated with this transaction were paid out of the proceeds at closing. The following schedules provide tracing detail for the draws related to this loan.



**Warren, Averett, Kimbrough & Marino, LLC**
Certified Public Accountants • Business & Financial Consultants

**Tracing Schedule BOW-8**

On August 9, 2001 Terry Manufacturing Co., Inc. made a draw of $733,968 on the $1.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on August 9, 2001. Upon Deposit the account had a balance of $1,930.42. On August 9, 2001 $574,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $560,000 was transferred back to account 5011256 in various amounts between August 9th and August 31st leaving $14,000 in the 13006819 account at August 31st. From the $719,968 of remaining loan proceeds and beginning balance $720,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between August 9th and August 31st.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-9**

On September 4, 2001 Terry Manufacturing Co., Inc. made a draw of $750,000 on the $1.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on September 4, 2001. Upon Deposit the account had a balance of $1,930.42. On September 4, 2001 $350,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. The account contain $14,000 of the August 9th draw from the loan on September 1st therefore the total available in the account after the September 4th draw was $364,000. $364,000 was transferred back to account 5011256 in various amounts between September 6th and September 13th leaving no loan proceeds in the 13006819 account at September 13th. From the $763,968 of remaining loan proceeds $590,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank, $125,000 was transferred to the Terry Manufacturing Company operating account 4928 at Bank of America and $49,968 was disbursed to Terry Manufacturing. The ultimate use of the $49,968 cannot be determined based on the available information. The $125,000 transferred to the Bank of America was used for Government transactions based on the

# Warren, Averett, & Kimbrough & Marino, LLC

Certified Public Accountants  •  Business & Financial Consultants

schedule to receipts and disbursements provided by the Trustee. The transfers to the First Tuskegee Bank account were made on various dates between September 4th and September 10th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

## $1,500,000 Loan Dated 5/30/02

### Tracing Schedule BOW-10

On May 30, 2002 Perky Cap Company loaned Terry Manufacturing Company $1,500,000. On May 31, 2002 Terry Manufacturing Co., Inc. deposited the $1,500,000 loan proceeds into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee. Upon Deposit the account had a balance of $1,557.30. From the $1,500,000, $1,470,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank and $30,000 was disbursed to Terry Manufacturing, Inc., but the ultimate use of the funds cannot be determined based on the information available The transfers to the First Tuskegee Bank account were made on various dates between June 3rd and July 18th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.



Warren, Averett, Kimbrough & Marino, LLC

Certified Public Accountants • Business & Financial Consultants

**Conclusion**

The Trustee has contended that the loan proceeds were not traceable to the final use of the funds because the money was "commingled and laundered". Based on this analysis, the use of the vast majority of funds has been identified. The vast majority of the funds were deposited into Terry Manufacturing Company accounts and appear to be used for ordinary business purposes.


By: _____
Jesse D. Slaton, CPA

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 9

1    for CPA's in the state of Alabama?

2        A.    No.

3        Q.    Sir, you obviously sat through

4    Mr. Averett's deposition and heard your

5    name referenced on multiple occasions.    I

6    take it you are the JDS who appears on

7    the time reconstruction for hours

8    invested in this engagement by the Warren

9    Averett firm?

10       A.    Yes.

11       Q.    All right.    And you were the

12   manager assigned to this engagement

13   involving Mr. Horton and Mr. Reynolds?

14       A.    Yes.

15       Q.    I understand from Mr. Averett's

16   testimony that you are the author of what

17   we previously identified as Exhibit 2,

18   the report dated February 24, 2006.

19       A.    Yes.

20       Q.    And you are the author of what we

21   previously identified as Exhibit 3, the

22   letter to Mr. Brazeal dated February

23   27th, 2006.

**EXHIBIT**

tabbies®    "F"
_____

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 10

1     A.    Yes.

2     Q.    Did anyone assist you in the
3  writing of Exhibit 2?

4     A.    In the specific writing, no.

5     Q.    All right.  Your answer suggests
6  that there was some assistance provided
7  to you, albeit not in actually composing
8  this document.  What are you referring to
9  there?

