## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE:<br><br>**TERRY MANUFACTURING COMPANY, INC.,**<br><br>    **Debtor** | )<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 03-32063-WRS**<br><br>**CHAPTER 7** |

| | | |
|---|---|---|
| IN RE:<br><br>**TERRY UNIFORM COMPANY, LLC,**<br><br>    **Debtor** | )<br>)<br>)<br>)<br>)<br>) | **CASE NO. 03-32213-WRS** |

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, NO.:**<br><br>**INC, AND TERRY UNIFORM COMPANY, LLC**<br><br>**VERSUS**<br><br>**N.D. HORTON, JR. AND JAMES M. REYNOLDS, III** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ADVERSARY    PROCEEDING**<br><br>**05-03042** |

## APPELLANTS' AMENDED DESIGNATION OF RECORD ON APPEAL

COME now the Defendants, N.D. Horton, Jr. and James M. Reynolds, III, and pursuant to Bankruptcy Rule 8006, in response to the Trustee's amended designation, hereby amend their prior designation of record on appeal to add the following documents:

    21.    Response to Motion for Summary Judgment (Docket No. 48)

22.     Memorandum of Law in Opposition to Motion for Summary Judgment (Docket No. 49)

23.     Defendants' Pretrial Disclosures (Docket No. 66)

24.     Memorandum Decision (Docket No. 69)

25.     Order (Denying Motion for Summary Judgment) (Docket No. 70)

26.     Trustee's Supplement to his Objection to Admission of Testimony of Randy Averett and Motion to Strike Randy Averett and Jesse Slaton as Expert Witnesses (Docket No. 78)

27.     Supplement to Trustee's Pretrial Disclosures Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure (Docket No. 79)

28.     Second Supplement to Trustee's Pretrial Disclosures Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure (Docket No. 80)

29.     Answer to First Amended Complaint (Docket No. 81)

30.     Response to Trustee's Motion to Strike Randy Averett and Jesse Slaton as Expert Witnesses (Docket No. 82)

31.     Response to Trustee's Motion to Alter or Amend (Docket No. 99)

WHEREFORE, premises considered, the defendants respectfully request this Court to include all of the above referenced items in the record on appeal.

\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for Defendants
N.D. Horton, Jr., and James M.
Reynolds, III


**OF COUNSEL:**

WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:    (205) 244-5437


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Appellants' Amended Designation of Record on Appeal and Statement of Issues has been served by electronic filing and/or by placing same in the United States mail, properly addressed and postage prepaid, as follows:

Brent B. Barriere
Katie Laskey
365 Canal Street
Suite 2000
New Orleans, Louisiana 70130

This the \25th\ day of August, 2006.


\s\ C. Ellis Brazeal III
OF COUNSEL


3

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC, | ) | |
| | ) | |
| Debtor | ) | |

_____

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, | ) | ADVERSARY    PROCEEDING |
| NO.: | | |
| | ) | 05-03042 |
| INC, AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON AND JAMES M. | ) | |
| REYNOLDS, III | ) | |

### MEMORANDUM OF LAW IN OPPOSITION TO
### MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, N.D. Horton, Jr. ("Horton"), and James M. Reynolds III ("Reynolds"), and hereby submit this memorandum in opposition to the motion for summary judgment filed by the trustee, J. Les Alexander, III (the 'Trustee').

**Introduction**

In the Trustee's motion for summary judgment, the Trustee seeks to avoid payments made to Horton in the amount of $298,369.30, and to Reynolds in the like amount of $298,369.30. The motion for summary judgment only addresses the payments as constructive fraudulent payments as defined under Alabama law. In order to prove a constructive fraudulent transfer under Alabama law, the trustee must prove:

> the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:
>
> (a)    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (b)    Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

*See* Ala. Code § 8-9A-4(c).

The trustee's motion is due to be denied for at least five reasons. First, since the debtor, Terry Manufacturing Company, Inc. ("Terry Manufacturing"), was a guarantor of the promissory notes from Cotina Terry and Allie Robinson pursuant to which the payments were made, Terry Manufacturing did receive reasonably equivalent value, because it received a dollar for dollar reduction in the amount of its liability under its guaranties. This argument, however, does not apply to the $624,000 Note from Roy and Rudolph Terry since there was no guaranty from Terry Manufacturing.

Second, Terry Manufacturing also received reasonably equivalent value owing to its ability to control Perky Cap Company ("Perky Cap") through the stock purchases at issue. This acquisition of the stock and control of Perky Cap was part of the Terry's overall business plan for Terry Manufacturing. Terry Manufacturing did not

manufacture headware, so the Terrys wanted to augment their production capabilities through an interest in Perky Cap to be able to serve the customers of Terry Manufacturing. The Terrys informed Mr. Horton that various Terry Manufacturing customers, and particularly McDonald's Corporation, would only purchase entire uniforms including the headware. This "indirect benefit" should be considered by this Court at trial.

Third, the business relationships between the Terrys and Terry Manufacturing were so inextricably intertwined that benefit to the Terrys constituted benefit to the Debtor. The Trustee readily admits that the Terrys regularly disregarded the corporate structure of Terry Manufacturing. This inter-relatedness should be considered by this Court at trial.

Fourth, and alternatively, under Alabama law, the value provided to a third party constitutes the basis for an offset under Alabama Code § 8-9A-8(d). Notably, the Alabama statute differs from the uniform statute in that it expressly encompasses value conveyed to "another person as a consequence of the debtor's making such transfer." Clearly, the Alabama legislature, by amending the uniform act, determined that, if a transferee gives value (regardless of whether it is to the debtor or to another), the transferee should receive the benefit of that value. Accordingly, the stock of Perky Cap which was conveyed to the Terry's entitles the defendants to an offset.

Finally, in addition, to proving the lack of "reasonably equivalent value," the Trustee must prove that the debtor either: a) was engaged, or was about to engage, in a business for which the remaining assets were unreasonably small in relation to the business; or b) intended to incur, or reasonably should have believed that he would incur,

debts beyond his ability to repay, which the Trustee has not done.  Importantly, the opinions of the Trustee's expert bely the proof needed.  In his report, the Trustee's expert opined that:  "Notably, despite its severe problems, TMC's core business was viable.  It could have returned a profitability if management had focused on TMC's core business, limited expenditures to those actually related to the business, implemented financial controls and appropriate record keeping, and refrained from waste and misuse of TMC's assets."  Accordingly, the Trustee has acknowledged that Terry Manufacturing could have been "turned around."  If the debtor could have returned a "profitability if management had focused on TMC's core business. . .," the debtor did not have unreasonably small assets or debts that it could not repay.  At the very least, a fact issue exists as to when, if ever, the requisite conditions arose.

## Statement of Facts

1.      The Defendants admit to having received all of the payments at issue.  However, the Defendants submit that additional facts demonstrate that these payments did not constitute fraudulent transfers.

2.      At all relevant times, Perky Cap Company ("Perky Cap") was a manufacturer of headwear headquartered in Eatonton, Georgia.

3.      In early 1994, Horton negotiated with the Terry family an option agreement to purchase 30,000 shares of the outstanding common stock of Perky Cap which amounted to 33% of the outstanding shares.  *See* Affidavit of N.D. Horton, Jr. ("Horton Aff."), *p 2*.  At that time, James M. Reynolds, III ("Reynolds"), and Horton owned a majority of the shares of Perky Cap.  *Id. at 2.*

4.     Thereafter, on June 6, 1994, the Terry family purchased the Perky Cap stock as follows:  10,000 shares by Roy Terry; 10,000 shares by Rudolph Terry; and 10,000 shares jointly by Roy and Rudolph Terry.  *Id. at 2.*

5.     On that same date, Reynolds and Horton granted an option to the Terry family to purchase an additional 45,900 shares (representing 51%) of the outstanding common stock of Perky Cap.  *Id. at 2.*

6.     In November, 2000, Allie Robinson purchased 9,000 shares of Perky Cap common stock, which represented 10% of the outstanding common stock of the company.  *Id. at 2.*   Ms. Robinson executed a purchase money promissory note in the principal sum of $200,000 to Reynolds and Horton.  *Id.*

7.     On November 10, 2000, Cotina Terry purchased 9,000 shares of Perky Cap common stock, which represented 10% of the outstanding common stock of the company.  *Id. at 2.*   Ms. Robinson executed a purchase money promissory note in the principal sum of $200,000 to Reynolds and Horton.  *Id*. at 3.

8.     On May 20, 2002, Roy and Rudolph Terry purchased an additional 27,900 shares of the outstanding common stock of Perky Cap.  These shares represented 31% of the outstanding stock.  *Id. at 3.*    In connection with this purchase, Roy and Rudolph Terry jointly executed a promissory note in favor of Reynolds and Horton in the principal amount of $624,000.  *Id. at 3.*    With this purchase, the Terry's owned 84% of Perky Cap, and they became officers and directors of Perky Cap.  *Id. at 3.*

9.     The Terry's purchased the stock in Perky Cap as a means of augmenting the business of Terry Manufacturing Company, Inc. ("Terry

Manufacturing"). *Id. at 3.*    Terry Manufacturing manufactures uniforms, but it does not manufacture headwear. *Id. at 3.*

10.    The Terry's desired, and communicated to Horton their desire, to have control of a company which manufactured the products which their company did not manufacture. *Id. at 3.*    This was done so that Terry Manufacturing could supply the entire uniforms to customers such as McDonald's Corporation. *Id. at 3.*

11.    The Terry's told Horton that one of their biggest customers, McDonalds Corporation, would not buy uniforms piecemill. *Id. at 3.*    They indicated that McDonald's buys the cap, shirt and pants from one supplier. *Id. at 3.*

12.    Each purchase of the Perky Cap stock was for a price of $200,000 per 10% of stock purchased. *Id. at 3.*    This was true from 1994 through 2002. *Id. at 3.* This was an arms length, negotiated price for the stock, and in Horton's estimation represented the value of the stock. *Id. at 3.*

13.    The promissory notes from Allie Robinson and Cotina Terry were guaranteed by Terry Manufacturing. *Id.* at 3.  Reynolds and Horton were unwilling to extend credit to Mrs. Terry and Mrs. Robinson individually. *Id.*  As a condition to the stock purchase, they required Terry Manufacturing to guarantee those promissory notes. *Id.*

14.    In early 2003, the Terry's contacted Horton and indicated that they needed temporary financing for the company. *Id. at 4.*    The Terry's indicated to Horton that they had manufactured $12 million of uniforms for the U.S. Government for possible use in Iraq, but they could not bill the U.S. Government until the uniforms were shipped. *Id. at 4.*    The Terry's further indicated that they had utilized company funds to buy back

their stock in Terry Uniforms from Cintas. *Id. at 4.* They further indicated that there was a pending sale of Terry Uniforms to Riverside Manufacturing in Moultrie, Georgia, which would enable them to repay me. *Id. at 4.*

15. In an effort to assist Terry Manufacturing, on January 10, 2003, Horton loaned an additional sum of $175,000 to Terry Manufacturing. *Id. at 4.*

16. Then, on February 10, 2003, Horton loaned an additional $88,000 to Terry Manufacturing. *Id. at 4.*

17. Finally, on February 25, 2003, American Real Estate Investment Company, Ltd., loaned an additional $500,000 to Terry Manufacturing. *Id. at 4.*

18. The Debtor received payments totaling $35,886,846 from McDonald's Corporation from the year 2000 through June 30, 2003. See Summary Report of AEA Group, LLC, as of November 1, 2005, Appendix C. These revenues contributed more than one-third of the Debtor's business.

19. The Trustee has acknowledged the following conduct which would warrant finding that the Debtor and the Terrys were alter egos:

a) certain financial records of TMC were either erroneous, highly misleading, or outright fraudulent;

b) TMC prepared two sets of tax returns;

c) TMC's financial statements were grossly misleading;

d) TMC engaged in check kiting, off balance sheet loans, trade debt, and ponzi schemes to sustain its operations; and

e) Roy and Rudolph Terry used funds of TMC for personal obligations. *Id.*

## Argument

### I.    Summary Judgment Standard.

In the Trustee's opposition to the motion for summary judgment by Peoples Bank of Eatonton, the Trustee acknowledges that the issue of "reasonably equivalent value" is fact-intensive and, therefore, that fraudulent transfer claims are "not appropriate for disposition by summary judgment."  See Memorandum of J. Lester Alexander, III, Trustee in Support of His Cross-Motion for Partial Summary Judgment and in Opposition to Summary Judgment Motions of Bank of Wedowee, First Tuskegee Bank, and Peoples Bank of Eatonton.  The Trustee cited the case of *Grimes v. Gilbert*, 1997 WL 33419261, *3 (Bankr. M.D. Ga. 1997) for the proposition that summary judgment should not be granted on the issue of "reasonably equivalent value" even if the non-moving party provided "no additional evidence. . .that reasonably equivalent value was given."  This case contains a myriad of factual issues, which should be decided at trial.

### II.    The Debtor received "reasonably equipment value."

A.    By the reduction of its guaranty obligations, the payments "directly" benefited the Debtor.

Each Court that has considered whether transfers made pursuant to a guaranty constitute "reasonably equivalent value" has determined that they do.  *See In re: Rodriguez*, 895 F.2d 725 (11th Cir. 1990); *In re: Martin*, 205 B.R. 646 (Bankr. M.D. Ala. 1993); and *In re: Cavalier Homes of Georgia, Inc.,* 102 B.R. at 878 (Bankr. M.D. Ga. 1989).  The Courts have uniformly held that, since the debtor received a dollar for dollar reduction in its guaranteed obligation, the debtor did receive "reasonably equivalent

value." *Id.* Importantly, both the Eleventh Circuit and the U.S. Bankruptcy Court for the Middle District of Alabama have embraced this argument.

In *Rodriguez,* the Eleventh Circuit not only recognized that a debtor may receive reasonably equivalent value from indirect benefits, but also acknowledged that repayment of a guaranteed obligation would constitute a "direct benefit" and, therefore, "reasonably equivalent value." Importantly, in considering the law applicable to the facts, the Eleventh Circuit stated:

> Since Domino was <u>not</u> liable for repayment of International's indebtedness, Domino could not be found to have benefited <u>directly</u> from repaying the loan absent a piercing of International's corporate veil.

*Id. at 727.* Accordingly, under the Eleventh Circuit's analysis, if the debtor had been "liable for payment of the . . . indebtedness," it would have received a "direct benefit." *Id.* Therefore, the "direct benefit" which Terry Manufacturing received from the reduction of its guaranty obligation constitutes "reasonably equivalent value." The Trustee acknowledges the precedential value of *Rodriguez* in his Memorandum of Law.

Notably, the *Martin* opinion was decided by this Court. In *In re: Martin,* C&C Land Corporation ("C&C") purchased certain real property from Alfa Mutual Fire Insurance Company. C&C signed a purchase money promissory note and a mortgage regarding the purchase of this real estate. The individual debtor, Don Martin, guaranteed both the mortgage and the promissory note. Prior to his filing bankruptcy, Martin submitted a check in the amount of $105,062.49 as the final payment on the promissory note. When Martin later filed bankruptcy, the trustee filed suit to recover this payment under 11 U.S.C. § 548 as a fraudulent conveyance. The trustee argued that Martin did not receive "reasonably equivalent value" since C&C received value through the

satisfaction of its debt and the release of its mortgage. However, Judge Steele found that, since the debtor was a guarantor of the debt, the debtor received "reasonably equivalent value" in the satisfaction of its antecedent debt. *Id. at 648*. In rendering this opinion, Judge Steele noted the opinion in *In re: Cavalier Homes, supra*.

In *Cavalier Homes*, defendant AmSouth Bank issued an industrial revenue bond in favor of the individual defendants, who were principals of the company which leased real property to Cavalier Homes. As part of the transaction, the defendants executed a promissory note for $800,000 payable to the Development Authority of Jones County. This note was assigned by that authority to AmSouth Bank. Also as part of the transaction, the debtor executed a guaranty agreement in favor of AmSouth Bank guaranteeing payments under the bond. Pre-bankruptcy, the debtor made payments under its guaranty. The trustee filed suit to set aside these payments as fraudulent transfers, arguing that no value flowed to the debtor. The defendants argued that the debtor received "reasonably equivalent value," because its contingent obligation under its guaranty was reduced by the transfers. The Court noted that, under 11 U.S.C. § 548(d)(2)(A), "value" means: "property or satisfaction or securing of a present or antecedent debt of the Debtor…" The Court found that the transfer reduced the debtor's contingent liability under its guaranty and, therefore, received "reasonably equivalent value." *Id.* at 880.

Similarly, in the case of *In re: Uiterwyk Corp.*, 75 B.R. 33 (Bankr. M.D. Fla. 1987), the Debtor corporation made payments for the debt of another, which the trustee attacked as fraudulent conveyances. In finding that the debtor received "reasonably equivalent value," the Court noted that, "it is without dispute that these

payments came out of funds belonging solely to the debtor but were on account of the sole obligations of Egyptian and West Africa; however, the debtor debited the accounts of Egyptian and West Africa and the amount paid on their behalf and received full credit against what it owed them." *Id. at 34.* In each of the cases directly addressing payments under a guaranty, the bankruptcy court found that the reduction of the debtor's liability constituted "reasonably equivalent value" even though the debtor was not the primary obligor on any of the debts at issue. Counsel for Horton has failed to find, and counsel for the Trustee has failed to cite, any case which holds contrary to these opinions.

