# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO.  03-32063-WRS** |
| **COMPANY, INC.** | ) | |
| | ) | **CHAPTER 7** |
| **Debtor** | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CASE NO.  03-32213-WRS** |
| **TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |

| | | |
|---|---|---|
| | ) | |
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY, INC.** | ) | |
| **AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CIVIL ACTION NO.** |
| **Appellee,** | ) | |
| | ) | **2:06-CV-0746** |
| **VERSUS** | ) | |
| | ) | |
| **N.D. HORTON, JR. AND JAMES M.** | ) | |
| **REYNOLDS,** | ) | |
| **Appellants.** | ) | |

**Appeal from the United States Bankruptcy Court for the Middle District of Alabama**
**Adversary Proceeding No.: 05-03042**

**BRIEF OF APPELLEE, J. LESTER ALEXANDER, III, TRUSTEE OF TERRY**
**MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

Brent B. Barriere, T.A.  (La. Bar No. 2818)
Catherine E. Lasky (La. Bar No. 28652)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………………….………ii

Statement of Jurisdiction…………………………….....…………………………….....………..1

Statement of Issue Presented and Applicable Standard of Review……………………………....1

Statement of the Issues..……………………………………………………………………....2

Statement of the Case..………………………………………………………………………....3

Summary of Argument…………………………………………………………………..11

      1.  The Bankruptcy Court's well-supported conclusion that Terry Manufacturing
      did not receive reasonably equivalent value for its payment on its insiders' notes
      is not clearly erroneous…………………………………………………………..12

      2.  Guarantees received by the Defendants were themselves fraudulent conveyances
      and satisfaction of those guarantees cannot provide reasonably equivalent value………19

      3.  The Bankruptcy Court properly rejected Defendants' novel theory that the
      payments they received are insulated because they gave value to the Terry family
      members…………………………………………………………………………19

      4.  The Bankruptcy Court did not abuse its considerable discretion in rejecting
      Defendants' alter ego theory which was first raised in a post-judgment motion……….23

Conclusion……………………………………………………………………………....25

Certificate of Service……………………………………………………………………....26

Exhibit "A"

Exhibit "B"

## TABLE OF AUTHORITIES

### CASES

*Cox v. Hughes*, 781 So. 2d 197 (Ala. 2000) ........................................................................16

*Ex parte Uniroyal Tire Company*, 779 So. 2d 227 (Ala. 2000)........................................22

*First Health, Inc. v. Barton*, 585 So. 2d 1331 (Ala. 1991) ...........................................24

*Galactic Employer Service, Inc. v. McDorman*, 880 So. 2d 434 (Ala. Civ. App. 2003).........24, 25

*Highland Village Bank v. Bardwell*, 610 F.2d 228 (5th Cir. 1980) .................................2

*In re BBL Group, Inc.*, 205 B.R. 625 (Bankr. N.D. Ala. 1996).......................................19

*In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir. 1990) ......................................14

*In re City of Mobile*, 75 F.3d 605 (11th Cir. 1996).......................................................22

*In re Garfinkle*, 672 F.2d 1340 (11th Cir. 1982) ......................................................1, 2

*In re Grabill Corp.*, 12 B.R. 983 (Bankr. N.D. Ill. 1999)..............................................13

*In re Greenbrook Carpet Co., Inc.*, 722 F.2d 659 (11th Cir. 1984)...............................1

*In re JLJ Inc.*, 988 F.2d 1112 (11th Cir. 1993)..............................................................2

*In re Jeffrey Bigelow Design Group, Inc.,* 956 F.2d 479, 484 (4th Cir. 1992)………………..13

*In re Martin*, 205 B.R. 646 (Bankr. M.D. Ala. 1993).............................................14, 24

*In re Rodriguez*, 895 F.2d 725 (11th Cir. 1990) .......................................................14, 21

*Lussier v. Duggar*, 904 F.2d 661, 667 (11th Cir. 1990) .............................................23, 24

*Nordberg v. Arab Banking Corp.*, 904 F.2d 588 (11th Cir. 1990).....................................2

*O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992)  .................................23, 24

*Rubin v. Hanover Trust & Co.*, 661 F.2d 979 (2d Cir. 1981) .................................14, 15

*Thomas v. Crosby*, 371 F.3d 782 (11th Cir. 2004) .......................................................22

*Varon v. Trimble, Marshall & Goldman, P.C.*, 33 B.R. 872 (Bankr. S.D.N.Y. 1983)..................13

## FEDERAL STATUTES

11 U.S.C. § 101.31(b) ........................................................................................................5

11 U.S.C. § 548……………………………………………………………………………..1, 14

28 U.S.C. § 157(b) ............................................................................................................1

28 U.S.C. § 158(a) ............................................................................................................1

## STATE STATUTES

Alabama Code § 8-9A-5 ......................................................................12, 14, 22, 23

Alabama Code § 8-9A-8 ........................................................................20, 22, 23

## RULES

Bankruptcy Rule 8013…………………………………………………………….…………2

NO.99631304.1

## STATEMENT OF JURISDICTION

This is an appeal from a Judgment of the United States Bankruptcy Court for the Middle District of Alabama in favor of Plaintiff, J. Lester Alexander, III, Trustee of  Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC and against N.D. Horton, Jr. and James M. Reynolds and awarding damages to the Trustee in the amount of $596,738.60. The Trustee's action is a "core proceeding" which seeks to "determine, avoid or recover fraudulent conveyances."  28 U.S.C. § 157(b)(2)(H).  Because this is a core proceeding, the Bankruptcy Court entered a final judgment over which this Court enjoys appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(i).

## STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW

Defendant-Appellants, N.D. Horton, Jr. and James M. Reynolds (collectively "Defendants") appeal the May 30, 2006, judgment of the Bankruptcy Court in favor of Plaintiff-Appellee, J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC ("Trustee") avoiding payments totaling $596,738.60 as fraudulent transfers within the meaning of 11 U.S.C. § 548 and the Alabama Fraudulent Transfer Act. Actions seeking to avoid fraudulent transfers are "core" matters within the meaning of 28 U.S.C. § 157(b)(2)(H).  Accordingly, the Bankruptcy Court's judgment and related decision is a final judgment within the meaning of 28 U.S.C. § 157(b).

