IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| N.D. HORTON, JR. and JAMES M. REYNOLDS | ) ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO.  2:06cv746-WHA |
| J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. | ) ) ) ) ) | (WO) |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the adversary proceeding Defendant's appeal of the bankruptcy court's Order Denying Motion to Alter or Amend entered on July 17, 2006, and of the Judgment rendered by the bankruptcy court on May 30, 2006 in favor of the Plaintiff, J. Lester Alexander, III, Trustee.  Adv. Pro. No. 05-3042-WRS in the United States Bankruptcy Court, Middle District of Alabama.

The case arises out of the bankruptcy of Terry Manufacturing Company, Inc.  The facts surrounding the bankruptcy are long and complicated.  Suffice it to say, the demise of Terry Manufacturing can not easily be summarized.  Therefore, a short rendition of the facts pertinent to the present appeal will follow to provide a sufficient backdrop for this order:

The active players in this case can be separated into three primary groups: (1) the transferees/appellants (Horton and Reynolds), (2) the Terry family, and (3) Terry Manufacturing Company, Inc.

The Terry family includes (a) Roy Terry (CEO of Terry Manufacturing), (b) Rudolph

Terry (CFO of Terry Manufacturing), (c) Cotina Terry (the daughter of Roy Terry), and (d) Allie Robinson (wife of Rudolph Terry).

There are three loans that serve as the basis for the alleged fraudulent transfers that comprise the subject of this litigation.

On November 10, 2000, the transferees (Horton and Reynolds) made two loans in connection with the sale of common shares of stock in a company named Perky Cap Company, Inc. One of the loans was evidenced by a Purchase Money Promissory Note executed by Cotina Terry in the principal sum of $200,000.00, bearing interest at the rate of 9.5% per annum. Similarly, the other loan was evidenced by a Purchase Money Promissory Note executed by Allie Robinson in the principal sum of $200,000.00, bearing interest at the rate of 9.5%. Each of these loans was made for the purchase of 9,000 shares of Perky Cap stock (approximately 10% of the outstanding stock of that company). Terry Manufacturing was not a signatory on either loan. Both loans, however, were paid in full to Horton and Reynolds by Terry Manufacturing, with principal and interest on each loan being $234,375.81, for a total of $468,751.62 being paid. Terry Manufacturing was never a shareholder of Perky Cap stock. Although Terry Manufacturing made payments on behalf of Cotina Terry and Allie Robinson, the stock was registered in the names of Cotina Terry and Allie Robinson, who received all of the benefits flowing to the holders of Perky Cap stock.

On May 30, 2002, Horton and Reynolds transferred 27,900 shares of Perky Cap stock to Roy Terry and Rudolph Terry jointly (approximately 31% of the outstanding shares of that company). As consideration, Roy and Rudolph Terry jointly executed a Purchase Money Promissory Note in the principal amount of $624,000.00, bearing interest at a rate of 9.5% per

annum.  There is some dispute among the parties whether these shares of stock were actually transferred or not.  If such shares were transferred, however, they were registered in the names of Roy and Rudolph Terry, and Terry Manufacturing had no interest in the shares whatsoever.  Regardless, all payments on this note were made to Horton and Reynolds by Terry Manufacturing up until its Chapter 11 bankruptcy filing.  Such payments totaled $127,968.98.

Based on these three loans, Terry Manufacturing paid Horton and Reynolds $596,738.60[1] between November 2000 and May 2003.  These payments are the basis for this action with claims being made by the bankruptcy trustee of Terry Manufacturing under both the Bankruptcy Code and the Alabama Fraudulent Transfer Act.  The bankruptcy court found for the trustee under both the Bankruptcy Code and the Alabama Fraudulent Transfer Act, and found that these payments were not supported by "reasonably equivalent value" and, therefore, were fraudulent transfers.  Accordingly, Horton and Reynolds were ordered to repay the sum of $596,738.60 to J. Lester Alexander, III, the bankruptcy trustee for Terry Manufacturing.  Horton and Reynolds filed this appeal.

