

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

SPECIAL TERM, 2007

---

1060445

---

N.D. Horton, Jr., and James M. Reynolds

v.

J. Lester Alexander III, trustee of Terry Manufacturing Company, Inc.

Certified Question from the United States District Court for the Middle District of Alabama

(District Court No. 2:06cv746)

LYONS, Justice.

The United States District Court for the Middle District of Alabama has certified to this Court the following question, pursuant to Rule 18, Ala. R. App. P.:

1060445

"Interpreting Ala. Code § 8-9A-8(d), does 'or to another person' refer to value given by a good-faith transferee to any other person, without qualification or exception, as a consequence of the debtor's transfer, or is it limited to being a codification of the 'indirect benefit' rule allowing protection where value given to a person other than the debtor indirectly benefits the debtor, or should it be interpreted in some other way?"

I. <u>Factual Background and Procedural History</u>

In the bankruptcy proceeding of Terry Manufacturing Company, Inc. ("the debtor"), pending in the United States Bankruptcy Court for the Middle District of Alabama, N.D. Horton, Jr., and James M. Reynolds ("the transferees") were ordered to repay certain sums to J. Lester Alexander III, the trustee for the debtor ("the trustee"). The transferees appealed the order of the bankruptcy court to the United States District Court for the Middle District of Alabama ("the District Court"). The District Court, acting pursuant to Rule 18, Ala. R. App. P., Certified Questions from Federal Courts, certified to this Court a question of first impression involving the construction of § 8-9A-8(d), Ala. Code 1975, creating an exception to provisions of the Alabama Fraudulent Transfer Act, § 8-9A-1 et seq., Ala. Code 1975 ("the Act").

1060445

The District Court set forth the following factual background in its certificate:

> "The active players in this case can be separated into three primary groups: (1) the transferees/appellants (Horton and Reynolds), (2) the Terry family, and (3) Terry Manufacturing Company, Inc.
>
> "The Terry family includes (a) Roy Terry (CEO of Terry Manufacturing), (b) Rudolph Terry (CFO of Terry Manufacturing), (c) Cotina Terry (the daughter of Roy Terry), and (d) Allie Robinson (wife of Rudolph Terry).
>
> "There are three loans that serve as the basis for the alleged fraudulent transfers that comprise the subject of this litigation.
>
> "On November 10, 2000, the transferees (Horton and Reynolds) made two loans in connection with the sale of common shares of stock in a company named Perky Cap Company, Inc. One of the loans was evidenced by a Purchase Money Promissory Note executed by Cotina Terry in the principal sum of $200,000.00, bearing interest at the rate of 9.5% per annum. Similarly, the other loan was evidenced by a Purchase Money Promissory Note executed by Allie Robinson in the principal sum of $200,000.00, bearing interest at the rate of 9.5%. Each of these loans was made for the purchase of 9,000 shares of Perky Cap stock (approximately 10% of the outstanding stock of that company). Terry Manufacturing was not a signatory on either loan. Both loans, however, were paid in full to Horton and Reynolds by Terry Manufacturing, with principal and interest on each loan being $234,375.81, for a total of $468,751.62 being paid. Terry Manufacturing was never a shareholder of Perky Cap stock. Although Terry Manufacturing made payments on behalf of Cotina Terry and Allie Robinson, the stock was

3

1060445

registered in the names of Cotina Terry and Allie Robinson, who received all of the benefits flowing to the holders of Perky Cap stock.

"On May 30, 2002, Horton and Reynolds transferred 27,900 shares of Perky Cap stock to Roy Terry and Rudolph Terry jointly (approximately 31% of the outstanding shares of that company). As consideration, Roy and Rudolph Terry jointly executed a Purchase Money Promissory Note in the principal amount of $624,000.00, bearing interest at a rate of 9.5% per annum. There is some dispute among the parties whether these shares of stock were actually transferred or not. If such shares were transferred, however, they were registered in the names of Roy and Rudolph Terry, and Terry Manufacturing had no interest in the shares whatsoever. Regardless, all payments on this note were made to Horton and Reynolds by Terry Manufacturing up until its Chapter 11 bankruptcy filing. Such payments totaled $127,968.98.

"Based on these three loans, Terry Manufacturing paid Horton and Reynolds $596,738.60[1] between November 2000 and May 2003. These payments are the basis for this action with claims being made by the bankruptcy trustee of Terry Manufacturing under both the Bankruptcy Code and the Alabama Fraudulent Transfer Act. The bankruptcy court found for the trustee under both the Bankruptcy Code and the Alabama Fraudulent Transfer Act, and found that these payments were not supported by 'reasonably equivalent value' and, therefore, were fraudulent transfers. Accordingly, Horton and Reynolds were ordered to repay the sum of $596,738.60 to J. Lester Alexander, III, the bankruptcy trustee for Terry Manufacturing. Horton and Reynolds filed this appeal.