10     A.    Clerical assistance.

11     Q.    All right.  Would the same be the
12  case with respect to Exhibit 3?

13     A.    No.

14     Q.    Did anyone assist you in any way
15  in connection with the preparation and
16  issuance of Exhibit 3?

17     A.    Not that I recall, no.

18     Q.    And so the record's clear, you're
19  the lone professional, as opposed to a
20  clerical, the lone professional, who was
21  involved in the drafting and editing of
22  Exhibit 2?

23     A.    Yes.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 11

1     Q.    All right.

2     A.    Excuse me, Exhibit 2 or Exhibit

3     3?

4     Q.    Exhibit 2, the report.

5     A.    I am the only certified public

6     accountant that worked on that.

7     Q.    Well, were there any other

8     nonclerical people who worked on that?

9     A.    Accounting intern.

10    Q.    An accounting intern, who was

11    that?

12    A.    Melissa Beasley.

13    Q.    What services did Ms. Beasley

14    provide?

15    A.    Basically sorting bank statements

16    and things such as that.

17    Q.    All right.  Did Ms. Beasley play

18    any hand in either the drafting or

19    editing of Exhibit 2?

20    A.    I think she could have put some

21    of the numbers on some of the lead

22    schedules.

23    Q.    Fair enough.  Did you provide a

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 12

1    draft of what became Exhibit 2 to

2    Mr. Brazeal before the final draft which

3    has been attached to this exhibit?

4        A.    Repeat the question one more

5    time.

6        Q.    Yes.  Did you provide a draft of

7    Exhibit 2 to Mr. Brazeal?

8        A.    Yes, I believe I did.

9        Q.    All right.  If this is dated

10   February 24, do you recall approximately

11   when that occurred?

12       A.    It would have been one day prior

13   to that maybe.

14       Q.    All right.  What comments, if

15   any, did he make to you?

16       A.    None.

17       Q.    Did he provide you with any

18   written alterations to what became

19   Exhibit 2?

20       A.    No.

21       Q.    Did he discuss it with you?

22       A.    We discussed it.

23       Q.    All right.

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 13

1    A.   He said it appeared to be

2    adequate.

3    Q.   Did you have any other

4    discussions besides his comments that it

5    appeared to be adequate?

6    A.   No.

7    Q.   Okay.  The first paragraph,

8    "Purpose of Engagement," states, and I

9    quote, The analysis was performed on

10   specific loans that are the subject of

11   the claims against the defendants made by

12   the trustee of Terry Manufacturing

13   Company, Inc.

14        Do you see where I'm reading

15   from, sir?

16   A.   Yes.

17   Q.   All right.  Did Mr. Brazeal ever

18   suggest to you that there were other

19   loans at issue in the action brought by

20   the trustee?

21   A.   No.  He asked us to trace the

22   loan proceeds related to these particular

23   loans.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                         )
                               )
**TERRY MANUFACTURING**    )    **CASE NO.  03-32063-WRS**
    **COMPANY, INC.**        )
                               )    **CHAPTER 7**
    **Debtor**               )
                               )

IN RE:                         )
                               )    **CASE NO.  03-32213-WRS**
**TERRY UNIFORM**          )
    **COMPANY, LLC,**        )    **CHAPTER 7**
                               )
    **Debtor.**               )

**J. LESTER ALEXANDER, III,**    )
**TRUSTEE OF TERRY**         )
**MANUFACTURING COMPANY, INC.** )
**AND TERRY UNIFORM**      )
**COMPANY, LLC**          )    **ADVERSARY PROCEEDING**
                               )    **NO. 05-03042**
**VERSUS**                )
                               )
**N.D. HORTON, JR. AND JAMES**  )
**M. REYNOLDS, III**         )

## STIPULATIONS

     NOW INTO COURT, through undersigned counsel, comes plaintiff, J. Lester Alexander,

III, the duly appointed and acting Chapter 7 Trustee (the "Trustee") of Terry Manufacturing

Company, Inc., ("Terry Manufacturing") and Terry Uniform, L.L.C. ("Terry Uniform"), and

defendants, M. D. Horton, Jr. ("Mr. Horton") and James Reynolds, III ("Mr. Reynolds"), and

hereby stipulate the facts detailed below.   These stipulated facts shall be considered as

NO.99591577.1

definitively established for all purposes, including in connection with the trial of this Adversary Proceeding, any post-trial motions and other requested relief and any appeal:

1. Messrs. Horton and Reynolds were owners of common stock of Perky Cap Company, Inc. ("Perky Cap"), a manufacturer headquartered in Eaton, Georgia.