        B.    <u>This Court should determine to what extent the Debtor received "indirect benefits" which constituted "reasonably equivalent value."</u>

As acknowledged by the Trustee in his Memorandum of Law, the analysis of reasonably equivalent does not require that the exchange be dollar for dollar. *Id. at p. 10.* In fact, Courts have recognized that a debtor may realize "reasonably equivalent value" indirectly through benefit to a third person. *See In re: Rodriguez,* 895 F.2d 725 (11th Cir. 1990). Also, s*ee Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 991 (2nd Cir. 1981) (citing *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2nd Cir. 1979).

In *Rodriguez,* the Eleventh Circuit opined that: "a transfer which 'confers an economic benefit upon the debtor,' either directly or indirectly," is not due to be avoided. *Id. at 727.* (citing *Rubin,* supra.) In *Rubin,* the Second Circuit stated that: "The cases recognize, however, that a debtor may sometimes receive 'fair' consideration even though the consideration given for his property or obligation goes initially to a third person." *Id*. at 991. The Second Circuit then went on to discuss with approval several cases in which the consideration came "indirectly through benefit to a third person." *Id.*

(citing *Klein,* supra.)  The Second Circuit remanded the case to the trial court to consider the indirect benefit which accrued to the debtor corporation.  Again, *Rubin* is a case which the Trustee has cited for its precedential value.

In this case, the Terrys decided to purchase stock in Perky Cap to ensure a steady, certain supply of caps to Terry Manufacturing.  The Terrys have indicated that many of the customers of Terry Manufacturing, and particularly McDonald's Corporation, required the uniform supplier to provide all parts of the uniform.  The Terrys made a business decision to purchase the Perky Cap stock to ensure that their business with McDonald's would be within their control.  Ultimately, the Terrys owned 84% of Perky Cap and were officers and directors of the company.  Based upon the Trustee's reconstructed business records, Terry Manufacturing received $35,886,846 in payments from McDonald's from 2000 through June 30, 2003.  These revenues amounted to more than one-third of the Debtor's revenue for that period.  Accordingly, this Court should consider at trial the "indirect benefit" that the Debtor derived from the Perky Cap stock purchases and to what it constituted "reasonably equivalent value."

    C.    <u>Terry Manufacturing and the Terrys were Alter Egos; therefore, any benefit to one constituted benefit to the other.</u>

Again, the Eleventh Circuit has spoken to this issue in *Rodriguez*.  In *Rodriguez,* the Eleventh Circuit considered whether it should pierce the corporate veil and find that the debtor benefited from the consideration given to a subsidiary corporation on the grounds that the subsidiary corporation was an "instrumentality of the debtor."  The Court noted that, for the "instrumentality" doctrine to apply, there must have been undue control over the other party and the use of that control must have harmed the transferee.  *Id. at 728.*  In finding that there was no evidence of undue control,

12

the Eleventh Circuit noted that there was no evidence of "shared officers or intermingling of funds to support a claim" of undue control. *Id*. In this case, the Trustee has determined that there was intermingling of funds and that the Terrys, in their business dealings, made no distinction between themselves and their company. Furthermore, this has worked an inequity on Horton and Reynolds, because they indicated that they would not have sold the stock to Allie Robinson and to Cotina Terry, but for the guaranty of Terry Manufacturing.

Another opinion which speaks to this issue is *In re: Pembroke Development Corporation*, 124 B.R. 398 (Bankr. S.D. Fla. 1991). In *Pembroke*, the debtor executed a loan modification agreement, which the trustee claimed to constitute a fraudulent transfer. The Court found that this loan modification was not a fraudulent transfer since the corporate debtor had guaranteed the loan. Furthermore, the Court recognized that an indirect benefit to the transferor may be sufficient to establish "reasonably equalivent value" where the debtor and third party "are so related or situated that they share an identity of interest because what benefits one will, in such case, benefit the other in some degree." *Id. at* 400. Accordingly, the case law supports an inquiry by this Court into the inter-relatedness of the Terrys and the Debtor.

### III.    Value Given to Another is Credited to Transferee

Under Ala. Code § 8-9A-8(d), a good faith transferee is entitled to an offset to the extent of value given the debtor for the transfer "or to another person as a consequence of the debtor's making such transfer." Accordingly, under the plain language of the statute, Horton and Reynolds are entitled to an offset in the amount of the value of the stock given to Ms. Robinson, Ms. Terry and Roy and Rudolph Terry. The

comments to the Ala. Fraudulent Transfer Act, at Comment 3, indicate that the language "or to another person as a consequence of the debtor's making such transfer to" was added to the Uniform Act to clarify the fact that a "good faith transferee is protected to the extent of value given by the transferee to one other than the Debtor." The Alabama legislature added this language to make it clear that, if a good faith transferee gives value (regardless of whether it is to the debtor or to another), the transferee will not have to reimburse the debtor to the extent of the value given. In his affidavit, Mr. Horton indicated that the price for the stock was arrived at by arms length negotiations going back to 1994. He further stated that this price was $200,000 per 10% of stock. So, each time that the Terry family purchased stock in Perky Cap, it paid this amount for the stock. Accordingly, Horton and Reynolds are due an offset in the amount of $1,024,000.00.

**IV.    The trustee admits that the Debtor's assets were not unreasonably small and that the debt was not too significant to repay.**

In order to prove a fraudulent conveyance, the trustee must prove either that the debtor's business had unreasonably small assets to continue <u>or</u> that the debtor had incurred or was about to incur liability that it would have been unable to repay. While the trustee's expert, Mr. Alexander, opines that both of these situations existed, he further states that: "Notably, despite its severe problems, TMC's core business was viable. It could have returned a profitability if management had focused on TMC's core of business, limited expenditures to those actually related to the business, implemented financial controls and appropriate record keeping and refrained from waste and misuse from TMC's assets." Accordingly, the Trustee acknowledges that the Debtor could have "turned around" its business. Therefore, there is a question of fact for trial as to whether,

at the time of the transfers to Horton and Reynolds, the Debtor's assets were insufficient and/or its debts too great.

## V.    Conclusion

This bankruptcy case bears a striking resemblance to the case of *In re Chase & Sanborn Corporation*, 904 F. 2d 588 (11th Cir. 1990).  The Eleventh Circuit described that case as "a series of related financial transactions accurately described by the bankruptcy court as 'bewildering.'"  *Id.* at 590.  Like that case, the Terry Manufacturing case involves many inter-related business transactions involving the Debtor and the Terry family.  Horton and Reynolds respectfully submit that this Court should investigate this myriad of transactions at trial to determine the many factual issues raised by this lawsuit.


\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for N.D. Horton, Jr., and
James M. Reynolds, III


**OF COUNSEL:**

WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:    (205) 244-5437

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Memorandum of Law in Opposition to Motion for Summary Judgment has been served by placing same in the United States mail, properly addressed and postage prepaid, as follows:

Katherine Mille Determan
Phelps Dunbar LLP
City Plaza
445 North Boulevard
Suite 701
Baton Rouge, LA 70802-5707

This the 3rd day of January, 2006.

_____
OF COUNSEL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
                                          )
TERRY MANUFACTURING                       )       CASE NO. 03-32063-WRS
COMPANY, INC.,                            )
                                          )       CHAPTER 7
        Debtor                            )
                                          )

---

IN RE:                                    )
                                          )
TERRY UNIFORM                             )       CASE NO. 03-32213-WRS
COMPANY, LLC,                             )
                                          )
        Debtor                            )

---

J. LESTER ALEXANDER, III,                 )
TRUSTEE OF TERRY                          )
MANUFACTURING COMPANY,                    )       ADVERSARY     PROCEEDING
NO.:                                      )
                                          )       05-03042
INC, AND TERRY UNIFORM                    )
COMPANY, LLC                              )
                                          )
VERSUS                                    )
                                          )
N.D. HORTON AND JAMES M.                  )
REYNOLDS, III                             )

## DEFENDANTS' PRETRIAL DISCLOSURES

COME NOW Defendants N.D. Horton, Jr. and James M. Reynolds, III

("Defendants"), and hereby file their pretrial disclosure in compliance with Rule 7026 of

the Bankruptcy Code, which incorporates by reference Rule 26 of the Federal Rules of

Civil Procedure.   Defendants make these disclosures based upon information now

available to them and reserve the right to amend and/or supplement these disclosures as new or additional information becomes available.

**I.      The name and, if not previously provided, the address and telephone number of each witness, separately identifying those whom defendants expect to present and those whom the defendants may call if the need arises:**

Pursuant to Rule 7026(a)(3)(A), the following information is provided by the defendants.  This list contains the names of individuals who may have discoverable information together with their last known address and telephone number (if known). This list does not include counsel, for whom all appropriate privileges and protections are asserted at this time.

**A.      Individuals the defendants expect to be present at the trial:**

Les Alexander, Trustee of Terry Manufacturing Company, Inc.
220 Street North
Birmingham, Alabama 35203
205-488-1100

N.D. Horton, Jr.
Horton Homes
101 Industrial Blvd.
Eatonton, Georgia  31024
706-485-8506

Dick Schmidt
Richard W. Schmidt, Esquire
Blasingame, Burch, Garrard, Bryant & Ashley
1040 Founders Row, Suite A
Greensboro, Georgia  30642
706-453-7139

Randy Averett
Warren, Averett, Kimbrough & Marion LLC
2500 Acton Road
Birmingham, Alabama 35243
205-979-4100

Jesse Slaten
Slaten & O'Conner
One Perimeter Place South
Birmingham, Alabama 35243
205-970-6073

**B. Individuals who may be called if the need arises:**

Roy Terry
902 Crestwood Drive
Roanoke, Alabama  36274-7224
334-863-8404

Rudolph Terry
c/o Terry Manufacturing Company, Inc.
3725 Zip Industrial Blvd., S.E.
Atlanta, GA 30354
404-761-8888

Cotina W. Terry
c/o Terry Manufacturing Company, Inc.
924 South Street
Roanoke, Alabama  36724
334-863-2171

Allie Robinson
c/o Terry Manufacturing Company, Inc.
3725 Zip Industrial Blvd., S.E.
Atlanta, GA 30354
404-761-8888

Sidney Johnson
6675 US Highway 431
Roanoke, Alabama 36274
334-863-2863

David Giddens, CPA
Greensboro, GA
706-485-8506

Leon Goodrum
Goodrum Enterprises, Inc.
1176 Ralph David Abernathy
Atlanta, Georgia  30310
(404)758-4125

**II.    The designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony:**

Deposition Testimony of Roy Terry

**III.    Documents or other exhibits, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.**

**A.    Exhibits defendants expect to offer as evidence:**

Promissory Note from the Terrys to ARE in the amount of $400,000.00 dated November 27, 1996.

Promissory Note renewal from the Terrys to ARE in the amount of $350,000.00 dated May 27, 1997.  Bates No. AMR.EST0005

Irrevocable stock of power executed by Rudolph Terry and Roy Terry dated November 27, 1996, assigning 10,000 shares of common stock of Perky Cap to ARE. Bates No. AMR.EST00017

Irrevocable stock of power executed by Rudolph Terry to ARE transferring 1,000 shares of common stock of Terry Manufacturing dated November 27, 1996.  Bates No. AMR.EST00019

Affidavit executed by Roy Terry stating that on May 27, 1997 he executed the renewal promissory note in favor of ARE in the principal amount of $350,000.00 being due August 25, 1997.  Date is May 29, 1997. Bates No. AMR.EST00024

Security Agreement from TMC to ARE granting all common stock in Perky Cap 20% of common stock of Terry Manufacturing.  Bates No. AMR.EST00031

Irrevocable stock of power from Rudolph Terry to ARE assigning 1,000 shares (20%) of the common stock of TMC, dated November 24, 1999.  Bates No. AMR.EST00050

Irrevocable stock of power by Rudolph Terry and Roy Terry assigning to ARE 10,000 shares of common stock of Perky Cap, executed November 24, 1999.  Bates No. AMR.EST00051

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap dated November 24, 1999. Bates No. AMR.EST00052

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap dated November 24, 1999. Bates No. AMR.EST00053

Settlement statement, borrowers are Rudolph Terry and Roy Terry cash to borrow $500,000 dated November 24, 1999. Bates No. AMR.EST00054

Copy of check from Blasingame Burch to Rudolph Terry and Roy Terry in the amount of $489,500.00 dated November 24, 1999. Bates No. AMR.EST00058


Line of credit promissory note from TMC to ARE for $5,500,000.00 dated November 10, 2000. Bates No. AMR.EST00109

Loan agreement between TMC and ARE dated November 10, 2000 for $5,500,000.00. Bates No. AMR.EST00115

Agreement between TMC and ARE dated November 10, 2000 re:$5,500,000.00 loan. Bates No. AMR.EST00124

Stock certificates for TMC. Bates No. AMR.EST00127

Security agreement between TMC and ARE dated November 10, 2000 assigning stock on Perky Cap and TMC. Bates No. AMR.EST00137

Irrevocable stock of power by Rudolph Terry to ARE assigning stock of TMC dated November 10, 2000.

Security Agreement between TMC and ARE dated November 10, 2000 re:security interest in stock shares. Bates No. AMR.EST00137

Pledge agreement between TMC and ARE dated November 10, 2000 re:$5,500,000.00 loan. Bates No. AMR.EST00141

Unconditional guaranty of payment and performance by Roy Terry and Rudolph Terry to ARE dated November 10, 2000. Bates No. AMR.EST00150

Unconditional guaranty of payment and performance by TMC to ARE dated November 10, 2000. Bates No. AMR.EST00157

Georgia UCC-1 Financing statement between Roy Terry and Rudolph Terry and TMC secured party is ARE it covers the November 10, 2000 loan.   Bates No. AMR.EST00164

Stock option with put/call by TMC to ARE granting stock dated November 10, 2000. Bates No. AMR.EST00171

Employment agreement between Perky Cap and Jack Perkinson dated November 10, 2000. Bates No. AMR.EST00173

Letter from New York Life to ARE enclosing endorsed collateral assignment on Roy Terry. Bates No. AMR.EST00178

Closing statement for 5.5 million loan between TMC and ARE dated November 10, 2000. Bates No. AMR.EST00180

Copy of check from ARE to Blasingame Burch in the amount of $1,000,000 dated December 15, 2000. Bates No. AMR.EST00181

Copy of check from ARE to Blasingame Burch for the amount of $1,000,000 dated January 15, 2001. Bates No. AMR.EST00182

Copy of check from Blasingame Burch to Rudolph Terry and Roy Terry in the amount of $1,000,000 dated February 15, 2001. Bates No. AMR.EST00183

TMC financial statements December 31, 1999 and 1998.   Bates No. AMR.EST00185

Agreement between TMC and ARE dated November 10, 2000 re: the $5,500,000 loan. Bates No. AMR.EST00196

TMC promotional products opportunity, dated October 12, 2000.   Bates No. AMR.EST00254

Money promissory note from Allie Robinson to N.D. Horton and James Reynolds for $200,000.00 dated November 10, 2000. Bates No. AMR.EST00265

Purchase money promissory note from Cotina Terry to Horton and Reynolds for $200,000.00 dated November 10, 2000. Bates No. AMR.EST00292

Promissory note between TMC and ARE dated August 6, 2001 for $1,500,000.00. Bates No. AMR.EST00320

Agreement between TMC and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00322

Agreement between TMC and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00324

Loan agreement between TMC and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00326

Security agreement between TMC and ARE dated August 6, 2001 granting 400 shares of stock of TMC. Bates No. AMR.EST00334

Georgia UCC-1 debtor's Roy Terry, Rudolph Terry and TMC secured party ARE. Bates No. AMR.EST00338

Pledge agreement between Roy Terry and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00339

Pledge agreement/irrevocable limited of power of attorney and assignment.