The Bankruptcy Court's decision is entitled to a high level of deference.  It is well-settled in the Eleventh Circuit that an appellate court "must accept the bankruptcy court's findings unless they are clearly erroneous."  *See In re Greenbrook Carpet Co., Inc.*, 722 F.2d 659, 660-61 (11th Cir. 1984)(*citing In re Garfinkle*, 672 F.2d 1340 (11th Cir. 1982)).  The test "is not whether

-1-

a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to present clear error in the trial judge's findings." *In re Garfinkle*, 672 F.2d 1340, 1344 (11th Cir. 1982)(*quoting Highland Village Bank v. Bardwell*, 610 F.2d 228, 230 (5th Cir. 1980)). In addition, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. See also *In re JLJ Inc.*, 988 F.2d 1112 (11th Cir. 1993).

The dispositive issue in this case is whether the Defendants gave reasonably equivalent value for payments they received from Terry Manufacturing. The Eleventh Circuit has emphasized that a bankruptcy court is entitled to particular deference in its evaluation of whether a debtor received reasonably equivalent value. *Nordberg v. Arab Banking Corp.*, 904 F.2d 588, 593-94 (11th Cir. 1990) ("It has long been established that whether fair consideration has been given for a transfer is largely a question of fact, as to which considerable latitude must be allowed the trier of the facts.").

## STATEMENT OF THE ISSUES

1.    Did the Bankruptcy Court commit clear error in concluding that Defendants did not provide reasonably equivalent value for payments made to them by Terry Manufacturing on promissory notes given to the Defendants by the company's insiders?

2.    Did the Bankruptcy Court commit clear error in finding the Defendants' theory that they provided reasonably equivalent value "is nothing more than a post-hoc attempt to bolster a defense to the Trustee's fraudulent conveyance suit which does not ring true?"

3.    Did the Bankruptcy Court clearly err in rejecting Defendants' assertion that other

loans to Terry Manufacturing insiders somehow provide reasonably equivalent value for the payments at issue here given that under cross examination Defendant Horton repeatedly described those loans as entirely unrelated to the challenged transfers, and the Bankruptcy Court found his rehabilitative testimony in response to repeated coaxing by his counsel was "not credible and that his claims of a tie [between unrelated loans and the payments at issue] had been fabricated to provide the defense to the Trustee's avoidance action?"

      4.     Did the Bankruptcy Court err in rejecting Defendants' novel theory that the recipient of a transfer by a debtor may avoid liability for a fraudulent conveyance provided he gave "value" to the debtor's insiders?

      5.     Did the Bankruptcy Court abuse its discretion in failing to address specifically Defendants' argument first raised in a post-judgment motion that the corporate form of Terry Manufacturing should be disregarded so that "value" provided to Terry family members will also be deemed to be value to the Company?

## STATEMENT OF THE CASE

**1.    Course of Proceedings Below.**

Plaintiff, J. Lester Alexander, III, is the Trustee of Terry Manufacturing Company, Inc. and Terry Uniform, LLC. The Trustee brought suit against Defendants N.D. Horton and James M. Reynolds in June, 2005 seeking to recover approximately $600,000.00 paid to them by Terry Manufacturing. Those payments represented installments on promissory notes given by former insiders of Terry Manufacturing in consideration of transfers of common stock of an entity known as Perky Cap Company. Following extensive discovery, a two-day trial was conducted before the Bankruptcy Court on March 28-29, 2006. At the Court's request, the parties

submitted proposed findings of fact and conclusions of law, and on May 30, 2006 the Court entered judgment in favor of the Trustee and against the Defendants in the amount of $596,738.60. At the same time, the Court entered a sixteen-page Memorandum Decision.

Defendants filed a Motion to Alter or Amend the Judgment which challenged the Court's conclusions that the Defendants did not provide reasonably equivalent value for the payments they received from Terry Manufacturing, and for the first time asserted the theory that Terry Manufacturing and its insiders should be deemed a single entity such that any value provided to insiders would also be value to the company. On July 18, 2006, the Bankruptcy Court denied that Motion. This appeal followed.

## 2.    Statement of Facts.

By outside appearances, prior to July, 2003, Terry Manufacturing Company, Inc. ("Terry Manufacturing") was a successful, minority-owned manufacturer of industrial uniforms and other apparel. In late June, 2003, Terry Manufacturing's principal lender determined that the company had substantially overstated its accounts receivable and inventory. When the lender sought to obtain a state court receiver, the company filed for relief under Chapter 11 of the Bankruptcy Code. Based on evidence that there had been significant misstatements in financial records, the Bankruptcy Court appointed Mr. Alexander as Chapter 11 Trustee. He ultimately determined that Terry Manufacturing was hopelessly insolvent, and the case was converted to a straight liquidation under Chapter 7 of Bankruptcy Code in May, 2004. Mr. Alexander was also appointed Chapter 7 Trustee.

This case concerns payments made by Terry Manufacturing to Defendants Horton and Reynolds on promissory notes executed by Roy and Rudolph Terry, Cotina Terry and Allie

-4-

Robinson, insiders of Terry Manufacturing.  Those promissory notes were purportedly given in consideration of the transfer to the insiders of common stock of Perky Cap Company ("Perky Cap").  The parties have stipulated that Terry Manufacturing did not receive any of that stock, and did not obtain any of the benefits of stock ownership, including the right to take multiple tax deductions based upon the significant losses recognized by Perky Cap.  Indeed, the parties stipulated as to most of the critical factual issues in this, or any other fraudulent conveyance case, including the following:

- Messrs. Horton and Reynolds delivered their Perky Cap stock to the four insiders and all payments on the promissory notes were made by Terry Manufacturing with funds drawn from Terry Manufacturing accounts.  Stipulation of Facts ("Stipulation") at ¶¶ 9, 10 and 11; Memorandum Decision at p. 4-6.