One of the appellants' chief arguments on appeal is that Ala. Code § 8-9A-8(d) applies in the situation at bar and provides the appellants with a complete or substantial offset against the bankruptcy trustee's claims.  The bankruptcy court did not address this issue, even though the appellants raised it during the post-trial proceedings, by their Proposed Findings of Fact and Conclusions of Law, brief, and Motions to Alter or Amend.  If the appellants are correct in their

---

[1] Although this amount is $18.00 greater than the total sum of the three noted payments, the parties stipulated to this amount as the total payments made to Horton and Reynolds by Terry Manufacturing in connection with the promissory notes executed by Cotina Terry, Allie Robinson, and Roy and Rudolph Terry.

assertion that this section applies, the applicable offset provides a complete defense against the trustee's judgment under the Alabama Fraudulent Transfer Act, Ala. Code §§8-9A-1, et seq. Regardless of this complete offset under that particular claim, the trustee still maintains a viable claim under § 548 of the Bankruptcy Code. Because § 548 has a shorter statute of limitations, however, applying the § 8-9A-8(d) offset to that claim would significantly decrease the trustee's judgment on that claim from $596,738.60 to $394,687.49, a net difference of $202,051.11. Therefore, the interpretation of § 8-9A-8(d) is critical in determining the amount of the appellants' liability, if any. Interpretation of this section of the Alabama Code is a matter of first impression.

> Ala. Code § 8-9A-8(d) states that:
>
> Notwithstanding voidability of a transfer under this chapter, a good-faith transferee is entitled, to the extent of the value given the debtor for the transfer or to another person as a consequence of the debtor's making such transfer, to (1) [a] lien on or a right to retain any interest in the asset transferred; or (2) [a] reduction in the amount of the liability on the judgment.

The appellants/transferees contend that the language of this statute must be interpreted so as to provide a complete offset to their liability under the Alabama Fraudulent Transfer Act. Specifically, the appellants/transferees argue that, if a good-faith transferee gives value (regardless of whether it is to the debtor or another), the transferee will not have to reimburse the debtor to the extent of the value given. They point out that Ala. Code §8-9A-3(a) states that "value is given for a transfer if, in exchange for the transfer, . . . an antecedent debt is . . . satisfied. . . ." The appellants argue that they, as transferees, provided value to the Terry family through the reduction of antecedent debt under the Purchase Money Promissory Notes in exchange for the transfers to them from Terry Manufacturing of payments on the notes.

Therefore, even if the transfers were fraudulent and voidable, under the plain language of the §8-9A-8(d),"[n]otwithstanding (such) voidability" that section provides them with an offset against the trustee's claims, since they are good-faith transferees.

This argument is premised on the idea that the "or to another person" language should be read according to its plain meaning. The Alabama Fraudulent Transfer Act (of which § 8-9A-8(d) is a part) is based on the Uniform Fraudulent Transfer Act. Section 8-9A-8(d) mirrors the Uniform Act, word for word, except where it adds "or to another person." Thus, the primary issue here is: what did the Alabama legislature intend by including this additional language?

On the one hand, the transferees argue that the Alabama legislature easily could have adopted the Uniform Act whole cloth, but did not do so, instead adding this supplemental language. They contend that this language was added purposefully and must be construed as such, pointing to Alabama case law indicating that courts generally must follow the plain language used by the legislature. Essentially, the transferees argue that the addition of this language clearly demonstrates that the Alabama legislature desired to protect the good-faith transferee that gives value, even if it is to someone besides the debtor/transferor, without exception. They contend that the intended effect of this change from the Uniform Act was plainly to place the burden of reimbursement of a fraudulent transfer on one who receives value from a good-faith transferee, and not on the good-faith transferee. Therefore, they argue, the trustee's remedy is against the Terry family members (the "another" to whom value was given for the transfers), and not against them, for the amount of satisfaction of the antecedent debt of the family members.

On the other hand, the trustee argues that the additional language codifies what is

commonly known as the "indirect benefit" rule.  Under that rule, a debtor can obtain reasonably equivalent value through an indirect benefit.  The additional language in the Alabama statute could be interpreted to support the proposition that, since a transfer by the debtor will be upheld if the transferee provides benefits which ultimately inure to the debtor and regardless of whether that benefit is delivered directly to the debtor or flows through a third party, the same concept was made applicable to a possible reduction on the amount of a judgment.  Interpreting the language as such, the statute would not apply to the present situation, since reduction of the Terry family members' antecedent debt did not benefit the corporation even indirectly.