---

1060445

> "¹Although this amount is $18.00 greater than the total sum of the three noted payments, the parties stipulated to this amount as the total payments made to Horton and Reynolds by Terry Manufacturing in connection with the promissory notes executed by Cotina Terry, Allie Robinson, and Roy and Rudolph Terry."

## II. Analysis

In a nutshell, the transferees made three loans to various members of the Terry family to enable these family members to finance the purchase of stock in a company in which the debtor had no interest nor did it have any liability whatsoever in the transactions. Nevertheless, the debtor paid two of the loans in full and paid a portion of the third loan before it filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. The bankruptcy court found the transfers by the debtor to be fraudulent and ordered the transferees to repay to the trustee the sums previously received from the debtor.

This Court is asked to construe § 8-9A-8(d), which reads as follows:

> "Notwithstanding voidability of a transfer under this chapter, a good-faith transferee is entitled, to the extent of the value given the debtor for the transfer <u>or to another person</u> as a consequence of the debtor's making such transfer, to

5

1060445

>   "(1) A lien on or a right to retain any interest in the asset transferred; or
>
>   "(2) A reduction in the amount of the liability on the judgment."

(Emphasis added.)

Because we are dealing with the Uniform Fraudulent Transfer Act ("the UFTA"), we could ordinarily find persuasive authority from other jurisdictions construing similar language. However, that simple solution is unavailable because the emphasized language set forth above is unique to Alabama. Ordinarily in such a situation we would look to the Alabama Comment for an explanation of the reason for the deviation from the model act. However, nothing about this statute is ordinary.

The applicable portion of the Alabama Comment states:

>   "3. The language, 'or to another person as a consequence of the debtor's making such transfer[,] to' is added to the Uniform Act in subsection (d) of this section. This language is merely to clarify the fact that a good faith transferee is protected to extent of value given by the transferee to one other than the debtor is effectively a transfer for the debtor to the one who receives the value, this transfer may under proper circumstances be a fraudulent transfer. Moreover, the fact that the transferee gives value for the property he receives from the debtor to a person other than the debtor may affect the transferee's status as a good faith transferee."

6

1060445

The second sentence begins with a tantalizing introductory phrase that suggests that clarification will follow, but the sentence then breaks down into an incomprehensible juxtaposition of unintelligible phrases.

The transferees invoke the plain meaning rule.

> "Our resolution of this dispute is governed by well-established principles of statutory construction and separation of powers. It is axiomatic that '"[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says."' University of South Alabama v. Progressive Ins. Co., 904 So. 2d 1242, 1246 (Ala. 2004) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)) (emphasis added). Moreover, '"[i]f the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."' Id. (emphasis added)."

Ellis v. West, [Ms. 1051822, April 27, 2007] ___ So. 2d ___, ___ (Ala. 2007). The transfereees contend that we should read § 8-9A-8(d) without engrafting any limitation upon it and thereby except the transfers made by the debtor to them from the sweep of the Act. Under the transferees' reading, § 8-9A-8(d) allows them to retain the funds transferred to them by the debtor because the transfer benefited the Terry family in

1060445

that it satisfied the family's indebtedness to the transferees.[1]

The trustee objects to the recognition of a transfer to a third party that does not benefit the debtor. The trustee offers a construction of § 8-9A-8(d) derived from the landmark case of <u>Rubin v. Manufacturers Hanover Trust Co.</u>, 661 F.2d 979 (2d Cir. 1981), in which the United States Court of Appeals for the Second Circuit, dealing with provisions in the Bankruptcy Code applicable to fraudulent transfers, recognized that a transfer to a third person, instead of the debtor, can nonetheless result in an indirect benefit to the debtor. There, the court found an indirect benefit where two affiliates, through a system of guaranties and cross-guaranties, guaranteed loans to their independent third-party distributors, and as a result actually received more cash on a daily basis from the borrowing third-party distributors. The trustee points to the complete absence of any benefit to the debtor by reason of the payment of the

---

[1] The question whether the transferees acted in good faith so as to entitle them to the exception in § 8-9A-8(d) is not before us. For purposes of responding to the question, we assume that they acted in good faith.

8

1060445

loans on behalf of members of the Terry family, thereby, he says, depriving them of the exception afforded by § 8-9A-8(d).