2. On November 10, 2000, Cotina Terry, daughter of Roy Terry, executed a Purchase Money Promissory Note (the "Cotina Terry Note") in the principal sum of TWO HUNDRED THOUSAND NO/100 ($200,000.00) DOLLARS, bearing interest at the rate of 9.5% per annum.

3. The Cotina Terry Note was made payable to Mr. Horton and Mr. Reynolds, and was purportedly given in consideration of 9,000 shares of Perky Cap common stock sold to Cotina Terry by Messrs. Horton and Reynolds. These shares represented ten (10%) percent of the outstanding common stock of the Company.

4. Terry Manufacturing was not a signatory to the Cotina Terry Note.

5. All payments on the Cotina Terry Note were made by Terry Manufacturing to Messrs. Horton and Reynolds. The Note was paid in full with payments totaling TWO HUNDRED THIRTY-FOUR THOUSAND, THREE HUNDRED SEVENTY-FIVE DOLLARS AND 81/100 ($234,375.81).

6. On November 10, 2000, Allie Robinson, wife of Rudolph Terry, executed a promissory note in a form identical to that executed by Cotina Terry. The note was designated a Purchase Money Promissory Note (the "Allie Robinson Note"), and, like the note executed by Cotina Terry, was in the principal sum of TWO HUNDRED THOUSAND ($200,000.00) DOLLARS, and provided for 9.5%

-2-

interest.  Also, like the Cotina Terry Note, the promissory note executed by Allie Robinson was given for and in consideration of 9,000 shares of Perky Cap Stock sold to Ms. Robinson by Messrs. Horton and Reynolds.  These shares represent ten (10%) percent of the outstanding common stock of Perky Cap

7.  Terry Manufacturing was not a signatory to the note executed by Ms. Robinson.

8.  Terry Manufacturing executed written guarantees of the promissory notes executed by Ms. Terry and Ms. Robinson.

9.  The Perky Cap common stock purchase by Cotina Terry and Allie Robinson was registered in their names, and they received all benefits flowing to holders of Perky Cap Stock, which would have included recognizing for federal tax purposes their respective shares of losses recorded by Perky Cap, a sub-s corporation.

10. Terry Manufacturing was never a shareholder of Perky Cap.  None of the stock purchased by Ms. Robinson or Ms. Terry was registered in its name.

11. On May 20, 2002, Roy and Rudolph Terry jointly executed a promissory note, in favor of Messrs. Horton and Reynolds, in the principal amount of SIX HUNDRED TWENTY-FOUR THOUSAND NO/100 ($624,000.00) DOLLARS, and bearing interest at the rate of 9.5% per annum.  In consideration thereof, Messrs. Horton and Reynolds purportedly transferred to Roy and Rudolph Terry, jointly, 27,900 shares of Perky Cap common stock, representing thirty-one (31%) percent of the outstanding common stock of that company.  The parties do not stipulate as to whether the shares were actually transferred.  If, in fact, the shares

-3-

were transferred, they were registered in the name of Roy and Rudolph Terry, individually, and Terry Manufacturing had no interest in the shares whatsoever.

12. Terry Manufacturing made all payments on the note executed by Roy and Rudolph Terry.  Payments continued until May, 2003, and totaled ONE HUNDRED TWENTY-SEVEN THOUSAND, NINE HUNDRED EIGHTY-SIX DOLLARS AND 98/100 ($127,986.98).  No payments were made after the Chapter 11 filing by Terry Manufacturing.

13. Terry Manufacturing made total payments of FIVE HUNDRED NINETY-SIX THOUSAND, SEVEN HUNDRED THIRTY-EIGHT DOLLARS AND 60/100 ($596,738.60) to Messrs. Horton and Reynolds in connection with the promissory notes executed by Cotina Terry, Allie Robinson and Roy and Rudolph Terry.