Closing statement on $1,500,000.00 loan. Bates No. AMR.EST00353

Note signed by TMC to ARE for $500,000 dated February 25, 2003. Bates No. AMR.EST00357

Letter of intent by N.D. Horton executed June 6, 2002 for the $1,500,000 loan from Peeples Bank to TMC. Bates No. AMR.EST00358

Agreement between TMC and ARE and Perky Cap dated May 30, 2002. Bates No. AMR.EST00359

Consent to action by the board of director of Perky Cap executed by Roy Terry, Rudolph Terry and Jack Perkinson, dated May 30, 2002. Bates No. AMR.EST00361

Promissory note from TMC to Horton and Reynolds for $624,000.00 dated May 30, 2002. Bates No. AMR.EST00363

Closing statement for $624,000.00 loan dated May 30, 2002. Bates No. AMR.EST00367

Bill of sale of common stock executed by Horton and Reynolds on May 30, 2002. Bates No. AMR.EST00368

Consent to action by board of directors of Perky Cap executed by Roy Terry, Rudolph Terry, Horton and Reynolds on May 30, 2002. Bates No. AMR.EST00369

Resignation of officers of Perky Cap executed by Horton and Reynolds on May 30, 2002. Bates No. AMR.EST00370

Consent to action by board of directors of Perky Cap executed by Roy Terry, Rudolph Terry, Jack Perkinson dated May 30, 2002. Bates No. AMR.EST00371

Loan agreement executed by TMC and Catina Terry and Horton and Reynolds for the $624,000.00 dated May 30, 2002. Bates No. AMR.EST00372

Pledge agreement executed between Cotina Terry and Horton and Reynolds, dated May 30, 2002. Bates No. AMR.EST00378

Proxy by Cotina Terry dated May 30, 2001. Bates No. AMR.EST00381

Irrevocable stock of power by Catina Terry dated May 30, 2002. Bates No. AMR.EST00382

Letter from New York Life to ARE enclosing endorsed collateral of assignment on Roy Terry. Bates No. AMR.EST00383

Bill of sale of common stock by Horton and Reynolds dated May 30, 2002. Bates No. AMR.EST00385

Pledge agreement between Perkinson and Horton and Reynolds, dated May 30, 2002 pledging 14,400 shares of Perky Cap stock. Bates No. AMR.EST00386

Security agreement between Perky Cap and Horton and Reynolds dated May 30, 2002 for the 14,400 shares pledged for the $624,000.00 loan dated May 30, 2002. Bates No. AMR.EST00391

Encumbancy certificate of the company executed by TMC dated November 10, 2000. Bates No. AMR.EST00444

Georgia Secretary of State Corporations Division business information printout on TMC. Bates No. AMR.EST00446

Third-Party Checks Deposited into TMC's Account No. 5011256 at the Bank of Wedowee. Bates No. Defendant's Exhibit 40, Defendant's Exhibit 1

Memorandum of J. Lester Alexander, III, Trustee in Support of His Cross Motion for Partial Summary Judgment and In Opposition to Summary Judgment Motions of Bank of Wedowee, First Tuskegee Bank and Peoples Bank of Eatonton. J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC v. Peoples Bank of Eatonton, et al. AP No. 04-03061

Affidavit of J. Lester Alexander, III.  J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC v. N.D. Horton and James M. Reynolds, III  AP No. 05-03042

Any and all documents produced pursuant to subpoenas to third parties (whether issued by the Trustee or Defendants) in Cases 04-3061, 04-3062 and 04-3063

Any documents and/or exhibits necessary for rebuttal

May 23, 2002 memo.  Bates No. PEOP0157-0161

May 30, 2002 Agreement.  Plaintiff's Exhibit 3 (Culberson's Deposition)

Financial information.  Bates No. PEOP 232-244

May 29, 2002 loan committee minutes.  Bates No. PEOP00006

TMC tax returns and loan related documents.  Bates No. PEOP0106-116

Corporate authorization resolution.  Bates No. PEOP0218

Letter of intent.  Bates No. PEOP245

Loan document.  Bates No. PEOP0002-3

Guaranty by corporation.  Bates No. PEOP0174

TMC's financial statements, December 31, 2001 and 2000.  Bates No. Plaintiff's Exhibit 12 (Culberson)

TMC financial statement, December 2002 and 2001.  Bates No. PEOP0007-0017

Composite exhibit including checks and deposit slips regarding loans proceeds from ARE and/or Horton to TMC or the Terrys

Report of Randy Averett together with any supporting documents

**B.     Exhibits defendants may offer if the need arises:**

Summary Reports of AEA Group

Report of  J. Lester Alexander, III

Resume of J. Lester Alexander, III

Pleadings from related adversary proceedings

Any and all checks, invoices and other financial documents relevant to this matter.

Stock option with put/call Bates No. AMR.EST0001

Promissory Note from TMC to ARE in the amount of $300,000.00 dated August 25, 1997. Bates No. AMR.EST0008

Promissory Note third renewal from TMC to ARE in the amount of $250,000.00 dated November 24, 1997. Bates No. AMR.EST00011

Promissory Note fourth renewal from TMC to ARE in the amount of $150,000.00 dated February 23, 1998. Bates No. AMR.EST00013

Promissory Note fifth renewal from TMC to ARE in the amount of $150,000.00 dated March 24, 1998. Bates No. AMR.EST00015.

Promissory Note from TMC to ARE for $400,000.00 dated November 27, 1996. Bates No. AMR.EST00029

Promissory Note sixth renewal from TMC to ARE in the amount of $150,000.00 dated August 21, 1998. Bates No. AMR.EST00037

TMC Note number one payment history. Bates No. AMR.EST00039

Line of credit promissory note from TMC to ARE in the amount of $1,000,000.00, dated November 24, 1999. Bates No. AMR.EST00040

Security Agreement from TMC to ARE granting all common stock incurred Perky Cap and 20% of common stock of TMC. Bates No. AMR.EST00046

Letter from Seaborne Ashley to Rudolph Terry and Roy Terry, RE: line of credit note dated November 24, 1999, enclosing funds check in the amount of $350,000.00. Bates No. AMR.EST00056

Copy of check from Blasingame Burch to Rudolph Terry and Roy Terry in the amount of $150,000.00 dated January 13, 2000. Bates No. AMR.EST00059

Terry Manufacturing note number 2 point history. Bates No. AMR.EST00060

Loan agreement between TMC and ARE dated June 30, 2000 for the amount of $500,000.00. Bates No. AMR.EST00063

Security agreement between TMC and ARE dated June 30, 2000, security is listed as all common stock in Perky Cap 20% of common stock of TMC and 10% of common stock of TMC. Bates No. AMR.EST00067

10

Irrevocable stock of power by Rudolph Terry to ARE assigning 1,500 shares (20%) of common stock of TMC dated June 30, 2000. Bates No. AMR.EST00071

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap dated June 30, 2000. Bates No. AMR.EST00072

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap executed June 30, 2000. Bates No. AMR.EST00073

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap executed June 30, 2000. Bates No. AMR.EST00074

Copies of certificates of stocks in TMC and Perky Cap. Bates No. AMR.EST00075

Letter from Blasingame Burch to TMC enclosing check for $200,000.00. Bates No. AMR.EST00084

Copy of check to Rudolph Terry from Blasingame Burch for $294,500.00 dated June 30, 2000. Bates No. AMR.EST00086

TMC note number three payment history. Bates No. AMR.EST00087

Promissory note from TMC to ARE for $800,000.00 dated August 29, 2000. Bates No. AMR.EST00088

Loan agreement between TMC and ARE dated August 29, 2000 for $800,000.00. Bates No. AMR.EST00090

Security agreement between TMC and ARE dated August 29, 2000 granting all of the common stock in Perky Cap 20% in the common stock of TMC and 10% of the common stock of TMC 15% of common stock of TMC. Bates No. AMR.EST00094

Irrevocable stock of power by Rudolph Terry and Roy Terry to ARE transferring common stock of Perky Cap executed August 29, 2000. Bates No. AMR.EST00098

Irrevocable stock of power by Rudolph Terry to ARE assigning 1,000 shares (20%) of common stock of TMC 500 shares (10%) of common stock of TMC and 750 (15%) of common stock of TMC dated August 29, 2000. Bates No. AMR.EST00101

Stock certificates for TMC. Bates No. AMR.EST00102

Settlement statement for Rudolph Terry and Roy Terry dated August 29, 2000 for $800,000.00. Bates No. AMR.EST00105

Copy of check from ARE to Blasingame Burch for $800,000.00 dated August 29, 2000. Bates No. AMR.EST00107

TMC note number four payment history. Bates No. AMR.EST00108

TMC stock purchase note payment history. Bates No. AMR.EST00264

TMC note number five payment history. Bates No. AMR.EST00319

TMC note number six payment history. Bates No. AMR.EST00356

TMC stock purchase note payment history. Bates No. AMR.EST00362

Closing statement for the $5,500,000.00 loan from ARE to TMC dated November 10, 2000. Bates No. AMR.EST00392

Loan agreement between TMC and ARE for the $5,500,000.00 loan dated November 10, 2000. Bates No. AMR.EST00393

Agreement between TMC and ARE for the loan of $5,500,000.00 dated November 10, 2000. Bates No. AMR.EST00402

Pledge agreement/irrevocable limited power of attorney and assignment, signed by Roy Terry and Rudolph Terry dated November 10, 2000. Bates No. AMR.EST00404

Copy of stock certificates for TMC. Bates No. AMR.EST00405

Security agreement between TMC and ARE dated November 10, 2000 granting stock shares. Bates No. AMR.EST00415

Pledge agreement between TMC and ARE dated November 10, 2000 on the $5,500,000.00 loan. Bates No. AMR.EST00419

Irrevocable stock of power executed by Rudolph Terry and Roy Terry assigning stock shares to ARE dated November 10, 2000. Bates No. AMR.EST00422

Proxy by Rudolph Terry and Roy Terry to Horton and Reynolds dated November 10, 2000, proxy of 2,550 shares, 51%, of common stock of TMC. Bates No. AMR.EST00426

Proxy by Rudolph Terry and Roy Terry to Horton and Reynolds dated November 10, 2000, granting 30,000 shares of the common stock of Perky Cap. Bates No. AMR.EST00427

Unconditional guaranty of payment and performance by Roy Terry and Rudolph Terry to ARE dated November 10, 2000. Bates No. AMR.EST00428

Unconditional guaranty of payment and performance by TMC to ARE dated November 10, 2000. Bates No. AMR.EST00435

Georgia UCC-1 debtor's Roy Terry, Rudolph Terry and TMC secured party ARE.

Bates No. AMR.EST00442

Consent to action board of directors TMC executed by Roy Terry and Rudolph Terry on November 10, 2000. Bates No. AMR.EST00447

Stock option with put/call executed by Rudolph Terry and Roy Terry to ARE on November 10, 2000. Bates No. AMR.EST00449

Pledge agreement between Catina Terry and Horton and Reynolds dated November 10, 2000, pledging stocks for the $200,000.00 loan. Bates No. AMR.EST00451

Pledge agreement between Allie Robinson and Horton and Reynolds dated November 10, 2000, pledging stock for the $200,000.00 loan. Bates No. AMR.EST00454

Employment agreement between Perky Cap and Jack Perkinson dated November 10, 2000. Bates No. AMR.EST00457

Unconditional guaranty of payment and performance executed by Roy Terry and Rudolph Terry on November 10, 2000 to Horton and Reynolds for the Allie Robinson loan. Bates No. AMR.EST00462

Unconditional guaranty of payment and performance executed by Roy Terry and Rudolph Terry on November 10, 2000 for the $200,000.00 loan to Allie Robinson. Bates No. AMR.EST00469

Any pleadings from this adversary proceeding or from any other adversary proceeding in the TMC bankruptcy case.

Any exhibits to depositions taken in this case or in other TMC adversary proceedings.

Any documents produced by defendants in this action.

Any documents produced by ARE pursuant to the subpoena in a related adversary proceeding.

Any documents produced by the trustee in this action.

\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for N.D. Horton, Jr. and
James M. Reynolds, III

**OF COUNSEL:**

WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:    (205) 244-5437

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Pretrial Disclosures has been served by electronic filing and/or by placing same in the United States mail, properly addressed and postage prepaid, as follows:

Katherine Mille Determan
Phelps Dunbar LLP
City Plaza

445 North Boulevard
Suite 701
Baton Rouge, LA 70802-5707

This the \15<sup>th</sup>\ day of February, 2006.

\s\ C. Ellis Brazeal III
OF COUNSEL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO. 03-32063-WRS** |
| **COMPANY, INC.,** | ) | |
| | ) | **CHAPTER 7** |
| **Debtor** | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY UNIFORM** | ) | **CASE NO. 03-32213-WRS** |
| **COMPANY, LLC,** | ) | |
| | ) | |
| **Debtor** | ) | |

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY,** | ) | **ADVERSARY     PROCEEDING** |
| **NO.:** | ) | |
| | ) | **05-03042** |
| **INC, AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC** | ) | |
| | ) | |
| **VERSUS** | ) | |
| | ) | |
| **N.D. HORTON AND JAMES M.** | ) | |
| **REYNOLDS, III** | ) | |

## DEFENDANTS' PRETRIAL DISCLOSURES

COME NOW Defendants N.D. Horton, Jr. and James M. Reynolds, III

("Defendants"), and hereby file their pretrial disclosure in compliance with Rule 7026 of

the Bankruptcy Code, which incorporates by reference Rule 26 of the Federal Rules of

Civil Procedure.    Defendants make these disclosures based upon information now

1

available to them and reserve the right to amend and/or supplement these disclosures as new or additional information becomes available.

**I.      The name and, if not previously provided, the address and telephone number of each witness, separately identifying those whom defendants expect to present and those whom the defendants may call if the need arises:**

Pursuant to Rule 7026(a)(3)(A), the following information is provided by the defendants.   This list contains the names of individuals who may have discoverable information together with their last known address and telephone number (if known). This list does not include counsel, for whom all appropriate privileges and protections are asserted at this time.

**A.      Individuals the defendants expect to be present at the trial:**

Les Alexander, Trustee of Terry Manufacturing Company, Inc.
220 Street North
Birmingham, Alabama 35203
205-488-1100

N.D. Horton, Jr.
Horton Homes
101 Industrial Blvd.
Eatonton, Georgia  31024
706-485-8506

Dick Schmidt
Richard W. Schmidt, Esquire
Blasingame, Burch, Garrard, Bryant & Ashley
1040 Founders Row, Suite A
Greensboro, Georgia  30642
706-453-7139

Randy Averett
Warren, Averett, Kimbrough & Marion LLC
2500 Acton Road
Birmingham, Alabama 35243
205-979-4100

Jesse Slaten
Slaten & O'Conner
One Perimeter Place South
Birmingham, Alabama 35243
205-970-6073

**B. Individuals who may be called if the need arises:**

Roy Terry
902 Crestwood Drive
Roanoke, Alabama 36274-7224
334-863-8404

Rudolph Terry
c/o Terry Manufacturing Company, Inc.
3725 Zip Industrial Blvd., S.E.
Atlanta, GA 30354
404-761-8888

Cotina W. Terry
c/o Terry Manufacturing Company, Inc.
924 South Street
Roanoke, Alabama 36724
334-863-2171

Allie Robinson
c/o Terry Manufacturing Company, Inc.
3725 Zip Industrial Blvd., S.E.
Atlanta, GA 30354
404-761-8888

Sidney Johnson
6675 US Highway 431
Roanoke, Alabama 36274
334-863-2863

David Giddens, CPA
Greensboro, GA
706-485-8506

Leon Goodrum
Goodrum Enterprises, Inc.
1176 Ralph David Abernathy
Atlanta, Georgia 30310
(404)758-4125

**II.    The designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony:**

Deposition Testimony of Roy Terry

**III.    Documents or other exhibits, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.**

**A.    Exhibits defendants expect to offer as evidence:**

Promissory Note from the Terrys to ARE in the amount of $400,000.00 dated November 27, 1996.

Promissory Note renewal from the Terrys to ARE in the amount of $350,000.00 dated May 27, 1997. Bates No. AMR.EST0005

Irrevocable stock of power executed by Rudolph Terry and Roy Terry dated November 27, 1996, assigning 10,000 shares of common stock of Perky Cap to ARE. Bates No. AMR.EST00017

Irrevocable stock of power executed by Rudolph Terry to ARE transferring 1,000 shares of common stock of Terry Manufacturing dated November 27, 1996. Bates No. AMR.EST00019

Affidavit executed by Roy Terry stating that on May 27, 1997 he executed the renewal promissory note in favor of ARE in the principal amount of $350,000.00 being due August 25, 1997. Date is May 29, 1997. Bates No. AMR.EST00024

Security Agreement from TMC to ARE granting all common stock in Perky Cap 20% of common stock of Terry Manufacturing. Bates No. AMR.EST00031

Irrevocable stock of power from Rudolph Terry to ARE assigning 1,000 shares (20%) of the common stock of TMC, dated November 24, 1999. Bates No. AMR.EST00050

Irrevocable stock of power by Rudolph Terry and Roy Terry assigning to ARE 10,000 shares of common stock of Perky Cap, executed November 24, 1999. Bates No. AMR.EST00051

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap dated November 24, 1999.  Bates No. AMR.EST00052

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap dated November 24, 1999.  Bates No. AMR.EST00053

Settlement statement, borrowers are Rudolph Terry and Roy Terry cash to borrow $500,000 dated November 24, 1999.  Bates No. AMR.EST00054

Copy of check from Blasingame Burch to Rudolph Terry and Roy Terry in the amount of $489,500.00 dated November 24, 1999.  Bates No. AMR.EST00058

Line of credit promissory note from TMC to ARE for $5,500,000.00 dated November 10, 2000.  Bates No. AMR.EST00109

Loan agreement between TMC and ARE dated November 10, 2000 for $5,500,000.00.  Bates No. AMR.EST00115

Agreement between TMC and ARE dated November 10, 2000 re:$5,500,000.00 loan.  Bates No. AMR.EST00124

Stock certificates for TMC.  Bates No. AMR.EST00127

Security agreement between TMC and ARE dated November 10, 2000 assigning stock on Perky Cap and TMC.  Bates No. AMR.EST00137

Irrevocable stock of power by Rudolph Terry to ARE assigning stock of TMC dated November 10, 2000.