- Roy and Rudolph Terry were the controlling shareholders, the board of directors and principal officers of Terry Manufacturing.  Cotina Terry is Roy Terry's daughter and also an officer of Terry Manufacturing; Allie Robinson is the wife of Rudolph Terry.[1]  Stipulation at ¶¶ 2, 6; Memorandum Decision at p. 4-6.

- Terry Manufacturing was never a shareholder at Perky Cap.  All of the stock purchased by the insiders was registered in their respective names.  Stipulation at ¶¶ 9, 10 and 11; Memorandum Decision at p. 4-6.

- Terry Manufacturing was not a signatory to any of the four promissory notes.  It guaranteed the note executed by Cotina Terry and the note executed by Allie

---

[1]	Roy, Rudolph and Cotina Terry and Allie Robinson are plainly "insiders" of Terry Manufacturing.  That term is defined to include officers, directors, control shareholders of a corporation and their "relative[s]."  11 U.S.C. § 101.31(b).

Robinson. It did not guarantee the note executed by Roy and Rudolph Terry. Stipulation at ¶¶ 4, 6, 7 and 8; Memorandum Decision at p. 4-6.

●     A number of entities were unsecured creditors of Terry Manufacturing prior to the first of the transfers at issue and remained unsecured creditors of Terry Manufacturing at the time of filing for relief under Chapter 11. Stipulation at ¶ 14; Memorandum Decision at p. 7.

The first payment by Terry Manufacturing was delivered to the Defendants in December, 2000; the last in May, 2003. Terry Manufacturing was insolvent throughout this period with the amount of its liabilities substantially exceeding the fair value of its assets. Also, throughout this same period, Terry Manufacturing had inadequate capital to sustain its operations and consistently failed to pay obligations timely. Memorandum Decision at p. 11.[2]

This case turns entirely on whether Terry Manufacturing received reasonably equivalent value for its payments to the Defendants. Defendants acknowledge that the consideration they gave for the payments at issue – the common stock of Perky Cap – was transferred to the four Terry insiders, and that Terry Manufacturing was never a shareholder of Perky Cap. Stipulation at ¶ 10; Memorandum Decision at p. 6. Nonetheless, Defendants assert that these transactions are supported by reasonably equivalent value because Defendants or their affiliates made other loans to Roy and Rudolph Terry, and because the insiders' purchase of Perky Cap stock insured Terry Manufacturing would have a reliable supplier of caps. The facts bearing on these theories

---

[2]     The Bankruptcy Court accepted Mr. Alexander as an expert, and his opinion that Terry Manufacturing was insolvent under each of the three standards set forth in the Bankruptcy Code and the Alabama Fraudulent Transfer Act. Mr. Alexander's testimony on insolvency appears at pages 65 to 80 of the Trial Transcript. His restated balance sheet reflecting that Terry Manufacturing liabilities exceeded the fair value of its assets throughout the period it made payments to the Defendants was accepted into evidence as Plaintiff's Exhibit 47.

– theories which the Bankruptcy Court described as "a post-hoc attempt to bolster a defense to the Trustee's fraudulent conveyance suit" – are summarized as follows:

      1.    *The American Real Estate Investment Company loan to Roy and Rudolph Terry.*

On November 10, 2000, Cotina Terry and Allie Robinson each executed a promissory note made payable to the Defendants in the amount of $200,000.00 and for which each received shares of common stock of Perky Cap amounting to ten percent of its outstanding shares. On that same day, Roy and Rudolph Terry personally executed a promissory note in the amount of $5,500,000.00 made payable to American Real Estate Company, Ltd. ("American Real Estate"). The note evidenced a line of credit arrangement by which the Terrys individually could obtain funds under a draw schedule detailed in the accompanying loan agreement. Terry Manufacturing was not a signatory to either the notes executed by Ms. Robinson and Ms. Terry nor to the note given to American Real Estate by Roy and Rudolph Terry.[3]

American Real Estate is a Georgia limited partnership. Its general partner is RJ&J Enterprises, Inc. Trial Transcript at 156:18-23. American Real Estate has its own place of business, employees, bank accounts and books and records. Trial Transcript at 157:3-158:2. Messrs. Horton and Reynolds are both shareholders of RJ&J, but by Mr. Horton's own

---

[3]    Whether the funds obtained by Terrys from American Real Estate were actually used by Terry Manufacturing is a matter of serious dispute. Jesse Slaton, an expert called by Defendants testified that the funds were deposited into Roy Terry's account, then transferred to Terry Manufacturing and used for ordinary business expenses. Mr. Slaton also acknowledged that it is not possible to trace specific dollars to specific expenditures and that Terry Manufacturing's funds were routinely transferred between multiple accounts. Trial Transcript 223:20-224:11; 241:7-15. Mr. Alexander likewise testified that funds were routinely transferred between multiple accounts, that funds were routinely used for non-business purposes and that it is impossible to trace specific expenditures to specific deposits. Trial Transcript 78:25-80:20. The Court accepted that view noting "It is also true that there is a daisy chain of millions of dollars of cash transferred between Terry Manufacturing and related entities. Even if one can identify $5.5 million transferred by Roy and Rudolph Terry to Terry Manufacturing, tens of millions of dollars were transferred out, leaving one no closer to an explanation which rings true." Memorandum Decision at p. 8.

NO.99631304.1

admission, American Real Estate is a distinct legal entity.   Trial Transcript at 158:12-16. According to Mr. Horton, the loan by American Real Estate and the stock sales to Cotina Terry and Allie Robinson were "two totally separate deals."  Trial Transcript at 170:11.

> 2.    *The $1,500,000 Loan.*

Some ten months after Defendants sold stock to Cotina Terry and Allie Robinson, American Real Estate made a second loan in the amount of $1,500,000.00.  It was repaid in October, 2001 together with interest at an annual rate at in excess of 40%.  Trial Transcript 103:2-12.  According to Mr. Horton, this second loan was completely unrelated to both the stock transactions involving Ms. Terry and Ms. Robinson and the subsequent transaction involving Roy and Rudolph Terry.  Trial Transcript at 171:9-22 and 175:3-16.