The trustee further addresses the transferees' argument that the court must interpret the statute according to its plain language by countering that the entire statute should be interpreted as a whole.  The trustee argues that if the transferees' interpretation is adopted, the statute loses its overarching purpose.  Simply, the Alabama Fraudulent Transfer Act intends to make a transfer fraudulent if the debtor did not receive reasonably equivalent value in exchange.  Interpreting the additional language in §8-9A-8(d) to broaden that concept to allow protection to a transferee who gives value to "any other person," without requiring an indirect benefit to the debtor, would provide so much protection to the transferee that the bulk of the statute is rendered useless.  Here, it would allow transfer of corporate funds to pay off debts of corporate insiders, followed by bankruptcy of the corporation, without unsecured creditors of the corporation existing at the time of the transfers of the corporation's money being able to use the Fraudulent Transfer Act to get the money back.

The bankruptcy court found that the transfers of corporate funds to Horton and Reynolds

were, in fact, fraudulent, in that Terry Manufacturing did not receive reasonably equivalent value for the transfers. In so holding, the bankruptcy court applied the "indirect benefit" rule and found as a fact that Terry Manufacturing received no indirect benefit from reduction of the antecedent debt of the Terry family. This, however, was in the context of determining that the transfer from Terry Manufacturing to Horton and Reynolds was fraudulent. The bankruptcy court did not address the issue of whether, given that fact, §8-9A-8(d) nevertheless provided Horton and Reynolds, as good-faith transferees, with a reduction in the amount of their liability on the judgment to the extent of their reduction of the antecedent debts of "any other person," namely the Terry family.

No case law exists explaining the rationale for the additional "or to another person" language in § 8-9A-8(d). There is a Comment[2] accompanying this statute that attempts to explain the significance of the additional language. It must be noted, however, that this Comment is poorly drafted, or poorly transcribed and edited, thereby providing little insight into what was the intent of the legislature. The Comment states that:

> This language is merely to clarify the fact that a good faith transferee is protected to the extent of value given by the transferee to one other than the debtor is effectively a transfer for the debtor to the one who receives the value, this transfer may under proper circumstances be a fraudulent transfer.

As one can easily see, this Comment makes little sense as written. It is a run-on sentence, leaving out a subject that could significantly alter the overall meaning of the language. Thus, the

---

[2] The User's Guide to Michie's Alabama Code says:

**Commentary.** Model or uniform laws, or other laws that have been enacted as part of a large-scale revision effort, are often accompanied by scholarly commentary preparted (sic) by the Alabama Law Institute, or by responsible national organizations, state legislative committees, etc. We are happy to include such commentary in full.

Comment creates confusion as opposed to answering any questions.  Appellants contend that the plain language of the statute is clear, that the Alabama legislature chose to depart from the Uniform Fraudulent Transfer Act so as to protect fully a good-faith transferee against claims of general creditors of the transferor, and that there could have been no other reason for this departure than to change from the way the Uniform Act had been interpreted in states that had adopted it.  The trustee argues that the Comment, although inartful, shows through use of the words "merely to clarify" that the legislature did not intend to make a drastic change, but intended merely to clarify that this section included the interpretation by courts in other states that the giving of value to one other than the debtor would be protected where there is an indirect benefit to the debtor.

The interpretation of Ala. Code § 8-9A-8(d) is critical in determining the liability, if any, of the transferees in this case.  It is a question of state law of first impression, has far-reaching effect, and ultimately is unclear.  When asked at oral argument, the parties in this case agreed that certification of this question to the Supreme Court of Alabama might be the appropriate course of action.  Therefore, considering the uncertainty of the relevant state law, the court finds that the appropriate action is to certify a question regarding the interpretation of § 8-9A-8(d) to the Supreme Court of Alabama.

Accordingly, the court will certify the following question of law to the Supreme Court of Alabama:

Interpreting Ala. Code § 8-9A-8(d), does "or to another person" refer to value given by a good-faith transferee to any other person, without qualification or exception, as a consequence of the debtor's transfer, or is it limited to being a codification of the "indirect benefit" rule allowing

protection where value given to a person other than the debtor indirectly benefits the debtor, or should it be interpreted in some other way?

For the reasons stated above, it is hereby ORDERED as follows:

1. All proceedings in this cause are STAYED pending acceptance and resolution, or refusal, of the certified question by the Supreme Court of Alabama.

2. The Clerk of Court is DIRECTED to immediately transmit to the Supreme Court of Alabama the certificate prepared by the court certifying a question of state law which is deemed determinative of the present claim and to which there is no controlling precedent in the decisions of the Supreme Court of Alabama. The Clerk is further DIRECTED to comply with the Supreme Court of Alabama's request, if made, to be provided with any or all of the portions of the record in this matter.

Done this 18th day of December, 2006.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATED DISTRICT JUDGE