Laying to one side for the moment the problems posed by the trustee's contention as to the incorporation of <u>Rubin</u> in the context of the conflict of such a reading of § 8-9A-8(d) with the plain-meaning rule, the flaw in the trustee's argument lies in the availability of the rule in <u>Rubin</u> independent of the language added to § 8 of the UFTA by § 8-9A-8(d). Section 8-9A-4(b) provides that in determining whether a challenged transfer has been made with actual intent to hinder, delay, or defraud a creditor, a court may consider several factors, including, at § 8-9A-4(b)(8), whether "[t]he value of the consideration received by the debtor was <u>reasonably equivalent</u> to the value of the asset transferred." Courts searching for a standard based on the same language in other statutes have applied the rule in <u>Rubin</u>. See, e.g., <u>Beemer v. Water E. Heller & Co. (In re Holly Hill Med. Ctr., Inc.)</u>, 44 B.R. 253, 255 (Bkrtcy. M.D. Fla. 1984), in which the court tied the <u>Rubin</u> rule to the phrase "reasonably equivalent value," as follows:

> "Where, however, a tripartite relationship exists, but analysis of the facts demonstrates that the

9

1060445

> debtor nonetheless receives reasonably equivalent value, case law seems clear to the effect that, 'a debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person,' Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979 (2nd Cir. 1981). (Rubin alludes to 'fair consideration' rather than 'reasonably equivalent value' because it was decided under § 67(d)(1)(e) of the Bankruptcy Act, and the 'fair consideration' terminology originated with § 548 of the Code. We are satisfied that the terms have very similar meanings.)"

Consequently, even if § 8-9A-8(d) referred only to "the extent of value given the debtor" without the additional phrase, "or to another person as a consequence of the debtor's making such transfer," a court would not be deprived of the opportunity to apply the Rubin rule.

The transferees call our attention to a portion of the Official Comment to § 6 of the UFTA. They say it supports the view that the Act did not require an amendment to provide for the availability of the indirect-benefit rule in Rubin. This contention introduces a problematic consideration.

Section 6(5) of UFTA provides:

> "(5) an obligation is incurred:
>
>   "(i) if oral, when it becomes effective between the parties; or

1060445

> "(ii) if evidenced by a writing, when the writing executed by the obligor is delivered to or for the benefit of the obligee."

The Official Comment explains the purpose of subparagraph (5) as follows:

> "Paragraph (5) is new. It is intended to resolve uncertainty arising from <u>Rubin v. Manufacturers Hanover Trust Co.</u>, 661 F.2d 979, 989-91, 997 (2d Cir. 1981), insofar as that case holds that an obligation of guaranty may be deemed to be incurred when advances covered by the guaranty are made rather than when the guaranty first became effective between the parties. Compare Robert J. Rosenberg, <u>Intercorporate Guaranties and the Law of Fraudulent Conveyances: Lender Beware</u>, 125 U. Pa. L. Rev. 235, 256-57 (1976)."

The Official Comment then adds a concluding paragraph not tied to any specific provision of § 6, stating:

> "An obligation may be avoided as fraudulent under this Act if it is incurred under the circumstances specified in § 4(a) or § 5(a). The debtor may receive reasonably equivalent value in exchange for an obligation incurred even though the benefit to the debtor is indirect. See <u>Rubin v. Manufacturers Hanover Trust Co.</u>, 661 F.2d at 991-92; <u>Williams v. Twin City Co.</u>, 251 F.2d 678, 681 (9th Cir. 1958); Rosenberg, supra at 243-46."

Because § 6(5) repudiated that aspect of <u>Rubin</u> holding that an obligation is incurred only when advances are made and not when the guaranty first becomes effective, perhaps the drafters of the UFTA considered it necessary to add a separate

11

1060445

paragraph to the Official Comment endorsing <u>Rubin</u> on the separate issue of indirect benefit. Nevertheless, § 6(5) was not adopted in Alabama, and we have no commentary explaining the decision not to include it. One might speculate that the legislature erroneously assumed that the concluding paragraph of the Official Comment of the UFTA, endorsing <u>Rubin</u> as to indirect benefit, related only to omitted § 6(5) instead of the entirety of the Act and, because it did not want its omission of § 6(5) to be seen as critical of the indirect-benefit rule in <u>Rubin</u>, it added the "or to another person" language to § 8-9A-8(d), thus indicating its approval of <u>Rubin</u>. We decline to grasp at these straws in determining legislative intent in face of the unambiguous text of § 8-9A-8(d), because the legislature did not use language consistent with such narrow purpose for the added phrase "or to another person as a consequence of the debtor's making such transfer."

Section 8-9A-8(d) refers "to the extent of the value given the debtor for the transfer or to another person as a consequence of the debtor's making such transfer." To limit the text to an embrace of <u>Rubin</u>, we would have to treat § 8-9A-8(d) as stating, "to the extent of the value given the

1060445

debtor for the transfer or to another person <u>for the indirect benefit of the debtor</u> as a consequence of the debtor's making such transfer."