14. A number of entities were unsecured creditors of Terry Manufacturing prior to November 10, 2000 (the date on which Cotina Terry and Allie Robinson delivered their respective promissory notes to Messrs. Horton and Reynolds), and remained unsecured creditors of Terry Manufacturing as of the date Terry Manufacturing filed for relief under Chapter 11 of the Bankruptcy Code.  These unsecured creditors include American Express, Southern Mills, Arkansas State Highway Employees Retirement System, Arkansas Department of Economic Development, CIT Financial Services, Milliken & Company, Darwood Manufacturing, HLC Industries, Inc., Atlantic Thread and Supply Company, Inc., and Bonifay Manufacturing Company.

-4-

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:      /s/ Brent B. Barriere
              Brent B. Barriere, T.A.  (La. Bar No. 2818)
              David L. Patrón (La. Bar No. 22566)
              Catherine E. Lasky (La. Bar No. 28652)
              Canal Place
              365 Canal Street • Suite 2000
              New Orleans, Louisiana  70130-6534
              Telephone:  (504) 566-1311
              Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

**WALSTON WELLS & BIRCHALL, LLP**

By:      /s/ C. Ellis Brazeal
              C. Ellis Brazeal
              One Federal Place
              1819  5th Avenue North, Suite 1100
              Birmingham, Alabama 35203-2122
              Telephone:  (205) 244-5237
              Facsimile:  (205) 244-5437

**ATTORNEYS FOR N. D. HORTON AND JAMES M. REYNOLDS, III**

NO.99591577.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                              )
                                    )
TERRY MANUFACTURING                 )       CASE NO.  03-32063-WRS
  COMPANY, INC.                    )
                                    )       CHAPTER 7
  Debtor                           )
                                    )

_____

IN RE:                              )
                                    )       CASE NO.  03-32213-WRS
TERRY UNIFORM                       )
  COMPANY, LLC,                    )       CHAPTER 7
                                    )
  Debtor.                          )

_____

J. LESTER ALEXANDER, III,           )
TRUSTEE OF TERRY                    )
MANUFACTURING COMPANY, INC.         )
AND TERRY UNIFORM                   )
COMPANY, LLC                        )       ADVERSARY PROCEEDING
                                    )       NO. 05-03042
VERSUS                              )
                                    )
N.D. HORTON, JR. AND JAMES          )
M. REYNOLDS, III                    )

### TRUSTEE'S MOTION TO ALTER OR AMEND THIS COURT'S JUDGMENT DATED MAY 30, 2006, TO INCLUDE AN AWARD OF COSTS AND INTEREST

NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, the duly appointed and acting Chapter 7 trustee (the "Trustee") of Terry Manufacturing Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC, ("Terry Uniform"), who pursuant to Bankruptcy Rule 9023 and Rule 59 of the Federal Rules of Civil Procedure respectfully requests that this Court amend its May 30th judgment in the above-captioned proceeding to include an award of costs and interest to the Trustee. In support of his Motion, the Trustee respectfully represents:

1.

On May 30, 2006, this Court, after a two day trial, entered a judgment in favor of the Trustee and against defendants N.D. Horton, Jr. and James M. Reynolds, III in the amount of $596,738.60.  In conjunction with that judgment, this Court issued a 16 page opinion detailing its factual findings and conclusions of law.  The Court held in favor of the Trustee on all claims and theories of law asserted in the Trustee's complaint, including claims based upon Section 548 of the Bankruptcy Code and the Alabama Fraudulent Transfer Act.

2.

Bankruptcy Rule 7054 provides that Rule 54(a)-(c) of the Federal Rules of Civil Procedure applies in adversary proceedings and explicitly allows for the award of "costs to the prevailing party except when a statute of the United States or these rules otherwise provides."  Bankr. Rule 7054.

3.

In the Eleventh Circuit, "Rule 54(d) establishes 'a presumption that costs are to be awarded to a prevailing party,' and that '[t]o defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so.'"  *Holton v. City of Thomasville School District*, 425 F.3d 1325, 1355 (11th Cir. 2005 (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1038-39 (11th Cir. 2000)).  *See also*, *In re Sellers*, 2005 WL 1498320, *1 (Bankr. M.D.Fla. 2005) (applying presumption for award of costs to bankruptcy proceeding); *In re O'Callaghan*, 304 B.R. 887 (Bankr. M.D.Fla. 2003) (same).