Security Agreement between TMC and ARE dated November 10, 2000 re:security interest in stock shares.  Bates No. AMR.EST00137

Pledge agreement between TMC and ARE dated November 10, 2000 re:$5,500,000.00 loan.  Bates No. AMR.EST00141

Unconditional guaranty of payment and performance by Roy Terry and Rudolph Terry to ARE dated November 10, 2000. Bates No. AMR.EST00150

Unconditional guaranty of payment and performance by TMC to ARE dated November 10, 2000.  Bates No. AMR.EST00157

Georgia UCC-1 Financing statement between Roy Terry and Rudolph Terry and TMC secured party is ARE it covers the November 10, 2000 loan.   Bates No. AMR.EST00164

Stock option with put/call by TMC to ARE granting stock dated November 10, 2000. Bates No. AMR.EST00171

Employment agreement between Perky Cap and Jack Perkinson dated November 10, 2000. Bates No. AMR.EST00173

Letter from New York Life to ARE enclosing endorsed collateral assignment on Roy Terry. Bates No. AMR.EST00178

Closing statement for 5.5 million loan between TMC and ARE dated November 10, 2000. Bates No. AMR.EST00180

Copy of check from ARE to Blasingame Burch in the amount of $1,000,000 dated December 15, 2000. Bates No. AMR.EST00181

Copy of check from ARE to Blasingame Burch for the amount of $1,000,000 dated January 15, 2001. Bates No. AMR.EST00182

Copy of check from Blasingame Burch to Rudolph Terry and Roy Terry in the amount of $1,000,000 dated February 15, 2001. Bates No. AMR.EST00183

TMC financial statements December 31, 1999 and 1998.   Bates No. AMR.EST00185

Agreement between TMC and ARE dated November 10, 2000 re: the $5,500,000 loan. Bates No. AMR.EST00196

TMC promotional products opportunity, dated October 12, 2000.   Bates No. AMR.EST00254

Money promissory note from Allie Robinson to N.D. Horton and James Reynolds for $200,000.00 dated November 10, 2000. Bates No. AMR.EST00265

Purchase money promissory note from Cotina Terry to Horton and Reynolds for $200,000.00 dated November 10, 2000. Bates No. AMR.EST00292

Promissory note between TMC and ARE dated August 6, 2001 for $1,500,000.00. Bates No. AMR.EST00320

Agreement between TMC and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00322

6

Agreement between TMC and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00324

Loan agreement between TMC and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00326

Security agreement between TMC and ARE dated August 6, 2001 granting 400 shares of stock of TMC. Bates No. AMR.EST00334

Georgia UCC-1 debtor's Roy Terry, Rudolph Terry and TMC secured party ARE. Bates No. AMR.EST00338

Pledge agreement between Roy Terry and ARE dated August 6, 2001 re:$1,500,000 loan. Bates No. AMR.EST00339

Pledge agreement/irrevocable limited of power of attorney and assignment.

Closing statement on $1,500,000.00 loan. Bates No. AMR.EST00353

Note signed by TMC to ARE for $500,000 dated February 25, 2003. Bates No. AMR.EST00357

Letter of intent by N.D. Horton executed June 6, 2002 for the $1,500,000 loan from Peeples Bank to TMC. Bates No. AMR.EST00358

Agreement between TMC and ARE and Perky Cap dated May 30, 2002. Bates No. AMR.EST00359

Consent to action by the board of director of Perky Cap executed by Roy Terry, Rudolph Terry and Jack Perkinson, dated May 30, 2002. Bates No. AMR.EST00361

Promissory note from TMC to Horton and Reynolds for $624,000.00 dated May 30, 2002. Bates No. AMR.EST00363

Closing statement for $624,000.00 loan dated May 30, 2002. Bates No. AMR.EST00367

Bill of sale of common stock executed by Horton and Reynolds on May 30, 2002. Bates No. AMR.EST00368

Consent to action by board of directors of Perky Cap executed by Roy Terry, Rudolph Terry, Horton and Reynolds on May 30, 2002. Bates No. AMR.EST00369

Resignation of officers of Perky Cap executed by Horton and Reynolds on May 30, 2002. Bates No. AMR.EST00370

Consent to action by board of directors of Perky Cap executed by Roy Terry, Rudolph Terry, Jack Perkinson dated May 30, 2002. Bates No. AMR.EST00371

Loan agreement executed by TMC and Catina Terry and Horton and Reynolds for the $624,000.00 dated May 30, 2002. Bates No. AMR.EST00372

Pledge agreement executed between Cotina Terry and Horton and Reynolds, dated May 30, 2002. Bates No. AMR.EST00378

Proxy by Cotina Terry dated May 30, 2001. Bates No. AMR.EST00381

Irrevocable stock of power by Catina Terry dated May 30, 2002. Bates No. AMR.EST00382

Letter from New York Life to ARE enclosing endorsed collateral of assignment on Roy Terry. Bates No. AMR.EST00383

Bill of sale of common stock by Horton and Reynolds dated May 30, 2002. Bates No. AMR.EST00385

Pledge agreement between Perkinson and Horton and Reynolds, dated May 30, 2002 pledging 14,400 shares of Perky Cap stock. Bates No. AMR.EST00386

Security agreement between Perky Cap and Horton and Reynolds dated May 30, 2002 for the 14,400 shares pledged for the $624,000.00 loan dated May 30, 2002. Bates No. AMR.EST00391

Encumbancy certificate of the company executed by TMC dated November 10, 2000. Bates No. AMR.EST00444

Georgia Secretary of State Corporations Division business information printout on TMC. Bates No. AMR.EST00446

Third-Party Checks Deposited into TMC's Account No. 5011256 at the Bank of Wedowee. Bates No. Defendant's Exhibit 40, Defendant's Exhibit 1

Memorandum of J. Lester Alexander, III, Trustee in Support of His Cross Motion for Partial Summary Judgment and In Opposition to Summary Judgment Motions of Bank of Wedowee, First Tuskegee Bank and Peoples Bank of Eatonton. J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC v. Peoples Bank of Eatonton, et al. AP No. 04-03061

Affidavit of J. Lester Alexander, III.  J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC v. N.D. Horton and James M. Reynolds, III  AP No. 05-03042

Any and all documents produced pursuant to subpoenas to third parties (whether issued by the Trustee or Defendants) in Cases 04-3061, 04-3062 and 04-3063

Any documents and/or exhibits necessary for rebuttal

May 23, 2002 memo.  Bates No. PEOP0157-0161

May 30, 2002 Agreement.  Plaintiff's Exhibit 3 (Culberson's Deposition)

Financial information.  Bates No. PEOP 232-244

May 29, 2002 loan committee minutes.  Bates No. PEOP00006

TMC tax returns and loan related documents.  Bates No. PEOP0106-116

Corporate authorization resolution.  Bates No. PEOP0218

Letter of intent.  Bates No. PEOP245

Loan document.  Bates No. PEOP0002-3

Guaranty by corporation.  Bates No. PEOP0174

TMC's financial statements, December 31, 2001 and 2000.  Bates No. Plaintiff's Exhibit 12 (Culberson)

TMC financial statement, December 2002 and 2001.  Bates No. PEOP0007-0017

Composite exhibit including checks and deposit slips regarding loans proceeds from ARE and/or Horton to TMC or the Terrys

Report of Randy Averett together with any supporting documents

## B.   Exhibits defendants may offer if the need arises:

Summary Reports of AEA Group

Report of  J. Lester Alexander, III

Resume of J. Lester Alexander, III

Pleadings from related adversary proceedings

Any and all checks, invoices and other financial documents relevant to this matter.

Stock option with put/call Bates No. AMR.EST0001

Promissory Note from TMC to ARE in the amount of $300,000.00 dated August 25, 1997. Bates No. AMR.EST0008

Promissory Note third renewal from TMC to ARE in the amount of $250,000.00 dated November 24, 1997. Bates No. AMR.EST00011

Promissory Note fourth renewal from TMC to ARE in the amount of $150,000.00 dated February 23, 1998. Bates No. AMR.EST00013

Promissory Note fifth renewal from TMC to ARE in the amount of $150,000.00 dated March 24, 1998. Bates No. AMR.EST00015.

Promissory Note from TMC to ARE for $400,000.00 dated November 27, 1996. Bates No. AMR.EST00029

Promissory Note sixth renewal from TMC to ARE in the amount of $150,000.00 dated August 21, 1998. Bates No. AMR.EST00037

TMC Note number one payment history. Bates No. AMR.EST00039

Line of credit promissory note from TMC to ARE in the amount of $1,000,000.00, dated November 24, 1999. Bates No. AMR.EST00040

Security Agreement from TMC to ARE granting all common stock incurred Perky Cap and 20% of common stock of TMC. Bates No. AMR.EST00046

Letter from Seaborne Ashley to Rudolph Terry and Roy Terry, RE: line of credit note dated November 24, 1999, enclosing funds check in the amount of $350,000.00. Bates No. AMR.EST00056

Copy of check from Blasingame Burch to Rudolph Terry and Roy Terry in the amount of $150,000.00 dated January 13, 2000. Bates No. AMR.EST00059

Terry Manufacturing note number 2 point history. Bates No. AMR.EST00060

Loan agreement between TMC and ARE dated June 30, 2000 for the amount of $500,000.00. Bates No. AMR.EST00063

Security agreement between TMC and ARE dated June 30, 2000, security is listed as all common stock in Perky Cap 20% of common stock of TMC and 10% of common stock of TMC. Bates No. AMR.EST00067

10

Irrevocable stock of power by Rudolph Terry to ARE assigning 1,500 shares (20%) of common stock of TMC dated June 30, 2000. Bates No. AMR.EST00071

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap dated June 30, 2000. Bates No. AMR.EST00072

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap executed June 30, 2000. Bates No. AMR.EST00073

Irrevocable stock of power from Rudolph Terry and Roy Terry to ARE assigning 10,000 shares of common stock of Perky Cap executed June 30, 2000. Bates No. AMR.EST00074

Copies of certificates of stocks in TMC and Perky Cap. Bates No. AMR.EST00075

Letter from Blasingame Burch to TMC enclosing check for $200,000.00. Bates No. AMR.EST00084

Copy of check to Rudolph Terry from Blasingame Burch for $294,500.00 dated June 30, 2000. Bates No. AMR.EST00086

TMC note number three payment history. Bates No. AMR.EST00087

Promissory note from TMC to ARE for $800,000.00 dated August 29, 2000. Bates No. AMR.EST00088

Loan agreement between TMC and ARE dated August 29, 2000 for $800,000.00. Bates No. AMR.EST00090

Security agreement between TMC and ARE dated August 29, 2000 granting all of the common stock in Perky Cap 20% in the common stock of TMC and 10% of the common stock of TMC 15% of common stock of TMC. Bates No. AMR.EST00094

Irrevocable stock of power by Rudolph Terry and Roy Terry to ARE transferring common stock of Perky Cap executed August 29, 2000. Bates No. AMR.EST00098

Irrevocable stock of power by Rudolph Terry to ARE assigning 1,000 shares (20%) of common stock of TMC 500 shares (10%) of common stock of TMC and 750 (15%) of common stock of TMC dated August 29, 2000. Bates No. AMR.EST00101

Stock certificates for TMC. Bates No. AMR.EST00102

11

Settlement statement for Rudolph Terry and Roy Terry dated August 29, 2000 for $800,000.00.  Bates No. AMR.EST00105

Copy of check from ARE to Blasingame Burch for $800,000.00 dated August 29, 2000.  Bates No. AMR.EST00107

TMC note number four payment history.  Bates No. AMR.EST00108

TMC stock purchase note payment history.  Bates No. AMR.EST00264

TMC note number five payment history.  Bates No. AMR.EST00319

TMC note number six payment history.  Bates No. AMR.EST00356

TMC stock purchase note payment history.  Bates No. AMR.EST00362

Closing statement for the $5,500,000.00 loan from ARE to TMC dated November 10, 2000.  Bates No. AMR.EST00392

Loan agreement between TMC and ARE for the $5,500,000.00 loan dated November 10, 2000.  Bates No. AMR.EST00393

Agreement between TMC and ARE for the loan of $5,500,000.00 dated November 10, 2000.  Bates No. AMR.EST00402

Pledge agreement/irrevocable limited power of attorney and assignment, signed by Roy Terry and Rudolph Terry dated November 10, 2000.  Bates No. AMR.EST00404

Copy of stock certificates for TMC.  Bates No. AMR.EST00405

Security agreement between TMC and ARE dated November 10, 2000 granting stock shares.  Bates No. AMR.EST00415

Pledge agreement between TMC and ARE dated November 10, 2000 on the $5,500,000.00 loan.  Bates No. AMR.EST00419

Irrevocable stock of power executed by Rudolph Terry and Roy Terry assigning stock shares to ARE dated November 10, 2000.  Bates No. AMR.EST00422

Proxy by Rudolph Terry and Roy Terry to Horton and Reynolds dated November 10, 2000, proxy of 2,550 shares, 51%, of common stock of TMC.  Bates No. AMR.EST00426

12

Proxy by Rudolph Terry and Roy Terry to Horton and Reynolds dated November 10, 2000, granting 30,000 shares of the common stock of Perky Cap.    Bates No. AMR.EST00427

Unconditional guaranty of payment and performance by Roy Terry and Rudolph Terry to ARE dated November 10, 2000.  Bates No. AMR.EST00428

Unconditional guaranty of payment and performance by TMC to ARE dated November 10, 2000.  Bates No. AMR.EST00435

Georgia UCC-1 debtor's Roy Terry, Rudolph Terry and TMC secured party ARE.

Bates No. AMR.EST00442

Consent to action board of directors TMC executed by Roy Terry and Rudolph Terry on November 10, 2000.  Bates No. AMR.EST00447

Stock option with put/call executed by Rudolph Terry and Roy Terry to ARE on November 10, 2000.  Bates No. AMR.EST00449

Pledge agreement between Catina Terry and Horton and Reynolds dated November 10, 2000, pledging stocks for the $200,000.00 loan.    Bates No. AMR.EST00451

Pledge agreement between Allie Robinson and Horton and Reynolds dated November 10, 2000, pledging stock for the $200,000.00 loan.    Bates No. AMR.EST00454

Employment agreement between Perky Cap and Jack Perkinson dated November 10, 2000.  Bates No. AMR.EST00457

Unconditional guaranty of payment and performance executed by Roy Terry and Rudolph Terry on November 10, 2000 to Horton and Reynolds for the Allie Robinson loan.  Bates No. AMR.EST00462

Unconditional guaranty of payment and performance executed by Roy Terry and Rudolph Terry on November 10, 2000 for the $200,000.00 loan to Allie Robinson.  Bates No. AMR.EST00469

Any pleadings from this adversary proceeding or from any other adversary proceeding in the TMC bankruptcy case.

Any exhibits to depositions taken in this case or in other TMC adversary proceedings.

Any documents produced by defendants in this action.

Any documents produced by ARE pursuant to the subpoena in a related adversary proceeding.

Any documents produced by the trustee in this action.

Any documents and/or exhibits necessary for rebuttal.

\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for N.D. Horton, Jr. and
James M. Reynolds, III

**OF COUNSEL:**

WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:    (205) 244-5437

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Pretrial Disclosures has been served by electronic filing and/or by placing same in the United States mail, properly addressed and postage prepaid, as follows:

Katherine Mille Determan
Phelps Dunbar LLP
City Plaza
445 North Boulevard
Suite 701
Baton Rouge, LA 70802-5707

This the \15th\ day of February, 2006.

\s\ C. Ellis Brazeal III

14

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:                                                    Case No. 03-32063

TERRY MANUFACTURING
COMPANY INC.,

      Debtor.

In re:                                                    Case No. 03-32213

TERRY UNIFORM
COMPANY, LLC,

      Debtor.

J. LESTER ALEXANDER III,                    Adv. Pro. No. 05-3042
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC

      Plaintiff,

v.

N.D. HORTON, JR., AND
JAMES M. REYNOLDS, III

**<u>MEMORANDUM DECISION</u>**

This Adversary Proceeding is before the Court upon the motion for summary

judgment filed by the Plaintiff and Trustee, J. Lester Alexander, III, ("Plaintiff").  (Docs.

34, 48, 49, 67).  The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H).  The Court has considered

the memoranda and arguments made by counsel therein.  For the reasons set forth below,

the Court finds that material facts are in dispute and in view of that the Plaintiff's motion

for summary judgment is DENIED.  (Doc. 34).

## I.  FACTS

The Plaintiff is seeking to avoid payments[1] made by Terry Manufacturing Company[2]

("Terry Manufacturing") to Defendant N.D. Horton, Jr., ("Horton"), in the amount of

$298,396.30, and to Defendant James M. Reynolds, III, ("Reynolds"), also in the amount

of $298,369.30.[3]  The crux of this Adversary Proceeding involves the purchase of Perky

Cap Company ("Perky Cap") stock by Roy and Rudolph Terry, Cotina Terry (daughter of

Roy Terry), and Allie R. Robinson (wife of Rudolph Terry).  At all times relevant to this

proceeding, Perky Cap was a manufacturer of headwear in Eatonton, Georgia.  (Doc. 48;

Horton Aff. ¶ 2).  The myriad of transactions underlying the claims asserted in this

Adversary Proceeding began sometime in 1994, when Horton, who at that time along

with Reynolds owned a majority of shares of Perky Cap, negotiated with the Terrys an

---

[1] In this Adversary Proceeding the Trustee asserts claims pursuant to the Georgia and Alabama fraudulent conveyance provisions, and as avoidable fraudulent conveyances and preferences pursuant to 11 U.S.C. § 548 and 11 U.S.C. § 547.  (Doc. 1).  However, the present motion for summary judgment was brought solely upon the theory of constructive fraudulent transfers and hence that is the only theory addressed by this Memorandum Decision.