> 3.    *The Perky Cap Loan.*

On May 30, 2002, American Real Estate and Perky Cap entered into an Agreement under which American Real Estate agreed to use its best efforts to secure a $1,500,000 loan to Perky Cap from the Peoples Bank of Eatonton Georgia.  In turn, Perky Cap agreed that it would "make full payment of a loan in the amount of $1,000,000 to The Farmers and Merchants Bank of Eatonton within ninety (90) days of the date of this Agreement."   Plaintiff's Exhibit 42. Mr. Horton personally guaranteed the Farmers and Merchants Bank loan.

On the same day that Perky Cap and American Real Estate executed their Agreement, Roy and Rudolph Terry supposedly purchased additional Perky Cap stock from Messrs. Horton and Reynolds in consideration of a promissory note in the amount of $624,000.   Terry Manufacturing did not execute that note, nor guarantee it.  Whether Roy and Rudolph Terry actually acquired common stock from Messrs. Horton and Reynolds has never been resolved.

-8-

Mr. Horton has testified that the stock was transferred. But the federal and state tax returns filed by Perky Cap in 2002 and 2003 under penalty of perjury and prepared by David Giddens, Mr. Horton's personal accountant, do not show a transfer of stock. On the contrary, both the federal and state tax returns and the K-1 forms issued to Mr. Horton and Mr. Reynolds in 2002 and 2003 show their stock ownership to be the same as it was before the purported sale to Roy and Rudolph Terry. Trial Transcript at 90:23-91:21; 92:19-93:11; Plaintiff's Exhibits 27 and 28.

American Real Estate was successful in facilitating a loan by Peoples Bank to Perky Cap; it closed on May 30, 2002. The documentation of that loan makes no mention of the purported sale of Perky Cap stock by Messrs. Horton and Reynolds to the Terry brothers.

4. *Other Transactions.*

Following the supposed May 20, 2002 sale of stock by Messrs. Horton and Reynolds to Roy and Rudolph Terry, there were a series of disguised inventory sales between Wholesale Distributors, Inc. and Terry Manufacturing. Wholesale Distributors is a Georgia corporation of which Mr. Horton is an officer. It buys and resells various home furnishings ranging from drapes to picture frames. It has never dealt in uniforms or sportswear. Trial Transcript at 160:21-161:25. Over a several month period, Wholesale Distributors would supposedly purchase millions of dollars of unidentified product from Terry Manufacturing. In turn, Terry Manufacturing supposedly purchased millions of dollars of inventory from Wholesale Distributors. Plaintiff's Trial Exhibits 30-47. According to Mr. Horton, this arrangement was really a disguised financing device. Wholesale Distributors would advance funds to Terry Manufacturing, and those funds were supposedly used to purchase military uniforms manufactured by Terry Manufacturing. Terry Manufacturing would then re-purchase uniforms

from Wholesale Distributors.  Notably, however, there was never an inventory of these uniforms, and Wholesale Distributors never took possession of them.  While supposedly trading in millions of dollars of inventory, Mr. Horton was unable to identify what product was actually purchased and then re-sold by Wholesale Distributors or even the location of the product.  In any event, as with the loans made by American Real Estate, Mr. Horton repeatedly acknowledged that these transactions were entirely unrelated to the giving and payment of the promissory notes of Ms. Robinson, Ms. Terry and the Terry brothers.  Trial Transcript at 185:1-5.

     *5.     Access to Caps.*

Terry Manufacturing first became a customer of Perky Cap shortly after the formation of Perky Cap in 1987 and some thirteen years before the first of the transactions at issue here.  According to Mr. Horton, from that time forward, Terry Manufacturing was either the largest or second largest customer of Perky Cap.  Trial Transcript at 177:7-17.  Notably, Terry Manufacturing's acquisition of caps actually declined as Terry family members acquired stock in the company.  Plaintiff's Trial Exhibit 29; Memorandum Decision at p. 9-10.

In considering the Defendants' claimed indirect benefits, the Bankruptcy Court observed that there was "no credible evidence" suggesting loans by American Real Estate were in any way connected to the transfers at issue here.  Memorandum Decision at p. 10.  "None of the documentary evidence suggests any relationship [between] the Cotina and Allie loans" and the American Real Estate line of credit which closed on the same day.  Memorandum Decision at p. 8-9.  Indeed, "[t]he Terry Manufacturing bankruptcy has generated a mountain of paper, not one page of which suggests that there was a connection" between the transfers challenged by the Trustee and the multiple transactions cited by Defendants.  Memorandum Decision at p. 10.

-10-

Mr. Horton's speculation that American Real Estate would not have closed the $5.5 million loan to the Terrys if Cotina Terry and Allie Robinson not purchased stock, "is nothing more than a post hoc attempt to bolster a defense to the Trustee's fraudulent conveyance suit, which does not ring true." Memorandum Decision at p. 11.

## SUMMARY OF ARGUMENT

The Bankruptcy Court correctly concluded that the Defendants did not provide any value, much less "reasonably equivalent" value "in exchange" for the challenged transfers. The Terry insiders, not Terry Manufacturing, received the Defendants' Perky Cap stock. Terry Manufacturing alone paid for the stock.

The loans by American Real Estate were not "in exchange" for the payments made on behalf of the insiders, and there is simply no evidence that Terry Manufacturing could only secure a reliable source of headwear if it paid for its insiders' purchase of Perky Cap stock. Mr. Horton repeatedly acknowledged that the American Real Estate loans and the stock sales were entirely unrelated. His counsel's repeated and finally successful effort to coax him into claiming that American Real Estate would not have granted a line of credit to the Terrys if the stock sale did not close, was, the Bankruptcy Court properly found, "not credible and that his claims of a tie have been fabricated to provide a defense to the Trustee's avoidance action." Memorandum Decision at 9, 11.