In an effort to establish the inconsistency of the plain meaning of § 8-9A-8(d) with the purposes of the Act, the trustee contends in his brief to this Court that enforcement of § 8-9A-8(d) without requiring an indirect benefit to the debtor "would render the purpose and provisions of the Alabama fraudulent transfer act meaningless and would give free reign [sic] to third parties to loot the assets of a debtor at the expense of the creditors--the very parties the act is meant to protect." The trustee further argues in his brief that under the construction advocated by the transferees, "an insider may cause the corporate debtor to employ all of its assets in transactions for which it receives absolutely no benefit, and those transfers will be effectively immune from attack so long as the insiders receive some benefit." As the transferees correctly point out, the protection of the exception in § 8-9A-8(d) would not be available to transferees who did not act in good faith. However, under what we consider to be the plain meaning of the exception in § 8-9A-8(d), a transferee

13

1060445

acting in good faith under circumstances by which the transfer of the debtor's assets confers value on a person other than the transferee will be able to avoid repayment. Further, although the Alabama Comment can perhaps be charitably described as ambiguous, it cannot trump an unambiguous statute.

We are left with the question whether the recognition of an exception in § 8-9A-8(d) in the context of transfers for the benefit of a third person constitutes an absurd result the legislature could not possibly have intended and, if so, whether this Court can disregard the exception. The transferees contend that the legislature intended to protect a good-faith transferee from "having to pay twice." They argue that they sold stock for $600,000 and that if the trustee can now recover the $600,000 the debtor paid them, the transferees will have essentially "paid twice" for participating in a good-faith transfer. Presumably, the first payment by the transferees took place in the form of their transfer of the stock to the Terry family in exchange for a promissory note. The transferees' second payment would result from the requirement of repayment of $600,000 to the debtor in

1060445

a setting where the Terry family's indebtedness under the promissory notes has previously been extinguished by the debtor's payment to the transferees.

This Court was recently divided on the extent to which an unambiguous statute can be construed so as to avoid an absurd result. See <u>City of Bessemer v. McClain</u>, [Ms. 1031917, July 28, 2006] ___ So. 2d ___, ___ (Ala. 2006), in which a majority of this Court stated:

> "When interpreting a statute, a court must first give effect to the intent of the legislature. <u>BP Exploration & Oil, Inc. v. Hopkins</u>, 678 So. 2d 1052 (Ala. 1996).
>
> "'The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. <u>League of Women Voters v. Renfro</u>, 292 Ala. 128, 290 So. 2d 167 (1974). In this ascertainment, <u>we must look to the entire Act instead of isolated phrases or clauses</u>; <u>Opinion of the Justices</u>, 264 Ala. 176, 85 So. 2d 391 (1956).'
>
> "<u>Darks Dairy, Inc. v. Alabama Dairy Comm'n</u>, 367 So. 2d 1378, 1380 (Ala. 1979) (emphasis added). To discern the legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction. <u>Ex parte Waddail</u>, 827 So. 2d 789, 794 (Ala. 2001). If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the

15

1060445

>  purpose and policy of the statute, such a construction is to be avoided. <u>Ex parte Meeks</u>, 682 So. 2d 423 (Ala. 1996).
>
> > "'<u>There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature.</u>'
>
> "73 Am. Jur. 2d <u>Statutes</u> § 114 (2001) (footnotes omitted)."

(Second emphasis added.) Even assuming we were today to reaffirm the foregoing principles, a question we do not reach, we are unable to conclude that § 8-9A-8(d), affording expanded relief to a good-faith transferee, apparently at odds with the general purpose of the Act, reaches an absurd result wholly beyond the reasonable contemplation of the legislature. Our conclusion pretermits consideration of the authority of this Court to intercede if § 8-9A-8(d) reached an absurd result.

### III. <u>Conclusion</u>

We decline the trustee's request to rewrite a statute to create an exception that we cannot harmonize with the plain meaning of the statute. We therefore answer the certified question by holding that the phrase in § 8-9A-8(d), "or to

16

1060445

another person as a consequence of the debtor's making such transfer," refers to value given by a good-faith transferee to any other person, without qualification or exception, as a consequence of the debtor's transfer. Any dissatisfaction with the consequences of the plain meaning of § 8-9A-8(d) is a matter for the legislature.

CERTIFIED QUESTION ANSWERED.

Cobb, C.J., and See, Woodall, Stuart, Smith, Bolin, Parker, and Murdock, JJ., concur.

17