4.

While this Court's judgment did not explicitly deny costs to the Trustee, the Eleventh Circuit has held that "'where the trial court denies the prevailing party its costs, the court must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary power.'" *Holton*, 425 F.3d at 1355 (quoting *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995)).

5.

In the *O'Callaghan* case, the Bankruptcy Court for the Middle District of Florida recognized that "[i]t is well-established that the allowance of costs under Rule 7054(b) is within the discretion of the Bankruptcy Court. 'The Court has broad discretion to determine whether and to what extent to award costs to prevailing parties....There is a strong presumption favoring the award of costs to the prevailing party....The losing party must satisfy a heavy burden when asserting that he should be excused from paying costs and affirmatively establish that the costs either fall outside the parameters of § 1920, were not reasonably necessary to the litigator, or that the losing party is unable to pay.'" 304 B.R. at 889 (quoting *In re Franklin Arms Court, L.P.*, 2003 WL 1883472, at *14 (Bankr. N.D.Ill. 2003)). The Defendants have not and cannot offer any of those reasons to rebut this strong presumption in favor of an award of the costs to the Trustee.

6.

In addition, courts have recognized that costs should be awarded when the suit brought by the prevailing party is in the public interest or serves a public good. *See, e.g.*, *Black Hills Alliance v. Regional Forester*, 526 F.Supp. 257, 258-59 (D.S.D. 1981);

*County of Suffolk v. Secretary of the Interior*, 76 F.R.D. 469, 473 (E.D.N.Y. 1977).  This same reasoning applies in the instant case because the Trustee brought this litigation as a representative of the Terry Manufacturing bankruptcy estate on behalf of many innocent creditors harmed by the actions that resulted in the company's extreme insolvency.  An award of costs serves a public good because it will benefit the many innocent creditors harmed as a result of the Terry Manufacturing bankruptcy.

7.

In addition, having prevailed on his causes of action under the Bankruptcy Code and Alabama Fraudulent Transfer Act, the Trustee is also entitled to pre-judgment interest under Alabama law and post-judgment interest under federal law.  The pre-judgment interest may be calculated on each of the payments fraudulently transferred by Terry Manufacturing to the Defendants from the date each payment cleared the account of Terry Manufacturing through May 30, 2006, the date of this Court's judgment.

8.

In this Circuit, prejudgment interest may be awarded to "compensate the debtor's entire estate for the use of the funds for the period of time in which they were wrongfully withheld."  *In re International Administrative Services, Inc.*, 408 F.3d 689, 710 (11th Cir. 2005)(internal citations omitted).  The assessment of prejudgment interest is "not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his."  *Id*.

9.

Because this Court's judgment is based upon the Alabama Fraudulent Transfer Act, it must look to Alabama law to determine the application of prejudgment interest.

Under Alabama law, prejudgment interest is "allowable at the legal rate in claims other than those contractual in nature where the unliquidated damages could be ascertained by mere computation, or where the damages are complete at a given time so as to be capable of determination at such time in accordance with known standards of value." *Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 111-12 (Ala. 1983). Prejudgment interest may be assessed in this case because the damages to the Terry Manufacturing estate were known at the instant each fraudulent transfer was made by Terry Manufacturing to Messrs. Horton and Reynolds. Accordingly, pre-judgment interest is allowed and calculated pursuant to Ala. Code § 8-8-1.

10.

The assessment of post-judgment interest is permitted and "shall be allowed on any money judgment in a civil case recovered in a district court…at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961. This statute is also applicable to money judgment in bankruptcy courts. *See, e.g.*, *In re Pester Refining Co.*, 964 F.2d 842 (8th Cir. 1992); *Ocasek v. Manville Corp. Asbestos Disease Compensation Fund*, 956 F.2d 152 (7th Cir. 1992); *In re Harvard Knitwear, Inc.*, 193 B.R. 389 (Bankr. E.D.N.Y. 1996); *In re Southern Indus. Banking Corp.*, 87 B.R. 518 (Bankr. E.D.Tenn. 1988).