[2] Terry Manufacturing filed a voluntary Chapter 11 petition in this Court on July 7, 2003.  (Case No. 03-32063, Doc. 1).  Terry Uniform, an affiliated entity, filed a voluntary Chapter 11 petition on July 22, 2003.  (Case No. 03-32213, Doc. 1).  Joint Administration of these two cases was ordered by this Court's Order of October 3, 2003.  J. Lester Alexander, III, was appointed Chapter 11 Trustee by Order of this Court on July 10, 2003.  (Doc. 20).  The Chapter 11 cases of Terry Manufacturing and Terry Uniform were converted to cases under Chapter 7 of the United States Bankruptcy Code, by Order of the Court dated May 13, 2004.  (Case No. 03-32063, Doc. 579).  J. Lester Alexander, III, was appointed Trustee of both Chapter 7 cases.

[3] Horton and Reynolds will at times be collectively referred to as Defendants.

option agreement to purchase 30,000 shares of the outstanding common stock of Perky Cap which amounted to 33% of the outstanding shares. (Doc. 48; Horton Aff. ¶ 2). In accord with that understanding, on June 6, 1994, Roy and Rudolph Terry purchased 10,000 shares each individually, and purchased 10,000.00 shares jointly. (Doc. 48; Horton Aff. ¶ 2). On that same day, Horton and Reynolds granted the Terry family the option to purchase an additional 45,900 shares of outstanding Perk Cap common stock. (Doc. 48; Horton Aff. ¶ 2-3)

With the aforementioned purchases of stock in mind, in November 2000, the Terrys and the Defendants engaged in the following transactions which are at the heart of this Adversary Proceeding. On November 10, 2000, Allie R. Robinson purchased 9,000 shares of Perky Cap common stock. In exchange for the stock, Allie Robinson executed a promissory note payable jointly to Horton and Reynolds in the amount of $200,000.00 plus 9.5% interest. These shares represented 10% of the outstanding common stock of Perky Cap. (Docs. 34, 38; Lester Aff. ¶ 14-15; Horton Aff. ¶ 2-3).

On November 10, 2000, Cotina Terry executed a promissory note identical in form to that of the Allie Robinson note. The principal sum of the note made payable jointly to Horton and Reynolds was $200,000.00, with an interest rate of 9.5%, and was given in consideration of 9,000 shares of Perky Cap stock sold to Cotina Terry. (Docs. 34, 38; Lester Aff. ¶ 14-15; Horton Aff. ¶ 2-3). Terry Manufacturing was a guarantor on both the Cotina Terry and Allie Robinson notes. (Doc. 49; Ex.'s 6, 8).

On May 20, 2002, Roy and Rudolph Terry executed a promissory note payable to Horton and Reynolds jointly in the principal amount of $624,000.00 at an interest rate of 9.0%. In consideration of the note, Horton and Reynolds transferred to Roy and Rudolph

Terry jointly, 27, 900 shares of Perky Cap stock.  These shares represented 31% of the

outstanding common stock of that company.  (Doc. 34; Lester Aff. ¶ 17).  Combined with

the aforementioned transfers of stock, this purchase resulted in the Terry family owning

84% of Perky Cap, with the ability to exercise full control over the company.  (Docs. 34,

48; Lester Aff. ¶ 17; Horton Aff. ¶ 3).

 Terry Manufacturing made payments to Horton on the Cotina Terry and Allie

Robinson note in the amount of $234,375.81.  Identical payments, totaling $234,375.81

were also made on these notes by Terry Manufacturing to Reynolds.  Terry

Manufacturing made payments totaling $127,986.98 on the Roy and Rudolph Terry

notes.  (Doc. 34; Lester Aff. ¶ 16).  It is these payments that the Plaintiff is now seeking

to avoid.

## II.  CONCLUSIONS OF LAW

### A.  Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of any material

fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P.

56, made applicable to Adversary Proceedings pursuant to Fed. R. Bank. P. 7056;

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265

(1986); Jones v. City of Columbus, 120 F.3d 248, 251 (11th Cir. 1997).  Federal Rule of

Civil Procedure 56(c) states the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The facts must be viewed in a light most favorable to the

nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct.

2505, 91 LED. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. at 322;  Hail v. Regency

Terrace Owners Association, 782 So.2d1271, 1273 (Ala. 2000).  At the stage of summary

judgment, "the judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial." Anderson

v. Liberty Lobby, Inc., 477 U.S. at 249.  To avoid an adverse ruling on a motion for

summary judgment,"the nonmoving party must provide more than a mere scintilla of

evidence." See Loyd v.Ram Industries, Inc., 64 F.Supp.2d 1235, 1237 (S.D. Ala. 1999)

(quoting Combs v.Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

## B. Discussion

The Court finds that there are material facts in dispute in this Adversary

Proceeding.  Central to the Plaintiff's fraudulent conveyance claims on the theory of

constructive fraud is determining whether Terry Manufacturing received reasonably

equivalent value in exchange for making payments on promissory notes executed by the

Terrys for the purpose of purchasing Perky Cap Stock.  The Plaintiff avers that Terry

Manufacturing did not receive any value at all for making payments to Horton and

Reynolds, much less reasonably equivalent value.  (Doc. 34).  The Plaintiff further

asserts that Terry Manufacturing received no benefit from making the payments and that

it was not a signatory to any of the subject notes.  The Defendants have put forth several ways in which they claim Terry Manufacturing received reasonably equivalent value: (1) by realizing a dollar for dollar reduction on its guaranteed obligation; (2) by receiving an indirect benefit from the business decision of the Terrys to acquire Perky Cap stock; and (3) because Terry Manufacturing and the Terrys were alter egos, a benefit to one constituted a benefit to the other.  The Defendants also alternatively argue that under Alabama Code § 8-9A-8(d), Horton and Reynolds are entitled to an offset in the amount of the value of the stock given to the Terrys.  The Trustee has vigorously countered each of the arguments advanced by the Defendants, however, the Court finds that at this point the necessity for a trial has been amplified.  (Doc. 67).

The Court finds material facts in dispute rendering disposition by way of summary judgment inappropriate.  See Taylor v. Riverside-Franklin Prop. (In re: Taylor), 228 B.R. 491, 498 (Bankr. M.D. Ga. 1998)(the court is hesitant to decide such matters at summary judgment stage because fraudulent conveyances are fact intensive by nature).

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for summary judgment is DENIED.  (Doc. 34).  The Plaintiff's claims asserted in the Complaint pursuant to the Alabama and Georgia fraudulent conveyance statutes, and as avoidable fraudulent conveyances and preferences pursuant to 11 U.S.C. § 548 and 11 U.S.C. § 547, are subject to trial.  The Defendants' Motion to Extend Deadline to Respond to Plaintiff's

Reply Brief is DENIED as moot.  (Doc. 65).   The Court will enter an Order consistent

with this Memorandum Decision by way of a separate document.


      Done this 16th day of February, 2006.


                                        /s/ William R. Sawyer
                            United States Bankruptcy Judge

c: Brent B. Barriere, Attorney for Plaintiff
  C. Ellis Brazeal, III, Attorney for Defendants

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                        Case No. 03-32063

TERRY MANUFACTURING
COMPANY INC.,

     Debtor.


In re:                                        Case No. 03-32213

TERRY UNIFORM
COMPANY, LLC,


     Debtor.


J. LESTER ALEXANDER III,                      Adv. Pro. No. 05-3042
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC

     Plaintiff,

v.

N.D. HORTON, JR., AND
JAMES M. REYNOLDS, III


### ORDER

For the reasons stated in the Court's Memorandum decision of this date, the

Plaintiff's motion for summary judgment is DENIED. (Doc. 34). The Plaintiff's claims

asserted in the Complaint pursuant to the Alabama and Georgia fraudulent conveyance

*Doc # 70*

statutes, and as avoidable fraudulent conveyances and preferences pursuant to 11 U.S.C.

§ 548 and 11 U.S.C. § 547, are subject to trial.


Done this 16th day of February, 2006.



/s/ William R. Sawyer
United States Bankruptcy Judge


c: Brent B. Barriere, Attorney for Plaintiff
   C. Ellis Brazeal, III, Attorney for Defendants

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
                                          )
TERRY MANUFACTURING                       )        CASE NO.  03-32063-WRS
    COMPANY, INC.                         )
                                          )        CHAPTER 7
    Debtor                                )
                                          )
                  _____
IN RE:                                    )
                                          )        CASE NO.  03-32213-WRS
TERRY UNIFORM                             )
    COMPANY, LLC,                         )        CHAPTER 7
                                          )
    Debtor.                               )
                  _____
J. LESTER ALEXANDER, III,                 )
TRUSTEE OF TERRY                          )
MANUFACTURING COMPANY, INC.               )
AND TERRY UNIFORM                         )
COMPANY, LLC                              )        ADVERSARY PROCEEDING
                                          )        NO. 05-03042
VERSUS                                    )
                                          )
N.D. HORTON, JR. AND JAMES                )
M. REYNOLDS, III                          )

## TRUSTEE'S SUPPLEMENT TO HIS OBJECTION TO
## ADMISSION OF TESTIMONY OF RANDY AVERETT AND
## MOTION TO STRIKE
## RANDY AVERETT AND JESSE SLATON AS EXPERT WITNESSES

NOW INTO COURT, through undersigned counsel, comes plaintiff, J. Lester Alexander,

III, the duly appointed and acting Chapter 7 Trustee (the "Trustee") of Terry Manufacturing

Company, Inc., ("Terry Manufacturing") and Terry Uniform, L.L.C. ("Terry Uniform") and

respectfully requests that the Court (i) refuse to permit Randy Averett to testify at the trial of the

captioned Adversary Proceeding, and (ii) that Mr. Averett and Mr. Jesse Slaton be stricken as expert witnesses for the following reasons.

(i)    Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7026 (the "Rules") require that a proffered expert witness be specifically identified and tender "a written report prepared and signed by the witness." The expert report rendered by defendants was prepared and signed by Mr. Slaton; Mr. Averett has testified that he did not draft, edit or sign the report. Indeed, he did not even review the report until **after** it was delivered to counsel for the Trustee. Likewise, Mr. Averett has not made any of the other disclosures required by the Rules. Mr. Slaton, the author and signatory of the report, is available for trial, and Mr. Averett, who has not complied with any of the requirements of the Rules, should not be permitted to testify.

(ii)    This case concerns the Trustee's demand for avoidance of payments made by Terry Manufacturing in satisfaction of promissory notes given to the defendants by Cotina Terry, Allie Robinson, Roy Terry and Rudolph Terry. The report prepared by Mr. Slaton ignores those transactions entirely, and instead attempts to track the application of proceeds of three loans which are not at issue in this case and made by entities who are not even defendants. In his report, Mr. Slaton purports to provide "analysis…on specific loans that are the subject of the claims against the defendants made by the Trustee…." Mr. Slaton simply got it wrong. The Trustee has made no claim whatsoever with respect to the three loans Mr. Slaton analyzed.

(iii)    Whether defendants would engage an expert and, if so, when he would render a report were the subject of extensive discussions between counsel for the Trustee and counsel for the defendants over a several week period. On multiple occasions, both the Trustee and his

counsel were advised that whatever expert might be engaged by defendants, he would not address solvency issues. Consistent with that position, Mr. Slaton's report makes no mention of the solvency issue. On March 17th, a bare ten days before trial, counsel for defendants reversed position and first announced that Mr. Averett (or in his absence Mr. Slaton) would provide expert testimony on whether Terry Manufacturing was insolvent at the time of the various transactions in question. This tardy reversal plainly violates the requirement of the Rules that "[t]he report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Further, permitting this tidy and undisclosed testimony on solvency will significantly prejudice the Trustee. Mr. Averett did offer some opinions on the financial conditions of Terry Manufacturing in connection with his engagement by the Bank of Wedowee and First Tuskegee Bank. Those opinions are founded on certain appraisals by the Terrys, which the Trustee will seek to prove are either wildly inflated or outright fraudulent. That showing will require testimony by the appraisers, and, given the late date, the Trustee will not be able to obtain their attendance at trial.

**<u>The expert report submitted by defendants is not relevant to this litigation.</u>**

The Supreme Court has emphasized that it is the duty of a trial court "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The expert report submitted by the defendants does not provide any analysis relevant to this litigation. According to the expert report, the "purpose of the analysis was to determine the specific use of loan proceeds from loans made by N.D. Horton and James M. Reynolds, II. Terry Manufacturing, Inc. (sic). **The analysis was performed on specific loans that are the subject of the claims against the Defendants made by the Trustee** of Terry

-3-

Manufacturing Company, Inc." See Defendants' Expert Report, dated February 24, 2006, at 1 (emphasis supplied). The report is attached hereto without exhibits as Exhibit A.

Exhibit D-1 to the expert report defines the loans that were the subject of Mr. Slaton's analysis; a loan dated November 20, 2000[1] from American Real Estate to Terry Manufacturing in the amount of $5,500,000.00; a loan dated August 6, 2001 from American Real Estate to Terry Manufacturing in the amount of $1,500,000.00; and a loan dated May 30, 2002 from Peoples Bank of Eatonton to Perky Cap Company in the amount of $1,500,000.00. *See* Exhibit D-1 to Defendants' Expert Report dated February 24, 2006, attached hereto as Exhibit B. None of the loans that were listed on Exhibit D-1 as the subject of the defendants' expert analysis are at issue in this case.

The Trustee's complaint in this litigation asserts that the purchases of Perky Cap stock by Cotina Terry, Allie Robinson, Roy Terry and Rudolph Terry from the defendants, but paid for by Terry Manufacturing, are fraudulent conveyances under federal and state law. He does not seek to recover any amounts paid by Terry Manufacturing in connection with the loans listed on Exhibit D-1 and exclusively addressed by the report.

Messrs. Slaton and Averett did not conduct any analyses, nor even consider the transactions which are at issue in this litigation. Mr. Slaton and Mr. Averett acknowledged in their depositions that they made no analysis concerning the Cotina Terry, Allie Robinson, Roy Terry or Rudolph Terry stock transactions. *See* Deposition of Randy Averett at 30-35, attached hereto as Exhibit C; Deposition of Jesse Slaton at 13-15, attached hereto as Exhibit D. Both admitted that their only knowledge of the transactions at issue in this litigation was what they

---

1    Mr. Averett testified that this is a typographical error. The loan actually closed on November 10, 2000.

read in the Trustee's expert report, and that they first read that report some time in the two hours

preceding the depositions. *Id.* Typical is the exchange with Mr. Slaton :

> "Q.  All right.  Have you done any analysis whatsoever with respect to a transactions involving Cotina Terry, N.D. Horton, and James Reynolds?
> A.   No.
> Q.   Have you done any analysis whatsoever in connection with a transaction involving Allie Robinson, N. D. Horton, and James Reynolds?
> A.   No.
> Q.   Are you aware of either of those transactions having taken place?
> A.   I am aware of them.
> Q.   Based on what?
> A.   Based on the summary report prepared by AEA Group, dated November 1st, 2005.
> Q.   When did you first review that instrument, sir?
> A.   This morning at 9:00.
> Q.   All right.  Likewise, did you do any analysis in connection with a transaction involving Rudolph Terry, Roy Terry, individually, N.D. Horton, and James Reynolds?
> A.   No.

Exhibit D at 14:1-14:20.

Mr. Slaton simply got it wrong.  The Trustee has not asserted any claims with respect to

the three loans he analyzed.  Put simply, his analysis and proposed testimony are irrelevant, and

should not be admitted.

> **Mr. Averett may not testify because he has failed to comply with any of the**
> **disclosure obligations imposed by Federal Rule of Civil Procedure 26(a)(2)(B) and**
> **Bankruptcy Rule 7026**

Rule 26(a)(2)(B) requires that the written report submitted by the expert be "prepared and

signed by the witness."  The expert report produced by defendants to the Trustee was signed by

Jesse Slaton alone.  The letter dated February 27, 2006, and submitted by defendants in

conjunction with the expert report was also signed by Mr. Slaton only.

-5-

At his deposition, Mr. Averett admitted that he neither drafted the report nor did he review or edit the report before it was delivered to Trustee's counsel. In fact, Mr. Averett had not even read the February 27th letter until it was presented to him at his deposition. *See* Deposition of Randy Averett at 23-26, 68-70, attached hereto as Exhibit E; Deposition of Jesse Slaton at 9-13, attached hereto as Exhibit F.

Mr. Averett is neither the author nor signatory of the report as required by the Rules. Likewise, he has not provided the other disclosures such as compensation, publications and prior expert experience required by the Rules. Indeed, he has not complied with **any** of the Rules.[2]

### <u>The Defendants Should Not Be Permitted to Offer Expert Testimony on Solvency</u>

Counsel for defendants and for the Trustee had multiple discussions over the six-week period ending February 22nd on whether the defendants would engage an expert, and, if so, the timing of his report. Initially, the report was to be tendered by the end of January, and that date was extended until the first week of February, then February 10th, and ultimately February 24th. The report was tendered on February 27th.[3] Importantly, in these discussions and discussions which also involved the Trustee, counsel for defendants repeatedly stated that he did not intend to contest the Trustee's findings with respect to insolvency and that the defendants' expert would

---

[2]     Inexplicably, Mr. Slaton, likewise, failed to provide the disclosures required by the Rules with respect to his qualifications, compensation, publications and prior experience as an expert. The Trustee does not object to his testifying solely on this basis.