Nor did the Bankruptcy Court err in refusing the Defendants' invitation to rewrite fraudulent conveyance law to hold that a transferee is insulated from liability if he provides "value" to the debtor's insiders but not the debtor. The Bankruptcy Court's failure to specifically address this novel theory is not grounds for reversal, but rather reflects its well supported

conclusion that a transfer must be voided unless the debtor receives – directly or indirectly – reasonably equivalent value. Defendants' notion that the transferee is protected if he gives value to the debtor's insiders alone, is both at direct odds with the specific language of the Bankruptcy Code and the Alabama Act and an invitation to insiders – well illustrated by the Terrys' conduct – to loot a debtor to the prejudice of creditors.

1.    **The Bankruptcy Court's well-supported conclusion that Terry Manufacturing did not receive reasonably equivalent value for its payment on its insiders' notes is not clearly erroneous.**

The Bankruptcy Court ruled that the Trustee is entitled to avoid the payments to Messrs. Horton and Reynolds as violative of the Alabama Fraudulent Transfer Act. The so-called "constructive fraud" provision of the Act, Alabama Code § 8-9A-5(a) provides that a transfer may be avoided if (i) it was made at a time when the debtor was insolvent, and (ii) the debtor "did not receive a reasonably equivalent value in exchange for the transfer…". The Trustee submitted evidence that Terry Manufacturing was insolvent throughout the nearly three years it made payments to Messrs. Horton and Reynolds. The Defendants did not challenge the Trustee's finding of insolvency before the Bankruptcy Court nor do they do so here. Accordingly, the dispositive issue on this appeal is whether the Bankruptcy Court's factual determination that Defendants did not provide reasonably equivalent value is clearly erroneous.

It is undisputed that Terry Manufacturing did not receive any direct benefit for payments to Messrs. Horton and Reynolds. Payments were in satisfaction of promissory notes given by Terry Manufacturing insiders to Messrs. Horton and Reynolds in consideration of common stock of Perky Cap, and it is undisputed that Terry Manufacturing was not a stockholder of Perky Cap and did not otherwise receive any benefits of stock ownership.

-12-

While acknowledging Terry Manufacturing did not receive any direct benefit from the transfers, Defendants assert that Terry Manufacturing received certain indirect benefits. Employing what the Bankruptcy Court properly described as a "byzantine structure," (Memorandum Decision at p. 8), Defendants assert that loans made to the Terrys individually by American Real Estate, the loan to Perky Cap by Peoples Bank, and Terry Manufacturing's need to secure a reliable provider of headwear, all provided reasonably equivalent value. Also, Horton and Reynolds note that Terry Manufacturing guaranteed the promissory notes signed by Cotina Terry and Allie Robinson and assert that Terry Manufacturing received value for payments which necessarily reduced its exposure under the guarantees.

What constitutes reasonably equivalent value is not defined in either the Alabama Act or the Bankruptcy Code. The courts have recognized that by using the term "reasonably equivalent" neither statute requires that the exchange be dollar for dollar; rather, the debtor must receive "full and adequate consideration" for what it surrendered to the transferee. *See, generally, Varon v. Trimble, Marshall & Goldman, P.C.*, 33 B.R. 872, 885 (Bankr. S.D.N.Y. 1983). The question is not the value of what the debtor received *per se*, but how that value compares to what the debtor surrendered. Thus, the reasonably equivalent analysis requires a comparison of the value of what went out with the value of what was received. *In re Grabill Corp.*, 12 B.R. 983, 994 (Bankr. N.D. Ill. 1999). The ultimate question is whether the transfer has materially affected the debtor's ability to satisfy his creditors' claims. As the Fourth Circuit recognized in *In re Jeffrey Bigelow Design Group, Inc.*:

> The proper focus is on the net effect of the transfer of the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse

-13-

> off because of the debtor, and consequentially the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

956 F.2d 479, 484 (4th Cir. 1992).  *See also, In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990).

The value given by the transferee need not be delivered directly to the debtor.  Following the decision of the Second Circuit in *Rubin v. Hanover Trust & Co.*, 661 F.2d 979, 991 (2d Cir. 1981) courts in this Circuit have repeatedly recognized that an "indirect benefit" may also constitute reasonably equivalent value.  Thus, if the debtor pays the obligations of its principal shareholder or an affiliated corporation for which it has no liability, but at the same time receives transfers from the principal shareholder equal to or greater than those payments, there is no net effect on the estate and payments by the debtor do not constitute a fraudulent conveyance.  *See, In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir. 1990).

As the Eleventh Circuit explained in *In re Rodriguez*, the purpose of avoiding transfers unsupported by reasonably equivalent value is to protect creditors against depletion of the debtor's estate.  Therefore, "this provision [11 U.S.C. § 548] does not authorize voiding a transfer which confers an economic benefit upon the debtor either directly or indirectly.  In such a situation, a debtor's net worth has been preserved and the interests of the creditors will not have been injured by the transfer."  895 F.2d 725, 727 (11th Cir. 1990) (citing with approval *Rubin v. Hanover & Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981)).

While the benefit received by the debtor need not come directly from the transferee, that benefit must at least be in exchange for the transfer by the debtor.  Indeed, the language of the statute is quite specific; it requires that a debtor receive "a reasonably equivalent value **in exchange for the transfer.**"  Alabama Code § 8-9A-5(a);  *In re Martin*, 205 B.R. 646, 649

-14-

(Bankr. M.D. Ala. 1993) ("…the indirect benefit must be one realized or realizable by the creditors who suffered the apparent avoidable transfer.") (emphasis supplied).  As *Rubin* and *Rodriguez* make clear, the benefit, while indirect, must ultimately be a benefit to the debtor and its creditors.  As the *Rubin* court emphasized:

> …the court must keep the equitable purposes of the statute firmly in mind, recognizing that any significant disparity between the value received and the obligation assumed by either issuer will have significantly harmed the innocent creditors of that firm.

661 F.2d at 941.

The fundamental and fatal flaw in Defendants' argument is that the supposed value provided by them or their affiliates was not "in exchange" for the challenged transfers, and there was a net diminution of the Terry Manufacturing estate.