For the foregoing reasons, the Trustee respectfully requests that this Court amend its May 30, 2006 judgment and award the Trustee costs incurred in the above-captioned proceeding as well as pre-judgment and post-judgment interest. If this Court rules in the

Trustee's favor, the Trustee will file a statement of costs within 15 days of the date of the

Court's order.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:     /s/     Catherine E. Lasky

Brent B. Barriere, T.A.  (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Catherine E. Lasky (La. Bar No. 28652)
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

ATTORNEYS FOR J. LESTER ALEXANDER,
III, TRUSTEE

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a copy of the foregoing pleading has been filed into the record and
further served on the following counsel by facsimile, this 7th  day of June, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.

/s/     Catherine E. Lasky

NO.99608225.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
| COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | ADVERSARY PROCEEDING |
| | ) | NO. 05-03042 |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON, JR. AND JAMES | ) | |
| M. REYNOLDS, III | ) | |

## TRUSTEE'S REPLY BRIEF IN SUPPORT OF HIS
## MOTION TO ALTER OR AMEND JUDGMENT

In opposing the Trustee's Motion to Alter or Amend, the Defendants make the following

arguments:

(1) Defendant did not engage in any intentional, wrongful conduct, and they should not be

penalized by an award of pre-judgment interest;

(2) If interest is to be awarded, it should be at the federal, rather than the state rate; and

-1-

(3)  Interest should run from the date of the filing of the Trustee's complaint rather than from the dates on which Defendants received the avoided transfers.

Defendants premise that pre-judgment interest represents a penalty is wrong.  This and other circuits have repeatedly recognized that "pre-judgment interest is not a penalty, but compensation of the plaintiff for the use of funds that were rightfully his."  *See, In re International Administrative Services, Inc.*, 408 F.3d 689, 710 (11th Cir. 2005) and discussion *infra*.  And, because the Trustee prevailed on his cause of action under Alabama state law, he is entitled to pre-judgment interest at the state rate.  Finally, because the amount of the avoided transfers is readily ascertainable, the Trustee is entitled to interest from the date the Defendants received the avoided transfers.

**1.  Pre-judgment interest is not a penalty, but compensation for the Defendants' use of the estate's funds.**

The Defendants assert that the Court did not find that they acted with actual intent to hinder, delay or defraud and that it would be inappropriate to penalize them by imposing pre-judgment interest.  But pre-judgment interest is intended to compensate the plaintiff for the defendants' use of its funds; it is not a penalty.  *See, In re International Administrative Services, Inc.*, 408 F.3d at 710; *Insurance Company of North America v. M/V Ocean Lynx*, 901 F.2d at 934, 942 (11th Cir. 1990) ("Pre-judgment interest is not a penalty, but compensation of the plaintiff for the use of funds that were rightfully his.")  *Chung Young Il v. Overseas Navigation Co.*, 774 F.2d 1043, 1057 (11th Cir. 1985). ("Pre-judgment interest is not a penalty, but rather is the nature of compensation for the use of funds.").

In attempting to characterize pre-judgment interest as a penalty, Defendants note that the

NO.99615568.1

Eleventh Circuit has found that the award by a bankruptcy court of pre-judgment interest to a trustee who prevails is a "common practice especially when transfers have been made with the actual intent to hinder, delay or defraud creditors."  Defendants are mistaken, however, in interpreting that language to limit pre-judgment interest to those cases involving actual fraud. In approving the award of pre-judgment interest in *International Administrative Services*, the Eleventh Circuit cited with approval four circuit court decisions which had affirmed bankruptcy court awards of pre-judgment interest.   In three of these, there was no allegation of actual fraud.  *Matter of Texas General Petroleum Corp.*, 52 F.3d 1330 (5th Cir. 1995); *In re Cybermech, Inc.*, 13 F.3d 818 (4th Cir. 1994) and *In re Investment Bankers, Inc.*, 3 F.3d 528 (9th Cir. 1990).  In the fourth decision, *In re Agricultural Research and Technology Group*, the Ninth Circuit affirmed a judgment awarding pre-judgment interest to a plaintiff who prevailed both on claims of constructive fraud and actual fraud.