[3]     On February 24th, counsel for defendants attempted to correspond with counsel for the Trustee to advise that the report would not be available until February 27th. The letter was only sent by email, and the records of Trustee's counsel do not indicate that it was received. In any event, the letter did not state that defendants would reverse their decision and offer an expert opinion on solvency. The letter did note that "Mr. Averett or Mr. Slaton would testify as to…the opinions expressed in Mr. Averett's previous report in the case against the banks." In fact, Mr. Averett's firm provided multiple reports in the bank cases totaling over 60 pages in length. The focus of most of that work was Mr. Averett's attempt to trace loan proceeds, the same topic counsel for defendants had indicated would be the scope of Mr. Averett's work in this case.

not address solvency. Consistent with that repeated representation, the report authored by Mr. Slaton and tendered on February 27th makes no mention of solvency whatsoever.

Mr. Averett's deposition was conducted on March 17th. Moments before it was to commence, counsel for defendants announced that he was reversing his long announced and often repeated position that his expert would not address solvency and advised that Mr. Averett might be asked to opine on that issue. Counsel further stated that Mr. Averett would be relying on reports he had rendered in litigation filed against Bank of Wedowee and First Tuskegee Bank. On March 21st, counsel for defendants advised that he had decided to examine his expert on solvency at trial.

The report rendered in this case makes no mention of any issue pertaining to solvency, and for an expert to offer an opinion in court, his "report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions…." Fed. R. Civ. Pro. 26(a)(2)(B). None of this required information appears in Mr. Slaton's report.

Defendants' failure to provide any notice that they would not honor their counsel's repeated representations concerning the scope of their experts' testimony will significantly prejudice the Trustee. At this stage and given the flagrant disregard of defendants' disclosure obligations, the Trustee is uncertain of what opinions and what supporting data will be offered. Assuming the defense expert testifies in a manner consistent with a May 31, 2005 report in the

bank cases,[4] it will be to the effect that Terry Manufacturing was marginally solvent as of December 31, 2000. In turn, that opinion is dependent upon the validity of two appraisals accepted by Mr. Averett. Given proper notice, the Trustee would call the appraisers who allegedly rendered those reports, Messrs. Henderson and Lambert, to establish that one of the appraisals is an outright fraud prepared by Roy Terry and that the other is wildly inflated. Having only learned today of the Trustee's need for these witnesses, they have not been subpoenaed, and counsel for the Trustee has been told that both will be out of the country on the date of trial.

The required disclosures of Rule 26(a)(2)(B) and Bankruptcy Rule 7026 are designed to insure full and timely disclosure of the opinions and qualifications of the expert witness who will actually testify so that counsel can avoid trial by ambush. And trial by ambush is what the Trustee is now facing. He respectfully requests that the Court bar Mr. Averett from testifying, that the Court reject defendants' grossly tardy attempt to offer solvency opinions, and that it reject Mr. Slaton's opinions and analysis as irrelevant.

Respectfully submitted this 22nd day of March, 2006.

Respectfully submitted,

By:      /s/  Brent B. Barriere_____
         Brent B. Barriere, T.A.  (La. Bar No. 2818)
         David L. Patrón (La. Bar No. 22566)
         Catherine E. Lasky (La. Bar No. 28652)
         **PHELPS DUNBAR LLP**
         Canal Place
         365 Canal Street • Suite 2000
         New Orleans, Louisiana  70130-6534

---

4       The several subsequent reports in those cases only addressed tracing of proceeds from bank loans.

Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 22nd day of March, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.


    /s/ Catherine E. Lasky
_____



## Warren, Averett, Kimbrough & Marino, LLC

Certified Public Accountants   •   Business & Financial Consultants

February 24, 2006

Terry Manufacturing Company, Inc
Lester Alexander, Trustee
v.
N.D. Horton & James M. Reynolds, II.

**Purpose of the Engagement**

Warren, Averett, Kimbrough & Marino was engaged by the Walston, Wells & Birchall, LLP. to perform a tracing analysis and report on our findings. The purpose of the analysis was to determine the specific use of loan proceeds from loans made by N.D. Horton & James M. Reynolds, II. Terry Manufacturing Company, Inc. The analysis was performed on specific loans that are the subject of the claims against the Defendants made by the Trustee of Terry Manufacturing Company, Inc.

**Information Used**

Warren, Averett, Kimbrough & Marino relied on numerous documents in performance of this analysis and the preparation of this report. The documents include those provided by the trustee to support his reconstructed financial reports, cash and loan account statements, detailed deposit and disbursement images.

**Approach Used**

To perform this analysis we first identified the loans that are the subject of the claims against the defendants and obtained copies of the original loan documents. From these documents we traced the disbursement of loan proceeds to a corresponding deposit into a bank account controlled by the Terry's. Upon identification of a deposit from the loan proceeds into a Terry Controlled account a determination of the exact cash balance prior to the deposit was made based on the bank statement. The transactions making up the beginning balance and the amount of the loan proceeds were then identified in total. These disbursements were then traced to the bank statement and then to an image of the original transaction, to the extent one was available. Whenever possible a comparison was made to the classification used by the Trustee in the work papers that support the



**EXHIBIT**

"A"



Sources and Uses of Cash Report included in his expert opinion. If one of the disbursements was a transfer to another account, the amount was traced to a corresponding deposit in the receiving account. The same steps previously described were then performed until the final use of the funds could be determined.

Because the general ledger and supporting records of the company are not reliable or available and because management likely held checks and was supposedly involved in check kiting activities, we used the bank statements to determine the timing of the transactions. When necessary, our analysis uses a FIFO (First In First Out) cash flow assumption in order to determine the specific uses of funds that are not readily determinable due to combining deposits and or disbursements.

**Findings Related to the Loans**

Schedule D-1 was cross referenced from a schedule (D-1.1) prepared by the Trustee, which details disbursements of loan proceeds. Schedule D-1 provides a tracing of each loan disbursement from the defendants into the initial account of deposit. In all cases these deposits were made to an account in the name of Terry Manufacturing, Inc. From the initial deposits into a Terry Manufacturing account each loan is traced in separate schedules.

**$5,500,000 Loan Dated 11/20/00**

On November 20, 2000 American Real Estate loaned Terry Manufacturing Company $5,500,000 to be disbursed in various draws. The following schedules provide tracing detail for the draws related to this loan.

**Tracing Schedule BOW-1**

On November 13, 2000 Terry Manufacturing Co., Inc. made a draw of $1,994,960 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on 11/13/00. Upon Deposit the account had a balance of $1,884.77. On November 13, 2000 $1,995,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $1,995,000 was transferred back to account 5011256 in various amounts between November 13th and December 7th. From the $1,995,000 loan proceeds, $400,670.89 was disbursed to the U.S Treasury, $33,405 was disbursed to the Bank of Wedowee, $41,666.67 was disbursed to American Real Estate and $1,520,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between November 13th and December 7th.



Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-2**

On December 18, 2000 Terry Manufacturing Co., Inc. made a draw of $1,000,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on December 18, 2000. Upon Deposit the account had a balance of $1,602.21. On November 13, 2000 $866,500 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $869,500 was transferred back to account 5011256 in various amounts between December 19th and December 28th. From the $1,000,000 loan proceeds, $166,717.50 was disbursed to the Bank of Wedowee and $836,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between December 18th and December 28th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-3**

On January 16, 2001 Terry Manufacturing Co., Inc. made a draw of $1,000,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on January 16, 2001. Upon



**Warren, Averett, & Kimbrough Marino, LLC**
Certified Public Accountants • Business & Financial Consultants

Deposit the account had a balance of $1,865.46. On January 16, 2001 $1,000,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $1,000,000 was transferred back to account 5011256 in various amounts between January 18th and January 25th. From the $1,000,000 loan proceeds $1,000,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between January 18th and January 25th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-4**

On February 16, 2001 Terry Manufacturing Co., Inc. made a draw of $1,000,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on February 16, 2001. Upon Deposit the account had a balance of $1,865.46. On February 16, 2001 $1,000,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $899,000 was transferred back to account 5011256 in various amounts between February 20th and March 15th this left a $101,000 of the February 16th loan proceeds in the 13006819 account on March 15th . From the $899,000 of remaining loan proceeds $33,000 was disbursed the Bank of Wedowee and $866,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between February 20th and March 15th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary



## Warren, Averett, Kimbrough & Marino, LLC
### Certified Public Accountants • Business & Financial Consultants

type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-5**

On March 16, 2001 Terry Manufacturing Co., Inc. made a final draw of $500,000 on the $5.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on March 16, 2001. Upon Deposit the account had a balance of $1,560.46. On March 16, 2001 $500,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. As of March 15th the Bank of Wedowee account 13006819 contained $101,500 of loan proceeds from the February 16th loan, therefore subsequent to sweeps of $500,000 on March 16th the account had $601,500 available for disbursement. $601,500 was transferred back to account 5011256 in various amounts between March 20th and June 11th. From the $601,500 loan proceeds $122,100 was disbursed to the Bank of Wedowee, $50,000 was disbursed to Perky Cap Company, $35,400 was disbursed to Terry Properties and $394,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were each made on March 20, March 30, and June 11.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**$1,500,000 Loan Dated 8/06/01**

On August 6, 2001 American Real Estate loaned Terry Manufacturing Company $1,500,000 to be disbursed in two draws. Legal fees totaling $16,032 associated with this transaction were paid out of the proceeds at closing. The following schedules provide tracing detail for the draws related to this loan.



**Warren, Averett, Kimbrough & Marino, LLC**

Certified Public Accountants  •  Business & Financial Consultants

**Tracing Schedule BOW-8**

On August 9, 2001 Terry Manufacturing Co., Inc. made a draw of $733,968 on the $1.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on August 9, 2001. Upon Deposit the account had a balance of $1,930.42. On August 9, 2001 $574,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. $560,000 was transferred back to account 5011256 in various amounts between August 9th and August 31st leaving $14,000 in the 13006819 account at August 31st. From the $719,968 of remaining loan proceeds and beginning balance $720,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank. The transfers to the First Tuskegee Bank account were made on various dates between August 9th and August 31st.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

**Tracing Schedule BOW-9**

On September 4, 2001 Terry Manufacturing Co., Inc. made a draw of $750,000 on the $1.5 million loan. The proceeds were deposited into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee on September 4, 2001. Upon Deposit the account had a balance of $1,930.42. On September 4, 2001 $350,000 was swept to the Terry Manufacturing account 13006819 at the Bank of Wedowee. The account contain $14,000 of the August 9th draw from the loan on September 1st therefore the total available in the account after the September 4th draw was $364,000. $364,000 was transferred back to account 5011256 in various amounts between September 6th and September 13th leaving no loan proceeds in the 13006819 account at September 13th. From the $763,968 of remaining loan proceeds $590,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank, $125,000 was transferred to the Terry Manufacturing Company operating account 4928 at Bank of America and $49,968 was disbursed to Terry Manufacturing. The ultimate use of the $49,968 cannot be determined based on the available information. The $125,000 transferred to the Bank of America was used for Government transactions based on the

# Warren, Averett, & Kimbrough Marino, LLC
### Certified Public Accountants • Business & Financial Consultants

schedule to receipts and disbursements provided by the Trustee. The transfers to the First Tuskegee Bank account were made on various dates between September 4th and September 10th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.

## $1,500,000 Loan Dated 5/30/02

### Tracing Schedule BOW-10

On May 30, 2002 Perky Cap Company loaned Terry Manufacturing Company $1,500,000. On May 31, 2002 Terry Manufacturing Co., Inc. deposited the $1,500,000 loan proceeds into account 5011256, a Terry Manufacturing Company account, at the Bank of Wedowee. Upon Deposit the account had a balance of $1,557.30. From the $1,500,000, $1,470,000 was transferred to the Terry Manufacturing Company operating account 1109308 at First Bank of Tuskegee Bank and $30,000 was disbursed to Terry Manufacturing, Inc., but the ultimate use of the funds cannot be determined based on the information available The transfers to the First Tuskegee Bank account were made on various dates between June 3rd and July 18th.

Based on a review of the First Tuskegee Bank statements the balance in the accounts decreased between the dates just prior to the first loan proceeds transfer cleared the bank and just after the last transfer from the loan proceeds cleared the bank (See Schedule D-2). Therefore one could conclude without a specific identification that a listing of all disbursements clearing between these dates would include all transactions related to the loan proceeds. The Trustee prepared and provided a listing of cash receipts and disbursements clearing during the time period in question. Based on a review of this documentation the vast majority of all disbursements appear to be payments for ordinary type business expenses and therefore they seem to be for the benefit of Terry Manufacturing, Inc. These listings and supporting documentation are provided with the tracing schedule.



## Conclusion

The Trustee has contended that the loan proceeds were not traceable to the final use of the funds because the money was "commingled and laundered". Based on this analysis, the use of the vast majority of funds has been identified. The vast majority of the funds were deposited into Terry Manufacturing Company accounts and appear to be used for ordinary business purposes.


By: _____
Jesse D. Slaton, CPA

**TERRY MANUFACTURING VS N.D. HORTON & JAMES M. REYNOLDS, II**
Loans to Terry Manufacturing & Related Entities

| Preparer | JDS |
|---|---|
| Date | 2/27/06 |

| Loan Date | Creditor | Debtor | A-2 Loan Amount | Draw Date | D-1.1 Net Proceeds | Ref | Bank of Deposit/ Purpose | Acct. of Deposit | |
|---|---|---|---|---|---|---|---|---|---|
| 11/20/00 | American Real Estate | Terry Manufacturing Co., Inc. | $ 5,500,000 | 11/13/00 | $ 1,994,960 | BOW-1 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | 12/18/00 | 1,000,000 | BOW-2 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | 01/16/01 | 1,000,000 | BOW-3 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | 02/16/01 | 1,000,000 | BOW-4 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | 03/16/01 | 500,000 | BOW-5 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | Unknown | 5,040.00 | | Unknown | | |
| | | | | | $ 5,500,000 | | | | |
| 08/06/01 | American Real Estate | Terry Manufacturing Co., Inc. | $ 1,500,000 | 08/06/01 | $ 16,032 | | Legal Fees | | |
| | | | | 08/09/01 | 733,968 | BOW-8 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | 09/04/01 | 750,000 | BOW-9 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |
| | | | | | $ 1,500,000 | | | | |
| 05/30/02 | Peoples Bank of Eatonton | Perky Cap Company, Inc. | $ 1,500,000 | 05/30/02 | 1,500,000 | BOW-10 | ‡ Bank of Wedowee | 5011256 Sweep | ✓ |

✓ The account is confirmed to be a Terry Manufacturing Company, Inc. operating account.

‡ Traced into the account on the deposit date and reviewed copy of the deposit ticket

**D-1**

c:\prb engagement\win\workpapers\{4e88c88f-34bd-4fa3-80f6-a32012f0781}\{0ef685c1-2904-4892-9ad2-ac45c872a7a7}\{517e553c-ca36-4c5a-8fd5-54cc848ecb6c}.xls

**EXHIBIT "B"** tabbies®

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 30

1    amount of $5,500,000; correct?  A loan

2    dated August the 6th, 2001, American Real

3    Estate to Terry Manufacturing Company, in

4    the amount of $1,500,000; and a loan

5    dated May the 30th, 2002, by People's

6    Bank of Eatonton to Perky Cap Company in

7    the amount of $1,500,000.  Is that

8    correct?

9        A.    The first loan is dated November

10   10th.

11       Q.    Okay.  I'm referring to D-1, you

12   have a loan dated 11/20; correct?

13       A.    Yes, that's correct.

14       Q.    We're talking about the same

15   loan?

16       A.    That's right.

17       Q.    That's just a typographical

18   error?

19       A.    Correct.

20       Q.    All right.  And so the record's

21   clear, these are the three loans and only

22   the three loans that you have considered

23   in connection with this engagement?

**EXHIBIT**

"C"

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 31

1        A.    Yes.

2        Q.    And have you considered any other

3    transactions besides these three loans

4    involving Mr. Horton and Mr. Reynolds?

5        A.    No.

6        Q.    Now, specifically, sir, in

7    connection with your work in this case,

8    have you in any way considered a

9    transaction between Cotina Terry and Mr.

10   Horton and Reynolds which occurred on

11   November 10th, 2000, by which Ms. Terry,

12   Cotina Terry, tendered a note for

13   $200,000 to Mr. Horton and Mr. Reynolds?

14       A.    No.

15       Q.    Prior to my asking this question,

16   had you ever been heard of that

17   transaction?

18       A.    Yes.

19       Q.    All right.  Tell me what you know

20   about it.

21       A.    I heard about it for the first

22   time this morning.

23       Q.    Okay.

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 32

1    A.    And what I know about it, I saw

2    it in Lester's expert report involving

3    this case.

4    Q.    All right.  Was this morning the

5    first chance you had to review

6    Mr. Alexander's report?

7    A.    Yes.

8    Q.    So I would infer, given that it's

9    still only ten till 11:00, you've done no

10   analysis concerning this transaction

11   between Cotina Terry, Messrs. Horton and

12   Reynolds whatsoever; is that correct?

13   A.    Yes.

14   Q.    All right.  And whatever

15   knowledge you have about that is limited

16   to what may be gleaned from Mr.