    (a)    **The Bankruptcy Court's factual finding that the American Real Estate line of credit was not connected to the stock sales is well supported by the record.**

According to the Defendants, the $5.5 million line of credit granted by American Real Estate to the Terrys was used by them to pay operating expenses of Terry Manufacturing.  They also maintain that had Cotina Terry and Allie Robinson failed to close on the stock sale, American Real Estate would not have closed on the line of credit.  Alternatively, they assert that, had there been default in payment on the Cotina Terry and Allie Robinson notes, American Real Estate could have declared a default on the line of credit and demanded immediate repayment by the Terrys, as principal obligors, and by Terry Manufacturing, as guarantor.

Defendants were unable to explain to the Bankruptcy Court how a loan by American Real Estate provides reasonably equivalent value for payments they received personally.  That failing has not been cured on appeal.  American Real Estate is a separate legal entity; it has its own

offices, employees and books and records. By Mr. Horton's admission, he has been careful to ensure that American Real Estate is a separate and distinct entity from Mr. Reynolds and himself. A transfer by a corporation or other separate legal entity simply does not provide a defense to transfers to its shareholders or members. In *Cox v. Hughes*, 781 So.2d 197, 205 (Ala. 2000), the individual defendants claimed that certain transfers to the debtor by a corporation with which they were affiliated provided reasonably equivalent value for transfers the defendants received personally. The Alabama Supreme Court rejected that notion stating that "[i]t goes without saying that transactions with a corporation are not legally equivalent to a transaction with individuals." *Id.* Here, the connection is even more tenuous. American Real Estate is a separate legal entity from the Defendants. But more fundamentally, Mr. Horton has acknowledged that the American Real Estate loans were not "in exchange" for the payments made by Terry Manufacturing. According to Mr. Horton, the two were entirely unrelated. Trial Transcript 175:3-16.

The Bankruptcy Court described this argument as a "byzantine structure" which had been "fabricated to provide a defense to the Trustee avoidance action," and correctly so. The fact is that the American Real Estate line of credit was simply not in exchange for the challenged transfers. The Bankruptcy Court properly noted that the Terry Manufacturing bankruptcy has "generated a mountain of paper, not one page of which suggests…" that the closing of the stock sale to Cotina Terry and Allie Robinson was in any way connected to the closing of the American Real Estate line of credit.[4] Mr. Horton admitted on four separate occasions that the

---

4    Defendants made much of the fact that American Real Estate could declare a default if Ms. Terry and Ms. Robinson failed to pay on their notes. As the Bankruptcy Court found, this hardly suggests that Terry

-16-

two transactions were "[t]wo totally separate deals."  Trial Transcript at 170:11; 171:13, 20-22; 175:15-16.  The Bankruptcy Court properly accepted that admission.

Defendants suggest that the Bankruptcy Court committed clear error by its refusal to accept Mr. Horton's rank speculation that American Real Estate would not have closed on the line of credit had the stock sale not closed on the same day.  The record is revealing.  Following cross examination in which Horton repeatedly acknowledged that the two transactions were entirely separate, his counsel attempted rehabilitation by asking him what he would have done had the stock sale not closed.  Mr. Horton responded he would have been disturbed by what he would have perceived as the Terrys' deviation from their "business plan."  Trial Transcript at 186:25-187:2.  In response to repeated coaxing, Mr. Horton finally announced that American Real Estate would not have closed on the loan.  Trial Transcript 188:14-16.  Small wonder that the Bankruptcy Court found he was "not credible and that his claims of a tie have been fabricated to provide a defense to the Trustee's avoidance action."  This credibility determination is entitled to a high level of deference and should not be disturbed on appeal.

    **(b)**    **The Bankruptcy Court was not clearly erroneous in holding that a loan by Peoples Bank to Perky Cap does not constitute reasonably equivalent value for the transfers challenged here.**

Employing what is perhaps an even more "byzantine structure" than that for the American Real Estate line of credit, Defendants argue that a $1,500,000 loan by Peoples Bank of Eatonton to Perky Cap somehow provides reasonably equivalent value for the transactions at issue here.  Defendants' convoluted tale is that in the same time period that Roy and Rudolph Terry acquired stock from Messrs. Horton and Reynolds, Peoples Bank agreed to loan

---

Manufacturing's payments to the Defendants were in exchange for the line of credit.

$1,500,000 to Perky Cap. According to Mr. Horton, he would have not favored this loan had he remained a major shareholder of Perky Cap. Accordingly, his sale to the Terry brothers eliminated his opposition to the loan.

As with the American Real Estate line of credit, there is simply no credible evidence tying the Peoples Bank loan to the payments at issue here. The stock sale to Allie Robinson and Cotina Terry occurred more than eighteen months before the Peoples Bank loan closed; plainly, the two transactions were completely unrelated. Likewise, the documentation of the Peoples Bank loan makes absolutely no reference to the stock sale by Mr. Horton and Mr. Reynolds to Roy and Rudolph Terry. And, perhaps most importantly, the agreement between American Real Estate and Perky Cap specifically states that the consideration for American Real Estate facilitating the Peoples Bank loan is Perky Cap's agreement to pay off another loan at Farmers and Merchants Bank which Mr. Horton had personally guaranteed. Put simply, this is one more illustration of the "post hoc" attempt to manufacture a defense to the Trustee's claim.

    **(c)**    **The other amounts advance by American Real Estate and Mr. Horton were not in exchange for the challenged transfers.**

Defendants also assert that they provided reasonably equivalent value for the challenged transactions in the form of a $500,000 loan by American Real Estate to Terry Manufacturing in February, 2003 and two loans totaling $263,000 made by Mr. Horton to the Company in January and February, 2003. According to the Defendants, the Bankruptcy Court committed clear error by not crediting these loans against the challenged payments. Defendants again fail to explain how a loan by American Real Estate, a separate legal entity, insulates payments to Messrs. Horton and Reynolds. More fundamentally, they have not, and for obvious reasons cannot

-18-

explain how funds advanced in January and February, 2003 were in exchange for transactions which closed well before that date.