The Trustee acknowledges that the award of pre-judgment interest falls within the discretion of the Bankruptcy Court.  Notably, all of the circuit courts to have considered the issue have concluded that exercising that discretion to permit pre-judgment interest ". . . furthers the congressional policies of the Bankruptcy Code."  *In re Texas General Petroleum Corp.*, 53 F.3d at 1339.  The purpose of a fraudulent conveyance action "is to make the estate whole.  Pre-judgment interest compensates the estate for the time it was without use of the transferred funds."  *Id.  See also, In re Cybermech, Inc.*, 13 F.3d at 822 ("Indeed, such awards [of pre-judgment interest] have been encouraged in cases where they would serve to compensate the injured party and are otherwise equitable.")  *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1566 (". . . the award of pre-judgment interest to the trustee would unquestionably

-3-

serve a compensatory purpose.  An award of pre-judgment interest would serve to compensate the debtor's estate for appellant's use of those funds that were wrongfully withheld from the debtor's estate during the pendency of the current suit.")

2.    **The Trustee prevails on its cause of action under Alabama law, and should be awarded pre-judgment interest calculated at the state rate.**

Defendants contend that if the Trustee is entitled to any pre-judgment interest, it may only be calculated at the federal rate.  They have failed to provide any citation for faulty this proposition.  The Trustee prevailed on his cause of action under the Alabama Fraudulent Conveyance Act.  When a federal court grants judgment based on a state law cause of action, pre-judgment interest is to be calculated at the state, rather than the federal rate.  *See, e.g., In re Interstate Cigar Co., Inc.*, 2003 WL 22885591, at 4 (EDNY 2003) (The bankruptcy court "properly held that where the cause of action itself has its genesis in state law, the proper interest rate to apply when calculating pre-judgment interest is the relevant state law"); *In re Banks*, 225 B.R. 738 (Bankr. C.D.Ca. 1998) (holding plaintiff is entitled to pre-judgment interest calculated at state rate with respect to state causes of action and federal rate with respect to separate federal causes of action.); and *In re Williams*, 1998 WL 34072045, at 5 (Bankr. S.D. Fla. 1998)  ("A preference action is unique to bankruptcy; it is a cause of action created by the Bankruptcy Code and the federal rate should clearly prevail.  The cause of action in this proceeding is based on state law.  Therefore, the state rate should apply.")

-4-

**3.  Pre-judgment interest should accrue from the date of the avoided transfers.**

The Trustee should be awarded pre-judgment interest calculated at the Alabama rate, and consistent with Alabama law, interest should accrue from the date of the avoided transfers. *See, C.E. Sawyer's Industrial Sheet Metal Fabricators v. Central Rigging & Contracting Corp.*, 653 F.2d 956, 958 (5th Cir. 1981).  *A.R. Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1177 (11th Cir. 1991).  Notably, this rule is in accord  with circuit court decisions which have affirmed bankruptcy court awards of pre-judgment interest from the date of challenged transfers.  *See, In re International Administrative Services, Inc.*, 408 F.3d 689, 709 (11th Cir. 2005) (Affirming pre-judgment interest from the date of the avoided transfers); *In re William*, 1998 WL 34072045, at 5 (Bankr. S.D. Fla. 1998) (Awarding pre-judgment interest from date of transfers.)

The Trustee respectfully requests that he be awarded pre-judgment interest, that it be calculated at the state rate, and that it accrue from the date of the challenged transfers. Respectfully submitted this 10th day of July, 2006.

NO.99615568.1

Respectfully submitted,

By:    /s/    Brent B. Barriere
       Brent B. Barriere, T.A.  (La. Bar No. 2818)
       David L. Patrón (La. Bar No. 22566)
       Catherine E. Lasky (La. Bar No. 28652)
       **PHELPS DUNBAR LLP**
       Canal Place
       365 Canal Street • Suite 2000
       New Orleans, Louisiana  70130-6534
       Telephone:  (504) 566-1311
       Facsimile:  (504) 568-9130

       **ATTORNEYS FOR J. LESTER ALEXANDER,
       III, TRUSTEE OF TERRY
       MANUFACTURING COMPANY, INC. AND
       TERRY UNIFORM COMPANY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 10th  day of July, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.

    /s/    Brent B. Barriere

-6-