17   Alexander's report rendered in this

18   litigation?

19   A.    Yes.

20   Q.    All right.  Likewise, sir, have

21   you done any analysis whatsoever, or

22   anyone at your firm done any analysis

23   whatsoever, with respect to a transaction

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 33

1  involving Allie Robinson -- that's

2  spelled, by the way, A-L-L-I-E Robinson

3  -- N. D. Horton, and James Reynolds on

4  November 10th, 2000, by which

5  Ms. Robinson tendered a $200,000

6  promissory note to Mr. Horton and

7  Mr. Reynolds?

8     A.   No.  Did that start out by saying

9  have I done any work regarding that?

10     Q.   Yes, sir.

11     A.   Okay.  The answer to that is no.

12     Q.   And what knowledge, if any, do

13  you have concerning that transaction?

14     A.   Other than what's in this report

15  and this morning, none.

16     Q.   "This report" referring to the

17  Alexander expert report?

18     A.   Yes.

19     Q.   And again, as I understand it,

20  whatever information you have is what you

21  may have picked up from reading Mr.

22  Alexander's report, which you did some

23  time between, what, 9:00 and 11:00 this

90ea6d19-94d3-4c79-ba5c-21adf768f338

Page 34

1    morning?

2        A.    Yes.

3        Q.    All right.  Do you have any

4    knowledge as to what payments were made

5    on the note given by Cotina Terry to Mr.

6    Horton and Mr. Reynolds?

7        A.    No.

8        Q.    Do you have any knowledge with

9    respect to any payments made on the note

10   given by Allie Robinson to Mr. Horton and

11   Mr. Reynolds?

12       A.    No.

13       Q.    Do you have any knowledge as to

14   either the amount of or the payee on

15   those payments?

16       A.    No.  Other than what I'm reading

17   in these reports, no.

18       Q.    Okay.  Sir, have you done any

19   analysis with respect to a transaction

20   between Roy and Rudolph Terry and Mr.

21   Horton and Mr. Reynolds on May the 20th,

22   2000, by which the two Terry brothers

23   gave a note of $624,000?

90ea6d19-94d3-4c79-ba5c-21adf768f338

Page 35

1    A.    No.

2    Q.    Am I correct that what

3    information, if any, you may have

4    concerning that transaction is derived

5    solely from this morning's review of Mr.

6    Alexander's report?

7    A.    That's correct.

8    Q.    Okay.  And just so the record's

9    clear, with respect to all three

10   transactions we've spoken of, you were

11   not asked to address those in any way as

12   part of your engagement in this

13   litigation?

14   A.    That's correct.

15   Q.    And indeed, were not even aware

16   of those until your review of that report

17   sometime between 9:00 and 11:00 this

18   morning?

19   A.    That's correct.

20   Q.    Returning to your report, sir,

21   Exhibit 2.  Information used, I'm going

22   to quote here:  "Warren, Averett,

23   Kimbrough & Marino relied on numerous

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 13

1     A.   He said it appeared to be

2   adequate.

3     Q.   Did you have any other

4   discussions besides his comments that it

5   appeared to be adequate?

6     A.   No.

7     Q.   Okay.  The first paragraph,

8   "Purpose of Engagement," states, and I

9   quote, The analysis was performed on

10  specific loans that are the subject of

11  the claims against the defendants made by

12  the trustee of Terry Manufacturing

13  Company, Inc.

14          Do you see where I'm reading

15  from, sir?

16    A.   Yes.

17    Q.   All right.  Did Mr. Brazeal ever

18  suggest to you that there were other

19  loans at issue in the action brought by

20  the trustee?

21    A.   No.  He asked us to trace the

22  loan proceeds related to these particular

23  loans.

EXHIBIT

tabbies®    "D"

Page 14

1      Q.   All right.  Have you done any

2   analysis whatsoever with respect to a

3   transaction involving Cotina Terry, N.D.

4   Horton, and James Reynolds?

5      A.   No.

6      Q.   Have you done any analysis

7   whatsoever in connection with a

8   transaction involving Allie Robinson,

9   N.D. Horton, and James Reynolds?

10     A.   No.

11     Q.   Are you aware of either of those

12   transactions having taken place?

13     A.   I am aware of them.

14     Q.   Based on what?

15     A.   Based on the summary report

16   prepared by AEA Group, dated November

17   1st, 2005.

18     Q.   When did you first review that

19   instrument, sir?

20     A.   This morning at 9:00.

21     Q.   All right.  Likewise, did you do

22   any analysis in connection with a

23   transaction involving Rudolph Terry, Roy

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 15

1    Terry, individually, N.D. Horton, and

2    James Reynolds?

3        A.    No.

4        Q.    All right.  Based upon your prior

5    testimony, would I be correct in

6    understanding your sole knowledge

7    concerning that transaction is derived

8    from your review of Mr. Alexander's

9    report, which you did sometime this

10   morning?

11       A.    Yes.

12       Q.    All right.  Have you been asked

13   to do any analysis with respect to any of

14   those three transactions?

15       A.    No.

16       Q.    All right.

17       MR. BARRIERE:  I've got no

18   further questions for this witness.  I'll

19   pass him over to Mr. Brazeal.

20       MR. BRAZEAL:  No questions.

21

22            END OF DEPOSITION

23            (12:10 p.m.)

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 23

1          MR. BRAZEAL:  Yes.

2          MR. BARRIERE:  Very good.

3      Q.   (By Mr. Barriere) Mr. Averett,

4   what role did you take in the drafting of

5   Exhibit 2?

6   (Plaintiff's Exhibit 2 was marked for

7   identification and is attached.)

8      A.   What role did I take in the

9   drafting of Exhibit 2?  Jesse Slaton

10   drafted the report, and he talked with me

11   before the drafting of the report.  And I

12   was aware of what was going in the

13   report, and I was aware of the

14   conclusions included in the report.

15      Q.   And how were you made aware of

16   those inclusions?

17      A.   From a discussion with Jesse.

18      Q.   All right.  The report is dated

19   February 24th.  Is that the date, to the

20   best of your knowledge, it was issued to

21   Mr. Brazeal?

22      A.   I would say it was issued around

23   that date, pretty close, yes.

**EXHIBIT**

tabbies&reg;    "E"

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 24

1    Q.   All right.  Did you review the

2    report prior to its being delivered to

3    Mr. Brazeal?

4    A.   No.

5    Q.   Did you play any role in the

6    actual writing of the report, the

7    creation and revision of the prose?

8    A.   To the extent that it was similar

9    to the other report we rendered, yes.

10   Beyond that, no.

11   Q.   All right.  So just so the

12   record's clear, Jesse wrote this report,

13   he edited the report, and sent it to

14   Mr. Brazeal without your involvement?

15   A.   No, that's not true.

16   MR. BRAZEAL:  Objection.  Let me

17   object to the form of the question.  I

18   believe that mischaracterizes his

19   testimony.

20   Q.   Okay.  Well, explain to me how my

21   comment is inaccurate.

22   MR. BRAZEAL:  I'll let

23   Mr. Averett do that.

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 25

1      A.   I would say -- but I would have
2   to repeat what I said just a moment ago,
3   that Jesse and I worked on this together,
4   that I was clear on the methodology, that
5   it was similar to the previous report
6   that we issued in the other case, and
7   that it was pretty clear where we were
8   headed with this, that I talked with
9   Jesse several times along the way as to
10  the progress.  And that he actually
11  drafted the report, wrote the report, but
12  he and I had dialogue about it.
13     Q.   All right.  And my question was
14  inartful.  I was really focusing on the
15  actual writing of the report.  He did
16  that, not you; correct?
17     A.   That's right.
18     Q.   And the editing of the report was
19  also performed by him, not you?
20     A.   Correct.
21     Q.   And the first time you read the
22  report was after it was delivered to
23  Mr. Brazeal; is that also correct?

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 26

1      A.    Yes.  It might be splitting hairs

2    here.  Like the day that it was delivered

3    to Mr. Brazeal, I might have looked at

4    it.

5      Q.    Okay.

6      A.    Yeah.

7      Q.    All right.  Let's turn to the

8    substance, if we may.  The first

9    paragraph, "Purpose of Engagement,"

10   reads, and I quote:  "The purpose of the

11   analysis was to determine a specific use

12   of loan proceeds from loans made by N. D.

13   Horton and James Reynolds, II. Terry

14   Manufacturing, Inc.  The analysis was

15   performed on specific loans that are the

16   subject of the claims against the

17   defendants made by the trustee of Terry

18   Manufacturing Company, Inc."

19          You see where I'm reading from,

20   sir?

21     A.    Yes.

22     Q.    All right.  How did your firm

23   identify those which are the, quote,

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 68

1    deposition, no.

2       Q.    All right.  Have you been asked

3    to do any additional work?

4       A.    No.

5       Q.    Have you been asked to render any

6    opinions other than those set forth in

7    your report?

8       A.    There's been some discussion

9    about the solvency issue, or insolvency

10   issue.  And then, as I understand it,

11   there was some testimony by Lester that

12   the company didn't need this money that

13   was advanced to it.  And then there was

14   some discussion about since they didn't

15   need it, they received no value.  And

16   we've had some discussion about whether

17   they in fact did receive value or not.

18      Q.    In that regard, may I ask you to

19   look at the copy of the letter dated

20   February 27th, 2006.  Mine is not an

21   executed copy, but it appears over

22   Mr. Slaton's name, and it's directed to

23   Ellis Brazeal.  Do you have a copy before

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 69

1    you, sir?

2        A.    Yes.

3        Q.    We've marked this previously as

4    Exhibit 3, and I'll ask that it be

5    attached to the deposition.  Did you play

6    any role in the drafting of Exhibit 3?

7    (Plaintiff's Exhibit 3 was marked for

8    identification and is attached.)

9        A.    No.

10       Q.    Did you review it prior to its

11   being issued to Mr. Brazeal?

12       A.    No.

13       Q.    All right.  Have you reviewed it

14   since February 27, 2006?

15       A.    I'm reviewing it now.

16       Q.    Is this the first time you've

17   looked at it?

18       A.    No.  I saw it yesterday, but I

19   didn't read it.

20       Q.    All right.  So I'm better served

21   in addressing my questions as to the

22   author, Mr. Slaton; correct?

23       A.    Well, that's up to you.  I mean,

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 70

1    I'm reading it while we're sitting here.

2        Q.    Okay.  Well, would I be correct

3    in understanding, sir, that any research

4    done in connection with this letter, or

5    the opinions set forth in this letter,

6    would have been performed by Mr. Slaton

7    and not you?

8        A.    Yes.

9        Q.    All right.

10            MR. BRAZEAL:  Brent, it's Ellis.

11   Just I don't know whether you know, I

12   mean, there have been several cases.  Les

13   has had his deposition taken several

14   times.  You know the report that he's

15   done in this case is dated November 15th

16   of 2005 --I'm sorry, November 1st of

17   2005.

18            What I had requested Warren,

19   Averett to do was there was a specific

20   line of questioning in Les's deposition,

21   I think in the bank case, and I had

22   forwarded to you.  Well, I need to go

23   resend that e-mail.  I'll do that over

90ea6d19-94d3-4c79-ba5c-21adf768f338

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 9

1    for CPA's in the state of Alabama?

2        A.    No.

3        Q.    Sir, you obviously sat through

4    Mr. Averett's deposition and heard your

5    name referenced on multiple occasions.  I

6    take it you are the JDS who appears on

7    the time reconstruction for hours

8    invested in this engagement by the Warren

9    Averett firm?

10       A.    Yes.

11       Q.    All right.  And you were the

12   manager assigned to this engagement

13   involving Mr. Horton and Mr. Reynolds?

14       A.    Yes.

15       Q.    I understand from Mr. Averett's

16   testimony that you are the author of what

17   we previously identified as Exhibit 2,

18   the report dated February 24, 2006.

19       A.    Yes.

20       Q.    And you are the author of what we

21   previously identified as Exhibit 3, the

22   letter to Mr. Brazeal dated February

23   27th, 2006.

EXHIBIT

tabbies  "F"
_____

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 10

1      A.   Yes.

2      Q.   Did anyone assist you in the

3  writing of Exhibit 2?

4      A.   In the specific writing, no.

5      Q.   All right.  Your answer suggests

6  that there was some assistance provided

7  to you, albeit not in actually composing

8  this document.  What are you referring to

9  there?

10      A.   Clerical assistance.

11      Q.   All right.  Would the same be the

12  case with respect to Exhibit 3?

13      A.   No.

14      Q.   Did anyone assist you in any way

15  in connection with the preparation and

16  issuance of Exhibit 3?

17      A.   Not that I recall, no.

18      Q.   And so the record's clear, you're

19  the lone professional, as opposed to a

20  clerical, the lone professional, who was

21  involved in the drafting and editing of

22  Exhibit 2?

23      A.   Yes.

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 11

1    Q.    All right.

2    A.    Excuse me, Exhibit 2 or Exhibit

3    3?

4    Q.    Exhibit 2, the report.

5    A.    I am the only certified public

6    accountant that worked on that.

7    Q.    Well, were there any other

8    nonclerical people who worked on that?

9    A.    Accounting intern.

10    Q.    An accounting intern, who was

11    that?

12    A.    Melissa Beasley.

13    Q.    What services did Ms. Beasley

14    provide?

15    A.    Basically sorting bank statements

16    and things such as that.

17    Q.    All right.  Did Ms. Beasley play

18    any hand in either the drafting or

19    editing of Exhibit 2?

20    A.    I think she could have put some

21    of the numbers on some of the lead

22    schedules.

23    Q.    Fair enough.  Did you provide a

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 12

1    draft of what became Exhibit 2 to

2    Mr. Brazeal before the final draft which

3    has been attached to this exhibit?

4        A.    Repeat the question one more

5    time.

6        Q.    Yes.  Did you provide a draft of

7    Exhibit 2 to Mr. Brazeal?

8        A.    Yes, I believe I did.

9        Q.    All right.  If this is dated

10   February 24, do you recall approximately

11   when that occurred?

12       A.    It would have been one day prior

13   to that maybe.

14       Q.    All right.  What comments, if

15   any, did he make to you?

16       A.    None.

17       Q.    Did he provide you with any

18   written alterations to what became

19   Exhibit 2?

20       A.    No.

21       Q.    Did he discuss it with you?

22       A.    We discussed it.

23       Q.    All right.

3a36d998-d255-4ada-85f8-2c1514450618

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 13

1    A.    He said it appeared to be

2    adequate.

3    Q.    Did you have any other

4    discussions besides his comments that it

5    appeared to be adequate?

6    A.    No.

7    Q.    Okay.  The first paragraph,

8    "Purpose of Engagement," states, and I

9    quote, The analysis was performed on

10   specific loans that are the subject of

11   the claims against the defendants made by

12   the trustee of Terry Manufacturing

13   Company, Inc.

14        Do you see where I'm reading

15   from, sir?

16   A.    Yes.

17   Q.    All right.  Did Mr. Brazeal ever

18   suggest to you that there were other

19   loans at issue in the action brought by

20   the trustee?

21   A.    No.  He asked us to trace the

22   loan proceeds related to these particular

23   loans.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

3a36d998-d255-4ada-85f8-2c1514450618

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                              )
                                    )
**TERRY MANUFACTURING**             )        CASE NO.  03-32063-WRS
   **COMPANY, INC.**  )
                                    )        **CHAPTER 7**
   Debtor             )
                                    )

_____

IN RE:                              )
                                    )        CASE NO.  03-32213-WRS
**TERRY UNIFORM**                   )
   **COMPANY, LLC,**  )        **CHAPTER 7**
                                    )
   Debtor.            )

_____

**J. LESTER ALEXANDER, III,**        )
**TRUSTEE OF TERRY**                 )
**MANUFACTURING COMPANY, INC.**      )
**AND TERRY UNIFORM**                )
**COMPANY, LLC**                     )        **ADVERSARY PROCEEDING**
                                     )        **NO. 05-03042**
**VERSUS**                           )
                                     )
**N.D. HORTON, JR. AND JAMES**       )
**M. REYNOLDS, III**                 )

### SUPPLEMENT TO TRUSTEE'S PRETRIAL DISCLOSURES PURSUANT TO RULE 7026(a)(3) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure, which incorporates by reference Rule 26 of the Federal Rules of Civil Procedure, J. Lester Alexander, III, the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC ("Terry Uniform"), through undersigned counsel, hereby submits the following supplement to his pretrial disclosures pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure.    As detailed in the Trustee's

-1-

NO.99592028.1

Supplement to his Objection to Admissibility of Testimony of Randy Averett and Motion to Strike Randy Averett and Jesse Slaton as Expert Witnesses, counsel for the Trustee just recently learned of defendants' intention to present expert testimony regarding the solvency of Terry Manufacturing at trial.  Out of an abundance of caution, and if the defendants are permitted to present such testimony, the Trustee wishes to supplement his pretrial disclosures to add the following documents and witnesses whose testimony is expected to be presented by means of a deposition:

**Designation of witnesses whose testimony is expected to be presented by means of a deposition**

| NAME OF DEPONENT | DATE OF DEPOSITION |
|---|---|
| Richard Dobbins | 6/23/2005 |
| Frank Henderson | 6/24/2005 |
| John E. Hall III | 6/23/2005 |
| David Bowen | 6/23/2005 |
| Joseph Lambert | 6/24/2005 |

**Identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.**

| DOCUMENT/EXHIBIT | BATES NUMBERS | WILL/ MAY OFFER | HORTON/ REYNOLDS OBJECTION |
|---|---|---|---|

-2-

NO.99592028.1

| Any and all exhibits to the depositions of Frank Henderson, David Bowen, Rick Dobbins, Joseph Lambert and John Hall | | May Offer | |
|---|---|---|---|

Respectfully submitted this 22nd day of March, 2006.