> **2.    Guarantees received by the Defendants were themselves fraudulent conveyances and satisfaction of those guarantees cannot provide reasonably equivalent value.**

Terry Manufacturing guaranteed payment of the Allie Robinson and Cotina Terry notes. Defendants assert that it received reasonably equivalent value for its payments on those notes as the payments reduced its exposure under the guarantees. But it is not a defense to avoidance that the transaction was in satisfaction of a related transaction which itself is a fraudulent conveyance. Thus, as here, it is not sufficient that the debtor satisfy a guarantee if it did not receive any value for giving that guarantee in the first place. *See, e.g., In re BBL Group, Inc.*, 205 B.R. 625, 636 (Bankr. N.D. Ala. 1996). And, Defendants have failed to point to any benefit, direct or indirect, that Terry Manufacturing received for the giving of the guarantees. Messrs. Horton and Reynolds received promissory notes; Ms. Robinson and Ms. Terry received Perky Cap common stock; Terry Manufacturing received nothing. The Bankruptcy Court's determination that "the execution of the guarantee agreements by Terry Manufacturing was, in itself, a fraudulent conveyance because it is part and parcel of a transfer for which it did not receive consideration" is factually and legally correct and should not be disturbed. Memorandum Decision at p. 16.

> **3.    The Bankruptcy Court properly rejected Defendants' novel theory that the payments they received are insulated because they gave value to the Terry family members.**

The Bankruptcy Court was correct in refusing the Defendants' invitation to rewrite settled fraudulent conveyance law to hold that a transferee is insulated from liability if he

NO.99631304.1

provides value to the insiders, but not the debtor. The Bankruptcy Court's failure to specifically address this theory is not grounds for reversal, but rather reflects its well supported conclusion that a transfer must be avoided unless the debtor receives – directly or indirectly – reasonably equivalent value "in exchange" for what the debtor surrendered. Defendants' claim that the transferee is protected if he gave value to the debtor's insiders alone, is both at direct odds with the specific language of the Bankruptcy Code and the Alabama Act and an invitation to the insiders loot the debtor to the prejudice of the creditors.

As an alternative to their "byzantine structure" of indirect benefits, Defendants contend that under the Alabama Act, if the transferee gives value to a third person in consideration of the transfer by the debtor, the value given by the transferee is set off against the value of the property the transferee receives from the debtor. Specifically, Defendants argue that as a result of the payments by Terry Manufacturing, the notes given by Cotina Terry and Allie Robinson were paid in full and the balance of the note given by Roy and Rudolph Terry was substantially reduced. Terry family members received a benefit by the reduction of the indebtedness owed by them to Horton and Reynolds. This "benefit," Defendants argue, must be offset against any liability Horton and Reynolds may have to the Trustee. In this regard, Defendants rely on Alabama Code § 8-9A-8(d) which provides: [n]otwithstanding the avoidability of a transfer under this Chapter, a good faith transferee, is entitled, to the extent of the value given the debtor for the transfer or another person as a consequence to the debtor's make such transfer to …a reduction the amount of liability on the judgment".

The Alabama Act is derived from the Uniform Fraudulent Transfer Act. The language concerning a transfer to another person is unique to Alabama. Apparently it has never been

-20-

interpreted in a reported decision, state or federal.  The comments of the Alabama Law Institute indicate the language refers to transfers which may initially go to a third party, but are for the ultimate benefit of the debtor.

Under the Defendants' reading of the statutes, creditors will have no remedy when insiders cause the debtor to make transfers which solely benefit them.  Indeed, if the Defendants are correct, an insider may cause the corporate debtor to employ all of its assets in transactions for which it receives absolutely no benefit, and those transfers will be effectively immune from attacks so long as the insiders receive some benefit.  As noted, there is absolutely no authority for this proposition, and the Bankruptcy Court appropriately declined to accept a reading of the statute which will so fundamentally undermine settled concepts of fraudulent conveyance law.

As the Eleventh Circuit recognized in *Rodriguez, supra,* the ultimate issue presented by a fraudulent conveyance case is whether the transaction results in a diminution of the debtor's net worth or whether the debtor received economic benefit "either directly or indirectly" such that its net worth has been preserved.  895 F.2d at 727.  There, the Eleventh Circuit affirmed the bankruptcy court's judgment avoiding a parent corporation's payment of a loan to its subsidiary to finance a private jet.  The parent corporation received no meaningful economic benefit from the reduction of its subsidiary's debt and had not used the aircraft.  Here, the same result applies.  There is simply no evidence Terry Manufacturing received any economic benefit, direct or indirect for the payments to Messrs. Horton and Reynolds.  Terry family members, all insiders, received the Perky Cap stock and their financial obligations to the Defendants were paid in whole or in part by Terry Manufacturing.  Terry Manufacturing received no economic benefit with its net worth reduced by $596,738.60.

The goal of avoidance of diminution of the estate is at odds with the Defendants' reading of the statute that a transfer is insulated from avoidance provided the benefit goes to someone other than the debtor. The Trustee respectfully submits that the appropriate interpretation of this provision is not that which completely undermines settled notions of fraudulent conveyance law, but that which is consistent with *Rodriguez's* recognition of indirect benefit. Specifically, the Trustee submits that the appropriate interpretation of Alabama Codes § 8-9A-8(d) is that it codifies the rule that the debtor can obtain reasonably equivalent value through an indirect benefit. A transfer by the debtor will be upheld if that transferor provides benefits which ultimately inure to the benefit of the debtor and regardless of whether that benefit is delivered directly to the debtor or flows through a third party. As the Bankruptcy Court properly recognized, that did not occur in this case.