Respectfully submitted,

By:     /s/  Brent B. Barriere
Brent B. Barriere, T.A.  (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 22nd day of March, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.

    /s/ Catherine E. Lasky

-3-

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO.  03-32063-WRS** |
| **COMPANY, INC.** | ) | |
| | ) | **CHAPTER 7** |
| **Debtor** | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CASE NO.  03-32213-WRS** |
| **TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY, INC.** | ) | |
| **AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC** | ) | **ADVERSARY PROCEEDING** |
| | ) | **NO. 05-03042** |
| **VERSUS** | ) | |
| | ) | |
| **N.D. HORTON, JR. AND JAMES** | ) | |
| **M. REYNOLDS, III** | ) | |

### SECOND SUPPLEMENT TO TRUSTEE'S PRETRIAL DISCLOSURES PURSUANT TO RULE 7026(a)(3) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure, which

incorporates by reference Rule 26 of the Federal Rules of Civil Procedure, J. Lester Alexander,

III, the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("Terry

Manufacturing") and Terry Uniform Company, LLC ("Terry Uniform"), through undersigned

counsel, hereby submits the following supplement to his pretrial disclosures pursuant to Rule

7026(a)(3) of the Federal Rules of Bankruptcy Procedure.  The Trustee wishes to supplement his

-1-

pretrial disclosures to add David Giddens (Date of Deposition: 3/17/2006) as an additional

witness whose testimony is expected to be presented by means of a deposition.  The Trustee also

may offer at trial any and all exhibits to Mr. Giddens' deposition.

Respectfully submitted this 23rd day of March, 2006.

Respectfully submitted,

By:      /s/  Catherine E. Lasky
       Brent B. Barriere, T.A.  (La. Bar No. 2818)
       David L. Patrón (La. Bar No. 22566)
       Catherine E. Lasky (La. Bar No. 28652)
       **PHELPS DUNBAR LLP**
       Canal Place
       365 Canal Street • Suite 2000
       New Orleans, Louisiana  70130-6534
       Telephone:  (504) 566-1311
       Facsimile:  (504) 568-9130

       **ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 23rd day of March, 2006:

C. Ellis Brazeal III
Watson, Wells, Anderson & Berchall LLP
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203.

       /s/ Catherine E. Lasky

-2-

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO. 03-32063-WRS** |
| **COMPANY, INC.,** | ) | |
| | ) | **CHAPTER 7** |
| **Debtor** | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY UNIFORM** | ) | **CASE NO. 03-32213-WRS** |
| **COMPANY, LLC,** | ) | |
| | ) | |
| **Debtor** | ) | |

_____

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY,** | ) | **ADVERSARY PROCEEDING NO.:** |
| | ) | **05-03042** |
| **INC, AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC** | ) | |
| | ) | |
| **VERSUS** | ) | |
| | ) | |
| **N.D. HORTON AND JAMES M.** | ) | |
| **REYNOLDS, III** | ) | |

## ANSWER TO FIRST AMENDED COMPLAINT

COMES NOW the defendants, N.D. Horton, and James M. Reynolds, and for their response to the first amended complaint of the trustee say as follows:

33.    The defendants admit that they received guaranties from Terry Manufacturing regarding the Allie Robinson Note and Cotina Terry Note.  The defendants deny the remaining averments of paragraph 33.

## GENERAL

The defendants incorporate herein all of their previously pled responses and defenses to the claims set forth in this action.

\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for Defendants N.D. Horton and James M. Reynolds, III

**OF COUNSEL:**

WALSTON, WELLS, & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:   (205) 244-5437

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Answer to First Amended Complaint has been served by electronic filing purposes, as follows:

Brent B. Barriere
Katie Lasky
365 Canal Street
Suite 2000
New Orleans, Louisiana 70130

This the \24th\ day of March, 2006.

\s\ C. Ellis Brazeal III
OF COUNSEL

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

---

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC, | ) | |
| | ) | |
| Debtor | ) | |

---

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, | ) | ADVERSARY     PROCEEDING |
| NO.: | | |
| | ) | 05-03042 |
| INC, AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON AND JAMES M. | ) | |
| REYNOLDS, III | ) | |

**RESPONSE TO TRUSTEE'S MOTION TO STRIKE RANDY AVERETT AND
JESSE SLATON AS EXPERT WITNESSES**

COMES NOW Defendants N.D. Horton, Jr. ("Horton") and James M. Reynolds, III ("Reynolds"), and for their response to the Motion to Strike Randy Averett and Jesse Slaton as expert witnesses and to the trustee's objection, and supplement thereto, to the admissibility of their testimony say as follows:

1.    When this case was initially filed, it involved an attempt to set aside payments made pursuant to debts guaranteed by Terry Manufacturing Company, Inc. ("TMC").

2.    Later, the trustee indicated his intention to try to set aside the guaranties themselves as fraudulent transfers.

3.    Counsel for the defendants indicated that he did not object to an amendment to the complaint in that regard so long as he was provided time within which to obtain expert testimony since this substantially changed the complexion of the case.

4.    The complaint was so amended by this Court's order on January 30, 2006.

5.    On February 24, 2006, counsel for the defendants forwarded the attached correspondence to counsel for the trustee, which indicated that Mr. Averett and/or Mr. Slaton would provide testimony on the following three matters:

    a.    the opinions expressed in Mr. Averett's previous report in the case against the banks;

    b.    an opinion about the comments of Les Alexander, set forth in the attached excerpts from one of his depositions; and

    c.    a tracing analysis of certain of the loans from Horton and ARE to TMC.

6.    Counsel for the trustee has indicated that he did not receive this letter of February 24th.  As set forth therein, the defendants desire for Mr. Averett to present testimony regarding his opinions expressed in the trustee's lawsuit against the three banks, which would involve the solvency issue.  Counsel for the trustee already has deposed Mr. Averett in this regard.

7.    As to the report of Mr. Slaton dated February 24, 2006, although Mr. Averett did not draft the report, Mr. Averett testified that he and Mr. Slaton discussed the principals for the tracing analysis which were incorporated into that report.

8.    Counsel for the trustee has deposed both Mr. Averett and Mr. Slaton regarding this report.

9.    The trustee also objects to testimony regarding this report on the basis that it is irrelevant to this litigation.  However, it clearly is relevant.

10.    The testimony involves the tracing of three loans which resulted in benefit to the debtor in the amount of $8.5 million dollars.  All of these loans were either made by Mr. Horton, or his company, American Real Estate Investment Company, Ltd., or were arranged by Mr. Horton.  Accordingly, the testimony is relevant to determine the benefit received by the debtor.

11.    Counsel for the defendant submits that the testimony is relevant, because this Court, in its opinion in the litigation against the banks, has indicated that it would like to see the results of tracing analysis.  While defendant's counsel believes that the mere receipt of the loan proceeds funds by the debtor is sufficient to demonstrate benefit, this tracing analysis goes further in accordance with the Court's desires set forth in its order dated 12-19-05 in Trustee vs. The Peoples Bank, et al., Adversary Proceeding No. 04-3061-WRS.

WHEREFORE, premises considered, defendants respectfully requests this Court to allow Mr. Averett and/or Mr. Slaton to testify as to the tracing analysis; and to allow Mr. Averett to testify regarding solvency.  The defendants pray for such further and other relief as this Court may deem appropriate.

\s\ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for Defendants N.D. Horton, Jr. and James M. Reynolds, III

**OF COUNSEL:**

WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:    (205) 244-5437

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Response to Trustee's Motion to Strike Randy Averett and Jesse Slaton as Expert Witnesses has been served by electronic filing purposes, as follows:

Brent Barriere
Katie Lasky
Phelps Dunbar LLP
City Plaza
445 North Boulevard
Suite 701
Baton Rouge, LA 70802-5707

This the \24th\ day of March, 2006.

\s\ C. Ellis Brazeal III
OF COUNSEL



C. Ellis Brazeal III
Partner
(205) 244-5237
Facsimile: (205) 244-5437
ebrazeal@walstonwells.com

WALSTON WELLS & BIRCHALL, LLP

P.O. Box 830642 • Birmingham, Alabama 35283-0642

February 24, 2006

**VIA EMAIL**

Brent P. Barriere, T.A.
Phelps Dunbar LLP
Canal Place
365 Canal Street Suite 2000
New Orleans, Louisiana 70130-6534

   RE: Terry Manufacturing Company

Dear Brent:

   This letter is sent in response to yours of February 22, 2006, and our discussion of this morning. Regarding the proposed depositions on March 8, 2006, I had previously scheduled depositions in another matter for March 7th and 8th and do not know how long they will go. It may be that we can do the depositions on the 8th if my depositions conclude on the 7th. If not, I am available on the 16th or 17th.

   Mr. Averett is to have the draft of his report to me today, and I will forward the final version to you no later than Monday, February 27th. Mr. Averett or Mr. Slaton would testify as to the following:

   1. The opinions expressed in Mr. Averett's previous report in the case against the banks;

   2. An opinion about the comments of Les Alexander, set forth in the attached excerpts from one of his depositions.

VIA EMAIL
February 24, 2006
Page 2
_____

   In addition, they have reviewed the banking records of the debtor regarding the loans from Mr. Horton and ARE to the debtor.  Those records reflect that all of these loans proceeds were deposited into the Bank of Wedowee and were then transferred to the First Bank of Tuskegee from which checks were written.  Essentially, their testimony traces the funds.  Accordingly, I am not sure that it is opinion testimony, but factual analysis.  Additionally, Lee Benton conducted his own analysis of the utilization of the Peoples Bank funds which I expect to present at trial.

   I will speak with you Monday once you have had a chance to review the report.

   Very truly yours,

   C. Ellis Brazeal III

CEBIII/tm
Enclosures
cc: Jesse Slaton (Via email)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC, | ) | |
| | ) | |
| Debtor | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, | ) | ADVERSARY PROCEEDING NO.: |
| INC, AND TERRY UNIFORM | ) | 05-03042 |
| COMPANY, LLC | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | |
| N.D. HORTON AND JAMES M. | ) | |
| REYNOLDS, III | ) | |

## RESPONSE TO TRUSTEE'S MOTION TO ALTER OR AMEND

COME NOW, the Defendants, N.D. Horton, Jr., and James M. Reynolds, III, and for their response to the Trustee's Motion to Alter or Amend say as follows:

I.    Equity warrants that no pre-judgment interest be awarded.

A.    As a court of equity, this Bankruptcy Court has discretion whether to award pre-judgment interest.

1

The trustee supports its contention that prejudgment interest is appropriate by citing *In re International Administrative Services, Inc.,* 408 F.3d 689, 709,710 (11th Cir. 2005) (holding "Ordinarily, the allowance of prejudgment interest and the fixing of the time from which interest shall accrue are discretionary with the court" and "...the choice of rate at which to set the amount of prejudgment interest is also within the discretion of the federal court"). Even a cursory look at the facts, though, displays how dissimilar *In re International Administrative Services, Inc.* is from the instant case.

International Administrative Services ("IAS") was an organization owned and run by David Givens that "specialized in marketing financial advice to unsophisticated consumers through a barrage of seminars and late night infomercials." *Id.* at 695. In order to get this advice, customers had to pay a membership fee. The advice, though, proved "neither novel nor covert," but in fact "readily available and comprised [of] common sense business practices."[1] *Id.* When dissatisfied customers sued Givens and the SEC began targeting both him and IAS, Givens contacted The Institute for Asset & Lawsuit Protection in order to hide and/or shelter as many of his assets from any possible future judgments against him. Givens set up IAS to cheat people out of their money and then intentionally hid his assets from suit. The 11th Circuit concluded, upon reviewing the judgment against Givens, that, "[a]lthough the Bankruptcy Code does not explicitly provide for prejudgment interest, it has become a common practice, especially when transfers have been made with the *actual* intent to hinder, delay or defraud creditors." *Id.* at 709 (EMPHASIS ADDED).

---

[1] Among Givens' sterling advice was "encouraging customers to cancel uninsured motorist coverage on their vehicles." *Id.*

B. Defendants' conduct does not warrant pre-judgment interest.

Defendants' conduct is not comparable to the actions of Givens and IAS. Defendants did not intentionally make transfers in order to cheat creditors or the federal government. The Defendants mistakenly believed that Terry was a solvent company, and the stock purchase price was negotiated at "arms length." When the Eleventh Court opened in *In re International Administrative Services, Inc.*, that: "especially when transfers have been made with the actual intent to hinder, delay or defraud creditors", it held that, while the purpose of prejudgment interest is compensatory, courts should consider the defendant's intent when deciding whether to award prejudgment interest. When considering the conduct of the Defendants, an award of prejudgment interest is an inappropriate measure in addition to the already significant damages.

II.    Amount of pre-judgment interest, if any, should be at Treasury Bill rate.

If this Court determines to award pre-judgment interest, it shall be calculated according to the Treasury Bond rate. The Alabama Fraudulent Transfer Act, like the Bankruptcy Code, is silent as to the issue of prejudgment interest, and the Alabama statute cited by the Trustee does not indicate that it applies to bankruptcy proceedings. In fact, no precedent in Alabama or Federal case law applies the Alabama 6% prejudgment rate to any proceeding involving bankruptcy. Absent relevant state statutes, this Court should calculate prejudgment interest using the Treasury Bond rate, the same rate used to calculate post-judgment interest.  However, if the Court does choose to apply the Alabama pre-judgment interest rate, it is 6%. *See Burgess Min. & Const. Corp. v. Lees*, 440 So.2d 321 (Ala. 1983) (holding that "the legal rate of prejudgment interest is 6% per annum").

III.    Pre-judgment interest, if any, should accrue only from date of the lawsuit.

If this Court awards pre-judgment interest, it should commence accruing as of the date on which the trustee filed its complaint. Bankruptcy courts, as courts of equity, "have traditionally awarded prejudgment interest to a trustee who successfully avoids a preferential or fraudulent transfer from the time demand is made or an adversary proceeding is instituted..." *Investment Bankers v. Davis, Gillenwater & Lynch*, 4 F.3d 1556, 1566 (10th Cir. 1993); *See In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1281 (8th Cir. 1988); *In re Indep. Clearing House Co.*, 41 B.R. 985, 1015 (Bankr.D.Utah 1984) *aff'd and rev'd on other grounds, en banc*, 77 B.R. 843 (D.Utah 1987). Doing so ensures equity, since no claim or demand was made upon the Defendants prior to the commencement of the suit.

In *In re Indep. Clearing House Co.*, Independent Clearing House Company (ICHC), operated what was essentially a Ponzi scheme in which new investors provided money from which ICHC paid previous investors. Eventually, ICHC declared bankruptcy, and many investors went unpaid. The trustee, on behalf of all unpaid investors, sought to label all monies paid to investors one year prior to bankruptcy as fraudulent conveyances, and therefore recoverable by the estate for fairer distribution to all investors. The trustee also sought prejudgment interest on the recoverable funds from the time ICHC made the transfers. The Court awarded prejudgment interest, but set the accrual date as beginning when the trustee filed the action. The court's rationale for its decision to run the interest from the time of the demand rather than the time of the transfer "is based on the idea that until such time [as demand for money is made] the preferred creditor cannot be said to hold the property wrongfully." *In re Indep. Clearing*

*House Co.*, 41 B.R. at 1016. The court made it clear that, "[i]t is recognized that where transfers are made with actual intent to hinder, delay, or defraud creditors, or the transferee is guilty of culpable misconduct, prejudgment interest may be awarded from the date of the transfer." *Id.* Despite the fact that ICHC built their business on a foundation of fraud, the court still held that the payments ICHC made to its investors were not paid with fraudulent intent, and therefore prejudgment interest should run from the commencement of the action rather than the time of the transfer.   In this case, the Defendants lacked any actual intent to hinder, delay or defraud creditors, and, therefore, any award of pre-judgment interest should run from the commencement of this action.

IV.  Conclusion.

The question of whether to award pre-judgment interest lies within the discretion of this Court.  Defendants respectfully submit that this sizeable judgment should not be further increased.  However, if pre-judgment interest is awarded, it should be at the Treasury Bond rate and should not accrue prior to the commencement of this lawsuit.


/s/ C. Ellis Brazeal III
C. Ellis Brazeal III
Attorney for N.D. Horton, Jr., and
James M. Reynolds, III

**OF COUNSEL:**

WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone:    (205) 244-5237
Telecopier:    (205) 244-5437

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Response to Trustee's Motion to Alter or Amend has been served by electronic filing and/or placing same in the United States mail, properly addressed and postage prepaid, as follows:

> Catherine E. Laskey
> Phelps Dunbar LLP
> City Plaza
> 445 North Boulevard
> Suite 701
> Baton Rouge, LA 70802-5707

This the 7th day of July, 2006.

/s/ C. Ellis Brazeal III
OF COUNSEL