Defendants correctly note that when interpreting a statute, "[t]here is a presumption that every word, sentence or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each …" Appellants' Brief at 24. (quoting *Ex parte Uniroyal Tire Company*, 779 So.2d 227, 236 (Ala. 2000)). The corollary to that rule is that a statute should be interpreted as an organic whole with each of its parts assumed to have meaning and courts should rarely, if ever, accept an interpretation of one part of a statute which will render other provisions meaningless. An "interpretation of statutory language that causes other language within the statute to be meaningless contravenes the elementary canon of [statutory] construction that a statute should be interpreted so as not to render one part inoperative." *Thomas v. Crosby*, 371 F.3d 782, 807 (11th Cir. 2004)(quoting *In re City of Mobile*, 75 F.3d 605, 611 (11th Cir. 1996) (internal quotations omitted)).

-22-

The Defendants' interpretation of § 8-9A-8(d) would make much of the balance of the Alabama Act meaningless.  Under § 8-9A-5, a "transfer made by a debtor is fraudulent…if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer"…".  Plainly, if the only value given by the transferee provides no benefit to the debtor – direct or indirect – the debtor does not receive a reasonably equivalent value "in exchange for the transfer."  And,  value given solely to insiders which does not ultimately benefit the debtor is not "in exchange for the transfer" by the debtor.  In contrast, if § 8-9A-8(d) is read to codify the indirect benefit rule, then the requirement that the debtor receive value "in exchange for the transfer" remains enforceable.

4.    **The Bankruptcy Court did not abuse its considerable discretion in rejecting Defendants' alter ego theory which was first raised in a post-judgment motion.**

Following entry of the Bankruptcy Court's judgment and related 16-page Memorandum Decision, Defendants first asserted the theory that Terry Manufacturing should be deemed the alter ego of Terry family members so that value provided to them would also be deemed to be value to the Company.  The Bankruptcy Court denied the Defendants' Motion to Alter or Amend without specifically addressing this tardily raised theory.

A "decision to alter or amend a judgment is committed to the sound discretion" of the trial court and will not be overturned "absent abuse of discretion."  *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992).  Motions to alter or amend "should not be used to raise arguments which could and should have been made before the judgment was issued."  *Id. (citing Lussier v. Duggar*, 904 F.2d 661, 667 (11th Cir. 1990)).  The Eleventh Circuit has emphasized that "[d]enial of a motion to amend is especially soundly exercised when the party has failed to

-23-

articulate any reason for the failure to raise the issue at an earlier stage in the litigation." *O'Neal*, 958 F.2d at 1047 (internal quotations omitted). There is a "compelling" interest in the finality of a judgment and "[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Lussier*, 904 F.2d at 667 (internal quotations omitted).

The Bankruptcy Court's refusal to expressly address Defendants' alter ego theory was particularly appropriate given Defendants did not present meaningful supporting evidence. Under Alabama law, piercing the corporate veil is an "equitable principle" which should "not lightly be exercised." *In re Martin*, 205 B.R. 646, 648 (Bankr. M.D. Ala. 1993). *See also, First Health, Inc. v. Barton*, 585 So.2d 1331, 1334 (Ala. 1991). Its use is particularly inappropriate when it is invoked in connection with statutory causes of action. *Id.*

The Alabama Supreme Court has repeatedly expressed the view that alter ego, as a theory of piercing of the corporate veil, should be employed only when the "dominant party" employs the corporation to engage in fraud or otherwise violate "a statutory or other positive legal duty." *See First Health*, 585 So.2d at 1334-35. It necessarily involves a factually intensive inquiry touching upon such topics as compliance with corporate form, commingling of assets, existence or non-existence of officers, directors and employees and misuse of the corporation's assets. *See, Galactic Employer Service, Inc. v. McDorman*, 880 So.2d 434, 442 (Ala. Civ. App. 2003).

The Trustee submits that his testimony concerning the condition of Terry Manufacturing's records falls well short of the necessary factual showing. But more fundamentally, this is simply not an appropriate case for invocation of this equitable remedy. The injured parties are not Messrs. Reynolds and Horton. They knew full well that they sold stock to Terry insiders and it was the insiders who signed the notes. By Mr. Horton's admission,

-24-

he did not care who paid the notes so long as payments were timely. Trial Transcript 174:23-175:2. He and Mr. Reynolds could have insisted that the insiders honor their personal debts; they did nothing of the sort. In contrast, innocent creditors were injured as funds which could have been used to pay their claims were siphoned off to benefit the Defendants and Terry insiders. Defendants have not and cannot show that refusal to disregard the corporate existence and find that Terry Manufacturing received "value" when it never received any benefit from the challenged transfers "will result in injustice or inequitable consequences." *Galactic Employer Services*, 880 So.2d at 441.

## CONCLUSION

The Eleventh Circuit has recognized that an evaluation of reasonably equivalent value is "largely a question of fact as to which considerable latitude must be allowed the trier of the facts." The Bankruptcy Court's determination that these Defendants provided no value, much less reasonably equivalent value, is well grounded in the record and should not be disturbed. Mr. Horton repeatedly testified that the various transactions cited by the Defendants as indirect benefits were wholly unrelated to the transfers at issue. The speculation that American Real Estate, a distinct legal entity, would not have closed on a line of credit absent closing on the stock sales was not credible and the Bankruptcy Court's determination that it was nothing more than a "post hoc attempt to bolster the defense to the Trustee's fraudulent conveyance suit" should not be disturbed. Likewise, Defendants' theory that a loan by Peoples Bank to Perky Cap was in consideration of the stock sale to the Terrys is directly at odds with the written agreement between Perky Cap and American Real Estate. Their demand that this Court fundamentally rewrite fraudulent conveyance law is equally baseless and should be rejected. The Bankruptcy

-25-

Court should be affirmed in all respects.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:    /s/ Catherine E. Lasky
           Brent B. Barriere, T.A. (La. Bar No. 2818)
           Catherine E. Lasky (La. Bar No. 28652)
           365 Canal Street, Suite 2000
           New Orleans, LA 70130
           Telephone: (504) 566-1311
           Facsimile: (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE FOR TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

## CERTIFICATE OF SERVICE

I certify that, on this 29th day of September, 2006, by United States mail, properly addressed and postage pre-paid to the following persons:

C. Ellis Brazeal
Walston Wells & Birchall, LLP
One Federal Place
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203-2122

                                /s/ Catherine E. Lasky

-26-